**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**PALM BEACH DIVISION**
www.flsb.uscourts.gov

In Re:

**AUTO WHOLESALE OF BOCA, LLC,**                Case No.: 22-15627-EPK

    Debtor.

_____/

**FVP OPPORTUNITY FUND III, LP**, a
Delaware limited partnership; **FVP
INVESTMENTS, LLC,** a Delaware
limited liability company; and **FVP
SERVICING, LLC**, a Delaware limited
liability company,

    Plaintiffs,

vs.                                                                  **Adversary Case NO.: 22-01218-EPK**

**AUTO WHOLESALE OF BOCA, LLC**,

    Defendant.

_____/

**EMERGENCY MOTION TO DETERMINE THAT STATE COURT FREEZE ORDER
REMAINS IN EFFECT AND THAT ANY SALES OF THE DISPUTED VEHICLES
<u>ARE NOT SALES IN THE ORDINARY COURSE</u>**

**<u>EMERGENCY HEARING REQUESTED</u>**
**<u>PURSUANT TO LOCAL RULE 9075-1</u>**

**Basis for Requested Emergency Hearing**

**The Plaintiffs require immediate relief in this Adversary Proceeding due to
the evanescent nature of its collateral (automobiles) and certain pre-petition
conduct by the Debtor.  Thus, it is respectfully represented that such relief
must be considered on an emergency basis.**

**In addition, the Debtor respectfully requests that the Court waive the
provisions of Rule 9075-1(b) of the Local Rules for The United States
Bankruptcy Court for The Southern District of Florida (The "Local Rules"),
which require an affirmative statement that the movant has made a bona fide**

**effort to resolve the issues raised in this motion, as the relief requested herein is urgent in nature and does not lend itself to advance resolution. That notwithstanding, Plaintiffs will endeavor to seek resolution with the Defendant prior to any hearing.**

**COME NOW** the Plaintiffs, FVP Opportunity Fund III, LP, a Delaware limited partnership (the "FVP Fund"), FVP Investments LLC, a Delaware limited liability company ("FVP Investments"), and FVP Servicing, LLC, a Delaware limited liability company ("FVP Servicing") (collectively, the "Plaintiffs"), by and through their undersigned counsel, and move that this Court:

A.  Determine that the pre-Petition *status quo*, and the "Freeze Order" entered by the Broward County Circuit Court, are and were in force at the time of the filing of the Petition as to the Disputed Vehicles and must remain in full force and effect until modified by this Court.

B.  Order that any sale of the Disputed Vehicles prior to an adjudication of the Plaintiffs' Adversary Complaint and Replevin action would not be in the ordinary course of business.

(the "Motion").

**INCORPORATION BY REFERENCE OF**
**VERIFIED ALLEGATIONS AND EXHIBITS OF ADVERSARY COMPLAINT**

The Plaintiffs incorporate by reference hereto the verified allegations filed of record in this action as part of their Adversary Complaint and all exhibits attached thereto ("Complaint").

**PRELIMINARY STATEMENT**

Moshe Farache ("Farache") is one of owners of the Debtor/defendant, Auto Wholesale of Boca, LLC ("Defendant/Debtor").  Several months prior to this bankruptcy, Farache threatened

the life of one of the owners of Karma of Broward and Karma of Palm Beach, unless titles to the Disputed Vehicles were transferred to Defendant/Debtor.  Since that time, the Plaintiffs and a cadre of other claimants have lodged various state court claims seeking monetary and injunctive relief from which Defendant/Debtor and Farache have done nothing but run. [1]  Early on in the State Court Action, Faroche represented to the State Court Judge that the Disputed Vehicles would remain in his possession while the matters were litigated.  He then sold at least two and possibly as many as six of those Disputed Vehicles.  The State Court is cognizant of and proceeding to consider sanctions for those contumacious sales.

The sole aim of this motion is to prevent any such sales in this bankruptcy without Orders of this after consideration of the issues raised in this adversary proceeding.

