UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION
www.flsb.uscourts.gov

*In re:*

AUTO WHOLESALE OF BOCA, LLC,                  Case No.: 22- 15627-EPK
                                              Chapter 11 Subchapter V

___Debtor-in-Possession.___ /
FVP OPPORTUNITY FUND III, LP, a
Delaware limited partnership; FVP
INVESTMENTS, LLC, a Delaware
limited liability company; and FVP
SERVICING, LLC, a Delaware limited
liability company,

Plaintiffs,

vs.                                           Adversary Case NO.: 22-01218-EPK

AUTO WHOLESALE OF BOCA, LLC,

Defendant.
_____/

## DEBTOR'S RESPONSE MEMORANDUM

Comes Now, Defendant, the Debtor-in-Possession, Auto Wholesale of Boca, LLC ("Debtor" or "AWB"), by and through undersigned counsel and files and serves this instant *Debtor's Response Memorandum* in response to the Plaintiffs' ("FVP") *Supplemental Memorandum In Support Of Plaintiff's Motion To Return Funds To The Trust Account Of Jay Farrow, Esq., Or Other Escrow Deemed Suitable By The Court* [ECF No. 50],(the "*FVP Memo*"), and states –

1. The Plaintiffs, FVP, continue to seek to stretch their already widely cast net to further impair the Debtor and its operations by seeking to impose injunctive relief upon monies of the Debtor which were formerly held in its Debtor's state court counsel's trust account and then transferred to the Debtor-in-Possession account post-petition.

2. The Court initially held a hearing on September 7th, 2022 on FVP's *Motion to Modify Orders to Extend to Additional Property Claimed by the Debtor and the Plaintiffs* [ECF No. 26] (the "*Modification Motion*").

3. The *Modification Motion* sought relief from this Court to extend the injunctive relief already granted by the Court in regards to the sale of automobiles in Debtor's possession, by adding additional automobiles (whether in Debtor's possession or not) and certain proceeds from the sale of a particular vehicle pre-prepetition by Debtor.

4. Of relevance for this *Response* and the *FVP Memo* is that certain 2021 Jeep Gladiator Black, VIN: 1C6HJJAG0ML564806 which was sold on the morning of April 14, 2022 by Debtor, and the net sale proceeds of $129,125.00 (the "Sale Proceeds") which were in the Attorney Trust Account of Jay Farrow, Esq. ("Farrow") (Debtor's state court counsel in multiple lawsuits pending pre-petition, including the litigation between FVP and Debtor).

5. Although the Court extended the injunctive relief as to any of the identified automobiles (to the extent in Debtor's possession), the Court declined to extend the same to the Sale Proceeds, and continued the hearing on the Sale Proceeds so as to allow FVP to argue further.

6. Thereupon, FVP then filed, on September 15th, 2022, the *FVP Memo* arguing that there was an escrow agreement between Debtor and FVP, prepetition, relating to the Sale Proceeds.

7. The *FVP Motion* argues what the law is regarding "what is an escrow agreement", and how to act in regards to the same; yet, does not apply facts to law to show how there was an escrow agreement between the Debtor and FVP as to the Sale Proceeds.

## I.   Argument

8. FVP first cites the Court to the case of *United American bank of Cent. Florida, Inc. vs Seligman*, 599 So.2d 1014 (Fla. 5th DCA 1992) for the general proposition of what the escrow agent's role is in regards to an escrow agreement, and the fact that an escrow agreement has two separate

agreements to it: 1) the first part being the agreement between the parties thereto; and, 2) the agreement between the escrow agent and the parties as an agency agreement (all of which is usually comprised within one document). *See, Seligman, supra* at 1016.

9. There is no disagreement over the law in that regard; but, what FVP is missing are these two (2) components, *i.e.* – a) the agreement between the parties to so escrow the funds; and, b) the agreement with the escrow agent to so hold the funds per the parties' agreement.

10. Quite simply, there was never an agreement between the Parties (FVP and Debtor) to hold the Sale Proceeds in escrow, and Farrow did not agree to hold the Sale Proceeds as the agent for the benefit of both as well.

11. As a matter of fact, the copy of the check payable to the Farrow Firm does not indicate such an agreement, and this check was not even seen by FVP (or its counsel) until it was produced on June 15th, 2022 through discovery to FVP in the state court litigation between FVP and Debtor – so, how could there have been an agreement?

12. In *Seligman*, there were actual signed agreements between a real estate broker ("Broker") and a real estate salesman ("Salesman") regarding some disputed commissions, and as part of their initial agreement they agreed that Salesman's counsel would hold the proceeds at issue in his account pending resolution. In the interim, the Bank sought to recover on a loan to Broker, which was guaranteed by the Salesman, and an escrow agreement was arranged whereby the Salesman's counsel would hold the commissions until resolved and then would pay out therefrom a certain amount owed to the Bank by Salesman under the guaranty, and another sum for the Broker to the Bank. *See id* at 1016-17.

13. Broker eventually filed bankruptcy and the trustee therein arranged to receive the Broker's commissions, without the Bank's agreement or approval, thereby violating the escrow agreement, which led to a suit by the Bank against the Salesman and the escrow agent/attorney. *See, id.*

14. Unlike *Seligman*, the instant Debtor has no such agreement at issue here, as there is no implied, oral or written escrow agreement between the Debtor and FVP, nor one between Debtor's state court counsel (Farrow) and FVP and Debtor to hold said Sale Proceeds in escrow. As both requirements (agreement between parties, and agreement between purported escrow agent and parties) are not met, the demand to impute an escrow fails as a matter of law.

15. Every case and rule cited by FVP mandates first that there be such an agreement before an escrow applies; and, under the facts here, there is simply no escrow agreement.

