**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**PALM BEACH DIVISION**
www.flsb.uscourts.gov

In Re:

AUTO WHOLESALE OF BOCA, LLC,                    Case No.: 22-15627-EPK

     Debtor.

_____/

FVP OPPORTUNITY FUND III, LP; FVP
INVESTMENTS, LLC; and FVP SERVICING,
LLC,

     Adversary Plaintiffs,

vs.                                             Adversary Case No.: 22-01218-EPK

AUTO WHOLESALE OF BOCA, LLC; HI
BAR CAPITAL, LLC; WING LAKE
PARTNERS f/k/a FRANKLIN CAPITAL
GROUP, LLC; KARMA OF PALM BEACH,
INC.; KARMA OF BROWARD, INC.;
EXCELL AUTO SPORT AND SERVICE, INC.;
CHAPTER 7 TRUSTEE FOR THE ESTATE OF
EXCELL AUTO GROUP, INC., and EDWARD
BROWN,

     Adversary Defendants, Adversary
     Plaintiffs, Cross Plaintiffs, and
     Cross Defendants.

_____/

KARMA OF PALM BEACH, INC.; a Florida
Corporation; KARMA OF BROWARD, INC., a
Florida Corporation,

     Adversary Plaintiffs,

 vs.

AUTO WHOLESALE OF BOCA, LLC; FVP
OPPORTUNITY FUND III, LP; FVP
INVESTMENTS, LLC; FVP SERVICING,
LLC; WING LAKE PARTNERS f/k/a

CASE NO. 22-15627-EPK
ADV. PROC. CASE NO.: 22-01218-EPK
FVP Answer and Affirmative Defenses Hi Bar

FRANKLIN CAPITAL GROUP, LLC; KARMA OF PALM BEACH, INC.; KARMA OF BROWARD, INC.; EXCELL AUTO SPORT AND SERVICE, INC; CHAPTER 7 TRUSTEE FOR THE ESTATE OF EXCELL AUTO GROUP, INC., and EDWARD BROWN

    Adversary Defendants, Adversary Plaintiffs, Cross Plaintiffs, and Cross Defendants.

_____/

WING LAKE PARTNERS f/k/a FRANKLIN CAPITAL GROUP, LLC, a Delaware limited liability company,

    Adversary Plaintiff,

 vs.

AUTO WHOLESALE OF BOCA, LLC; FVP OPPORTUNITY FUND III, LP;   FVP INVESTMENTS, LLC; FVP SERVICING, LLC; HI BAR CAPITAL, LLC; KARMA OF PALM BEACH, INC.; KARMA OF BROWARD, INC.; EXCELL AUTO SPORT AND SERVICE, INC.; CHAPTER 7 TRUSTEE FOR THE ESTATE OF EXCELL AUTO GROUP, INC., and EDWARD BROWN EDWARD BROWN,

    Adversary Defendants, Adversary Plaintiffs, Cross Plaintiffs, and Cross Defendants.

_____/

HI BAR CAPITAL, LLC,  a New York limited liability company,

    Adversary Plaintiff and Cross Defendant,

 vs.

FVP OPPORTUNITY FUND III, LP;   FVP INVESTMENTS, LLC; FVP SERVICING, LLC; WING LAKE PARTNERS f/k/a FRANKLIN CAPITAL GROUP, LLC; KARMA OF PALM BEACH, INC.; KARMA OF BROWARD, INC.;

Adversary Defendants and Cross
Plaintiffs,

And

AUTO WHOLESALE OF BOCA, LLC;
EXCELL AUTO SPORT AND SERVICE, INC;
CHAPTER 7 TRUSTEE FOR THE ESTATE OF
EXCELL AUTO GROUP, INC., and EDWARD
BROWN,

Adversary Defendants.

_____/

## THE FVP PARTIES ANSWER AND AFFIRMATIVE DEFENSES TO
## HI BAR CROSS COMPLAINT
## AND
## DEMAND FOR TRIAL BY JURY

COMES NOW FVP Opportunity Fund III, LP, a Delaware limited partnership (the "FVP Fund"), FVP Investments LLC, a Delaware limited liability company ("FVP Investments"), FVP Servicing, LLC, a Delaware limited liability company ("FVP Servicing"), (collectively "FVP") and hereby file their Answer and Affirmative Defenses to the Cross Complaint of Hi Bar Capital, LLC, a New York Limited Liability Company, ("Hi Bar") and demand a trial by jury on all matters so indicated.

