UNITED STATES BANKRUPTCY COURT

SOUTHERN DISTRICT OF FLORIDA

IN RE:                          CASE NO. 22-15627-EPK

AUTO WHOLESALE OF BOCA, LLC,

            Debtor.

_____/

FVP OPPORTUNITY FUND III, LP,

            Plaintiff,

v                          ADV. NO. 22-1218-EPK-A

AUTO WHOLESALE OF BOCA, LLC,

            Defendant.

_____/

ECF #118 (adv) #141 (main)

November 16, 2022

            The above-entitled cause came on for hearing before the Honorable Erik P. Kimball, one of the Judges in the UNITED STATES BANKRUPTCY COURT, in and for the SOUTHERN DISTRICT OF FLORIDA, at 1515 North Flagler Dr., West Palm Beach, Palm Beach County, Florida, on November 16, 2022, commencing at or about 1:30 p.m., and the following proceedings were had.

            Transcribed from a digital recording by:

                Cheryl L. Jenkins, RPR, RMR

APPEARANCES:


JAMES B. MILLER, P.A., by
JAMES B. MILLER, Esquire (via Zoom)
On behalf of the Debtor


DAVID R. SOFTNESS, P.A., by
DAVID R. SOFTNESS, Esquire (via Zoom)
and
RICHARD BARON LAW, by
JERRELL A.  BRESLIN, Esquire (via Zoom)
JONATHAN SCHWARTZ, Esquire (via Zoom)
On behalf of FVP Investments, LLC, FVP Opportunity Fund,
III, LP and FVP Servicing, LLC


MAURO LAW FIRM, by
EVAN APPELL, Esquire (via Zoom)
On behalf of Derek Stephens


AKERMAN, by
AMANDA KLOPP, Esquire
On behalf of Edward Brown


WEISS HANDLER & CORNWELL, by
HARRY WINDERMAN, Esquire (via Zoom)
On behalf of Karma of Palm Beach, Inc.
and Karma of Broward, Inc.


BRYAN CAVE LEIGHTON PAISNER, by
JARRET HITCHINGS, Esquire (via Zoom)
On behalf of Hi Bar Capital, LLC


SHRAIBERG PAGE, by
BRADLEY SHRAIBERG, Esquire (via Zoom)
On behalf of Wing Lake Capital Partners

CONTINUED APPEARANCES


DGIM LAW, by
DANIEL GIELCHINSKY, Esquire (via Zoom)
On behalf of Quad Funding, Inc.


ALSO PRESENT


ECRO - Electronic Court Reporting Operator


- - - - - - -

Page 4

THE COURT:  Let's see.  All right.  I have the next matters are the adversary proceedings that are obviously related, FVP Opportunity Fund, and others, against Auto Wholesale, that's 22-1218, and then I also have the main case, 22-15627, that's Auto Wholesale of Boca.

Let me start with my list, and call out to you.  We have -- it would be nice if I started with the debtor.  Mr. Miller.

MR. MILLER:  Good afternoon, your Honor. James Miller, M-i-l-l-e-r, on behalf of the debtor-in-possession.

THE COURT:  Very good.

Mr. Softness.

MR. SOFTNESS:  Good morning, Judge. David Softness, S-o-f-t-n-e-s-s, for the FVP parties in both the adversary, and to the extent in the main case. With me in the courtroom, Jonathan Schwartz and Jerry Breslin, my co-counsel.

THE COURT:  Very good.  Good afternoon, everyone.

Let's see, who do we have next, Mr. Winderman.

MR. WINDERMAN:  Yes, your Honor. Harry Winderman, Weiss Handler & Cornwell, on behalf of

the Karma entities, Omar Periu and Shane and Nina, LLC.

THE COURT:  Thank you.

Mr. Wolfson.

(No verbal response.)

THE COURT:  Maybe not.

Mr. Hitchings.

MR. HITCHINGS:  Good afternoon, your Honor. Jarret Hitchings, of Bryan Cave Leighton Paisner, on behalf of Hi Bar Capital, LLC.

THE COURT:  Thank you.

Mr. Shraiberg.

MR. SHRAIBERG:  Good afternoon, your Honor. Brad Shraiberg, on behalf of creditor Wing Lake Capital Partners, formerly known as Franklin Capital.

THE COURT:  Mr. Gielchinsky.

MR. GIELCHINSKY:  Good afternoon, your Honor.  May it please the Court.  Daniel Gielchinsky for Quad Funding, Inc.

THE COURT:  Let's see, is Ms. Leali with us? I do not see her.

MR. MILLER:  Ms. Leali said she would not be making it, your Honor.

THE COURT:  Okay.  Mr. Silver.

(No verbal response.)

THE COURT:  No.

Page 6

Ms. Rowell?

(No verbal response.)

THE COURT:  No.  Is there anybody who I failed to call who would like to appear in Auto Wholesale?

Mr. Softness, yes.

MR. SOFTNESS:  Well, Judge, we were on a depo this morning with Mr. Mauro, who represents Mr. Stephens.

MR. APPELL:  I'm here, I'm here on behalf of Mr. Stephens.

THE COURT:  Who is that?

MR. APPELL:  This is Evan Appell on behalf of Derek Stephens.

THE COURT:  Very good.  Good afternoon.

MR. APPELL:  Good afternoon.

THE COURT:  Is there anyone else who would like to make an appearance in either the adversary or -- here in the courtroom.  Yes, how could I forget?  You're actually here in the courtroom.  Ms. Klopp.

MS. KLOPP:  Good afternoon, your Honor. Amanda Klopp on behalf of Edward Brown.

THE COURT:  See, now you know what it looks like when nobody is here, because that's how I was acting, although I am not wearing sneakers today.

All right.  So, I'd like to start with the

Page 7

adversary case.

I have spent a lot of time reviewing the proposed amended complaint, the one that was most recently filed, and also I believe Mr. Shraiberg's complaint, the amended partial complaint, which is 120, and I have the amended cross-complaint, which is 121, and I have some significant concerns about the way those complaints are presented, and the nature of the claims that are presented.

