**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
(PALM BEACH DIVISION)**

| | |
|---|---|
| In re: | Case No. 22-15627-EPK |
| AUTO WHOLESALE OF BOCA, LLC, | Chapter 11 (Subchapter V) |
| Debtor. | |
| FVP OPPORTUNITY FUND III, LP;  FVP INVESTMENTS, LLC; FVP SERVICING, LLC, | Adv. Pro. No. 22-01218-EPK |
| Adversary Plaintiffs and Cross-Defendants, | |
| v. | |
| KARMA OF PALM BEACH, INC.; KARMA OF BROWARD, INC.; WING LAKE CAPITAL PARTNERS f/k/a FRANKLIN CAPITAL GROUP, LLC; HI BAR CAPITAL, LLC, | |
| Adversary Defendants and Cross-Plaintiffs, | |
| and | |
| AUTO WHOLESALE OF BOCA, LLC; EXCELL AUTO SPORT AND SERVICE, INC.; and EDWARD BROWN, | |
| Adversary Defendants, | |

**HI BAR CAPITAL, LLC'S ANSWER AND AFFIRMATIVE DEFENSES,
TO THE FVP PARTIES AND KARMA ENTITIES' JOINT AMENDED ADVERSARY
<u>COMPLAINT AND COUNTERCLAIMS AND CROSSCLAIMS</u>**

COMES NOW, Hi Bar Capital, LLC ("Hi Bar") and hereby files its *Answer and Affirmative Defenses to the Joint Amended Adversary Complaint* (the "Joint Complaint")[1] submitted by FVP Opportunity Fund III, LP (the "FVP Fund"), FVP Investments LLC ("FVP Investments"), FVP Servicing, LLC, ("FVP Servicing" and collectively with the FVP Fund, FVP Investments, "FVP"); Karma of Palm Beach, Inc. ("Karma Palm Beach"); Karma of Broward, Inc. ("Karma Broward" and collectively with Karma Palm Beach, "Karma" or the "Karma Entities", and with FVP, the "Joint Plaintiffs" and with cross-defendant Wing Lake Partners, f/k/a Franklin Capital Group, LLC ("Franklin") collectively, the "Subordinate Parties") and its *Counterclaims and Crossclaims* with respect thereto.

Hi Bar denies each and every allegation not specifically admitted herein and demands strict proof thereof as to all denials and affirmative defenses as follows:

**Response to the Introduction to the Relief Requested;
Hi Bar's Joinder In Part I Only, and Reservation of Rights as to Any Claims Other Than
Claims as to the Disputed Vehicles**

In unnumbered introductory paragraphs, the Joint Plaintiffs propose to bifurcate this proceeding. "Part I" seeks a declaratory determination by this Court that AWB has no valid interest in certain vehicles both in the possession of AWB, and those claimed to be unlawfully taken and converted by AWB (described in the Joint Complaint as the "Disputed Vehicles").[2] "Part II" seeks to litigate the priority of various asserted security interests in the Disputed Vehicles.[3] The Court would only proceed to Part II if it first concludes in Part I that the bankruptcy estate of debtor Auto Wholesale of Boca, LLC (the "Debtor" or "AWB") holds a valid interest in the Disputed Vehicles. Otherwise, the Disputed Vehicles will be removed from AWB's bankruptcy proceeding and the

---

[1] Capitalized terms not otherwise defined herein are intended to have the meaning set forth in the Joint Complaint. The use or adoption of any such term is without admission as to the truth or validity thereof.

[2] As proposed, "Part I" would consider Counts I, II and III of the Joint Complaint.

[3] As proposed, "Part II" consider Counts IV through XII of the Joint Complaint.

CASE NO. 22-15627-EPK
ADV. PROC. CASE NO.: 22-01218-EPK
Hi Bar Capital, LLC's Answer and Affirmative Defenses to the Amended Joint Adversary Complaint

parties will litigate their respective interests in various non-bankruptcy forums. Hi Bar supports a bifurcated proceedings as proposed in the Joint Complaint and joins therein with respect to Part I as appropriate and not contrary to this pleading.

## Parties

1.      Admitted.

2.      Admitted.

3.      Admitted.

4.      Admitted.

5.      Admitted.

6.      Admitted.

7.      Admitted.

8.      Admitted.

9.      Admitted.

10.     Admitted.

## Jurisdiction and Venue

11.     Admitted, provided that Hi Bar does not necessarily admit that the Debtor is entitled to be a debtor under Subchapter V of title 11.

12.     Admitted, with respect to Part I and Hi Bar' counterclaims.

13.     Admitted.

14.     Admitted.

15. Admitted in part. Hi Bar admits that each of the Joint Plaintiffs are represented by counsel. Hi Bar is without information as to any agreements between such parties and their respective counsel with respect to fees or the scope of services.

## Allegations Common to All Counts in Part I, Complaint For Declaratory Relief

### The Disputed Vehicles

16. Admitted.

17. Admitted as to the stated position of the Joint Plaintiffs. Hi Bar likewise asserts that the Debtor lacks any *bona fide* legal or ownership interest in the "Disputed Vehicles."

18. Admitted as to the stated position of the Joint Plaintiffs. Hi Bar likewise asserts that the Debtor was not a "buyer in the ordinary course of business as to any of the Disputed Vehicles.

19. Admitted as to the stated position of the Joint Plaintiffs. Hi Bar likewise asserts that, at most, Debtor holds bare legal title to the same, and even if the Debtor holds an interest in the Vehicles beyond naked legal title, that interest is subject and subordinate to separate, perfected security interests in the "Disputed Vehicles" of Hi Bar.

20. Admitted, upon information and belief.

### The FVP Security Interests

21. Admitted in part. Hi Bar admits that FVP purports to have entered into a loan and security agreement with the Karma Entities, but demands strict proof as to the balance of the allegations set forth in this paragraph including as to the authenticity and validity of the identified exhibits.

22. Admitted in part. Hi Bar admits, upon information and belief, that the Karma Entities defaulted on their loan obligations and thereafter FVP instituted the Pending State Action,

CASE NO. 22-15627-EPK
ADV. PROC. CASE NO.: 22-01218-EPK
Hi Bar Capital, LLC's Answer and Affirmative Defenses to the Amended Joint Adversary Complaint

but demands strict proof as to the balance of the allegations set forth in this paragraph including as to the authenticity and validity of the identified exhibit.

23. To the extent the allegations included in this paragraph are not directed at Hi Bar, no response from Hi Bar is required. In the event such response is required, Hi Bar is without sufficient knowledge as to the truth of this allegation, and therefore denies the same demanding strict proof thereof.

24. Admitted, upon information and belief, and provided that any alleged security interest relating to the alleged pledge of "Inventory" is subordinate to the interests of Hi Bar in such "Inventory" and/or the Disputed Vehicles.

25. Admitted, upon information and belief.

26. Admitted, upon information and belief, and provided that the amounts owed to Hi Bar are secured by security interests in the Disputed Vehicles that are superior to the security interests in the Disputed Vehicles that secure the amounts owed to the FVP Plaintiffs.

27. Admitted, upon information and belief.

### The Security Interests Alleged by Hi Bar

28. Admitted.

29. Admitted, with the qualification that the Karma Entities in fact granted Hi Bar the security interest described in this paragraph.

30. Admitted, with the qualification that the Karma Entities in fact granted Hi Bar the security interest described in this paragraph.

31. Admitted.

32. Admitted.

33. Admitted.

34.    Admitted as to the allegations relating to the amounts owed to Hi Bar by the Karma Entities, provided that any qualification later alleged in any other "Part" of the complaint is generally denied unless specifically admitted in response to such paragraph.

35.    Admitted as to the Zankl's failing to honor and/or repay the debt owed to Hi Bar.

### The Security Interests Alleged By Wing Lake

36.    Admitted.

37.    Denied.

38.    Admitted, generally.

39.    To the extent the allegations included in this paragraph are not directed at Hi Bar, no response from Hi Bar is required. In the event such response is required, Hi Bar is without sufficient knowledge as to the truth of this allegation, and therefore denies the same demanding strict proof thereof.

40.    To the extent the allegations included in this paragraph are not directed at Hi Bar, no response from Hi Bar is required. In the event such response is required, Hi Bar is without sufficient knowledge as to the truth of this allegation, and therefore denies the same demanding strict proof thereof.

41.    To the extent the allegations included in this paragraph are not directed at Hi Bar, no response from Hi Bar is required. In the event such response is required, Hi Bar is without sufficient knowledge as to the truth of this allegation, and therefore denies the same demanding strict proof thereof including as to the authenticity and validity of the identified exhibits.

42.    To the extent the allegations included in this paragraph are not directed at Hi Bar, no response from Hi Bar is required. In the event such response is required, Hi Bar is without sufficient knowledge as to the truth of this allegation, and therefore denies the same demanding

strict proof thereof including as to the authenticity and validity of the identified exhibits.

43.    To the extent the allegations included in this paragraph are not directed at Hi Bar, no response from Hi Bar is required. In the event such response is required, Hi Bar is without sufficient knowledge as to the truth of this allegation, and therefore denies the same demanding strict proof thereof.