Now, on the proverbial eve of an omnibus hearing scheduled for January 25 and 26, 2022 in Broward County Circuit Court case number CACE 22-5125 (the "State Court Action"), on an order to show cause in replevin, and alternatively for the appointment of a receiver to safeguard the disputed vehicles, as well as an order to show cause as to why Farache personally should not be held in contempt of Court for filing a false affidavit regarding the number of Disputed Vehicles he alleged to have in his possession.  Defendant/Debtor has filed this  Chapter 11 the business day prior to the aforementioned hearing.

The Plaintiffs file this Motion to ensure that the *status quo* of the State Court "Freeze Order" preventing transfer or sale of the Disputed Vehicles is maintained, and to determine that

---

[1] This has included attempting to remove the action to the Southern District of Florida without basis in law to do so, which resulted in United States District Judge Singhal *sua sponte* remanding the case to State Court, but nonetheless resulting in delay in the Plaintiffs' and other claimants' days in Court, as this latest tactic of Defendant/Debtor's bankruptcy has also resulted in.

any sales of the Disputed Vehicles would not be considered sales in the ordinary course.

## The Plaintiffs' State Court Action

The Plaintiffs filed the State Court Action against numerous Defendants including Farache and the Debtor. That lawsuit seeks injunctive relief and monetary damages against the Defendant, who have engaged in illegal acts, including, *inter alia*, fraud, civil conspiracy, and fraudulent transfer.

The lawsuit stems from a loan of Seven and One-Half Million Dollars ($7,500,000.00) (the "Loan") which the Plaintiffs extended to the Zankl's companies – Karma of Broward and Karma of Palm Beach (collectively, the "Karmas"). As discussed in the Complaint the Plaintiffs were fully secured by the inventory and assets of the Karmas (generally, the "Liens"), as represented by the Zankl's and as acknowledged by Farache's company as landlord, and as personally guaranteed by the Zankl's.

The Plaintiffs thus loaned the Zankl's Companies $7,500,000.00 on January 26, 2022 pursuant to loan documents filed of record with the Complaint, which loan was fully funded by February 18, 2022. Incredibly, by April 1, 2022, the money and all the collateral intended to secure the Loan were gone because Farache stole the Plaintiffs' collateral under threat of violence to the life of Scott Zankl, some of which collateral Farache has already sold and the remainder of which he lists as assets of the Debtor herein in its Petition.

It is now objectively apparent that Farache and the Debtor engaged in an outright and bold scheme to defraud the Plaintiffs and attempt to convert the funds received by the Karmas from the Plaintiffs into expensive exotic automobiles – which at all times remained the collateral of the

Plaintiffs – but not to generate income to grow the Karmas and pay back the Plaintiffs as was intended and represented. Rather, the scheme was to transfer on paper expensive automobiles from the Karmas in which the Plaintiffs had UCC liens, to Excell Auto Group, Inc. ("Excell"), in which Farache had UCC liens, in satisfaction of obligations arising from a fabricated or otherwise hidden antecedent debt allegedly owed by Excell to Defendant/Debtor and Farache.

On March 31, 2022, the Karmas were multi-million-dollar companies with over eight million dollars ($8,000,000.00) in inventory which served as the Plaintiffs' collateral for their seven and one-half million-dollar ($7,500,000.00) loan to the Karmas. On April 1, 2022, all of the automobiles were gone, and the stores closed. The reason being that Farache took every automobile on the lots, including cars that were owned by customers and simply being serviced. It is still unclear how many cars were removed by Farache, his son and agents, but there were at least twenty-seven (27) vehicles taken with nineteen (19) of those vehicles listed on Defendant/Debtor's Petition in this Court as property of the debtor (the "Disputed Vehicles," as defined in the Complaint). Simply put, the Disputed Vehicles are not Defendant's property, but rather are subject to the Liens of the Plaintiff.