16. FVP cites to *McGee vs Cook*, 2011 WL 13143441 (M.D. Fla. March 30, 2011) to bolster its argument. Yet, in *McGhee*, the court found that there was never an "express escrow agreement" and could not imply one where

> "Plaintiffs argue that the escrow agent improperly diverted the escrowed funds. Specifically, they contend that certain funds were disbursed to entities that did not have a recorded lien on the property, rather than to Colonial Bank or the developer. But **the complaint is devoid of any allegation regarding the principal agreement between Plaintiffs and the developer as to how the escrowed funds would be disbursed**. Nor is there any allegation that the funds were disbursed in a manner inconsistent with that agreement. Plaintiffs therefore failed to state a claim for breach of the escrow agreements."

Id at *5.

17. In other words there has to be an "agreement" between the parties to establish an "escrow agreement" and it has tro say how to disburse the funds. *See, generally, id.*

18. In the matter at bar, there was never an agreement, let alone could one be implied, as FVP first learned of the monies deposited with AWB's state court

counsel during the state court discovery process, months after the remittance to AWB's counsel, in the state court proceeding through a disclosure during the discovery process therein several months following the sale of the automobile for which the proceeds derived therefrom.

19. Another case cited by FVP is the *Florida Bar vs Marrero*, 157 So.3d 1020 (Fla. 2015) decision regarding an attorney that committed a multitude of ethical violations as an attorney, who, among other misdeeds, willfully violated a written escrow agreement. Again, that is not the same as the matter at bar.

20. Finally, although the law on what is and is not property of the estate is well known, the fact is that Debtor claims ownership in the Sale Proceeds, has possession of them and FVP never sought to compel turnover nor asserted an interest in the Sale Proceeds until the instant subject *Modification Motion* was filed.

21. Further, assuming for argument sake that the Sales Proceeds were held in an escrow account, they would still be the property of the Debtor and returnable to Debtor as a matter of law. *See, e.g., In re Scanlon,* 239 F.3d 1195, 1197-98 (11th Cir. 2001) ("[u]nder Florida law, legal title to property placed in an escrow account remains with the grantor until the occurrence of the condition specified"); *In re Hallmark Builders, Inc.*, 205 B.R. 971, 973-974 (Bankr. M.D. Fla. 1996) (also noting that "legal title to property placed in escrow remains with the grantor until the occurrence of the condition specified in the escrow agreement" and, in that case, when the condition was not met, the grantor was entitled to their return). *See also, Janson v. Cozen & O'Connor*, 676 A.2d 242, 247 (Pa. Super. Ct. 1996) ("to be legally effective the escrow agreement must be a valid contract between all of the parties and must set forth the nature of the escrow and the conditions of delivery. In the absence of such contract, the grantor... may recall the escrow and the agreement is unenforceable") (emphasis supplied).

WHEREFORE, Debtor requests the Court deny all relief to the Plaintiffs (FVP/HI Bar), and for such other and further relief which is equitable and just.

Respectfully submitted on September 23rd, 2022.

JAMES B. MILLER, P.A.
**Counsel for Debtor-in-Possession**
19 West Flagler St., Suite 416
 Miami, Florida 33130
T. 305.374.0200
 F.  305.374.0250
 EMAIL: BKCMIAMI@GMAIL.COM

_____/s/_____
JAMES B. MILLER, ESQ.
Fla. Bar no. 9164

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of this pleading, with all attachments, was served *via* CM/ECF simultaneously with the filing of the same with the Court this even date (as identified below) upon all parties-in-interest of record in said Adversary Proceeding and who are registered with the Court for such service.

_____/s/_____
JAMES B. MILLER, ESQ.
Fla. Bar No. 9164

CM/ECF Service List:

-Jerrell A Breslin on behalf of Plaintiff FVP Investments, LLC
jb@richardbaronlaw.com

-Jerrell A Breslin on behalf of Plaintiff FVP Opportunity Fund III, LP
jb@richardbaronlaw.com

-Jerrell A Breslin on behalf of Plaintiff FVP Servicing, LLC
jb@richardbaronlaw.com

-Patrick R Dorsey on behalf of Creditor Wing Lake Capital Partners f/k/a Franklin Capital Group, LLC
pdorsey@slp.law, dwoodall@slp.law;pmouton@slp.law;pdorsey@ecf.courtdrive.com

-Linda Marie Leali on behalf of Trustee Linda Leali
trustee@lealilaw.com, F005@ecfcbis.com;lkennedy@lealilaw.com

-James B Miller on behalf of Defendant Auto Wholesale of Boca, LLC
bkcmiami@gmail.com

-Bradley S Shraiberg on behalf of Creditor Franklin Capital Funding, LLC
bss@slp.law, dwoodall@slp.law;dwoodall@ecf.courtdrive.com;pmouton@slp.law

-David R. Softness on behalf of Plaintiff FVP Investments, LLC
david@softnesslaw.com

-David R. Softness on behalf of Plaintiff FVP Opportunity Fund III, LP
david@softnesslaw.com

-David R. Softness on behalf of Plaintiff FVP Servicing, LLC
david@softnesslaw.com

-Harry Winderman on behalf of Interested Party Karma of Broward, Inc.
harry4334@hotmail.com, lynoramae@gmail.com,lm@whcfla.com,filings@whcfla.com

-Harry Winderman on behalf of Interested Party Karma of Palm Beach, Inc.
harry4334@hotmail.com, lynoramae@gmail.com,lm@whcfla.com,filings@whcfla.com

-Mark J Wolfson, Esq on behalf of Plaintiff Hi Bar Capital, LLC
mwolfson@foley.com, crowell@foley.com