FVP denies each and every allegation not specifically admitted herein and demands strict proof thereof and demands trial by jury as to all denials and affirmative defenses as follows:

As to paragraph:

Preliminary Statement – DENIED as incomplete and misleading.

1. Admitted.
2. Admitted.
3. Admitted.
4. Admitted.
5. Admitted.
6. Denied.

The Parties

CASE NO. 22-15627-EPK
ADV. PROC. CASE NO.: 22-01218-EPK
FVP Answer and Affirmative Defenses Hi Bar

7. Admitted.

8. Admitted.

9. Admitted.

10. Admitted.

11. Admitted.

12. Admitted.

13. Admitted.

14. Admitted.

15. Admitted.

16. Admitted.

17. Admitted.

18. Admitted.

Background Facts

19. Denied.

20. Denied as incomplete and misleading.

21. Denied as incomplete and misleading.

22. Denied as incomplete and misleading.

23. Denied as incomplete and misleading.

24. Denied as incomplete and misleading.

25. Denied as incomplete and misleading.

26. Denied as incomplete and misleading.

27. Denied as incomplete and misleading.

28. Denied as incomplete and misleading.

29. Denied as incomplete and misleading.

30. Denied as incomplete and misleading.

31. Denied as incomplete and misleading.

32. Denied as incomplete and misleading.

33. Denied.

34. FVP is without knowledge and is therefore Denied.

35. Denied.

36. Denied as incomplete and misleading.

37. Denied as incomplete and misleading.

38. Admitted.

39. Admitted in general but incomplete.

40. Admitted in general but incomplete.

41. Admitted in general but incomplete.

42. Admitted in general but incomplete.

43. Admitted in general but incomplete.

44. Denied.

45. Admitted in general but incomplete.

46. Admitted.

47. Admitted.

48. Admitted.

49. Denied.

50. Admitted.

51. Admitted in general but incomplete.

52. Admitted in general but incomplete.

53. Admitted.

54. Admitted.

The Disputed Vehicles

55. Admitted.

56. Admitted.

57. Admitted.

58. Admitted.

59. Admitted.

60. Admitted.

61. Admitted.

62. Admitted.

63. Denied.

64. Denied.

CASE NO. 22-15627-EPK
ADV. PROC. CASE NO.: 22-01218-EPK
FVP Answer and Affirmative Defenses Hi Bar

65. Denied as to any Hi Bar interests.

66. Admitted.

67. Admitted.

68. Admitted.

69. Admitted.

70. Denied.

71. Denied.

72. Denied.

73. Denied.

Part I Count One

74. Admitted or Denied as aforementioned.

75. Admitted as to the relief sought as to ownership.

76. Admitted as to the relief sought as to ownership.

77. Admitted as to the relief sought as to ownership.

78. FVP is without knowledge and is therefore Denied.

79. Admitted.

80. FVP is without knowledge and is therefore Denied.

81. Admitted.

82. Admitted.

83. Admitted.

84. Admitted.

Part I Count Two

85. Admitted or Denied as aforementioned.

86. Denied.

87. Denied.

88. Admitted as to the right to seek the relief, but Denied as to the relief.

89. Denied.

90. Admitted.

91. Denied.

92. Denied.

CASE NO. 22-15627-EPK
ADV. PROC. CASE NO.: 22-01218-EPK
FVP Answer and Affirmative Defenses Hi Bar

93. Admitted.

94. Admitted.

95. Admitted.

96. Admitted.

97. Admitted in general but incomplete.

98. Admitted in general but incomplete.

99. Admitted in general but incomplete.

100.     Admitted in general but incomplete.

101.     Denied.

Part II – Count Three

102.     Admitted or Denied as aforementioned.

103.     Denied.

104.     Denied.

105.     Denied.

106.     Admitted.

107.     Denied.

108.     FVP is without knowledge and is therefore Denied.

Part II – Count Four

109.     Admitted or Denied as aforementioned.

110.     Denied.

111.     Denied.

112.     Neither admitted nor denied.

113.     Admitted.

114.     Admitted.

115.     Admitted.

116.     Admitted.

117.     Admitted.

118.     Denied.

*FVP Demands Trial By Jury As To All Denials Material To All Claims Raised By FVP That*

*Incorporates a Demand For Trial By Jury*

**AFFIRMATIVE DEFENSES**

ADOPTION AND INCORPORATION BY REFERENCE OF
ALLEGATIONS AND EXHIBITS IN JOINT ADVERSARY COMPLAINT

The FVP Plaintiffs, pursuant to Fed. R. Civ. P. 10(c) hereby adopt and incorporate by reference all allegations and exhibits filed of record in the FVP Plaintiffs Joint Adversary Complaint [ECF. 120] as if fully restated herein in support of this pleading. The FVP Plaintiffs further state as follows:

ALLEGATIONS COMMON TO ALL AFFIRMATIVE DEFENSES

### <u>FRAUD</u>

FVP provides original loans by first engaging in a thorough underwriting review of the business applicant to ensure that the business qualifies to receive the loan. If a business applicant meets FVP's underwriting requirements, FVP will typically agree to loan the business customer a principal amount. Of critical importance to FVP in its underwriting of loans is to ensure that its business customer is in a position to repay its loan and that there is adequate security available to FVP to safeguard repayment. By contrast, a merchant cash advance is an agreement in which merchants can receive cash much more quickly with less underwriting than traditional loans offered by conventional financial institutions. The advances are very expensive and require a steady flow of receivables from which the advances are repaid.

Hi Bar is a merchant cash advance company ("MCA") and the transaction in this case, providing money to the Karma Entities and Excell was a merchant cash advance. Under a merchant cash advance agreement, a MCA agrees to purchase a business customer's receivables at a discounted cash purchase price. For example, a funding company could purchase $25,000 of a business customers' receivables at the discounted cash purchase price of $20,000. The business customer receives the discounted cash purchase price, and the funding company debits the business customer's bank account for a certain percentage of the business customer's receivables either daily or weekly until the purchase price is repaid.

Such merchant cash advance funding companies currently are under intense scrutiny for what

legislators and regulators have deemed heavy-handed lending and unlawful collection tactics. Merchant cash advance funding companies advance money at exorbitant interest rates and often require borrowers to execute a confession of judgment or consent to other legal process as a condition to obtaining the funds, opening the door for rampant abuse of power. Funding companies have been known to forge documents, lie about how much is owed, and fabricate defaults to convince a court, typically in New York, to obtain a judgment. *See, e.g.,* the Bloomberg article titled, "I hereby confess judgment" and the Yahoo! Finance article titled, "'We're coming after you': Inside the merchant cash advance industry." A borrower never even has a chance to dispute whether it committed a default or the amount outstanding before the merchant cash advance funding company seizes all of its assets. Under the facts and circumstances of this case, the merchant cash advances were in fact a criminally usurious loan, which is unenforceable and making any security interest in the Disputed Vehicles unenforceable

The Initiation of the Hi Bar Fraud

Non-party, Spin Capital, LLC ("Spin") is a New York limited liability company. Hi Bar is an affiliate of Spin with Josh Lubin, the Principal of Spin, negotiating for and speaking for Hi Bar for all purposes. Hi Bar and Spin are both MCA's, which on information and belief, are controlled by Josh Lubin. In or around September of 2021, Scott Zankl on behalf of Excell entered into communications with Wing Lake to borrow money to pay off MCA loans that Excell and the Karma Entities with Spin and two other MCA's. Wing Lake advised Zankl, that it would fund a loan to pay off the two other MCA loans only if the Spin loan was satisfied. In response, Zankl had extensive conversations with Josh Lubin, the Principal of Spin about the fact that he would not be able to borrow the money from Wing Lake without Spin's MCA loan being paid off. Lubin advised Zankl that he would shift the debt owed to Spin to another company that he controlled named Hi Bar. At all times, all of Scott Zankl's communications with both Spin and Hi Bar were with Josh Lubin.

In October 2021, Zankl and Lubin agreed that Hi Bar would payoff the Spin debt and that Zankl and his companies, Excell and the Karma Entities, would then only have a debt to Hi Bar and it would appear to Wing Lake that the Spin debt was satisfied. On October 27, 2022, the Zankl's on behalf of Excell and the Karma Entities, entered into the money advance transaction documents with Hi Bar. Critically, the Hi Bar documents materially increased the debt owed by Zankl, Excell

and the Karma Entities for no reason as there was never a default of the Spin debt. Further no money was paid by Hi Bar to Spin, and no money was paid to Excell and the Karma Entities for the increased debt. No consideration was supplied by Hi Bar for its imaginary advance to Excell and the Karma Entities. In response to this paperwork, Lubin and Spin notified Wing Lake that Spin no longer had any sums owed by Excell and the Karma Entities but intentionally and fraudulently withheld the fact that Spin had merely rebranded the debt in the name of Hi Bar.