Let me start by saying I understand that, and I have a great deal of sympathy for the fact that all of you spent a lot of time trying to figure out how to present the various disputes in this case, and so I don't leap into this lightly, given the huge number of you, and the significant cost to your clients so far, but I am concerned that a number of the claims -- a number of the counts present claims that, at least facially, I don't appear to have any jurisdiction over -- at all under the Court's subject matter jurisdiction, and I want to start with some basic principals, and then I am likely going to go through each count of each of the two complaints, one by one, and I'd like to work through my concerns with those.

First, there are a couple of things that the Court is being asked to do in this adversary that are

obviously at the center of the Court's subject matter jurisdiction.  Number one is the determination of the res, meaning the determination of what is property of the estate.

And number two is the determination of the debtor/creditor relationship, meaning the establishment of claims, liens on property of the estate, and the priority of those liens.

There is clearly subject matter jurisdiction (inaudible) the Supreme Court has repeatedly pointed to the fact that the primary basis for subject matter jurisdiction in bankruptcy matters is the res, meaning the assets of the estate, and that the purpose of bankruptcy jurisdiction is to determine the rights of others in the assets of the estate.

So (inaudible) further in talking about what is core and is not.  The determination of property of the estate is core.  The determination of claims against the estate, core.  The determination of liens on estate assets, core.  The determination of the priority of liens on estate assets, also core.

There is no right to a jury trial on any of those matters no matter how they presented, whether it is by motion or in an adversary.

Now obviously you can object to claims

without there being an adversary.  If you read the rules very carefully, you'll discover that the only component of the things I've discussed so far that must be done by an adversary is a request for the Court to rule on priority disputes, that is the only thing covered by 7001, which is not eaten up by the exception for determination of claims, that's it.

That doesn't mean that you don't -- that you can't do it in a complaint.  Of course you can do it in a complaint, especially if priority is concerned, but all of those things, no right to jury trial.

If I'm asked to determine rights of parties in assets that the Court has determined are not property of the estate, there is no subject matter jurisdiction at all over that question.

Now, sometimes when asked to determine what is property of the estate, in doing that, in order to say that something isn't, I have, in effect, determined that someone else owns it.  That's fine.  I have jurisdiction to say that, but if I don't need to say that, then the determination of rights in non-estate property, there is literally no subject matter jurisdiction in bankruptcy.

Likewise, determination of claims between creditors, if Creditor A has a claim against Creditor B, even if it arises in connection with the alleged

acquisition of a lien against property of the estate, if you're seeking a judgment against another creditor, there is no jurisdiction at all on a subject matter basis over such claims, that includes determining -- there are lots of exceptions to this, and some of them are provided in the code, and one of them is actually mentioned in the complaints I have, and that is equitable subordination, and another is lien property, and the reason is that those intercreditor disputes affect distributions from the estate.

Now, I'm sure some of you will argue to me that if I rule (inaudible) claim against this other creditor, then I get to make an argument that there is a charging lien of some kind, and the estate should pay me what would otherwise go to them.

If that gives the Bankruptcy Court subject matter jurisdiction, then I have the broadest jurisdiction of any court in the United States, and I do not have that power, nor will I be exercising it in this case.

So, starting with those basic precepts, I have a great deal of concerns about the two complaints that are currently filed with the court.

By my count I can point to two counts in the complaint, one partial and one complete, over which I'm confident there is subject matter jurisdiction, and most

of them have problems.

Would anybody like to weigh in before I dive into the various counts of the two complaints?

(No verbal response.)

THE COURT:  At the end of this I'm going to be asking to file completely new documents, I'd just like you to know, but anybody wish to address the situation before -- oh, let me say one other thing.

With regard to most of what I obviously have subject matter over, this could be accomplished by objections to claims and an adversary having to do with priority.  There is no need to have the complexity that has been presented by these two complaints.

I've tried to suggest this previously.  If there is an adversary, it really would have been best that the debtor be the plaintiff in the adversary, and not have this unbelievable mess, but really the questions here are not that hard.  Does the debtor own it?  Do you, creditor, have a lien?  And, if so, and if there is more than one creditor, where the lien (inaudible) the estate has an interest in, what is the priority.  Those are the issues.

I know I am greatly simplifying this, but having read your various claims, that's really what it boils down to, and I think the suggestion, although I'm not really completely comfortable with the part one and

part two as they are currently defined, having a two-part approach certainly makes sense, and it doesn't really matter what you put in the complaint, I don't have to run the trial that way.

So that's where we are, and I think Mr. Shraiberg wanted -- you have your hand raised.

MR. SHRAIBERG:  Thank you, your Honor.  You may have just touched on it.  I think all parties are in agreement that the first thing to be tried is, does the debtor have an interest in these automobiles, and that will then lead to an answer, we think, with regard to jurisdiction as to everything else, because if there is no ownership, then, if the assets are not property of the estate --

THE COURT:  Right, and this may be a drafting accident.  The disputed vehicles are mentioned entirely in part two of the partial complaint, and if you read each of those counts, and just assume that the word "disputed vehicles" has a consistent meaning through the document, then I'm being asked to determine priority of interest in vehicles even after I may have determined the debtor doesn't own them, by the way, because that's the way it's drafted.

Did you intend that?  Maybe not.  But that's the way it reads.

Page 13

MR. BRESLIN:  It was not intended to be that way, Judge.

THE COURT:  Right.

MR. BRESLIN:  It was drafted for only part two to apply to only those vehicles that your Honor determined were part --

THE COURT:  Exactly.

MR. BRESLIN:  -- of the estate.

THE COURT:  But that's not the only problem with the complaint.

I know all of you would love to have -- and I'm flattered by your confidence, but would love to have me determine every possible issue that relates to all of your rights against one another.  That's just not going to happen, it's not going to happen in this case.  So, and I think that's what you've tried to do with these two documents.

Frankly, I think the only count over which I have complete subject matter jurisdiction is Hi Bar's request for relief from stay.  Other than that, I think there is a problem with every single other count in the two complaints.