44.    To the extent the allegations included in this paragraph are not directed at Hi Bar, no response from Hi Bar is required. In the event such response is required, Hi Bar is without sufficient knowledge as to the truth of this allegation, and therefore denies the same demanding strict proof thereof including as to the authenticity and validity of the identified exhibits.

45.    To the extent the allegations included in this paragraph are not directed at Hi Bar, no response from Hi Bar is required. In the event such response is required, Hi Bar is without sufficient knowledge as to the truth of this allegation, and therefore denies the same demanding strict proof thereof including as to the authenticity and validity of the identified exhibits.

46.    To the extent the allegations included in this paragraph are not directed at Hi Bar, no response from Hi Bar is required. In the event such response is required, Hi Bar is without sufficient knowledge as to the truth of this allegation, and therefore denies the same demanding strict proof thereof including as to the authenticity and validity of the identified exhibits.

47.    To the extent the allegations included in this paragraph are not directed at Hi Bar, no response from Hi Bar is required. In the event such response is required, Hi Bar is without sufficient knowledge as to the truth of this allegation, and therefore denies the same demanding strict proof thereof.

48.    To the extent the allegations included in this paragraph are not directed at Hi Bar, no response from Hi Bar is required. In the event such response is required, Hi Bar is without

sufficient knowledge as to the truth of this allegation, and therefore denies the same demanding strict proof thereof.

49.     To the extent the allegations included in this paragraph are not directed at Hi Bar, no response from Hi Bar is required. In the event such response is required, Hi Bar is without sufficient knowledge as to the truth of this allegation, and therefore denies the same demanding strict proof thereof including as to the authenticity and validity of the identified exhibits.

50.     To the extent the allegations included in this paragraph are not directed at Hi Bar, no response from Hi Bar is required. In the event such response is required, Hi Bar is without sufficient knowledge as to the truth of this allegation, and therefore denies the same demanding strict proof thereof including as to the authenticity and validity of the identified exhibits.

### The Debtor's Usury and Fraud

51.     Admitted that the Karma Entities allege ownership of the Disputed Vehicles.

52.     Admitted, upon information and belief.

53.     To the extent the allegations included in this paragraph are not directed at Hi Bar, no response from Hi Bar is required. In the event such response is required, Hi Bar is without sufficient knowledge as to the truth of this allegation, and therefore denies the same demanding strict proof thereof.

54.     To the extent the allegations included in this paragraph are not directed at Hi Bar, no response from Hi Bar is required. In the event such response is required, Hi Bar is without sufficient knowledge as to the truth of this allegation, and therefore denies the same demanding strict proof thereof.

55.     Admitted, upon information and belief.

56.     Admitted, upon information and belief.

CASE NO. 22-15627-EPK
ADV. PROC. CASE NO.: 22-01218-EPK
Hi Bar Capital, LLC's Answer and Affirmative Defenses to the Amended Joint Adversary Complaint

57.     Admitted, upon information and belief.

58.     Admitted, upon information and belief.

59.     Admitted, upon information and belief.

60.     Admitted, upon information and belief.

61.     Admitted, upon information and belief.

62.     Admitted, upon information and belief.

63.     Admitted, upon information and belief.

64.     Admitted.

### The Edward Brown Vehicles

65.     Admitted, based on information and belief.

66.     Admitted, upon information and belief.

67.     Admitted, upon information and belief.

68.     Admitted, upon information and belief.

69.     Admitted, upon information and belief.

70.     Admitted, upon information and belief.

71.     Admitted.

72.     Admitted, upon information and belief.

73.     Admitted, upon information and belief.

74.     Admitted, upon information and belief.

75.     Admitted, upon information and belief.

76.     Admitted as to alleged facts.

### The Debtor's Conversion of the Disputed Vehicles

77.     To the extent the allegations included in this paragraph are not directed at Hi Bar,

no response from Hi Bar is required. In the event such response is required, such allegations are admitted upon information and belief.

78.      To the extent the allegations included in this paragraph are not directed at Hi Bar, no response from Hi Bar is required. In the event such response is required, such allegations are admitted upon information and belief.

79.      To the extent the allegations included in this paragraph are not directed at Hi Bar, no response from Hi Bar is required. In the event such response is required, such allegations are admitted upon information and belief.

80.      To the extent the allegations included in this paragraph are not directed at Hi Bar, no response from Hi Bar is required. In the event such response is required, such allegations are admitted upon information and belief.

81.      Admitted, upon information and belief, with the qualification that any asserted interest of the Joint Plaintiffs in the Disputed Vehicles is subordinate to the interests of Hi Bar.

82.      Admitted, upon information and belief, with the qualification that any asserted interest of the Joint Plaintiffs in the Disputed Vehicles is subordinate to the interests of Hi Bar.

83.      Admitted, upon information and belief.

84.      Admitted, upon information and belief.

85.      Admitted, upon information and belief.

86.      Admitted, with the qualification that any asserted interest of the Joint Plaintiffs in the Disputed Vehicles is subordinate to the interests of Hi Bar.

87.      Admitted.

88.      Admitted.

89.      Admitted.

90.     Admitted.

91.     Admitted.

92.     Admitted.

93.     Admitted.

94.     Admitted, upon information and belief.

95.     Admitted.

## PART I

### Count One
### (Declaratory Count to Determine Ownership of the Disputed Vehicles)

96.     Hi Bar restates its responses to the prior allegations as if set forth fully herein.

97.     Admitted.

98.     Admitted as to the stated position of the Joint Plaintiffs.

99.     Admitted.

100.    Denied as plead. The allegations included in this paragraph are unclear and are therefore denied. Hi Bar maintains that one of the Karma Entities is the true owner of each of the Disputed Vehicles and thus Hi Bar maintains valid senior security interests in, and thus claims to, the Disputed Vehicles.

101.    Admitted as to the stated position of FVP and the Karma Entities. Hi Bar agrees.

102.    Admitted as to the stated position of the  Plaintiffs. Hi Bar agrees.

103.    Admitted.

104.    Admitted.

105.    Admitted.

**Count Two**
**(Declaratory Count To Determine Whether the Debtor Was a Buyer in the Ordinary Course As to Any Debtor Owned Vehicles)**

106.    Hi Bar restates its responses to the prior allegations as if set forth fully herein.

107.    This allegation references the terms of a statute which, being a writing, speaks for itself and thus does not require a further response.

108.    This allegation references the terms of a statute which, being a writing, speaks for itself and thus does not require a further response.

109.    This allegation references the terms of a statute which, being a writing, speaks for itself and thus does not require a further response.

110.    Admitted, upon information and belief.

111.    Admitted, upon information and belief.

112.    This allegation references the terms of a statute which, being a writing, speaks for itself and thus does not require a further response. As to any remaining allegations, Hi Bar admits same, upon information and belief.

113.    Admitted, upon information and belief.

114.    Admitted, upon information and belief.

115.    Admitted, upon information and belied.

116.    Admitted as to the stated position of Joint Plaintiffs, with the qualification that any asserted interest of the Joint Plaintiffs in the Disputed Vehicles is subordinate to the interests of Hi Bar.

117.    Admitted, upon information and belied.

118.    Admitted, upon information and belief.

119.    Admitted, upon information and belief.

120. Admitted as to the stated position of Joint Plaintiffs.

121. Admitted as to the stated position of Joint Plaintiffs, with the qualification that any asserted interest of the Joint Plaintiffs in the Disputed Vehicles is subordinate to the interests of Hi Bar.

**Count Three**
**(Declaratory County to Determine that FVP's Liens Attach to, and Exceed the**
**Value Of, the Debtor Owned Vehicles Subject to Liens)**

122. Hi Bar restates its responses to the prior allegations as if set forth fully herein.

123. Admitted as to the stated position of the Joint Plaintiffs, with the qualification that any asserted interest of the Joint Plaintiffs in the Disputed Vehicles is subordinate to the interests of Hi Bar.

124. Admitted.

125. This allegation references the terms of a statute which, being a writing, speaks for itself and thus does not require a further response. To the extent the allegations in this paragraph assert that any of the Joint Plaintiffs have a right to recover or obtain any of the Disputed Vehicles that is superior to Hi Bar, such allegations are specifically denied.

CASE NO. 22-15627-EPK
ADV. PROC. CASE NO.: 22-01218-EPK
Hi Bar Capital, LLC's Answer and Affirmative Defenses to the Amended Joint Adversary Complaint

## PART II

### VALIDITY AND PRIORITY OF LIENS IN THE DEBTOR OWNED VEHICLES SUBJECT TO LIENS

**Count Four
(Complaint to Determine Priority of Liens)
(FVP v Wing Lake)**

126.    Hi Bar restates its responses to the prior allegations as if set forth fully herein.

127.    To the extent the allegations included in this paragraph are not directed at Hi Bar, no response from Hi Bar is required. In the event such response is required, Hi Bar generally denies such allegations to the extent they allege that any party holds an interest in any Disputed Vehicle superior to Hi Bar's interests.