To attempt to explain why, on April 1, 2022, the Zankl's would hand over in excess of $7 million in automobiles to Farache in exchange for no money, the Zankl's have stated under oath that they gave the Plaintiffs' collateral automobiles to Farache because he threatened to kill Scott Zankl (specifically, to make him "disappear") unless the titles to the Disputed Vehicles (among others) (i.e.., "Plaintiffs' Collateral") were signed over to Farache and/or the Defendant. On April 8, 2022, the Zankl's filed a police report and reported that the Plaintiffs' collateral automobiles taken by Farache on April 1, 2022 were, in fact, *stolen by extortion* by Farache. *See Boca Raton*

*Police Department – Report Case No.: 22-4685.*

Farache, on the other hand, through a ham handed and patently false lawsuit filed on April 8, 2022 in Palm Beach County's Circuit Court, styled *Moshe Farache and Auto Wholesale of Boca, Inc. v Scott Zankl, et al.*, Case No: 50 2022 CA 3358XXXXMB, has asserted in that lawsuit that the Zankl's owed him millions of dollars and that he is entitled to foreclose on the Plaintiffs' collateral automobiles – which automobiles Farache had already taken on April 1, 2022 – as collateral for his long overdue debt.

Interestingly, and perjuriously, that lawsuit states *under oath* that the "remaining Financed Inventory (collateral automobiles) are presently located at Excell Auto Group's principal place of business: 1001 Clint Moore Road, Suite 101, Boca Raton, FL 33487." Farache, as stated, had already taken all of those collateral automobiles (which are the Plaintiffs' Collateral and not Farache's) on April 1, 2022 and they were thus already in his possession when that lawsuit was sworn to and filed, and remain in his possession. Therefore, the heart of this Farache "Verified Complaint" is false and a fraud upon that Court.

In response to the Plaintiffs' lawsuit in the State Court Action, Broward County Circuit Court case number CACE 22-5125 filed on April 10, 2022, on April 14, 2022 in anticipation of an emergency hearing held by that Court, Farache filed an affidavit and exhibits in that case changing his version of events and then stating that he or the Defendant in fact purchased the Disputed Vehicles. After reviewing the verified pleadings of the Plaintiffs and these submissions by Farache, the Circuit Court Judge in that State Court Action ordered a "freeze frame," freezing the status quo pending a full hearing (the "State Court Freeze Order").

The Plaintiffs prepared for this two-day evidentiary hearing set for July 25, and 26, 2022, intending to reclaim their collateral and prove the falsity of the Farache claims to the Disputed Vehicles. On the eve of the proverbial hearing, Defendant/Debtor filed the instant Bankruptcy, resulting in the avoidance of this two-day hearing.

It is requested that this Honorable Court see the patently obvious gamesmanship that is being perpetrated by Farache and the Debtor/Defendant and maintain the Pre-Petition *status quo*, including that the State Court Freeze Order remains in place, until the Plaintiffs have the opportunity to present their evidence in a full evidentiary hearing. Alternatively, the Plaintiffs respectfully request that this Honorable Court enter its own "freeze order." Finally, the Plaintiffs request that this Court enter an order determining that any sales of the disputed vehicles by Defendant/Debtor would not be considered sales in the ordinary course.

## LEGAL ARGUMENT AND INCORPORATED MEMORANDUM OF LAW

**A. THE FREEZE ORDER ENTERED BY THE STATE CIRCUIT COURT AS TO THE DISPUTED VEHICLES – THE PRE-PETITION STATUS QUO – REMAINS IN FULL FORCE AND EFFECT UNTIL MODIFIED BY THIS COURT.**

In existence at the time of the filing of the Chapter 11 Petition by Debtor/Defendant was the "Freeze Order" issued by Broward County's Circuit Court which prevented the use, sale or transfer of the Disputed Vehicles, as defined in the Plaintiffs' Adversary Complaint.

"Section 362(a)(1) automatically stays: 'the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the [bankruptcy case], or to recover a claim against the debtor that arose before the commencement of the [bankruptcy case].'" *In re Belew*, Case No. A03-00597-DMD (Bankr. D. Alaska Sep. 30, 2003)

(quoting 11 U.S.C. § 362(a)(1)).

"'[T]he automatic stay requires an immediate freeze of the status quo by precluding and nullifying post-petition actions.'" *Id. (citing Eskanos*, 309 F.3d at 1214). Indeed, "[t]he automatic stay serves to freeze the positions of the debtor and his or her creditors as of the date of the petition in order to maintain the status quo." *In re Matter of Frazier*, Case No. 02-4133 (Bankr. S.D. Ga. Jun. 12, 2003). Here, the position of the debtor and its creditors, including the Plaintiffs, as of the date of Defendant/Debtor's Petition was that the State Court "Freeze Order" was in force. Maintaining the *status quo* of Defendant/Debtor's creditors would mean that the State Court "Freeze Order" remains in force.