Based on this representation, Wing Lake and Excell and the Karma Entities entered into the Wing Lake transaction. Under the Assignment Agreement, Spin acknowledged that Wing Lake is in the business of making secured commercial loans and agreed, inter alia: (a) not to purchase any portion of accounts, receipts or other obligations from Excell or the Karma Entities (together, the "Borrowers"), (b) not to take extend credit to or take a security interest in assets of the Borrowers, and (c) in the event Spin received payment from the Borrowers, the payment would be held in trust for the benefit to Wing Lake. As is seen in the Spin transaction documents with Wing Lake, which were signed by Spin just days after the Hi Bar transaction, Spin and Hi Bar colluded and conspired to defraud Wing Lake as the Hi Bar debt, which was *de facto* the Spin debt, was hidden from Wing Lake. As such, Wing Lake was intentionally defrauded by both Spin and Hi Bar as both companies, as well as Lubin, materially mislead Wing Lake into entering into the loan agreements in the first instance by materially misrepresenting that the Spin debt was satisfied, when it was simply relabeled.

The Hi Bar Fraud Continues

Shortly after the Wing Lake transaction, Scott Zankl engaged FVP in communications regarding a loan transaction. To that end, through November and December 2021, Zankl had detailed conversations with FVP about a $7.5 million dollar loan facility which would be collateralized by the inventory of the Karma Entities but would specifically not include any collateral or security interests in Excell. Notwithstanding the fact that Hi Bar was ostensibly permitted to file a UCC financing statement on October 27, 2021, Hi Bar did not do so. The decision of Hi Bar not to file a financing statement was intentional to maintain the fraud against Wing Lake hidden as long as possible, and to commit further fraud against FVP.

At that same time, Zankl had conversations with Lubin regarding the FVP loan. Lubin specifically requested that Zankl let him know when the FVP loan was going be funded and told Zankl to

forward all of the FVP loan documents to him for his review. It was Lubin's intent to have Zankl secure the FVP loan without FVP knowing about the Hi Bar loan so Zankl would pay a substantial part of the proceeds of the FVP loan to Hi Bar to satisfy its illegal usurious loan. Just before December 15, 2021, Zankl advised Lubin that he was closing the loan with FVP. In response to this information, and in anticipation of the funding, Lubin caused a UCC Financing Statement to be filed on Excell and the Karma Entities on December 15, 2021. Lubin filed the UCC on that date because he was led to believe that FVP was funding the Karma's loan on or about that date. When the loan did not close, Lubin accused Zankl of misleading him and pressured Zankl to email him the actual loan documents provided by FVP to confirm his representations. On December 17, 2022 Zankl emailed Lubin all of the FVP / Excell / Karma loan documents. After Lubin received the FVP loan documents, he was fully aware of the fact that the FVP loan proceeds could not be used to repay any other lenders including Hi Bar. On December 19, 2021, Zankl told Lubin that FVP became aware of the  December 15, 2021 filing of the UCC Financing Statement and advised Zankl that the funding was off and that therefore Zankl could not pay Hi Bar.

In response, Lubin demanded that Zankl sign a "Settlement Agreement" which astronomically increased the amounts due Hi Bar. The December 19, 2022 "Settlement Agreement" falsely and fraudulently described a "default" that never occurred, and reiterated that Hi Bar had a "security interest" in the Karma Entities collateral as described in the Hi Bar UCC Financing Statement filed just four days prior on December 15, 2021. Notwithstanding the purported confirmation that Hi Bar was entitled to maintain the just filed UCC filing, Hi Bar did the exact opposite of what the documents purported to grant, and on December 19, 2021, Hi Bar *instead filed a termination* of the four day old UCC Financing Statement which terminated the Hi Bar financing statement as to Excell, Zankl and the Karma Entities.

This termination of the four day old UCC Financing Statement was specifically and intentionally made as a direct, false and fraudulent representation to FVP that Hi Bar had no secured interests in the Karma Entities collateral. The termination states:

"Effectiveness of the Financing Statement identified above is terminated with respect to the security interests of the Secured Party authorizing this Termination Statement".

This representation file of record in Exhibit CC was intentionally made to FVP and was for the sole purpose of notifying FVP that Hi Bar had no security interests to protect. This representation

was false when made and intentionally false. FVP justifiably relied upon the misrepresentation to their detriment. To double down on the fraud, Hi Bar advised Frank O'Donnell, an agent intermediary between FVP and Zankl, that the Hi Bar UCC Financing Statement of December 15, 2021 was a mistake and was "erroneously filed". This representation was specifically made to FVP for the sole purpose of notifying FVP that Hi Bar had no security interests to protect and was false when made and intentionally false. FVP justifiably relied upon the misrepresentation to their detriment.