So would it be easier for me to just dive in and look at them one by one?

(No verbal response.)

THE COURT:  Yes?  Someone needs to take notes, because at the end I'm not entering an order giving you detailed directions on these two complaints.

I'm going to give you all leave to file something new, and at the end of this I'd like to talk about whether this is really the right vehicle, because this is an amazing amount of expense.  I just called out, I don't know how many names in this case, and if I were the debtor, I'd be tempted to file a motion to sell, because I would be moving very fast on that.

Mr. Hitchings, before I move forward, yes.

MR. HITCHINGS:  Your Honor, just to, I think, help provide some context as we listen to your comments on the specific counts, I don't want to speak for other counsel, but at least one of the things my client, and our counsel team were mindful of in drafting our portions of the complaint, was the fact that at least the October 21st order seemed to require that the parties include any and all possible claim, and so I'm not making excuses for why there --

THE COURT:  Interesting.

MR. HITCHINGS:  -- is so much in the complaints, but I think there was a concern on the pleading parties, that if we left anything out, that we would have waived the right to assert that.

And so, again, not speaking for folks, but as we get into what the next step is --

THE COURT:  Okay.  I hope I haven't --

MR. HITCHINGS:  -- I want to be mindful --

THE COURT:  I hope I haven't accidently encouraged this.  I mean, you can't waive a claim over which the court has no subject matter jurisdiction, I think that's impossible.

So, failure to raise something that I cannot grant, or even consider, I don't think results in a waiver.  So hopefully I haven't encouraged that, and I apologize if I have.

Mr. Winderman.

MR. WINDERMAN:  Your Honor, perhaps we're asking the Court to do too much, and before you educate us all on the advanced techniques in bankruptcy, perhaps.

THE COURT:  It's not really advanced.  It started in 1991 --

MR. WINDERMAN:  Thank you, your Honor.

THE COURT:  Actually it started under the Bankruptcy Act, but we don't need to go back that --

MR. WINDERMAN:  Yes.

THE COURT:  It's really not that advanced, but if I'm going to ask you to file a new complaint and new documents, don't you think it would be useful to know

Page 16

what I find troubling about the existing ones?

MR. WINDERMAN:  Yes, and what I'm trying to do is save the Court, perhaps, some time and suggest to --

THE COURT:  You've already failed at that, because I spent more than a full day on this.

Anyway, go ahead.

MR. WINDERMAN:  Trust me, in almost 50 years of practice it won't be the first time, your Honor.

What I'm suggesting is that we -- the adversary be a one count complaint to determine the ownership of the vehicles, and the Court could set a timeframe for discovery and trial much shorter than if it's a two count complaint, and everybody is looking to sue everybody else.

We're pretty convinced, at least I am, that these cars will end up not being in the estate, or the estate will be dismissed for its illegal activities.

If the Court would just hear that, set a short trial date, and a short period for discovery, I think that will save everybody a lot of agita about everything else you're going to tell us is wrong with the complaint.

THE COURT:  Well, okay, let me point out something that hopefully will be fairly obvious to litigants.

As the judge I get to tell you things that I cannot consider, but I don't get to tell you that you're not allowed to file a complaint that presents issues that I can consider, those I'm supposed to hear.  So, I might encourage you to do one thing or another, but I certainly can't tell you that you're not allowed to file a complaint that asks me to do things that the Court can do and, in fact, that's why I'm here, and I very much enjoy trying cases.

What troubled me about these complaints, and I hope, again, that I have not encouraged people to create a kitchen sink document, or set of documents, is that I think they've gone too far, and I understand the goal of centralizing every piece of litigation that might exist and, in fact, some of this might, might, in fact, be -- some of the things that I'm concerned about may, in fact, fall under the Court's subject matter jurisdiction to the extent that I can consider them in determining, A, whether there is a claim and, B, whether there is a lien and, C, if there is a claim against the estate, and a lien on assets of the estate, what the priority is, then I can consider pretty much anything, and there is no jury trial right under any of those things, zero.  So -- because we have several counts in which there are jury trials demanded.  In my view, I think it's 4, 5 and 6, if there

Page 18

is subject matter jurisdiction, then there won't be a jury trial right, and to the extent they ask for things that there wasn't subject matter jurisdiction, I don't even have to get there.

So let me go through my view on each of the counts of the -- I'll start with 120, which is the one that's subject to the motion today.  So, Count I first asks the Court to rule that the debtor is not the owner of any vehicle.  Obviously, I can do that.

The next says, it wants me to rule that Karma Broward owns some, perhaps, of the vehicles.  I can only do that, if necessary, to determine the debtor doesn't own them.

The same for the request that the Court determine that Karma Palm Beach owns some of the vehicles, only if required to rule that the debtor does not own them.

Same with Excell, it says Excell owns some, only if required to rule that the debtor does not own them.

Then it says, if they're owned by Karma, determine if Wing Lake has a lien.  I have no jurisdiction over that.  If they're not owned by the debtor, I will not be determining any liens on the vehicles.

Then the next part says, if they're owned by

Page 19

Karma, release them to FVP, and Karma, and Wind Lake if it has a lien.  Nope, if they're not owned by the debtor, they will be abandoned, and you can all fight over them someplace else.

If they're owned by Excell, release them to the trustee in the Excell case.  Well, magically, I'm the judge in the Excell case, and I do, in fact, have jurisdiction over that, and I would, indeed, do that.

Those are my concerns with Count I.

Okay.  Count II.  Count II wants me to rule that some or all of the -- some of the plaintiffs had liens, that's only if the debtor owns the vehicles, otherwise I won't be determining whether their liens exist.

That the debtor was not the buyer in the ordinary course, that I can do.

That the value of security interests exceeds the value of the vehicles.  I have jurisdiction to determine the value of security interests of those who have a lien on at least one vehicle owned by the debtor.

I have jurisdiction to determine the value of vehicles owned by the debtor only.

You want me to determine the debtor has no voice in priority.  I don't know how I can do that.  The debtor always gets to weigh in, they have standing to be

heard on priority, so I'm unlikely to do that.