128.    Admitted.

129.    To the extent the allegations included in this paragraph are not directed at Hi Bar, no response from Hi Bar is required. In the event such response is required, Hi generally denies such allegations to the extent they allege that any party holds an interest in any Disputed Vehicle superior to Hi Bar's interests.

130.    To the extent the allegations included in this paragraph are not directed at Hi Bar, no response from Hi Bar is required. In the event such response is required, Hi generally denies such allegations to the extent they allege that any party holds an interest in any Disputed Vehicle superior to Hi Bar's interests.

**Count Five
(Complaint to Void Hi Bar UCC Filing, Lien and Priority Based on Fraud
Only to the Extent that It Creates a Lien on Property of the Estate
For a Priority Determination)
(FVP v. Hi Bar)**

131.    Hi Bar restates its responses to the prior allegations as if set forth fully herein.

132.    Hi Bar admits that this is Joint Plaintiffs contention.

133.    Hi Bar is without sufficient knowledge as to the truth of this allegation, and therefore denies the same demanding strict proof thereof.

134.    Hi Bar is without sufficient knowledge as to the truth of this allegation, and therefore denies the same demanding strict proof thereof.

135.    This paragraph contains FVP's characterization of the nature of merchant cash advances to which no response is required.  The terms of the transactions entered into by Hi Bar are clearly set forth in its agreements, which speak for themselves.

136.    Admitted, generally.  The specific terms of the transaction between Hi Bar, on one hand, and the Karma Entities and Excell on the other, are clearly set forth in the agreements between those parties.

137.    Hi Bar refers to its response to paragraph 135 above.

138.    Denied, generally. To the extent this paragraph includes allegations which reference published articles, those articles being writings speak for themselves, provided that Hi Bar does not admit, and instead generally denies, any allegations asserted therein.

139.    Denied, generally. To the extent this paragraph includes allegations which reference published articles, those articles being writings speak for themselves, provided that Hi Bar does not admit, and instead generally denies, any allegations asserted therein.

140.    Admitted.

141.    Denied, as the term "affiliate" as used in this paragraph is vague and lacks definition. Hi Bar further denies any allegation that conflates Hi Bar with Spin, as each are separate and discrete legal entities and there is no common ownership or employees between the two entities.

142.    Denied as plead. Hi Bar denies any characterization of Hi Bar as itself an "MCA"

but does admit that Hi Bar extends "merchant credit advances" as that term is generally used. Hi Bar further denies any allegation that conflates Hi Bar with Spin, as each are separate and discrete legal entities.

143.    Admitted in part, denied in part. Hi Bar admits upon information and belief, that in or around September of 2021, Scott Zankl on behalf of Excell entered into communications with Wing Lake to borrow money. Hi Bar is without sufficient knowledge as to the truth of the balance of the allegations in this paragraph, and therefore denies the same demanding strict proof thereof.

144.    Hi Bar is without sufficient knowledge as to the truth of this allegation, and therefore denies the same demanding strict proof thereof.

145.    Admitted in part, denied in part. Hi Bar admits that Zankl and Lubin discussed generally Zankl's ability to repay certain loans outstanding to Zankl's companies. Hi Bar generally denies the balance of the allegations in this paragraph as pled to the extent that such allegations are non-specific or incomplete, instead demanding strict proof thereof.

146.    Hi Bar generally denies the allegations in this paragraph as pled to the extent that such allegations are non-specific or incomplete, instead demanding strict proof thereof.

147.    Hi Bar generally denies the allegations in this paragraph as pled to the extent that such allegations are non-specific or incomplete, instead demanding strict proof thereof.

148.    The documents referenced in this paragraph are writings which speak for themselves.

149.    Denied as pled.

150.    Denied as pled.

151.    The documents referenced in this paragraph are writings which speak for themselves. Hi Bar is without sufficient knowledge as to the truth of the balance of the allegations

included in this paragraph, and therefore denies the same demanding strict proof thereof.

152.    The documents referenced in this paragraph are writings which speak for themselves. Hi Bar is without sufficient knowledge as to the truth of the balance of the allegations included in this paragraph, and therefore denies the same demanding strict proof thereof.

153.    Denied.

154.    Hi Bar is without sufficient knowledge as to the truth of this allegation, and therefore denies the same demanding strict proof thereof.

155.    Hi Bar is without sufficient knowledge as to the truth of this allegation, and therefore denies the same demanding strict proof thereof.

156.    Admitted, with the qualification that Hi Bar was in fact permitted under its security documents to file a UCC financing statement.

157.    Denied.

158.    Hi Bar generally denies the allegations in this paragraph as pled to the extent that such allegations are non-specific or incomplete, instead demanding strict proof thereof. Hi Bar further denies the balance of the allegations included in this paragraph with respect to the intent of Hi Bar or its agents.

159.    Hi Bar generally denies the allegations in this paragraph as pled to the extent that such allegations are non-specific or incomplete, instead demanding strict proof thereof. Hi Bar admits that it filed a UCC financing statement on or around December 15, 2021 but denies the allegations relating to its motivations or reasons for such acts.

160.    Hi Bar generally denies the allegations in this paragraph as pled to the extent that such allegations are non-specific or incomplete, instead demanding strict proof thereof.

161.    Denied as pled.

CASE NO. 22-15627-EPK
ADV. PROC. CASE NO.: 22-01218-EPK
Hi Bar Capital, LLC's Answer and Affirmative Defenses to the Amended Joint Adversary Complaint

162.    Hi Bar generally denies the allegations in this paragraph as pled to the extent that such allegations are non-specific or incomplete, instead demanding strict proof thereof.

163.    Admitted in part, denied in part as pled. Hi Bar admits that Zankl executed the Settlement Agreement on or about December 19, 2021 and that the Settlement Agreement, being a writing speaks for itself. Hi Bar denies that the Settlement Agreement included any false or fraudulent statements or descriptions.

164.    Admitted in part, denied in part. Hi Bar admits that it terminated its UCC filing on or about December 19, 2021. Hi Bar denies any allegation that characterizes its decision to do so as unauthorized or inconsistent with Hi Bar's rights. On the contrary, Hi Bar terminated its UCC because it agreed to do so in connection with the Settlement Agreement.

165.    Denied.

166.    Denied.

167.    Denied.

168.    Denied.

169.    Denied as pled. Hi Bar specifically denies any allegation of fraud.

170.    Hi Bar generally denies the allegations in this paragraph as pled to the extent that such allegations are non-specific or incomplete, instead demanding strict proof thereof.

171.    Hi Bar generally denies the allegations in this paragraph as pled to the extent that such allegations are non-specific or incomplete, instead demanding strict proof thereof.

172.    Denied as pled.

173.    Hi Bar generally denies the allegations in this paragraph as pled to the extent that such allegations are non-specific or incomplete, instead demanding strict proof thereof.

174.    Hi Bar generally denies the allegations in this paragraph as pled to the extent that

such allegations are non-specific or incomplete, instead demanding strict proof thereof.

175. Admitted in part, denied in part. Hi Bar admits that it filed a UCC financing statement on January 25, 2022. Hi Bar denies the balance of the allegations included in this paragraph as pled.

176. Hi Bar generally denies the allegations in this paragraph as pled to the extent that such allegations are non-specific or incomplete, instead demanding strict proof thereof.

177. Hi Bar generally denies the allegations in this paragraph as pled to the extent that such allegations are non-specific or incomplete, instead demanding strict proof thereof.

178. Hi Bar generally denies the allegations in this paragraph as pled to the extent that such allegations are non-specific or incomplete, instead demanding strict proof thereof.

179. Hi Bar generally denies the allegations in this paragraph as pled to the extent that such allegations are non-specific or incomplete, instead demanding strict proof thereof.

180. Denied.

181. Denied as pled.

182. Denied as pled.

183. Denied.

184. Hi Bar denies that FVP is entitled to the relief requested.

### Count Six
### (Complaint to Void Hi Bar UCC Filing, Lien and Priority Based on Illegality
### Only to the Extent that It Creates a Lien on Property of the Estate
### For a Priority Determination)
### (FVP v. Hi Bar)

185. Hi Bar restates its responses to the prior allegations as if set forth fully herein.

186. Hi Bar admits that this is Joint Plaintiffs' contention.

187. Denied, generally.

188.    Denied, generally. To the extent this paragraph includes allegations which reference published articles or court decisions, those documents being writings speak for themselves, provided that Hi Bar does not admit, and instead generally denies, any allegations asserted therein.  In fact, Hi Bar's agreements are governed by New York law where it is binding precedent pursuant to all of the appellate divisions that have made affirmative rulings as to the nature of merchant cash advance agreements that, provided that certain factors are met, all of which satisfied by Hi Bar's agreements, the transactions evidenced by the agreements utilized by the merchant cash advance industry are valid and enforceable purchases and sales of accounts receivable, not loans subject to usury laws.

189.    Admitted in part, but generally denied. Hi Bar admits that it is a party to certain lawsuits but denies any allegations asserting illegal or inequitable conduct. Hi Bar further denies that such proceedings are relevant to, or have any bearing on, the matters at issue in the instant action.