"[O]nly the bankruptcy court can determine the scope of the automatic stay; state courts are without the power to modify or dissolve the stay." *Id.* (citing *Shambling,* 890 F.2d at 125).

Accordingly, the Plaintiffs respectfully request that this Court enter an order determining that the Broward County Circuit Court "Freeze Order" is still in effect and is required to maintain the pre-Petition *status quo*.

### B.  NO SALES OF THE DISPUTED VEHICLES CAN BE DEEMED IN THE ORDINARY COURSE.

The Security Agreements and Financing Statements filed by the Plaintiffs as exhibits to the Complaint conform to applicable law and create perfected security interests in the Karmas' vehicle inventory as of the date they were filed – January 26, 2022. As mandated by Section 679.2011(1) of the Florida Statutes, "a security agreement is effective according to its terms between the parties, against purchasers of the collateral, and against creditors."

Defendant/Debtor claims to be a purchaser of the Disputed Vehicles in its possession which are subject to the replevin complaints of the Plaintiffs and Hi Bar Capital, LLC in the State Court

Action. So, absent some exception recognized under Article 9 of the UCC, the Plaintiffs' right to recover their collateral through authorized remedies under Florida law trumps any claim of Defendant/Debtor as an alleged purchaser of that same collateral or as an alleged creditor of the Karmas.

The Plaintiffs, as secured parties, have the clear right to recover possession of their collateral upon default pursuant to their Security Agreements, Part 6 of Article 9 of the UCC (Sections 679.601 and 679.609 of the Florida Statutes), and Florida's Replevin law (Chapter 78 of the Florida Statutes).

The Plaintiffs' perfected security interests relative to any vehicle that the Karmas acquired beginning upon the filing of the financing statements prevails over any claim of Defendant/Debtor to these Disputed Vehicles, unless Defendant/Debtor, a licensed auto dealer, was a "buyer in the ordinary course of business" (a "BitOCoB") with respect to its acquisition of the vehicles. *See* § Section 679.320, Fla. Stat. This provision states:

> **679.320   Buyer of goods.**—
>
> (1)   Except as otherwise provided in subsection (5), a buyer in ordinary course of business, … takes free of a security interest created by the buyer's seller, even if the security interest is perfected and the buyer knows of its existence.

Section 671.201(9) of the Florida Statutes defines a BitOCoB as follows, in relevant part:

> (9)   "Buyer in ordinary course of business" <u>means a person who, in ordinary course, buys goods in good faith</u>, without knowledge that the sale violates the rights of another person in the goods, from a person, other than a pawnbroker, <u>in the business of selling goods of that kind</u>. <u>A person buys goods in ordinary course if the sale to the person comports with the usual or customary practices in the kind of business in which the seller is engaged or with the seller's own usual or customary practices</u>. …. A buyer in ordinary course of business may buy for cash, by exchange of other property, or on secured or unsecured credit and may

acquire goods or documents of title under a preexisting contract for sale. Only a buyer who takes possession of the goods or has a right to recover the goods from the seller under chapter 672 may be a buyer in ordinary course of business. "Buyer in ordinary course of business" does not include a person who acquires goods in a transfer in bulk or as security for or in total or partial satisfaction of a money debt.

(Emphasis added).

"Good faith" means honesty in fact and the observance of reasonable commercial standards of fair dealing." *See* § 679.1021(qq), Fla. Stat. It is no longer merely a subjective standard, as made clear in the Official Comment thereto.

Defendant/Debtor, as aforementioned, is a car dealer licensed as such in Florida, and therefore is a "merchant" under the UCC and thus not a BitOCoB.

Indeed, Defendant/Debtor is not an ordinary customer who walks into a retail dealership to buy a car. Moreover, the conduct, documentation and financial dealings between Defendant/Debtor and the Karmas and their agents were anything but "ordinary course." The purported sales to Defendant/Debtor did not, as required by Section 671.201(9) of the Florida Statutes, "comport with the usual or customary practices in the kind of business in which [the Karmas are] engaged or with the seller's own usual or customary practices." The Karmas were not in the business of selling large numbers of their cars to a wholesaler. More importantly, the undisputed evidence in the possession of the Plaintiffs as well as Defendant/Debtor establishes that the Disputed Vehicles were not purchased but were collateral for the preexisting debt. *See* **Exhibit L** to Adversary Complaint.