The sole purpose of the termination communicated to FVP was to convince FVP that Hi Bar had no protectable interest in the collateral of the Karma Entities so that FVP would rest assured that Hi Bar was not a threat to their priority of security and proceed to fund a loan to the Karma Entities with Lubin waiting in the wings to pounce with a second UCC Financing Statement which would be filed minutes before an FVP filing.

The Fraud Worked

Upon being supplied the UCC termination notice, FVP reinstituted the loan process with Zankl and the Karma Entities. The negotiations carried through to mid January 2022 with Zankl advising Lubin every step of the way on the progress of the FVP funding so Lubin would be ready to act. On January 21, 2022 Zankl again emailed Lubin the FVP loan documents and promised Lubin that as soon as he got the loan from FVP, which would be Monday January 24, 2022, that Zankl would pay Lubin from the FVP proceeds. Again, after Lubin received the FVP loan documents, he was fully aware of the fact that the FVP loan proceeds could not be used to repay any other lenders including Hi Bar. On Monday January 24, 2022, Lubin again demanded that Zankl email him all of the actual loan closing agreements. In response, Zankl sent Lubin four (4) separate emails which included all the FVP loan documents. Later that day when no closing occurred Zankl texted Lubin that he would be closing the next day January 25, 2022. The text again confirmed that Lubin would be receiving the FVP loan proceeds which he was fully aware he could not receive under the terms of the FVP transaction documents.

On January 25, 2022, Zankl advised Lubin that he would be closing he next day, January 26, 2022, with certainty. In response, and to finalize the fraud, at Lubin's direction Hi Bar refiled its UCC Financing Statement on January 25, 2022 at **10:55 pm** knowing that: the FVP funding was to close the next day on January 26, 2022; The FVP loan could not be used to pay Hi Bar; That

Zankl fully intended to pay Hi Bar with the proceeds as stated in the text of January 24. 2022; and that but for the material misrepresentation of the December 19, 2021 UCC Termination, Exhibit CC, that there never would have been an FVP loan in the first instance. At all times Josh Lubin acted for both Spin and Hi Bar in an identical fashion and all of Zankl's communications with both Spin and Hi Bar were with Josh Lubin. In fact, on January 3, 2022, Josh Lubin told Scott Zankl to wire the funds due Hi Bar to Spin.

It was always Josh Lubin who personally pressured and threatened Scott Zankl and the Karma Entities with a (Hi Bar) lawsuit ("I have to file tomorrow") if payments were not made to Lubin's satisfaction. It was Josh Lubin who personally directed Scott Zankl where to send every payment due Hi Bar after the Hi Bar documents were executed. For example, on February 7, 8 and 9, 2022, Lubin directed Zankl to wire to an attorneys account. On those dates a total of $1.3 million was wired to a Lubin / Hi Bar attorney with funds, on information and belief, that came from the FVP $7.5 million dollar loan the prior week.

The actions of Hi Bar comprise fraudulent conduct with the intended and expressed target of the fraud being FVP. The UCC Financing Statement filed on December 19, 2021 was an "instrument" as defined in Fla. Stat. § 817.535 and was filed with the intent to defraud. The UCC Financing Statement filed on January 25, 2022 at 10:55 pm was an "instrument" as defined in Fla. Stat. § 817.535 and was filed with the intent to defraud. The UCC Financing Statement filed on January 25, 2022 at 10:55 pm contained a material false statement as it represented that Hi Bar had a legitimate lien in the property defined therein when Hi Bar had no legitimate enforceable interest to protect; as Hi Bar paid no consideration for the alleged interest, was a participant in a fraudulent transfer as defined in Fla. Stat. § 726.105; was a participant in an illegal and usurious shake down of Zankl and the Karma Entities, and was surreptitiously filed with the intent to defraud.

### ILLEGALITY, UNCONSCIONABILITY AND PUBLIC POLICY

MCA's have come under intense scrutiny for their unconscionable and unlawful conduct. See *Attorney General of the State of New York, v. Various MCA Companies*, Index No. 451368/ 2020 Supreme Court of the State of New York, County of New York (alleging, among other things, that Richmond, Giardina, and others have preyed upon thousands of small businesses throughout the United States by offering funding under "merchant cash advances" that "are in fact fraudulent, usurious loans with interest rates in the triple and even quadruple digits, far above the maximum

rate permissible for a loan under New York law - Criminal Usury, Fraud in the Form of Unconscionability – pending); *Fleetwood v RAM Capital Funding, et al.,* Unites States District Court for the Southern District of New York, Case No. 20-cv-5120(LJL), See June 6, 2022, Opinion and Order; See also *Federal Trade Commission v. RCG Advances*, LLC, No. 20-cv-4432 (S.D.N.Y.) same. Hi Bar is the subject of several lawsuits for the same illegal and inequitable conduct outlined in this lawsuit.