Count II -- excuse me, Part 2, Count III, that the FVP liens are superior to Wind Lake. Now, this is one of the problems with the structure of the complaint, if you read the complaint without the intent that I think you all intend, and which somebody just told me was the case, you could read Count III and all these other counts to ask me to grant relief even with regard to vehicles I've determine are not property of the estate. I don't think that's your intent, but Count 3, I would only have jurisdiction to make that determination if the subject vehicles are actually owned by the debtor, or the estate has some interest in the vehicle.

Maybe we've all used shorthand that's a little bit too slick, owned by the debtor. The question is whether the estate has an interest, and it can be any interest, by the way.

Count IV, FVP demands that a Hi Bar UCC be declared null and void. That's only if, and to the extent it creates a lien on property of the estate, otherwise there would be no declaration that it is void with regard to anything else.

Award to FVP injunctive relief, damages, civil penlites, costs, attorney's fees under Florida Statute 817.535, I have no jurisdiction over that at all.

Page 21

Potential punitive damages under 768.72, this is one creditor against another, I have no jurisdiction over that at all under Section 1334.

The jury trial demand, to the extent I am determining whether there is a lien on assets of the estate, no jury trial right.

To the extent that I'm determining whether there is a claim at all, no jury trial right.

To the extent that I am determining the relative priority of liens, no jury trial right.

There is no jury trial on anything that I would have jurisdiction over under Count IV.  I think the gist was to cover the Florida statutes request for judgments, injunctive relief, punitive damages.  If that's the case, you need to file that in some other court and pursue those jury trial rights.

Count V, FVP seeks the Karma entity's obligation to Hi Bar to be avoided to the extent necessary to satisfy their claims.  I have no jurisdiction over that question unless the determination is required to allow a claim against the bankruptcy estate.  If that is the case, I have no idea, having read the complaint several times, how that is.  So I can do that, again, only if it involves allowance of a claim against the estate, establishment of lien or other right against property of of the estate, or

Page 22

determination of priority of parties who have proper liens in property of the estate.  I don't see how I have any of that here, but if I do, it falls under allowance, liens, and priority, and there is no jury trial right, that's Count V.

Count VI, FVP seeks the same thing, essentially the same analysis applies.

Count VII, subordination of Hi Bar to FVP 510(c), only if it's property of the debtor.  I think that's what's intended but, again, disputed vehicles is a defined term that involves 27 vehicles, whether or not they are property of the estate.

Count VIII, Wind Lake's security interest is superior to FVP, the same thing, it's only limited to property of the estate.

Count IX, Wind Lake's security superior to Hi Bar, the same thing, jurisdiction is limited to property of the estate.

All right.  Let's go on to ECF 121, which is the Hi Bar amended cross complaint.

Count I asks me to rule the debtor is not the owner of any of the vehicles.  Obviously I can do that.

It also asks me to rule that Karma Broward is the owner, or that Karma Palm Beach is the owner.  If I

Page 23

do that, and as a necessary component of determining that the debtor doesn't own the vehicle, obviously I can make that finding and it would be binding, but if I don't need to determine who owns it, then I don't have jurisdiction to answer the question.

Order release of vehicles to Hi Bar. I'm not likely to do that, more likely to have abandonment. I'll be asking you where the closest street is where the debtor can park them, assuming the debtor has possession.

Count II, Hi Bar has a security interest. If it's in property of the estate, of course I can determine whether they have a security interest.

The value of the security interest in vehicles exceeds the value of the vehicles. Obviously if they have a lien on any vehicle, then I can determine their secured claim, if that's what being requested, I can do that. I can only value the vehicles the debtor -- that are in the estate.

Again, to determine that the debtor has no voice in the priority dispute, I think that's just copied from the other complaint. I don't see how the debtor does not have standing.

And order release to a specific party. I'm unlikely to do that, again, abandonment will be the procedure.

Page 24

Count III, Hi Bar superior to FVP and Franklin.  So this is a priority dispute.  I can do that, only to the extent that the vehicles are property of the estate.  Again, that's probably what you expected.

And Count IV, of the one and only count on which I have no jurisdictional comment, yes, if it's appropriate, I could grant relief from stay.

Any questions?

(No verbal response.)

THE COURT:  All right.  How much time do you all need to file new documents?

MR. BRESLIN:  Judge, I'm on vacation Saturday to Saturday.  I'd like 20 days, please.

THE COURT:  Good for you.

All right.  Okay.  So, a couple of weeks after that?

MR. BRESLIN:  Yes.

THE COURT:  Okay.  What day do you propose, Mr. Breslin?

MR. BRESLIN:  How about the 9th, December 9th, Friday.

THE COURT:  Anybody object?

(No verbal response.)

MR. SHRAIBERG:  No objection.

THE COURT:  Okay.

Page 25

MR. WINDERMAN:  No objection.

THE COURT:  Now let me just go back to Mr. Winderman's suggestion.  Yes, it makes great sense to have whatever this is, and soon.  I mean, I find it hard to believe that the evidence with regard to the debtor's ownership in the vehicles, and we're not talking about just legal, we're talking about equitable ownership in the vehicles, does it exist?  Are you all still doing discovery?  What is going on here?  Can anybody comment?

MR. WINDERMAN:  Yes, your Honor.  I don't think that anybody has really done any real discovery.  That's why I was suggesting a single count, and maybe 60 days to trial, and discovery take place over that period of time so that this one issue, the ownership of the vehicles by AWB can be resolved, instead of waiting for new pleadings, and new answers, and new everything else.

THE COURT:  Mr. Miller, has the debtor considered an alternative procedure?

MR. MILLER:  We have --

THE COURT:  Everybody has filed claims, I think everyone has filed a claim that's involved in this. There aren't any objections to claims right now.  There could be objections to claims.  The priority issue could be left to an adversary.  There are other ways to go about

this.  It just seems that this has become a mammoth of a task, and I understand there are a large number of vehicles and disputes, but if there hasn't been any discovery -- is there a need for discovery?

MR. BRESLIN:  Absolutely, judgment.