190.    Hi Bar generally denies the allegations in this paragraph as pled to the extent that such allegations are non-specific or incomplete, instead demanding strict proof thereof. Inasmuch as the allegations in this paragraph refer to a document, such document is the best evidence as to what it says and, being a writing, speaks for itself.

191.    Hi Bar generally denies the allegations in this paragraph as pled to the extent that such allegations are non-specific or incomplete, instead demanding strict proof thereof. Inasmuch as the allegations in this paragraph refer to a document, such document is the best evidence as to what it says and, being a writing, speaks for itself.

192.    Hi Bar generally denies the allegations in this paragraph as pled to the extent that such allegations are non-specific or incomplete, instead demanding strict proof thereof. Inasmuch

as the allegations in this paragraph refer to a document, such document is the best evidence as to what it says and, being a writing, speaks for itself.

193.    Hi Bar generally denies the allegations in this paragraph as pled to the extent that such allegations are non-specific or incomplete, instead demanding strict proof thereof. Inasmuch as the allegations in this paragraph refer to a document, such document is the best evidence as to what it says and, being a writing, speaks for itself.

194.    Hi Bar generally denies the allegations in this paragraph as pled to the extent that such allegations are non-specific or incomplete, instead demanding strict proof thereof. Inasmuch as the allegations in this paragraph refer to a document, such document is the best evidence as to what it says and, being a writing, speaks for itself.

195.    Hi Bar denies that it failed to account for any funds paid to Spin, or that it had an obligation to do so, but admits that it purchased $3,177,880 in receivables.

196.    Admitted in part, denied in part. Hi Bar admits that as of mid-December 2021, Zankl and/or the Karma Entities owed Hi Bar at least $2,677,880.00 plus fees and costs. Hi Bar generally denies the balance of the allegations in this paragraph as pled to the extent that such allegations are non-specific or incomplete, instead demanding strict proof thereof. Inasmuch as the allegations in this paragraph refer to a document, such document is the best evidence as to what it says and, being a writing, speaks for itself.

197.    Denied.

198.    Admitted in part, denied in part. Hi Bar that the parties executed the Settlement Agreement in mid-December 2021, the terms of which speak for itself, but denies the remaining allegations contained in this paragraph and specifically with respect to the allegation that Excell repaid $1.2 million.

199. Denied.

200. Admitted, generally. The complaint filed by Hi Bar on or about January 28, 2022 being a writing speaks for itself.

201. Denied.

202. Admitted in part, denied in part. Hi Bar admits that it never paid anything to Excell or the Karma entities, but denies that it had any obligation to do so. Hi Bar further denies that any aspect of its transactions with Hi Bar or Excell was illegal.

203. Denied as pled.

204. Denied as pled.

205. Denied as pled.

206. Denied as pled.

207. Denied as pled.

208. Hi Bar denies that FVP is entitled to the relief requested.

209. Denied as pled. In addition, Hi Bar denies that FVP is entitled to the relief requested.

210. Hi Bar denies that FVP is entitled to the relief requested.

**Count Seven**
**(Equitable Subordination of Liens in Property of the Estate**
**Based on Illegality and Fraud—11 U.S.C. § 510(c))**
**(FVP v Hi Bar)**

211. Hi Bar restates its responses to the prior allegations as if set forth fully herein.

212. Denied.

213. Denied.

214. Hi Bar denies that FVP is entitled to the relief requested.

CASE NO. 22-15627-EPK
ADV. PROC. CASE NO.: 22-01218-EPK
Hi Bar Capital, LLC's Answer and Affirmative Defenses to the Amended Joint Adversary Complaint

**Count Eight**
**(Complaint to Void Hi Bar UCC Filing, Lien and Priority Based on Florida**
**Uniform Fraudulent Transfer Act**
**Only to the Extent it Creates a Lien on Property of the Estate**
**For a Priority Determination)**
**(FVP v Hi Bar)**

215.    Hi Bar restates its responses to the prior allegations as if set forth fully herein.

216.    Hi Bar denies that FVP is entitled to the relief requested.

217.    To the extent the allegations in this paragraph describe the nature of FVP's asserted claim, they speak for themselves and no response is required.

218.    To the extent the allegations in this paragraph describe the nature of FVP's asserted claim, they speak for themselves and no response is required.

219.    This allegation references the terms of a statute which, being a writing, speaks for itself and thus does not require a further response.

220.    This allegation references the terms of a statute which, being a writing, speaks for itself and thus does not require a further response.

221.    Admitted.

222.    Admitted generally, with the qualification that Hi Bar's rights under the transaction documents are not purported but rather exist in fact, and that FVP has no basis to object to Hi Bar's enforcement of any such rights.

223.    Denied.

224.    Denied.

225.    Denied.

226.    Denied.

227.    Admitted upon information and belief, given Hi Bar's superior interest in the Disputed Vehicles.

228.   Denied.

229.   Hi Bar denies that FVP is entitled to the relief requested.

## AFFIRMATIVE DEFENSES

### First Affirmative Defense

Hi Bar hereby adopts and incorporates by reference and pursuant to Federal Rule of Civil Procedure 10(c), all allegations and exhibits included in its Proof of Claim [Claim No. 20-1] filed in the Debtor's main bankruptcy case, as if fully restated herein.

### Second Affirmative Defense

Each of the Subordinate Parties have unclean hands which therefore precludes one or more of them from asserting a position superior to Hi Bar with respect to the Disputed Vehicles.

### Third Affirmative Defense

Any loss or damages suffered by FVP is the result of FVP's own carelessness, negligence, or other unreasonable disregard with respect to its dealings with the Debtor, the Karma Entities, or other relevant parties.

### Fourth Affirmative Defense

Any loss or damages suffered by Franklin is the result of Franklin's own carelessness, negligence, or other unreasonable disregard with respect to its dealings with the Debtor, the Karma Entities, or other relevant parties.

### Fifth Affirmative Defense

Each of Counts 4, 5, 6, 7, and 8 fail to state fact sufficient to entitle any of the Subordinate Parties to the relief requested.

### HI BAR'S COUNTERCLAIMS AGAISNT THE JOINT PLAINTIFFS AND CROSSCLAIMS AGAISNT OTHER DEFENDANTS

Hi Bar's counterclaims and crossclaims adopt the proposed bifurcated concept outlined in the Joint Complaint. "Part I" seeks generally similar declaratory relief that the Disputed Vehicles are not property of the AWB bankruptcy estate. Only in the event that that the Court concludes that the AWB estate *does* have an interest in the Disputed Vehicles, "Part II" seeks (a) a determination that Hi Bar holds valid, perfected security interests in such Disputed Vehicles senior to any other interests of any party including the Debtor and the Subordinate Parties, and (b) relief from the automatic stay to allow Hi Bar to enforce such valid, perfected and senior security interests against such Disputed Vehicles.[4]

### Jurisdiction and Venue

1. On July 22, 2020 (the "Petition Date"), the Debtor filed a voluntary petition for relief pursuant to chapter 11 of the United States Bankruptcy Code, 11 U.S.C. §§ 101 *et seq*. (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of Florida (this "Court"), styled *In re Auto Wholesale of Boca, LLC*, Case No. 22-15627-EPK (generally, the "Main Case").

2. This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157, 1334, 1652 and 2201; Fed. R. Civ. P. 57; and Fed. R. Bankr. P. 7001(1)-(2), (7) and (9),

3. This action is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (H), (K) and (O).

4. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408-09.

5. Hi Bar is represented by counsel as reflected in the signature pages below and has

---

[4] For the avoidance of doubt, the term "Disputed Vehicles" has the meaning set forth herein, but with respect to the allegations and Counts included in Part II that term is only intended to include those Disputed Vehicles in which AWB has an interest as determined in Part I. Hi Bar does not ask the Court to make any determination as to the validity, priority or extent of Hi Bar's liens or other interests in Disputed Vehicles that are determined to be outside the Debtor's bankruptcy estate.

agreed to pay such counsel a reasonable fee for their services.

6.      All conditions precedent to this action have been performed, have occurred or have been waived.

### The Parties

7.      Hi Bar is a New York limited liability company with its principal place of business in New York County, New York

8.      FVP Fund is a Delaware limited partnership with its principal place of business in New York County, New York.

9.      FVP Investments is a Delaware limited liability company with its principal place of business in New York County, New York.

10.     FVP Servicing is a Delaware limited liability company with its principal place of business in New York County, New York.

11.     Franklin (n/k/a/ Wing Lake Partners) is a Delaware limited liability company that maintains its principal place of business in Oakland County, Michigan.

12.     Karma Palm Beach, is a Florida corporation with its principal place of business in Palm Beach County, Florida.

13.     Karma Broward is a Florida corporation with its principal place of business in Broward County, Florida.

14.     AWB is the debtor in this chapter 11 case and is a Florida limited liability company with its principal place of business in Palm Beach County, Florida, and doing business in Broward County, Florida and Palm Beach County, Florida, and is otherwise *sui juris.*

15.     Edward Brown is an individual who resides in Palm Beach County, Florida and is otherwise *sui juris.*

16.     Excell Auto Sport and Service, Inc. ("Excell Service") is a Florida corporation currently in possession, or constructive possession, of two of the Disputed Vehicles.