In all events, the principals of the Karmas, Scott Zankl and Kristen Zankl, and of Defendant/Debtor, Farache, engaged in a series of paper transactions involving the exchange of

hundreds of pages of documents, funds flowing back and forth between the parties, the "fast tracking" of applications to change the name of the owner on Certificates of Title, and many emails back and forth between them and their agents where the alleged buyer Defendant/Debtor is clearly directing the process.

Moreover, Defendant/Debtor and Excell Auto Group, Inc. ("Excell"), now in its own Chapter 7 proceeding, had a pre-existing business relationship. Excell may have owed Defendant/Debtor money, and Defendant/Debtor may have had agreements with Excell that granted it a security interest in assets of Excell. Farache also may be or may have been an investor in Excell and/or its affiliates. However, what Defendant/Debtor was not a secured party of the Karmas at the legally relevant times.

At some point, Farache, for Defendant/Debtor, decided to exercise self-help to try to recover money allegedly owed to him by Excell and/or Scott Zankl. Defendant/Debtor engaged in, and in fact led, a series of orchestrated transactions to try to reflect that Defendant/Debtor was buying cars from Excell, but in fact, those cars had been acquired by the Karmas from various third parties (persons or other dealers). The Karmas' names appear as the first "purchaser" on the original Certificates of Title. Farache and agents of Defendant/Debtor , with Scott Zankl's cooperation or acquiescence on the heels of the threats of violence made by Farache, manipulated the transactions and documents to cause purchase papers and title documents to reflect "fake," or at least "not ordinary," sales from the Karmas to Defendant/Debtor , or from the Karmas to Excell and then from Excell to Defendant/Debtor . See Exhibit N, to the Complaint.

As such, no sales of any of the Disputed Vehicles could be deemed sales in the ordinary

course.

**WHEREFORE**, Plaintiffs, FVP Opportunity Fund III, LP, FVP Investments LLC, and FVP Servicing, LLC, respectfully demand that this Court grant this Motion, and find and determine that the Freeze Order remains in effect and that any sale or other transfer of a Disputed Vehicles is outside the ordinary course of the Defendant/Debtor's business and requires an order of this Court, and, for such other and further relief as the Court deems to be just and equitable.

Dated July 24, 2022.

David Softness, Esq.
David R. Softness, P.A.
201 S. Biscayne Blvd., Ste 2740
Miami, Florida 33131
Phone: (305) 763-8708
E-mail: dan@dyglaw.com

Jerrell A. Breslin, Esq.
Baron, Breslin & Sarmiento
The DuPont Building, 169 East Flagler Street, #700
Miami, Florida 33131
Phone: (305) 577-4626
E-mail: JB@RichardBaronLaw.com
          EService@RichardBaronLaw.com

Jonathan Noah Schwartz, Esq.
Florida Bar No. 1014596
Jonathan Schwartz Law PLLC
10200 NW 25th Street, Suite 111
Doral, FL 33172
Tel.: (973) 936-2176
Fax: (786) 338-7435
E-mails:     jschwartz@jonschwartzlaw.com
JNSEsquire@gmail.com

David R. Softness, P.A.
201 S Biscayne Blvd Ste 2740
Miami, FL 33131-4332
Tel:  305-341-3111
Email:  david@softnesslaw.com

By:    s/  David R. Softness
       David R. Softness, Esq.
       Florida Bar No. 513229mailto:dan@dyglaw.com

CASE NO. 22-15627-EPK
**ADV. PROC. CASE NO. 22-01218-EPK**
Motion for Emergency Relief
Page 13 of 13

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that; I electronically filed the foregoing document with the Clerk of the Court using CM/ECF and that a true and correct copy of the foregoing was served via CM/ECF electronic transmission upon those parties who are registered with the Court to receive notifications in this matter.

/ s/  David R. Softness
David R. Softness, Esq.