On August 31, 2021, Non Party Spin entered into a "Revenue Purchase Agreement" with Excell. (the "First Agreement"). Under the First Agreement, which was self-defined as a sale of receivables, Excell was indebted to Spin in the amount of $2,998,000 for receipt of the sum of $2,000,000. The First Agreement stated: " Excell is selling a portion of future revenue to Spin at a discount, and is not borrowing money from Spin, therefore there is no interest rate or payment schedule and no time period during which the Purchased Amount must be collected by Spin." The First Agreement then goes on to state that Excell must pay $150,000.00 weekly, or, 20% of its receivables. Excell had no receivables. On October 18, 2021, Spin issued to Zankl a balance notice that stated that Excell owed Spin $2,264,312.50. Neither Zankl nor Excell were in default, but Zankl was required to eliminate the Spin debt to comply with the Wing Lake demands for its financing.

Days later, Lubin agreed to "transfer" the Spin debt to Hi Bar which he described to Zankl as a "no net refi" with Hi Bar, a company he controlled, which, he represented, would simply exchange the creditors names with no change in terms. This was an intentionally false statement. Lubin emailed the Hi Bar paperwork to Zankl which he viewed on his phone, and trusting Lubin's representations about what was in the paperwork, DocuSigned the documents on his phone on October 27, 2021. After the Zankl was able to intelligently review the documents, he learned that Hi Bar failed account for the approximately $750,000.00 already paid to Spin and discovered that Excell and now the Karma Entities owed Hi Bar $3,177,880. Therefore, Hi Bar increased the debt a little less than $1,000.000.00 from just a week prior with the stroke of a pen. This with no additional funds paid to Excell or Karma Entities. with weekly payments of $150,000.00. Over the next two months Zankl and Excell paid Hi Bar approximately $500,000.00 and in mid-December had a balance of $2,677,880.00.

Therefore, over the course of three and one half months, Excell became indebted in the amount

of $2,998,000 (and received $2,000,000.00) repaid $1,250,000.00 and was told it owed a balance of $2,677,880.00. Incredibly, Zankl and Excell (and now the Karma Entities which were added as obligors) were told they were in default and would be sued unless they signed a "Settlement Agreement".

Fearing what a lawsuit would do to his business, Scott Zankl executed a "Settlement Agreement" in mid-December 2021 which increased the balance owed to Hi Bar to $4,016,820. An increase of the amount owed by $1.3 million. So, in approximately 100 days, Excell received $2 million, repaid $1.2 million and owed $4 million.

It gets worse. By mid-January Excell paid Hi Bar an additional $1.3 million making the total payment by Excell $3,083,687.50 on the original obligation of $2,998,000 incurred on August 31, 2021. On January 28, 2022, Hi Bar sued Zankl, Excell and the Karma Entities for what it deemed it was owed under the "merchant advance", the sum of $3,616,820, plus attorneys' fees in the amount of $625,000.00 or 33% of the Outstanding Balance. That case remains pending. So, in four months, Excell repaid over 100% of the incurred debt, (which was 33% more that the money received) and still owed $1.6 million more than the original debt. Incredibly, Hi Bar never paid a penny to Excell, or the Karma Entities at any time to receive this patently illegal windfall.

On information and belief, Hi Bar never paid Spin any money to "pay off" the Spin debt and that the "Balance Transfer" transaction was simply a fiction invented by Lubin and his associates to mercilessly rip off Zankl, Excell and the Karma Entities. All of Scott Zankl's communications regarding the money owed to Hi Bar were with Josh Lubin personally. It was Lubin that constantly pressured Zankl for the Hi Bar payments.

The acts of Spin, Lubin and Hi Bar are outrageous, violate Florida Public Policy, are unconscionable and unquestionably illegal in Florida. To the extent that this Court is required to view the acts of Hi Bar through the prism of New York law, it is equally illegal as is outlined in the lawsuit filed by the Attorney General of New York cited above.

Spin and Hi Bar may call it an "advance" or "purchase of receivables", but it was and is, an obvious usurious loan, plain and simple. Hi Bar and Spin attempted to mask their loan agreements as receivables purchases but even the most cursory examination proves what anyone looking at this already knows. Spin and Hi Bar never bothered to analyze the Excell receivables because the

fact that Excell had no receivables would have made no difference.