THE COURT:  Okay.

MR. BRESLIN:  And to speak for the FVP, that's why we wanted to bifurcate it, because the discovery as to part one and part two is different, and I believe part two is going to be more extensive, and that's the priority claims.

So certainly, you know, our thinking was, you know, determine ownership, and then if there was any cars that were left in the estate, then there would be separate discovery as far as priority.

So, what we didn't want to do was have to do it all in the beginning.

THE COURT:  Yeah, I get it, and that certainly seems wise, and I do see -- Mr. Hitchings, I saw your hand, and, Mr. Miller, I saw you wave, so I'll call you in a moment.

Is there any litigant whose interests would be in the vehicles themselves and not the value they might generate?  I don't think so based on who the clients are.

MS. KLOPP:  No, your Honor, our client --

Page 27

MR. WINDERMAN: I would disagree with, your Honor.

THE COURT: No, I just asked a question.

Oh, so, hold on, Mr. Winderman.

Ms. Klopp.

MS. KLOPP: Yes. Your Honor, our client, Edward Brown, claims ownership of --

THE COURT: In a specific, yeah --

MS. KLOPP: -- a vehicles that he's in possession of that he purchased.

THE COURT: Okay. Understood.

MR. APPELL: As is ours, Derek Stephens.

THE COURT: Right, right, okay.

MR. WINDERMAN: And Omar and Shane, and Karma. Karma would like to have the vehicles because we feel we can sell them at retail, whereas the debtor intends to sell them at wholesale.

THE COURT: This is a fascinating case. So --

MR. WINDERMAN: We only promise you the best, your Honor.

THE COURT: Well, you know, this is one of the few cases that makes me miss being involved in trying to negotiate the case in a long time.

Mr. Miller, what has been your approach, has

Page 28

there been an attempt at mediation, or a big meeting where you lock everybody in a very hot room?

MR. MILLER:  Yes, your Honor.  Thank you. Miller speaking.

We actually have -- a couple of things.  You had asked different inquiries about different things.

One is, yes, there has been, despite what Mr. Winderman says, there has been actually discovery between Mr. Breslin, and his clients, and the debtor, a substantial amount of production and requests and responses thereto.  So, the primary movers have been FVP and the debtor in that regard.

And so in considering that, there has also been several, several judicial settlement conferences that have continued, and still remain open, with his Honor, Judge Russin, who is doing his very best, and exhausting every extra hour he has actually, believe it or not, in this matter, and I've been -- we've been very appreciative of him giving his time, because even when he says there is a hard stop for him, he goes on.  So, he believes there is an opportunity to resolve it.

The Subchapter V Trustee has been diligent in pressing all sides to get their interests -- I left Mr. Shraiberg out, I apologize.  He has also been very involved in that regard, and Mr. Winderman recently got

involved in that regard.

So, we have all been trying to get a resolution, and Hi Bar's counsel, I don't see Mr. Wolfson, I see Mr. Hitchings, but Mr. Wolfson has also been active in that regard.

So there has been a full-court press by all the parties to try and get a resolution and, yes, there has been a lot of things going on in the case between the administrative process and the plan, and then the litigation on this side, the discovery, which is substantial, thousands and thousands of documents would be an understatement in this regard.

As a matter of fact, I think even today Mr. Breslin had a deposition conducted of one of the parties in interest that Mr. Appell represents, opened up his computer saying I produced 1,038 pages of documents to you.  So, we're talking about a lot of documents.

They take time to review, your Honor, and as you understand, I'm not -- I'm one attorney, one firm.  I have probably six or seven law firms on the other side, and it's lot to funnel, and handle, and manage for the debtor, to the point that we may be considering bringing in special counsel to help us move this out of the quagmire, into the field, in perhaps a more fixed and focused resolution, or attempt at it, and as you suggest,

Page 30

you know, there are things you can rule on and things you can't rule on.

Basically if it's property of the estate, you can rule on it.  If it's not property of the estate, it's going to be abandoned, give us the local street where you want the cars parked, and you guys go battle over it, and I understand that.

So we're making our best efforts.  I'm not sure Mr. Winderman's request that 60 days could resolve it, simply because Mr. Breslin, as he announced, has a period of time he's taking off, and then there is, unfortunately, or fortunately, it's the attorney vacation time at the end of -- you know, coming up in December, the first week of January.  So that's going to carve in, and I'm letting everybody know, although I can do some Zoom things, I'm trying to really balance family with the practice right now.  I want to get the last two weeks of December out the door, and perhaps the first half of -- the first week of January.

So, with that said, I'm more than happy, and we have -- actually Mr. Softness is taking the opportunity to circulate a proposed scheduling order, with no hard dates, because we really want to feel out where we think we can get on this.  I know that his Honor wants us to circle back to him and see if there is another opportunity

to get to a resolution.  I am waiting to hear back from the parties in interest as to their opening on that window.  I know that Mr. Softness has been pressing that as well.

And, Judge, as you say, it's a big quagmire, it's a mess, but I think it's come a long way since the filing.  I think that everybody, at least on the end of the -- the parties on the screen and myself have now focussed in and see where the parties' claim interests are, where they're asserting them, where the strengths and weaknesses are, and I think that gets us closer to a judicial settlement resolution, perhaps.

And in all honesty, I don't think the window was this big when we were talking, when we had our -- I think it was our third -- Mr. Softness can correct me, I don't know if it was our third or fourth meeting before his Honor, Judge Russin, but we definitely are moving in the right direction, just not the original, you know, hyperbolic statements between the parties and the counsel.

I think everybody has calmed down, and they see, this is -- as you say, this is about, really at the end of the day, it's really, other than, you know, a few stragglers, like Mr. Appell's client, and Mr. Winderman has one or two clients that are seeking specific automobiles, it's about money, it's about whether or not

Page 32

it's property of the estate, whether or not a lien attaches, or it doesn't attach, and it's straightforward, and I think that, you know, if Mr. Breslin can't get to a form of complaint by the time he thinks he can do it.