17.     Non-party Excell Auto Group, Inc. (the "Excell Debtor"), is a Florida corporation and currently a debtor in its own separate proceeding under chapter 7 bankruptcy proceeding pending before this Court, *In re Excell Auto Group,* Case No. 22-12790-EPK (Bankr. S.D. Fla. 2022), and is named for informational purposes only.

18.     Non-party Nicole Testa Mehdipour (the "Excell Auto Trustee") is the chapter 7 trustee for the Excell Debtor.

### Background Facts

19.     Hi Bar is engaged in the merchant cash advance business pursuant to which it purchases a percentage of a business' future revenue stream at a discount.

20.     At the material times, Karma Broward operated a car dealership in Ft. Lauderdale and Karma Palm Beach operated car dealership in Palm Beach.

21.     Both Karma entities focused on the retail sale of high-end luxury automobiles.

22.     On or about October 27, 2021, Hi Bar and Karma, among others, entered into a *Revenue Purchase Agreement* (the "Purchase Agreement"), a true and authentic copy of which is attached hereto as **Exhibit A**.[5]

23.     The Purchase Agreement also contains a *Security Agreement and Guaranty of Performance* (the "Security Agreement") that provides, in part:

> Merchants grant to HBC a security interest in and lien upon: (a) all accounts, chattel paper, documents., equipment, general intangibles, instruments, and inventory, as those teems ace each defined in Article 9 of the Uniform Commercial Code (the "UCC"), now or hereafter owned or acquired by Merchant and/or Guarantor(s), (b) all proceeds, as that term is defined in Article 9 of the UCC (c) all funds at any time in the Merchant's and/or Guarantor(s) Account, regardless of the source of such funds, (d) present and

---

[5] The Excell Debtor is a party to the Purchase Agreement. The Excell Debtor is not a party to this action and Hi Bar is not seeking to enforce any legal rights against the Excell Debtor or its property.

future Electronic Check Transactions, and (e) any amount which may be due to HBC under this Agreement, including but not limited to all rights to receive any payments or credits under this Agreement (collectively, the "Secured Assets").

*See* Exhibit A, at 5.

24.     The Security Agreement (at page 5 of the Purchase Agreement) states: "Remedies: Upon any Event of Default, HBC may pursue any remedy available at law (including those available under the provisions of the UCC) ... ."

25.     On December 19, 2021, Karma, among others, entered into a settlement agreement with Hi Bar (the "Settlement Agreement"), a true and accurate copy of which is attached hereto as **Exhibit B,** in which Karma admitted that "on November 16, 2021, the Sellers defaulted on their obligations pursuant to the Purchase Agreement." Exhibit B at 1.

26.     Paragraph 1.b. of the Settlement Agreement also provides, in part:

As additional security for the prompt and complete payment and performance of any and all liabilities, obligations, covenants or agreements of Seller under this Settlement Agreement (and any future amendments of this Agreement, if any) (hereinafter referred to collectively as the "Obligations"), Sellers hereby pledge, assign and hypothecate to Purchaser (collectively, "Pledge") and grants to Purchaser a continuing, perfected and first priority lien upon and security interest in, to and under all of Sellers' right, title and interest in and to the following (collectively, the "Collateral"), whether now existing or hereafter from time to time acquired:

   i. all accounts, including without limitation, all deposit accounts, accounts- receivable, and other receivables, chattel paper, documents, equipment, general intangibles, instruments, and inventory, as those terms are defined by Article 9 of the Uniform Commercial Code (the "UCC"), now or hereafter owned or acquired by Sellers; and all of Sellers' proceeds, as such term is defined by Article 9 of the UCC.

27.     Karma materially breached the Settlement Agreement by failing to timely pay to Hi Bar the sums required under the terms thereof.

28.     On January 25, 2022, a financing statement was filed by Hi Bar's legal representative with the Florida Secured Transaction Registry against Karma, File No.2021093624865, a certified copy of which is attached hereto as **Exhibit C**, covering among

other things "all accounts receivable," "inventory" and "general intangibles" that are "now owned or hereafter acquired."

29.     The "Secured Assets" under the Purchase Agreement and "Collateral" under the Settlement Agreement include but are not limited to the vehicle inventory of Karma held for sale, including the "Disputed Vehicles" described in Paragraphs 55-65, *infra*.

30.     On January 28, 2022, Hi Bar filed suit against Karma and other affiliates in the Supreme Court of New York, Kings County (the "New York Action") for breach of the Settlement Agreement.

31.     On February 1, 2022, Hi Bar and Karma, among others, entered into a *Stipulation of Settlement Pursuant to CPLR § 3215(i)* with respect to the New York Action (the "Stipulation"), a copy of which is attached hereto as **Exhibit D,** in which Karma again admitted that "on November 16, 2021 (the "Default Date"), the Obligated Parties defaulted on their obligations to Purchaser under the Agreements." *See* Exhibit D at 1.

32.     Karma then materially breached the Stipulation by failing to timely pay to Hi Bar the sums required under the terms thereof.

33.     As of April 28, 2022, Hi Bar is owed the principal sum of $2,500,000 pursuant to the Purchase Agreement, Settlement Agreement and Stipulation (collectively, the "Agreements"), plus $625,000 in attorneys' fees pursuant to the Stipulation for a subtotal of $3,125,000, and interest and additional attorney's fees and costs as provided in the Agreements.

34.     Hi Bar has never entered into any business transaction with the Debtor, and Hi Bar is not a party to any agreement with the Debtor. Hi Bar never executed a release, partial or otherwise, with respect to the Subject Vehicles in favor of the Debtor.

35.     The Debtor has no security agreement with Karma and has not filed a financing statement against Karma. Moreover, the Security Agreement provisions of the Purchase

Agreement (at page 5) included a negative pledge against Karma granting further security interests on Hi Bar's collateral.

36.     Between the winter of 2021 and April 2022, unbeknownst to Hi Bar, the Debtor appears to have engaged in a series of transactions with Karma where Karma, which had both possession and ownership of the Disputed Vehicles, allowed agents of the Debtor to control the title application and transfer process that resulted in the name of the Debtor to be eventually added to Certificates of Title for the Disputed Vehicles in a series of sham transactions.

37.     Because the Debtor did not have a perfected security interest in the inventory of Karma, the Debtor and its agents concocted a scheme whereby most of the Disputed Vehicles were transferred first from Karma to the Excell Debtor and then from the Excell Debtor to AWB, which Hi Bar was not aware of at the time.

38.     However, upon information and belief, the Debtor did not actually pay Karma money or otherwise provide adequate consideration to Karma that Karma retained.

39.     There were no ordinary course transfers from Karma to the Excell Debtor and then from the Excell Debtor to AWB at any time. The bank records of Karma Palm Beach, Karma Broward, the Excell Debtor and other companies controlled by AWBs's principal Moshe Farache (which includes the Debtor), establish that money was consistently paid to the Debtor by Karma to Farache owned or controlled entities despite the fact that there were paper transactions that would have required many millions of dollars paid by the Debtor to Karma.

40.     In sum, every month, when viewing the loans extended the Excell Debtors, Karma *paid* the Farache companies substantial sums. In February 2022 alone for example, Karma paid the Farache entities over $3 million dollars when the paper transactions prepared pursuant to the scheme would have required that the Debtor pay Karma approximately $2.5 million for the "purchases" the false paperwork alleges.

41.     Upon information and belief, on or before April 1, 2022, all of the vehicles on the Karma lots were removed from the Karma entities' dealership lots and that the businesses were closed.

42.     Upon information and belief, Moshe Farache, the Debtor's manager (and husband and father to the Debtor's other two owners), had taken unlawful possession of a substantial portion, if not all, of the vehicles on the Karma entities' lots, which included the Disputed Vehicles.

43.     Upon information and belief, the Disputed Vehicles, among others, were those taken by Farache on or about April 1, 2022.

44.     The Disputed Vehicles were wrongfully taken and converted by the Debtor against the superior interests in the property of Hi Bar.

45.     Additionally, some of the Disputed Vehicles were wrongfully taken from other locations.

46.     Employees or agents of the Debtor wrongly and fraudulently transferred titles to itself for the Disputed Vehicles without right or authority.

47.     At no time was the Debtor a buyer in the ordinary course as defined under UCC Article 9, Chapter 679, Florida Statutes.

48.     At most, the Debtor has naked possession and bare title to the Disputed Vehicles, and the Disputed Vehicles are subject to one or more perfected security interests at the time the Debtor wrongfully took possession of, and wrongfully transferred title of the Disputed Vehicles to itself.

49.     After Hi Bar had learned that the Debtor had taken possession of the Disputed Vehicles, on May 2, 2022, Hi Bar filed an *in rem* replevin and personal property foreclosure in the Circuit Court for Broward County, Florida (the "State Court") that includes the Disputed Vehicles, captioned *Hi Bar Capital, LLC v. Karma of Palm Beach, Inc., et. al*., Case No. CACE-22-006401,

which has been consolidated with a similar pending action captioned *FVP Opportunity Fund III, LP, FVP Investments LLC, and FVP Services, LLC* v. *Excell Auto Group, Inc., et. al.*, Case No. CACE-22-5125 (generally, the "State Court Replevin Action").