These were criminally usurious loan contracts under both New York law and Florida law created by very smart lawyers for very unethical lenders. As to the "Balance Transfer" to Hi Bar, the loan charges increased by 50.3 %. When Hi Bar and Zankl, Excell and the Karma Entities executed a "Settlement Agreement" the loan charges increased another 50%. Without a penny being paid to Excell.

As the Hi Bar UCC Financing Statement filed on January 25, 2022 at 10:55 pm was based on unconscionable and illegal contracts, the FVP Plaintiffs demand that the Karma Entities obligation to Hi Bar be avoided in its entirely or, alternatively, the subordination of the UCC Financing Statement filed on January 25, 2022 at 10:55 pm Exhibit N to the FVP UCC Financing Statement filed on January 26, 2022.

### FRAUDULENT TRANSFER

The FVP Plaintiffs are a creditor as defined in Fla. Stat. § 726.102 as they hold claims against the Karma Entities under its loan agreements. The Karma Entities are a debtor as defined in Fla. Stat. § 726.102 to both the FVP Plaintiff's and Hi Bar. On or about October 17, 2021, Scott Zankl for Excell and the Karma Entities, entered into a financial transaction with Hi Bar. The result of that transaction was that Excell, and the Karma Entities, became obligated to Hi Bar as Debtors resulting in Hi Bar having purported rights under the transaction documents, to which the Plaintiff's object, to file a UCC Financing Statement against the Karma Entities inventory.

The obligation to Hi Bar was incurred by Scott Zankl for Excell and the Karma Entities with the actual intent of hindering, delaying, or defrauding creditors including the FVP Plaintiffs and was made with: a) With actual intent to hinder, delay, or defraud any creditor of the debtor; or (b) Without receiving a reasonably equivalent value in exchange for the transfer or obligation. At the time of the obligation, Scott Zankl for Excell and the Karma Entities: was engaged in, or was about to engage in, a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or, intended to incur, or believed or reasonably should have believed that he or she would incur, debts beyond his or her ability to pay as they became due.

At the time the obligation was incurred, Scott Zankl for Excell and the Karma Entities, concealed

the obligation; prior to the obligation the Excell and the Karma Entities were sued or threatened with suit; the obligation was incurred just days before another substantial debt was incurred; Excell and the Karma Entities received no equivalent value for the obligation and in fact received additional debt instead of consideration; no proceeds of the Hi Bar "financing" were funded to, or for, the benefit of the Karma entities; and Excell and the Karma Entities were insolvent at the time the obligation was incurred, or were rendered insolvent by such obligation, or, became insolvent shortly after the obligation was incurred.

The FVP Plaintiffs have a claim in the amount of $7.5 million dollars against the Karma Entities which the Hi Bar obligation, if valid, and not avoided, would eliminate the FVP Plaintiffs ability to satisfy their claim. The FVP Plaintiffs demand the avoidance of the Hi Bar obligation to the extent necessary to satisfy their claims to their security interests in the Karma Entities inventory pursuant to Fla. Stat. § 726.108(1)(a).

**Affirmative Defenses:**

1.    **First Affirmative Defense. Fraud**. FVP would reallege the allegations common to all affirmative defenses and state that Hi Bar engaged in fraud and is therefore precluded from asserting a position superior to FVP in the FVP collateral.

2.    **Second Affirmative Defense. Fraud by Omission.** FVP would reallege the allegations common to all affirmative defenses and state that Hi Bar engaged in fraud by omission and is therefore precluded from asserting a position superior to FVP in the FVP collateral.

3.    **Third Affirmative Defense. Unclean Hands.** FVP would reallege the allegations common to all affirmative defenses and state that Hi Bar has unclean hands and is therefore precluded from asserting a position superior to FVP in the FVP collateral.

4.    **Fourth Affirmative Defense. Estoppel.** FVP would reallege the allegations common to all affirmative defenses and state that Hi Bar made a material representation to FVP when it terminated its UCC in December of 2021 such that: "(1) a representation as to a material fact that is contrary to a later-asserted position, (2) reliance on that representation, and (3) a change in position detrimental to the party claiming estoppel, caused by the representation and reliance thereon." *Justice Admin. Comm'n v. Berry*, 5 So.3d 696, 699 (Fla. 3d DCA 2009). As such, Hi Bar is estopped from asserting a position superior to FVP in the FVP collateral.