In the interim, as you know, we have our deadline coming up to object to claims, which we'll be filing those objections.  I'm not sure it would include all potential defenses, and those issues that you'd raise in an adversary proceeding in regards to some of the other matters, you know, but we're going to do our best on our end, we'll continue to work hard with opposing counsel and either try to get to resolution, or get to a forum and a vehicle, no pun intended, that allows us to move forward.

(Laughter.)

THE COURT:  You know, I think I started by expressing my sympathy for all of you and your -- I don't want anybody to take my comments to suggest that I'm dissatisfied with what you all have been -- you are trying to do in the case, that is not the situation.

I just, I studied those complaints, and I'm concerned about what they're asking for, and I want to make sure we don't step off in a direction where I enter a judgment, which is subject to appeal on a subject matter jurisdiction basis, at whatever court anybody might want to raise it, and then create an even further mess.

So, but I don't mean to be critical of counsel about this.  I understand that there is a lot of chefs because there are lots of clients, and you're all trying to represent your clients, and even after 14 years I have not forgotten that.

Mr. Miller.

MR. MILLER:  And I would just add, Judge, because of the additional independent issues with regards to Mr. Appell's client, who is Derek Stephens, Mr. Winderman represents Shane and Nina, MT, and Omar Periu, P-e-r-i-u, in regards to independent claims of --

THE COURT:  Right.

MR. MILLER:  -- the automobiles.  One of the things that was suggested at the October 26th hearing, which I think we all forgot to come back and address at the end of that hearing, it was very long, and even Mr. Softness may have suggested it in that hearing, I have the transcript, was the November 28th hearing dates don't work for -- at least for Mr. Winderman's clients.  He had asked, had an ore tenus request that those go and coincide with the adversary proceeding, and then I think you were asking why can't we do this through claims objection. Well, these parties in interest never filed claims.  So, he was sort of trying to move it into the adversary

Page 34

proceeding, and move it forward along that way.

So, and I think Mr. Winderman uploaded a proposed order, I don't know if the Court saw it, that would allow that to happen.

THE COURT:  Allow what to happen?

MR. MILLER:  To have the Shane and Nina MT motion to compel, and the Omar Periu motion to compel, to coincide with the adversary proceeding, because the same vehicles are subject of the two complaints that have been filed before the Court.

So, to have all parties in interest who are making these claims resolve it there rather than having it center off as some of these -- you know, to try and keep -- in the words of Mr. Softness, to herd the cats together in one room.

THE COURT:  All right, and so --

MR. WINDERMAN:  I think Mr. Breslin is the only one with a cat.

MR. MILLER:  That's true, but Mr. Softness likes to quote that a lot.

MR. BRESLIN:  Judge, I believe, I believe what you indicated, and I spoke to counsel about this, is that all of these evidentiary hearings would be rolled into the trial, the adversary trial, and I think based on your comments on the complaint, I would request that that

Page 35

occur.

I don't think, because if we're going to have a full blown evidentiary hearing on November 28th on the Stephens' vehicle, we'll have four or five hours of testimony that will just be duplicative of what we're going to have to put on before your Honor in the adversary proceeding anyway.

THE COURT:  All right.

MR. BRESLIN:  So I would --

THE COURT:  Who is counsel -- let me just ask -- just a moment.  Who is counsel for the claimant in that instance, Mr. Appell?

MR. APPELL:  Yes, yes, we are prepared, and would like to proceed on November 28th.  It's our one narrow issue over one vehicle.  We have witnesses lined up.  We've taken discovery.  We've had depositions the last couple of days in the matter, and we don't think there is going to be much, if any, overlap with any of the other claims, because it's one specific vehicle.

THE COURT:  So, I had a hearing on this, and I set it for evidentiary hearing --

MR. APPELL:  Correct.

THE COURT:  And now people want me to move it, but not the movant.

MR. APPELL:  Correct.

Page 36

THE COURT:  And from what I remember, no one else weighed in on that at the hearing.

MR. WINDERMAN:  I think that's correct, your Honor.

THE COURT:  All right.

MR. BRESLIN:  I believe that your Honor mentioned at the last hearing, or the one before it, that you thought it would be appropriate for all of these evidentiary matters to be rolled into the adversary trial.

THE COURT:  Well, and then I set this matter for independent evidentiary hearing, correct?

MR. BRESLIN:  It was set before that, I believe.

THE COURT:  It was set before that.

MR. BRESLIN:  I think it was set -- it was set before your Honor made that comment.

THE COURT:  But I must have had a preliminary hearing at which I decided to set it.

MR. BRESLIN:  Well, there was a motion and a response, and we argued it, and it was set for hearing.

THE COURT:  All right.  If there is a motion to continue, file it, and explain to me why, why it should be combined, but don't just submit an order, please, that doesn't work.

Mr. Miller.

Page 37

MR. MILLER:  Judge, that's -- you're referring only to Mr. Appell's --

THE COURT:  Yes.

MR. MILLER:  -- client?

THE COURT:  Correct.

MR. MILLER:  Because I think the other matter Mr. Winderman had requested ore tenus at the last hearing, and --

THE COURT:  Okay, and what is that, Mr. Winderman?

MR. WINDERMAN:  That is to have the two matters, the Periu and Shane and Nina MT rolled into the evidentiary hearing --

THE COURT:  Okay.

MR. WINDERMAN:  -- of the adversary.

THE COURT:  I know we have a lull in case filings, but I do still have several thousand cases.  So those two matters --

MR. WINDERMAN:  Those two matters deal with individual cars, your Honor.

THE COURT:  Okay, and where do they stand procedurally right now?

MR. WINDERMAN:  That's a good question.

You have set the -- I guess on the record you've set an evidentiary hearing for both of those

matters for the 28th.

THE COURT:  Okay.

MR. WINDERMAN:  And when we last met, I asked that those hearings be moved to when the adversary is heard, because I think that it is impossible for the trier of fact to be able to figure out the entire factual setting without hearing about all the other cars and money transfers.

THE COURT:  Okay.  So, is one of them the matter I have for status conference in the main case today?  Yes, all right, good, we get to talk about that in a moment.