50.   The State Court had previously on April 14, 2022 entered a freeze order in the prior pending action (originally filed by FVP) prohibiting Debtor the Debtor from transferring the Disputed Vehicles (the "Freeze Order").

51.   On May 25, 2022, the State Court issued an order to show cause in replevin and scheduled the hearing for July 7, 2022 together with the plaintiffs' motions for relief seeking appointment of a receiver and an injunction.

52.   The Debtor's attorneys moved to vacate the freeze order, which the State Court denied and set a two-day evidentiary hearing on the plaintiffs' for the aforementioned relief for July 25, 2022 and July 26, 2022.

53.   The State Court also set a contempt hearing for the morning of July 26, 2022 for Moshe Farache because of alleged intentional misrepresentations to the State Court.

54.   On the last business day before the hearing, the Debtor filed the instant Chapter 11 Bankruptcy.

### The Disputed Vehicles

55.   The Debtor claims it is the owner of the following vehicles (being the "Disputed Vehicles",[6] inclusive of the funds which are proceeds from the sale of Vehicle 23 currently held by the Debtor):

---

[6] As discussed in footnote 6, *infra,* the term "Disputed Vehicles" has the meaning set forth above, but with respect to the allegations and Counts included in Part II that term is only intended to include those Disputed Vehicles in which AWB has an interest as determined in Part I. Hi Bar does not ask the Court to make any determination as to the validity, priority or extent of Hi Bar's liens or other interests in Disputed Vehicles that are determined to be outside the Debtor's bankruptcy estate.

      a.     Seventeen (17) high-end automobiles as described in Debtor's *Form 206A/B Schedule* [Main Case Docket No. 65 at 5-6] as assets at Part 8,[7] and more specifically defined as (Vehicle Nos.):

1.     2017 Ferrari F12 Berlinetta, VIN# ZFF74UFA7H0221036

2.     2019 Aston Martin DB11 Volante VIN# SCFRMFCW6KGM07671

3.     2020 Mercedes G63 VIN# W1NYC7HJ6LX346462

4.     2019 BMW X7 VIN# 5UXCX4C56KLS39222

5.     2019 GMC Yukon VIN#    1GKS1CKJ8KR354378

6.     2018 MClaren 720S VIN# SBM14DCA9JW000606

7.     2021 Mercedes G Wagon VIN# W1NVC7HJ0MX390328

8.     2020 Mercedes G63 VIN# W1NYC7HJ6LX362080

9.     2008 Porsche 911 VIN# WP0AD29978S783176

10.     2020 MClaren 720S VIN# SBM14FCASLW004229

11.     2019 Lamborghini Urus VIN# ZPBUA1ZLXKLA01961

12.     2018 Cadillac Escalade VIN# 1GYS4BKJXJR261612

13.     2013 Ferrari 458 Italia VIN#ZFF68NHA8D0191526

14.     12021 Jeep Gladiator VIN# 1C6HJTAG1ML571540

15.     2020 Lamborghini Huracan VIN# ZHWUT4ZF1LLA14316

16.     2019 MClaren 720S VIN# SBM14FCA9KW003714

17.     2020 Mercedes G Class VIN# WDCYC7HJ9LX334940

      b.     One 2018 McLaren 720s Black, VIN # SBM14DCA7JW001804 (Vehicle

---

[7] *See* **Exhibit E** attached hereto. The 17 vehicles listed here include the original 19 vehicles scheduled by the Debtor minus the 2020 Lamborghini Urus Vin# 6529, and 2020 Ferrari Superfast Vin# 4963 which Hi Bar understands have been returned to their owners.

18), which is currently in the possession of Excell Sports, either actually or constructively, and upon information and belief, parts of which are located at the business location of the Excell Sports in Broward County, Florida and other parts at a location in the state of North Carolina.

c.      One 2015 Maclaren 650 S Convertible, VIN: SBM11FAA4FW003654 (Vehicle 19) located at the Karma Broward facility in Fort Lauderdale, Florida.

d.      One 2017 Lamborghini Huracan Red, VIN, ZHWUR2ZF8HLA08121 (Vehicle 20) located at the Karma Broward facility in Fort Lauderdale, Fl.

e.      One 2021 Rolls Royce Cullinan White, VIN # SLATV8C09MU20497 (Vehicle 21), which is currently in the possession of Edward Brown and located in Palm Beach County, Florida or some other location unknown to Hi Bar.

f.      One Lamborghini Urus White, VIN # ZPBUA1ZL1MLA12270 (Vehicle 22), which is currently in the possession of Edward Brown and located in Palm Beach County, Florida or some other location unknown to Hi Bar.

g.      One 2021 Jeep Gladiator Black, VIN # 1C6HJJAG0ML564806 (Vehicle 23), which came into the possession of the Debtor, and was sold on April 14, 2022, by the Debtor for $130,000.[8]

56.      The Karma entities claim ownership to all of the Disputed Vehicles.

57.      Hi Bar agrees that all of the Disputed Vehicles were purchased by the Karma entities. Upon information and belief, after the purchase by either of the Karma entities, paperwork was created and exchanged at the request of the Debtor to ostensibly show that the Debtor was a purchaser for value. However, the applicable bank records and other documentary evidence reflect that the Debtor received millions of dollars from the Karma entities when it should have been

---

[8] Upon information and belief, the funds were formerly held in the trust account of Jay Farrow, Esq., and now are in the account of the Debtor

paying those sums if the created putative purchase and sale paperwork was in fact true.

58.    The Karma entities have also asserted that Edward Brown is a lender and investor in the Excell Debtor and the Karma entities and has no other rights in the Disputed Vehicles.

59.    Nevertheless, the Karma entities have asserted, and Hi Bar believes, that Mr. Brown took possession of the following vehicles:[9]

(Vehicle 21) – 2021 Rolls Royce Cullinan White, VIN # SLATV8C09MU20497;

and

(Vehicle 22) – Lamborghini Urus White, VIN # ZPBUA1ZL1MLA12270;

60.    All of the Karma/Brown Vehicles that Mr. Brown took possession of were, and at all times remained, dealer inventory of the Karma Entities.

61.    Upon information and belief, Mr. Brown never purchased any of the Karma/Brown Vehicles and Mr. Brown never paid sales tax for any of the Karma/Brown Vehicles.

62.    At all times, the Karma/Brown Vehicles remained titled to the Karma entities, were assigned dealer plates and were insured by the Karma entities and were owned by the Karma entities.

63.    Hi Bar denies that the Debtor has any *bona fide* legal or beneficial ownership interest in the Disputed Vehicles. Instead, Hi Bar asserts that, at most, the Debtor holds bare legal title to the Disputed Vehicles, and even if the Debtor holds an interest in the Disputed Vehicles beyond naked legal title, that interest is subject and subordinate to Hi Bar's valid, perfected security interests.

64.    Through this adversary proceeding, Hi Bar will establish that the Debtor holds no interest in the Disputed Vehicles recognized by section 541(a)(1) of the Bankruptcy Code and that

---

[9] Collectively referred to as the "Karma/Brown Vehicles").

the Disputed Vehicles are owned by either the Karma entities .

65.    In the event that the Court determines in Part I that the Debtor holds an interest recognized by section 541(a)(1) of the Bankruptcy Code as to the Disputed Vehicles, then also in Part I Hi Bar seeks a finding that the Debtor's interest is subject and inferior to the security interests of the Plaintiff Parties because, among other reasons, the Debtor was not a "buyer in the ordinary course of business" as required by Sections 679.320 and 671.201(9), Florida Statutes.

**FVP's Purported Security Interests**

66.    Upon information and belief, on or about January 26, 2022, FVP entered into certain loan and security agreements with Karma, along with their principals Scott Zankl and Kristen Zankl (together, the "Zankls"). Those parties purportedly executed certain documents including:

a.    a "Loan Agreement" by and between Karma and the Zanks, on one hand, and FVP Servicing, as administrative agent, on the other hand;

b.     a promissory note by Karma in favor of FVP Investments, as Noteholder in the amount of $3,000,000.00;

c.     a promissory note by Karma in favor of FVP Fund, as Noteholder in the amount of $4,500,000.00;

d.     a personal guaranty of Scott Zankl and Kristen Zankl in favor of FVP Servicing;

e.     a security agreement by and between Karma and FVP Servicing, as administrative agent, which among other things, allegedly granted FVP a security interest in "inventory, now or thereafter existing."

f.     a "Collateral Pledge Agreement" by and between Karma and FVP Servicing, as administrative agent;

g.     a UCC Financing Statement with FVP Servicing, as administrative agent, as the allegedly secured party and Karma as the debtors covering "All Assets."

h.    a Landlord Waiver and Consent.

67.    FVP has asserted that Karma defaulted on its loan agreements and FVP thereafter

CASE NO. 22-15627-EPK
ADV. PROC. CASE NO.: 22-01218-EPK
Hi Bar Capital, LLC's Answer and Affirmative Defenses to the Amended Joint Adversary Complaint

declared all sums due.