5.    **Fifth Affirmative Defense. Illegality.** FVP would reallege the allegations common to all affirmative defenses and state that Hi Bar engaged in illegality and Hi Bar is therefore precluded from asserting a position superior to FVP in the FVP collateral.

6.    **Sixth Affirmative Defense. Lack of Consideration.** FVP would reallege the allegations common to all affirmative defenses and state that Hi Bar gave no consideration to any entity for the asserted right to seek or foreclose on any collateral claimed by FVP and therefore Hi Bar is therefore precluded from asserting a position superior to FVP in the FVP collateral.

7.    **Seventh Affirmative Defense. Unconscionability.** FVP would reallege the allegations common to all affirmative defenses and state that Hi Bar's actions were unconscionable and Hi Bar is therefore precluded from asserting a position superior to FVP in the FVP collateral.

8.    **Eighth Affirmative Defense. Contrary to Public Policy.** FVP would reallege the allegations common to all affirmative defenses and state that Hi Bar's actions were unconscionable and against public policy and Hi Bar is therefore precluded from asserting a position superior to FVP in the FVP collateral.

9.    **Ninth Affirmative Defense. Assumption of Risk.** FVP would reallege the allegations common to all affirmative defenses and state that as a purported MCA, a true receivables purchase that does not qualify as a loan and therefore escapes usury laws, requires a risk, here it is asserted that Hi Bar took no risk due to the security agreements and personal guarantees that it required, however, to the extent that Hi Bar did take a risk, it assumed the risk and Hi Bar is therefore precluded from asserting a position superior to FVP in the FVP collateral.

10.    **Tenth Affirmative Defense. Waiver.** FVP would reallege the allegations common to all affirmative defenses and state that Hi Bar's actions in filing its termination of the financing statement for the express purpose of luring FVP into a false sense of security and proceeding with its loan transaction, Hi Bar waived any rights that it may have to assert a position superior to FVP and Hi Bar is therefore precluded from asserting a position superior to FVP in the FVP collateral.

11.    **Eleventh Affirmative Defense. Usury**. FVP would reallege the allegations common to all affirmative defenses and state that Hi Bar's claims are based on a usurious transaction and Hi Bar is therefore precluded from asserting a position superior to FVP in the FVP collateral.

## JURY TRIAL DEMANDED ON ALL AFFIRMATIVE DEFENSES

**The FVP Plaintiffs demand trial by jury on all affirmative defenses.**

Dated: November 9, 2022

For the FVP Plaintiffs

| | |
|---|---|
| Jerrell A. Breslin, Esq.<br>Baron, Breslin & Sarmiento<br>The DuPont Building<br>169 East Flagler Street, #700<br>Miami, Florida 33131<br>Phone: (305) 577-4626<br>E-mail: JB@RichardBaronLaw.com<br>EService@RichardBaronLaw.com<br><br>By:     s/ Jerrell Breslin, Esq.<br>         Jerrell Breslin, Esq.<br>          Fla Bar No: 269573 | David Softness, Esq.<br>David R. Softness, P.A.<br>201 S. Biscayne Blvd., Ste 2740<br>Miami, Florida 33131<br>Phone: (305) 341-3111<br>E-mail:david@softnesslaw.com |
| Jonathan Noah Schwartz, Esq.<br>Florida Bar No. 1014596<br>Jonathan Schwartz Law PLLC<br>10200 NW 25th Street, Suite 111<br>Doral, FL 33172<br>Tel.: (973) 936-2176<br>E-mails:jschwartz@jonschwartzlaw.com<br>JNSEsquire@gmail.com | |

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that; I electronically filed the foregoing was served via Email electronic transmission under Local Rule 7026 -1 upon those parties and attorneys who are registered with the Court to receive notifications in this matter but not filed of record and by email upon: the office of the US Trustee by serving Heidi A. Feinman, Esq. at Heidi.A.Feinman@usdoj.gov, upon the Subchapter 5 Trustee by serving Linda Leali, Esq. at lleali@lealilaw.com, upon the Debtor/Defendant by serving James B. Miller, Esq. at bkcmiami@gmail.com, upon Karma or Broward, Inc. and Karma of Palm Beach, Inc. by serving Harry Winderman, Esq. at harry4334@hotmail.com, upon Ed Brown by serving Brett Marks, Esq., at brett.marks@akerman.com, and upon Hi Bar by serving Jarret P. Hitchings, Esq., at

jarret.hitchings@bclplaw.com for Hi Bar.

/ s/ Jerrell Breslin
Jerrell Breslin, Esq.