And what is the other one?

MR. MILLER:  Court Paper 127, your Honor, was the Omar Periu motion, you -- unfortunately it was suggested at the first hearing on the motion that it be set simultaneously with another matter -- for the other matters on November 28th.  You said, are you guys sure you can do that all in one day?  And everyone is, like, yeah, sure, but it's not going to work out like that because -- and have Court Paper 145, that's your order that set it for that date, and then subsequent to that, that order was entered October 5th, the hearing was October 4th.

On October 26th is when Mr. Winderman made the ore tenus motion to move that, and the Shane and Nina

MT motions to go and coordinate with the adversary proceeding.

Here is the thing, Mr. Winderman --

THE COURT:  All right.  Are the movants on those in support of that or not?

MR. WINDERMAN:  The movants are me, your Honor, and I'm moving to, again, to have them heard at the same time.

THE COURT:  Well, it seems to me if the movants want, effectively, to delay their considerations so that it moves with the adversary, that seems wise, but why wouldn't you just include this in the complaint rather than have me have a separate document, which I'm now hearing simultaneously with the adversary?

MR. WINDERMAN:  It was just too much, your Honor.

THE COURT:  It is.

MR. WINDERMAN:  As your Honor has pointed out, the complaint was unruly and cumbersome to begin with.  To include these two matters, and additional paragraphs in that complaint, it just seemed easier to just leave them where they were.

THE COURT:  Now, are these the only things set for the 28th?  Yes.

MR. MILLER:  Mr. Appell's client is.

Page 40

MR. APPELL:  Yes, we have the Derek Stephens matter set for the 28th.

THE COURT:  Well, we're not talking about that right now.  We're talking about -- right, we're talking about everything but yours.  I'll come back to that.

MR. APPELL:  Okay.

THE COURT:  All right.  So, Mr. Winderman, you represent the movants in the matters you've just been discussing, that's 141, and I can't remember the other one.

MR. MILLER:  127, I believe.

THE COURT:  Okay, and you'd like those to be -- they're essentially subject to -- and, by the way, I have to continue the -- because we don't have any complaints at all after today's hearing in the adversary, and we'll have a deadline to file new ones.  I will -- in order to make it sound really nice, I will grant the motion to amend, but to file a different document, and that's what I had on today in the adversary.  My notes are so long I can't find the ECF number.

MR. WINDERMAN:  It was 120.

MR. BRESLIN:  120.

THE COURT:  118.

MR. WINDERMAN:  118 is the motion.

Page 41

MR. BRESLIN:  The motion is 120.

THE COURT:  It's a joint motion for leave to amend, right, it's the thing that was asking permission to file 120.

I will grant it, but not that document, and I'll use the deadline that we agreed on earlier, and then, Mr. Winderman, if you want your two motions to no longer be on the 28th, that's fine, and if you have an order that you'd like me to look at, I will look at that since you are the movant.

MR. WINDERMAN:  I will submit it this afternoon, your Honor.

THE COURT:  Okay, and then -- and, Mr. Appell, your name is pronounced Appell, correct?

MR. APPELL:  Appell.

THE COURT:  Oh, I apologize, and I got it right five minutes ago.

Your matter is set for evidentiary hearing on the 28th, and you want to keep it.

MR. APPELL:  Correct.

THE COURT:  All right, and so why am I hearing about this today, anyone?

MR. APPELL:  I don't know.

THE COURT:  That's a good question.

MR. SOFTNESS:  We should have never given

Page 42

him the link.

THE COURT:  Because no one else wants it to be heard on that date.

Let me hear only from someone who has an interest in that specific vehicle other than Mr. Miller.

MR. SOFTNESS:  Well, that's --

MR. BRESLIN:  Judge, the FVP plaintiffs are claiming that vehicle.

THE COURT:  Okay, and why did it -- why was this not addressed when I heard this on a preliminary basis?

MR. BRESLIN:  Well, Judge, they filed their motion.  We filed a response.  You heard it.  It was set for hearing.

THE COURT:  Okay.

MR. BRESLIN:  And then after --

THE COURT:  Good, great.

MR. BRESLIN:  -- your Honor --

THE COURT:  It's set for hearing --

MR. MILLER:  Your Honor --

THE COURT:  -- and it will be a very exciting day.

Mr. Miller.

MR. BRESLIN:  Okay.

MR. MILLER:  I'm not going to say anything

else.

THE COURT:  Oh, good.  All righty then, we'll have a hearing on the 28th, on Mr. Appell's motion.

MR. MILLER:  Oh, I was going to offer, though, you asked is there anything else on the 28th, and it looks like you don't have anything else according to the calendar I pulled down.

THE COURT:  A have a funny feeling a lot of people will attend that hearing.

All right.  Is there anything else today?

MS. KLOPP:  Your Honor, just a --

MR. BRESLIN:  Just --

THE COURT:  Yes.  Hold on.  Ms. Klopp.

MS. KLOPP:  A procedure question, you are going to grant the motion to amend ECF 118, but to file a different document.

THE COURT:  Sure.

MS. KLOPP:  And that's only as to the joint adversary complaint?

THE COURT:  Yes.

MS. KLOPP:  As to the other pending complaint, Hi Bar's complaint --

THE COURT:  I can deny it.  I mean, it doesn't really matter.

MS. KLOPP:  Right.

Page 44

THE COURT:  It just sounds nicer to say it's granted, but not what you wanted.

MS. KLOPP:  As to the other complaint, which there was no motion for leave attached to the Hi Bar complaint --

THE COURT:  It's stricken, and there is leave to file an amended document.  That's 122, is that possible?

MR. MILLER:  121.

THE COURT:  121, excuse me, yep.

MR. HITCHINGS:  Your Honor?

THE COURT:  Yep.

MR. HITCHINGS:  Just to be clear on that point, you know, we did not file a motion for leave because the October 21 order already provided leave to file that amended complaint, but -- and I raise that only to be clear as to what the Court is expecting --

THE COURT:  Okay.  Hold on.  Which document are you talking about, 121?