68.     FVP has asserted that Karma owes FVP Investments unpaid principal plus interest and advances, along with all associated fees and penalties, in excess of $7.5 million.

69.     FVP has asserted that the "Inventory" Karma pledged to FVP includes the Disputed Vehicles.

70.     FVP has asserted that the amounts due the FVP Plaintiffs far exceed the value of the Disputed Vehicles.

**Franklin's Purported Security Interests**

71.     Franklin asserts that in November 2021, the Excell Debtor obtained a loan from Franklin. Franklin also asserts that the Excell Debtor granted Franklin, among other things, a security interest in its accounts receivable and those of certain affiliates, including Karma, as collateral.

72.     Franklin asserts that its perfected its security interests by filing a UCC-1 financing statement with the State of Florida as to the Excell Debtor on September 9, 2021; a UCC-1 financing statement with the State of Florida as to Karma Palm Beach on January 27, 2022, and a UCC-1 financing statement with the State of Florida as to Karma Broward, Inc. on January 27, 2022 (collectively, "Franklin Financing Statements").

73.     Upon information and belief, Franklin's initial financing statement may have included the Karma entities. However, Franklin terminated its UCC filing as against the Karma entities at the request of FVP before FVP would make its loan. Franklin was permitted to refile its UCCs as to Karma, but after FVP filed its financing statement. And, in any event, the operative Franklin Financing Statements as against Karma were filed *after* Hi Bar filed its UCC as to Karma on January 25, 2022.

## Part I

### Count I
### (Declaratory Action to Determine Ownership of the Disputed Vehicles)

74.    Hi Bar repeats and alleges the allegations contained in paragraphs 1 through 73 as if fully set forth herein.

75.    This Count for Declaratory Relief is pursuant to Fed. R. Bankr. P. 7001(9) can provide the same relief as is available to Hi Bar pursuant to Fed. R. Bankr. P. 7001(1), (2) and (7), because the rule provides that a declaratory judgment can include any of the relief available in any other type of adversary proceeding. It provides that an adversary proceeding includes "a proceeding to obtain a declaratory judgment relating to any of the foregoing," *i.e.*, any of the adversary proceeding types delineated in B.R. 7001(1) through (8).

76.    Hi Bar seeks a judicial determination and declaration of the ownership of the Disputed Vehicles for purposes of section 541(a)(1) of the Bankruptcy Code.

77.    The Debtor has asserted before this Court in its sworn bankruptcy schedules and on the record at various hearings that it is the lawful owner of the Disputed Vehicles.

78.    Hi Bar rejects those claims.

79.    No other person or entity affiliated with Moshe Farache or the Debtor has any other claim to the Disputed Vehicles other than the Debtor.

80.    Hi Bar contends that one of the Karma entities beneficially and legally owns each and all of the Disputed Vehicles and that the Debtor holds no ownership in the Disputed Vehicles.

81.    At best, the Debtor has mere naked possession and naked title to the Disputed Vehicles, which the Debtor procured through conversion, theft, actual or constructive fraud and/or duress.

82.    There is a *bona fide*, actual, present, practical need for the Court to issue declaratory

relief regarding the ownership interests in the Disputed Vehicles.

83.     Such declaratory relief deals with a present, ascertained or ascertainable state of facts or present controversy as to a state of facts.

84.     There is a substantial controversy between parties having adverse legal interests of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

WHEREFORE, Hi Bar respectfully requests judgment that:

a.      Declares the Debtor is not the lawful owner of, and does not hold any valid interest under section 541(a)(1) of the Bankruptcy Code in, some or all of the Disputed Vehicles; or

b.      Declares that Karma Broward is the lawful owner of some or all of the Disputed Vehicles; or

c.      Declares that Karma Palm Beach, Inc, is the lawful owner of some or all of the Disputed Vehicles; and upon such declaration(s)

d.      Orders those Disputed Vehicles to be released from the jurisdiction of the Bankruptcy Court to the joint custody of Hi Bar.

**Count Two**
**(Determination of the Superiority of Hi Bar's Liens in the Disputed Vehicles Over the Claims of the Debtor Without Determining Priority)**

85.     Hi Bar repeats and alleges the allegations contained in paragraphs 1 through 84 as if fully set forth herein.

86.     Only in the event that the Court determines in resolving Count I that AWB has an interest in any of the Disputed Vehicles, then Hi Bar seeks a determination in this Count that it has a superior claim to such Disputed Vehicles than that of the Debtor without considering any of the alleged claims of the Joint Plaintiffs regarding the relative priority of their claims in the Disputed Vehicles.

87.     To the extent the Court determines the Debtor has an ownership interest in the Disputed Vehicles under section 541(a)(1) of the Bankruptcy Code, Hi Bar seeks a determination that (a) Hi Bar has a perfected security interest in the Disputed Vehicles owned by the Debtor; (b) the Debtor's interest is subject and subordinate to Hi Bar's valid, perfected security interests; and (c) that the Debtor has no equity in the Disputed Vehicles because of the extent of one or more of various liens on the Disputed Vehicles consumes the entire value of the property.

88.     Fed. R. Bankr. P. 7001(2) affords Hi Bar the right to bring an adversary proceeding for such a determination.

89.     Hi Bar claims a superiority of interest against the Debtor in the Disputed Vehicles pursuant to its security agreements and UCC filings of record perfecting its liens in the Disputed Vehicles, which were wrongfully converted by the Debtor.

90.     As mandated by section 679.2011(1) of the Florida Statutes, "a security agreement is effective according to its terms between the parties, against purchasers of the collateral, and against creditors."

91.     As a secured party, Hi Bar has the clear right to recover possession of its collateral upon default pursuant to its security agreements, Part 6 of Article 9 of the UCC (Sections 679.601 and 679.609 of the Florida Statutes), and Florida's Replevin law (Chapter 78 of the Florida Statutes).

92.     The security interests relative to any vehicle determined to be now owned by the Debtor that either Karma entity acquired on or after the date of the filing of Hi Bar's financing statements prevails over any claim of the Debtor to these Disputed Vehicles, unless the Debtor was a "buyer in the ordinary course of business" (a "BitOCoB") with respect to its acquisition of the vehicles. *See* Section 679.320, Fla. Stat. This provision states:

**679.320   Buyer of goods.**—

(1)      Except as otherwise provided in subsection (5), a buyer in ordinary course of business, … takes free of a security interest created by the buyer's seller, even if the security interest is perfected and the buyer knows of its existence.

93.      Section 671.201(9) of the Florida Statutes defines a BitOCoB as follows, in relevant part:

(9)   "Buyer in ordinary course of business" <u>means a person who, in ordinary course, buys goods in good faith</u>, without knowledge that the sale violates the rights of another person in the goods, from a person, other than a pawnbroker, <u>in the business of selling goods of that kind. A person buys goods in ordinary course if the sale to the person comports with the usual or customary practices in the kind of business in which the seller is engaged or with the seller's own usual or customary practices</u>. …. A buyer in ordinary course of business may buy for cash, by exchange of other property, or on secured or unsecured credit and may acquire goods or documents of title under a preexisting contract for sale. Only a buyer who takes possession of the goods or has a right to recover the goods from the seller under chapter 672 may be a buyer in ordinary course of business. "Buyer in ordinary course of business" <u>does not include a person who acquires goods in a transfer in bulk or as security for or in total or partial satisfaction of a money debt.</u>

(Emphasis added).

94.      "Good faith" means honesty in fact and the observance of reasonable commercial standards of fair dealing." See § 679.1021(qq), Fla. Stat. It is no longer merely a subjective standard, as made clear in the Official Comment thereto.

95.      The Debtor is another car dealer licensed as such in Florida, and therefore is a "merchant" under the UCC.

96.      In contrast, the Debtor is not an ordinary customer who walks into a retail dealership to buy a car. Moreover, the conduct, documentation and financial dealings between the Debtor and the Karma entities and their agents were anything but "ordinary course." The purported sales to the Debtor did not, as required by Section 671.201(9) of the Florida Statutes, "comport with the usual or customary practices in the kind of business in which [the Karma entities are] engaged or with the seller's own usual or customary practices." The Karma entities were not in

CASE NO. 22-15627-EPK
ADV. PROC. CASE NO.: 22-01218-EPK
Hi Bar Capital, LLC's Answer and Affirmative Defenses to the Amended Joint Adversary Complaint

the business of selling large numbers of their cars to a wholesaler.

97.     In all events, the principals of the Karma Parties, Scott Zankl and Kristen Zankl, and of the Debtor, Farache, engaged in a series of business transactions involving the exchange of hundreds of pages of documents, millions of dollars flowing back and forth between the parties, the "fast tracking" of applications to change the name of the owner on Certificates of Title, and many emails back and forth between them and their agents where the alleged buyer, the Debtor, is clearly leading the process.

98.     Moreover, AWB and the Excell Debtor had a pre-existing business relationship. The Excell Debtor may have owed AWB money, and AWB may have had agreements with the Excell Debtor that granted it a security interest in assets of the Excell Debtor. Farache also may be or may have been an investor in the Excell Debtor and/or its affiliates. However, the AWB was not a secured party of the Karma entities at the legally relevant times.