MR. HITCHINGS:  The Hi Bar complaint, correct.

THE COURT:  Right, I just explained why I had problems with it.

MR. HITCHINGS:  No, I understand, your Honor, but I'm just clarifying for our purposes the

Page 45

document that the Court is expecting to be filed.

THE COURT:  Something that doesn't ask me to do things that are beyond the power of the United States Bankruptcy Court.

MR. HITCHINGS:  And not to belabor the hearing, but, you know, we had an issue, and you received two complaints, because the parties weren't able to coordinate on the joint pleading, and that was largely --

THE COURT:  You don't need to coordinate on a joint pleading.  If you want to have a spaghetti list of documents, you can do that.  I'm not going to tell you you cannot file complaints against each other.  I'm not going to wait for motions to dismiss on subject matter jurisdiction matters, and I'm just letting you know what my concerns are with subject matter jurisdiction.

You all can get together and file a unified document, or you can file one document for each party, and I'm hoping to get to trial before I retire in January of '31.

So, I encourage you to get together.  I'm not requiring it.  You can file whatever you want, and then you all can file motions to dismiss, and we'll be doing motion practice for the entire next year.  This cannot be a good use of time.

MR. BRESLIN:  Judge?

Page 46

THE COURT:  Yes.

MR. BRESLIN:  Can I bring up one matter?

THE COURT:  Yes, Mr. Breslin.

MR. BRESLIN:  Yes, when I got your jurisdiction order, Judge, you know, we looked at it very -- you know, we looked at the joint pleading, and I reached out to Mr. Miller, and there are a five vehicles that are plead in our complaint that are not claimed by the debtor, and I assume that your Honor does not intend to exercise jurisdiction over --

THE COURT:  No.

MR. BRESLIN:  -- any vehicle that's not claimed by the debtor.

THE COURT:  Correct.  If the debtor does not claim any interest in it, unless somebody claims that the debtor owns it, and the debtor disagrees, which would not be the first time that happens in bankruptcy, by the way, if anybody's argument, including the debtor, is that the debtor has no interest in a vehicle, and notice I'm not using the word "own", that then there is no jurisdiction at all over disputes with regard to that property, liens, et cetera.

MR. BRESLIN:  Very well, we have our marching orders.

You do not have a problem, ultimately,

Page 47

your Honor, with a bifurcated proceeding, though?

THE COURT:  No.

MR. BRESLIN:  Part one is the ownership and part two is the priority as to any --

THE COURT:  Correct.

MR. BRESLIN:  -- debtor vehicles, correct?

THE COURT:  Not that there are -- ownership is not -- again, we're using that word as a term of -- for ease, but ownership is not the only thing addressed in part one of the current complaint, I point out, there are other rulings there requested from the Court.

MR. BRESLIN:  I understand.

THE COURT:  Okay.  So --

MR. BRESLIN:  Thank you.

THE COURT:  -- but I do think it is wise to have a procedure where we get to ownership quickly, and I don't know why that couldn't have happened sooner, but again, you know, there are many things that happened in these matters that I don't know what's happening outside of the courtroom and the various interests.

Some of you have provided a good deal of detail about the nature of the intercreditor disputes. Now I know a lot more, having studied these documents, but as usual, I don't know everything, and that's fine, it's your case, you file it.  My concern is putting limitations

Page 48

based solely on jurisdictional concerns.

MR. BRESLIN:  I understand.  Thank you, your Honor.

THE COURT:  Okay, and I just got a question. The Shane -- the thing that I -- the other motion that was set for today, I don't even know what to call this party, Shane and Nina MT, that is --

MR. WINDERMAN:  Shane and Nina, husband and wife would be sufficient, your Honor.

THE COURT:  Okay.

MR. WINDERMAN:  It's an LLC that owns the vehicle.

THE COURT:  All right.  That vehicle, the 2018 Lamborghini Performante, is it listed in the current complaint?  I think the answer is no.

MR. WINDERMAN:  It's my understanding that the debtor is claiming an interest in the vehicle.  They objected when it was brought up for --

THE COURT:  Okay.

MR. WINDERMAN:  -- non-evidentiary hearing.

THE COURT:  It's not in the complaint right now, I don't think.

MR. WINDERMAN:  Right.

THE COURT:  The other two, Stephens and Periu are.

Page 49

All right.  Great.

MR. WINDERMAN:  We'll make sure --

THE COURT:  For ease I may just deny the motion that was up for today and make it easier.  It just sounded nice to grant it.  I'll just deny it, and direct new documents to be filed consistent with the Court's ruling on the record.

Any questions?

MR. WINDERMAN:  No, your Honor.

THE COURT:  Great.  Good luck everyone.

MR. WINDERMAN:  Thank you.

THE COURT:  And good luck to my colleague, Mr. Russin.

MR. SHRAIBERG:  He's done a really good job so far at not impassing.  It's remarkable that we've gone this far and we're still negotiating.

THE COURT:  He is really dedicated, and he's had a very good run recently with judicial settlement conferences.  So you're in really good hands and, you know, sometimes there is just too many balls in the air, and we'll see how it goes, but I encourage all of you to try.

All right.  Thank you very much.

MR. SHRAIBERG:  Thank you, your Honor.

THE COURT:  Good afternoon.

Page 50

MR. MILLER:  Thank you.

MR. APPELL:  Thank you, your Honor.

(Thereupon, the hearing was concluded.)

Page 51

CERTIFICATION

STATE OF FLORIDA          :

COUNTY OF MIAMI-DADE   :


          I, Cheryl L. Jenkins, RPR, RMR, Shorthand Reporter and Notary Public in and for the State of Florida at Large, do hereby certify that the foregoing proceedings were transcribed by me from a digital recording held on the date and from the place as stated in the caption hereto on Page 1 to the best of my ability.

          WITNESS my hand this 7th day of December, 2022.


_____

CHERYL L. JENKINS, RPR, RMR

Court Reporter and Notary Public

in and for the State of Florida at Large

Commission #HH 170910

December 27, 2025