99.     At some point, Farache, for the Debtor, decided to exercise self-help to try to recover money allegedly owed to him by the Excell Debtor and/or Scott Zankl. The Debtor engaged in, and in fact led, a series of fraudulent orchestrated transactions to try to reflect that the Debtor was buying cars from the Excell Debtor, but in fact, those cars had been acquired by the Karma Parties from various third parties (persons or other dealers).

100.    The Karma entities' names appear as the first "purchaser" on the original Certificates of Title. Farache and agents of the Debtor, with Scott Zankl's forced acquiescence on the heels of the threats of violence made by Farache, manipulated the transactions and documents to cause purchase papers and title documents to reflect "fake," or at least "not ordinary," sales from the Karma entities to the Debtor, or from the Karma entities to the Excell Debtor and then from the Excell Debtor to AWB.

101.    Hi Bar requests a determination that Hi Bar has a valid and enforceable security interest in the Disputed Vehicles and that that interest exceeds the value of the Disputed Vehicles.

WHEREFORE, Hi Bar respectfully requests judgment that:

a.    Declares Hi Bar has a valid and enforceable security interest in the Disputed Vehicles.

b.    Declares the Debtor was not a buyer in the ordinary course as to any of the Disputed Vehicles as to defeat the security interests held by Hi Bar.

c.    Declares the value of the security interests in Disputed Vehicles held by Hi Bar exceeds the value of the Disputed Vehicles.

d.    Declares that the Debtor has no voice in the priority of the interests held by Hi Bar and the respective alleged interests asserted by any Subordinated Party Plaintiffs determined to hold a valid interest.

e.    Orders those Disputed Vehicles to be released from the jurisdiction of the Bankruptcy Court to the joint custody of Hi Bar.

f.    Awards Hi Bar its costs and expenses under Fed. R. Bankr. P. 7054 and Fed. R. Civ. P. 54, as well as such further relief as the Court deems just and proper.

**Part II**

**Count Three**
**(Determination of Priority of Liens)**

102.    Hi Bar repeats and alleges the allegations contained in paragraphs 1 through 101 as if fully set forth herein.

103.    Hi Bar seeks a declaration that its rights are superior as to the Disputed Vehicles than those asserted by FVP and Franklin.

104.    Hi Bar has a valid, first-priority security interest in, and a lien against, the Disputed Vehicles, which Hi Bar perfected as of January 25, 2022.

105.    To the extent FVP asserts a security interest in, or a lien against, the Disputed Vehicles, such interest or lien was perfected, if at all, after the date Hi Bar perfected its security interest the Disputed Vehicles.

106.    Upon information and belief, Franklin terminated the Franklin Financing Statements as to the Karma entities on November 16, 2021 at the request of FVP.[10]

107.    To the extent Franklin asserts a security interest in, or a lien against, the Disputed Vehicles, such interest or lien was perfected, if at all, after the date Hi Bar perfected its security interest in the Disputed Vehicles.

108.    Any subsequent financing statements Franklin filed with respect to Karma were filed after the date Hi Bar perfected its security interest in Karma's assets.

WHEREFORE, Hi Bar respectfully requests judgment that:

a.    Declares Hi Bar's security interests that have vested in the Disputed Vehicles are superior in right and priority to those claimed by each of FVP and Franklin.

b.    Awards Hi Bar its costs and expenses under Fed. R. Bankr. P. 7054 and Fed. R. Civ. P. 54 as well as such further relief as the Court deems just and proper.

---

[10] *See* **Exhibit F**.

**Count Four**
**(Relief from the Automatic Stay)**

109.   Hi Bar repeats and alleges the allegations contained in paragraphs 1 through 108 as if fully set forth herein.

110.   In the event that this Court in Part I determines that AWB has an interest in the Disputed Vehicles sufficient to render such vehicles as property of the AWB bankruptcy estate under section 541, Hi Bar is entitled to relief from the automatic stay arising under section 362 of the Bankruptcy Code in order to continue its *in rem* foreclosure and replevin action, *i.e.,* the State Court Replevin Action.

111.   Hi Bar is entitled to relief from the automatic stay for "cause" exists under section 362(d)(1) of the Bankruptcy Code because the Debtor commenced this case in "bad faith" and primarily to avoid an adverse legal ruling in the State Court on the issue of its putative claim to title of the Disputed Vehicles.

112.   While not a traditional "two-party dispute" case, AWB's attempted reorganization is effectively a state law legal dispute between AWB, and the three parties asserting security interests AWB's only material assets, *i.e.*, the Disputed Vehicles.

113.   "Cause" and further "bad faith" also exists because AWB's principal, Moshe Farache, has filed a false Official Form 204 in an attempt to misrepresent to the Court and creditors the extent of *bona fide* unsecured creditors of the Debtor.

114.   Specifically, notwithstanding the clear mandate of the Bankruptcy Rules and the express warning in bold letters on Official Form 204, AWB listed the following entities as non-insider creditors making up part of the "top twenty" largest unsecured creditors:

M & M Development Consultants LLC ("M&M") with a claim of $1,289,168.77;

Mazel Tov Inc. ("Mazel Tov") with a claim of $77,838.87; and

Express Emergency Services, Inc. with a claim of $3000.

115.     AWB has further compounded the problem by listing the insider debts as being undisputed, non-contingent and liquidated. A review of annual reports (official public records) filed by the Debtor with the Florida Department of State, of which this Court can take judicial notice or admit into evidence under Rule 893(8) and/or 803(14), Federal Rules of Evidence, reflect that the members (owners) of the Debtor, Moshe Farache, Lisa Farache and Chase Farache, are also members (owners) of M&M (Moshe, Lisa and Chase),Mazel Tov (Lisa and Chase), and Express (Moshe).

116.     "Cause" further exists because AWB simply has no true legal or beneficial interest in the Disputed Vehicles under section 541(a)(1) and as a matter of applicable non-bankruptcy law due to the fact that the Debtor's asserted acquisition of the Disputed Vehicles was a sham, a conversion, fraudulent and without true consideration and the result of "duress."

117.     "Cause" further exists because the Disputed Vehicles are not necessary for the effective reorganization of AWB. Since the AWB either lacks an interest in the Disputed Vehicles or lack any equity therein, a reorganization involving the Disputed Vehicles is not realistically possible.

118.     "Cause" further exists because even if AWB could establish some ownership interest in the Disputed Vehicles (which Hi Bar maintains it cannot), the Disputed Vehicles are subject to Hi Bar's perfected security interest and are depreciating assets for which the Debtor cannot provide Hi Bar adequate protection of its security interest.

WHEREFORE, Hi Bar respectfully requests judgment that terminates, lifts, or otherwise modifies the automatic stay imposed by section 362(d) of the Bankruptcy Code to permit Hi Bar to pursue in the State Court its rights and remedies in its collateral, including the Disputed Vehicles

under its security agreements and applicable law.

Respectfully submitted,

Dated: December 23, 2022

/s/ Ezequiel J. Romero
Ezequiel J. Romero
Florida Bar No. 107216
romeroe@bclplaw.com
Bryan Cave Leighton Paisner, LLP
200 South Biscayne Boulevard, Suite 400
Miami, FL 33131
Telephone:  (786) 322-7500

Local Counsel for Hi Bar Capital, LLC

Jason J. DeJonker, Esq.
Illinois Bar No. 6272128
Bryan Cave Leighton Paisner, LLP
161 North Clark Street, Suite 4300
Chicago, Illinois 60601-3315
E-mail: Jason.dejonker@bclplaw.com
Tel: (312) 602-5005

Admitted Pro Hace Vice
Counsel for Hi Bar Capital, LLC

/s/ Jarret P. Hitchings
Jarret P. Hitchings, Esq.
Delaware Bar No. 5564
Pennsylvania Bar No. 312254
Bryan Cave Leighton Paisner, LLP
One Wells Fargo Center
301 S. College Street, Suite 2150[11]
Charlotte, North Carolina 28202
E-mail: jarret.hitchings@bclplaw.com
Tel: (704) 749-8965
Fax: (704) 749-8990

Admitted Pro Hac Vice
Counsel for Hi Bar Capital, LLC

---

[11] Application for admission to practice in the State of North Carolina pending. While not currently licensed in North Carolina, practicing in the state pursuant to North Carolina Rule of Professional Conduct 5.5(e), and in compliance therewith.

**<u>Local Rule 9011-4(B)(2) Certification</u>**

I hereby certify that the undersigned attorney is appearing *pro hac vice* in this matter pursuant to the Court order dated October 21, 2022 [ECF 163].

/s/ *Jarret P. Hitchings*
Jarret P. Hitchings, Esq.

**<u>CERTIFICATE OF SERVICE</u>**

I HEREBY CERTIFY that on December 23, 2022 a true and correct copy of the foregoing was served electronically to all parties and counsel registered with the Court's CM/ECF filing system.

/s/ *Ezequiel J. Romero*
Ezequiel J. Romero, Esq.