UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

In re:

AUTO WHOLESALE OF BOCA, LLC,

     Debtor.

_____/

FVP OPPORTUNITY FUND III, LP; FVP
INVESTMENTS, LLC; and FVP SERVICING,
LLC,

     Adversary Plaintiffs and Cross-Defendants.

v.

KARMA OF PALM BEACH, INC.; KARMA OF
BROWARD, INC.; WING LAKE CAPITAL
PARTNERS f/k/a FRANKLIN CAPITAL
GROUP, LLC; and HI BAR CAPITAL, LLC,

     Adversary Defendants and Cross-Plaintiffs,

AUTO WHOLESALE OF BOCA, LLC;
EXCELL AUTO SPORT AND SERVICE, INC.;
and EDWARD BROWN,

     Adversary Defendants.

_____/

Case No. 22-15627-EPK

Chapter 11
Subchapter V

Adv. Proc. No. 22-01218-EPK

**ANSWER AND AFFIRMATIVE DEFENSES
OF FRANKLIN CAPITAL FUNDING, LLC
TO JOINT AMENDED ADVERSARY COMPLAINT [ECF No. 145],
AND COUNTERCLAIMS AND CROSSCLAIMS[1]**

Franklin Capital Funding, LLC ("Franklin" or "Franklin Capital Funding") hereby answers

---

[1] The operative complaint [ECF No. 145] names "Wing Lake Partners f/k/a Franklin Capital Group, LLC" as a defendant. During a January 18, 2023 hearing, the Court granted a motion filed by Franklin Capital Funding, LLC to substitute itself into this adversary proceeding for Wing Lake. *See* ECF No. 171.
{2425/000/00549915}

1

and asserts affirmative defenses to the *Joint Amended Adversary Complaint* (the "Complaint") filed by: (a) FVP Opportunity Fund III, LP, FVP Investments, LLC and FVP Servicing, LLC (together, "FVP" or the "FVP Parties"), and (b) Karma of Palm Beach, Inc. and Karma of Broward, Inc. (together, "Karma" or the "Karma Parties").   ECF No. 145.   Franklin also asserts the counterclaims and crossclaims set forth *infra*.

Franklin denies each and every allegation not specifically admitted herein and demands strict proof of thereof as to all denials and affirmative defenses as follows:

**Parties**

1. Admit.

2. Admit.

3. Admit.

4. Admit.

5. Admit.

6. Admit.

7. Admit.

8. Admit that Franklin is a Delaware limited liability company.  Otherwise deny.

9. Admit.

10. Admit.

**Jurisdiction and Venue**

11. Admit.

12. Admit.

13. Admit.

14. Admit.

{2425/000/00549915}

15.     Admit only that the "Plaintiff Parties," i.e. FVP and Karma, are represented by counsel.  Otherwise without knowledge sufficient to form a belief about the truth of the allegations and deny as a result.

### The Subject Vehicles and Proceedings

16.     Admit.

17.     Admit only as to the stated position of Plaintiffs, without admitting the substance of such position.  Otherwise without knowledge sufficient to form a belief about the truth of the allegations and deny as a result.

18.     Admit.

19.     Admit only as to the stated position of Plaintiffs, without admitting the substance of such position.  Otherwise without knowledge sufficient to form a belief about the truth of the allegations and deny as a result.

20.     Without knowledge sufficient to form a belief about the truth of the allegations and deny as a result.

### The FVP Security Interests

21.     Without knowledge sufficient to form a belief about the truth of the allegations and denies as a result.

22.     Without knowledge sufficient to form a belief about the truth of the allegations and denies as a result.

23.     Without knowledge sufficient to form a belief about the truth of the allegations and denies as a result.

24.     Without knowledge sufficient to form a belief about the truth of the allegations and denies as a result.

{2425/000/00549915}

25.     Without knowledge sufficient to form a belief about the truth of the allegations and denies as a result.

26.     Without knowledge sufficient to form a belief about the truth of the allegations and denies as a result.

27.     Without knowledge sufficient to form a belief about the truth of the allegations and denies as a result.

## The Security Interests Alleged by Hi Bar

28.     Without knowledge sufficient to form a belief about the truth of the allegations and denies as a result.

29.     Without knowledge sufficient to form a belief about the truth of the allegations and denies as a result.

30.     Without knowledge sufficient to form a belief about the truth of the allegations and denies as a result.

31.     Without knowledge sufficient to form a belief about the truth of the allegations and denies as a result.

32.     Without knowledge sufficient to form a belief about the truth of the allegations and denies as a result.

33.     Without knowledge sufficient to form a belief about the truth of the allegations and denies as a result.

34.     Without knowledge sufficient to form a belief about the truth of the allegations and denies as a result.

35.     Admit upon information and belief.

## The Security Interests Alleged by Franklin

{2425/000/00549915}

4

36.    Admit.

37.    Admit.

38.    Admit.

39.    Deny that (a) Franklin Capital Group, LLC is now known as Wing Lake, and (b) Wing Lake entered into loan transactions with Excell.  Otherwise admit.

40.    Deny in that (a) the counterparty to the assignment agreement with Spin is Franklin Capital Group, LLC and not Wing Lake, and (b) Franklin Capital Group, LLC has assigned its rights under the assignment agreement to Franklin Capital Funding.  Otherwise admit.

41.    Deny in that (a) the counterparty to the note is Franklin Capital Group, LLC and not Wing Lake, and (b) Franklin Capital Group, LLC has assigned its rights under the note to Franklin Capital Funding.  Otherwise admit.  Otherwise admit.

42.    Deny in that (a) the counterparty to the loan agreement is Franklin Capital Group, LLC and not Wing Lake, and (b) Franklin Capital Group, LLC has assigned its rights under the loan agreement to Franklin Capital Funding.  Otherwise admit.

43.    Deny in that (a) the counterparty to the loan agreement is Franklin Capital Group, LLC and not Wing Lake, and (b) Franklin Capital Group, LLC has assigned its rights under the loan agreement to Franklin Capital Funding.  Otherwise admit.  Otherwise admit.

44.    Deny in that (a) the counterparty to the security agreement is Franklin Capital Group, LLC and not Wing Lake, and (b) Franklin Capital Group, LLC has assigned its rights under the security agreement to Franklin Capital Funding.  Otherwise admit.

45.    Deny in that the Financing Statements were not filed by Wing Lake, and the rights under the financing statements are now held by Franklin Capital Funding.  Otherwise admit.

46.    Deny in that (a) the counterparty to the assignment agreement with Spin is Franklin

Capital Group, LLC and not Wing Lake, and (b) Franklin Capital Group, LLC has assigned its rights under the assignment agreement to Franklin Capital Funding.  Otherwise admit.

47.    Deny in that (a) the counterparty to the assignment agreement with Spin is Franklin Capital Group, LLC and not Wing Lake, and (b) Franklin Capital Group, LLC has assigned its rights under the assignment agreement to Franklin Capital Funding.  Otherwise admit.

48.    Deny in that (a) the counterparty to the assignment agreement with Spin is Franklin Capital Group, LLC and not Wing Lake, and (b) Franklin Capital Group, LLC has assigned its rights under the assignment agreement to Franklin Capital Funding.  Otherwise admit.

49.    Deny in that (a) the counterparty to the assignment agreement with Spin is Franklin Capital Group, LLC and not Wing Lake, and (b) Franklin Capital Group, LLC has assigned its rights under the assignment agreement to Franklin Capital Funding.  Otherwise admit.

50.    Deny in that (a) the counterparty to the assignment agreement with Spin is Franklin Capital Group, LLC and not Wing Lake, and (b) Franklin Capital Group, LLC has assigned its rights under the assignment agreement to Franklin Capital Funding.  Otherwise admit.

### The Debtor's Usury and Fraud

51.    Admit only as to the stated position of the Karma Entities, without admitting the substance of such position.  Otherwise without knowledge sufficient to form a belief about the truth of the allegations and deny as a result.

52.    Admit.

53.    Without knowledge sufficient to form a belief about the truth of the allegations and denies as a result.

54.    Without knowledge sufficient to form a belief about the truth of the allegations and denies as a result.

{2425/000/00549915}

55. Without knowledge sufficient to form a belief about the truth of the allegations and denies as a result.

56. Without knowledge sufficient to form a belief about the truth of the allegations and denies as a result.

57. Without knowledge sufficient to form a belief about the truth of the allegations and denies as a result.

58. Without knowledge sufficient to form a belief about the truth of the allegations and denies as a result.

59. Without knowledge sufficient to form a belief about the truth of the allegations and denies as a result.

60. Without knowledge sufficient to form a belief about the truth of the allegations and denies as a result.

61. Without knowledge sufficient to form a belief about the truth of the allegations and denies as a result.

62. Without knowledge sufficient to form a belief about the truth of the allegations and denies as a result.

63. Without knowledge sufficient to form a belief about the truth of the allegations and denies as a result.

64. Admit only: (a) as to the stated position of the Karma Entities without admitting as to the substance of such position, and (b) that the Debtor was not a buyer in the ordinary course of any of the Disputed Vehicles.  Otherwise without knowledge sufficient to form a belief about the truth of the allegations and deny as a result.

**The Edward Brown Vehicles**

65.     Without knowledge sufficient to form a belief about the truth of the allegations and denies as a result.

66.     Without knowledge sufficient to form a belief about the truth of the allegations and denies as a result.

67.     Without knowledge sufficient to form a belief about the truth of the allegations and denies as a result.

68.     Without knowledge sufficient to form a belief about the truth of the allegations and denies as a result.

69.     Without knowledge sufficient to form a belief about the truth of the allegations and denies as a result.

70.     Without knowledge sufficient to form a belief about the truth of the allegations and denies as a result.

71.     Without knowledge sufficient to form a belief about the truth of the allegations and denies as a result.

72.     Without knowledge sufficient to form a belief about the truth of the allegations and denies as a result.

73.     Without knowledge sufficient to form a belief about the truth of the allegations and denies as a result.

74.     Without knowledge sufficient to form a belief about the truth of the allegations and denies as a result.

75.     Without knowledge sufficient to form a belief about the truth of the allegations and denies as a result.

76.     Without knowledge sufficient to form a belief about the truth of the allegations and

denies as a result.

**The Debtor's Conversion of the Disputed Vehicles**

77. Without knowledge sufficient to form a belief about the truth of the allegations and denies as a result.

78. Without knowledge sufficient to form a belief about the truth of the allegations and denies as a result.

79. Without knowledge sufficient to form a belief about the truth of the allegations and denies as a result.

80. Without knowledge sufficient to form a belief about the truth of the allegations and denies as a result.

81. Without knowledge sufficient to form a belief about the truth of the allegations and denies as a result.

82. Without knowledge sufficient to form a belief about the truth of the allegations and denies as a result.

83. Without knowledge sufficient to form a belief about the truth of the allegations and denies as a result.

84. Without knowledge sufficient to form a belief about the truth of the allegations and denies as a result.

85. Admit.

86. Without knowledge sufficient to form a belief about the truth of the allegations and denies as a result.

87. Admit only as to the fact that FVP has filed suit and asserted various claims in the Pending State Court Action. Deny to any extent the merit of such claims is alleged in this

{2425/000/00549915}

9

paragraph.

88.     Admit.

89.     Admit.

90.     Admit.

91.     Admit.

92.     Admit.

93.     Admit.

94.     Admit.

95.     Without knowledge sufficient to form a belief about the truth of the allegations and denies as a result.

## PART I

### DECLARATORY RELIEF

#### COUNT ONE

##### DECLARATORY COUNT TO DETERMINE OWNERSHIP OF THE DISPUTED VEHICLES

96.     Franklin repeats and realleges the responses contained in paragraphs 1 through 95 as if fully set forth herein.

97.     Admit.

98.     Admit.

99.     Admit only as to the stated position of the Debtor without admitting the substance of such position.  Otherwise without knowledge sufficient to form a belief about the truth of the allegations and denies as a result.

100.    Admit.

101.    Admit only as to the stated position of the FVP and the Karma Entities without

admitting the substance of such position. Otherwise without knowledge sufficient to form a belief about the truth of the allegations and denies as a result.

102. Admit only as to the stated position of the FVP and the Karma Entities without admitting the substance of such position. Otherwise without knowledge sufficient to form a belief about the truth of the allegations and denies as a result.

103. Admit.

104. Admit.

105. Admit.

**COUNT TWO**

**DECLARATORY COUNT TO DETERMINE WHETHER THE DEBTOR WAS A BUYER IN THE ORDINARY COURSE AS TO ANY DEBTOR OWNED VEHICLES**

106. Franklin repeats and realleges the responses contained in paragraphs 1 through 95 as if fully set forth herein.

107. Admit.

108. Admit.

109. Admit.

110. Admit only that the Debtor is a "merchant" under the Uniform Commercial Code. Otherwise without knowledge sufficient to form a belief about the truth of the allegations and denies as a result.

111. Without knowledge sufficient to form a belief about the truth of the allegations and denies as a result.

112. Admit that the Debtor was not a buyer in the ordinary course of business. Otherwise without knowledge sufficient to form a belief about the truth of the allegations and denies as a result.

{2425/000/00549915}

11

113.   Without knowledge sufficient to form a belief about the truth of the allegations and denies as a result.

114.   Without knowledge sufficient to form a belief about the truth of the allegations and denies as a result.

115.   Without knowledge sufficient to form a belief about the truth of the allegations and denies as a result.

116.   Without knowledge sufficient to form a belief about the truth of the allegations and denies as a result.

117.   Without knowledge sufficient to form a belief about the truth of the allegations and denies as a result.

118.   Without knowledge sufficient to form a belief about the truth of the allegations and denies as a result.

119.   Admit.

120.   Admit.

121.   Admit.

<u>**COUNT THREE**</u>

<u>**DECLARATORY COUNT TO DETERMINE THAT FVP'S LIENS ATTACH TO, AND EXCEED THE VALUE OF, THE DEBTOR OWNED VEHICLES SUBJECT TO LIENS**</u>

122.   Franklin repeats and realleges the responses contained in paragraphs 1 through 95 as if fully set forth herein.

123.   Admit only as to the stated position of the Joint Plaintiffs, with the qualification that any asserted interest of the Joint Plaintiffs in the Disputed Vehicles is subordinate to the interests of Franklin Capital Funding.

124.   Admit.

{2425/000/00549915}

12

125.    Deny.

## PART II

### VALIDITY AND PRIORITY OF LIENS IN
### THE DEBTOR OWNED VEHICLES SUBJECT TO LIENS

#### COUNT FOUR

#### COMPLAINT TO DETERMINE PRIORITY OF LIENS
#### FVP v. FRANKLIN

126.    Franklin repeats and realleges the responses contained in paragraphs 1 through 95 as if fully set forth herein.

127.    Admit only as to the stated position of the FVP Plaintiffs, with the qualification that any asserted interest of the Joint Plaintiffs in the Disputed Vehicles is subordinate to the interests of Franklin Capital Funding.

128.    Deny.

129.    Admit only as to the stated position of the FVP Plaintiffs, with the qualification that any asserted interest of the Joint Plaintiffs in the Disputed Vehicles is subordinate to the interests of Franklin Capital Funding.

130.    Admit only as to the stated position of the FVP Plaintiffs, with the qualification that any asserted interest of the Joint Plaintiffs in the Disputed Vehicles is subordinate to the interests of Franklin Capital Funding.

#### COUNT FIVE

#### COMPLAINT TO VOID HI BAR UCC FILING, LIEN AND PRIORITY BASED ON FRAUD ONLY TO THE EXTENT THAT IT CREATES A LIEN ON PROPERTY OF THE ESTATE FOR A PRIORITY DETERMINATION

#### FVP v. HI BAR

131.    Franklin repeats and realleges the responses contained in paragraphs 1 through 95

{2425/000/00549915}

as if fully set forth herein.

132. Admit.

133. Without knowledge sufficient to form a belief about the truth of the allegations and denies as a result.

134. Without knowledge sufficient to form a belief about the truth of the allegations and denies as a result.

135. Admit.

136. Admit.

137. Admit.

138. Admit.

139. Admit.

140. Admit.

141. Admit.

142. Admit.

143. Deny only to the extent that the reference to "Wing Lake" should instead be to Franklin Capital Funding or an affiliate thereof. Otherwise admit.

144. Deny only to the extent that the reference to "Wing Lake" should instead be to Franklin Capital Funding or an affiliate thereof. Otherwise admit.

145. Deny only to the extent that the reference to "Wing Lake" should instead be to Franklin Capital Funding or an affiliate thereof. Otherwise admit.

146. Admit.

147. Deny only to the extent that the reference to "Wing Lake" should instead be to Franklin Capital Funding or an affiliate thereof. Otherwise admit.

{2425/000/00549915}

148. Admit.

149. Admit.

150. Deny only to the extent that the reference to "Wing Lake" should instead be to Franklin Capital Funding or an affiliate thereof.  Otherwise admit.

151. Deny only to the extent that the reference to "Wing Lake" should instead be to Franklin Capital Funding or an affiliate thereof.  Otherwise admit.

152. Deny only to the extent that the reference to "Wing Lake" should instead be to Franklin Capital Funding or an affiliate thereof.  Otherwise admit.

153. Deny only to the extent that the reference to "Wing Lake" should instead be to Franklin Capital Funding or an affiliate thereof.  Otherwise admit.

154. Deny only to the extent that the reference to "Wing Lake" should instead be to Franklin Capital Funding or an affiliate thereof.  Otherwise admit.

155. Without knowledge sufficient to form a belief about the truth of the allegations and denies as a result.

156. Without knowledge sufficient to form a belief about the truth of the allegations and denies as a result.

157. Without knowledge sufficient to form a belief about the truth of the allegations and denies as a result.

158. Without knowledge sufficient to form a belief about the truth of the allegations and denies as a result.

159. Without knowledge sufficient to form a belief about the truth of the allegations and denies as a result.

160. Without knowledge sufficient to form a belief about the truth of the allegations and

{2425/000/00549915}

denies as a result.

161. Without knowledge sufficient to form a belief about the truth of the allegations and denies as a result.

162. Without knowledge sufficient to form a belief about the truth of the allegations and denies as a result.

163. Without knowledge sufficient to form a belief about the truth of the allegations and denies as a result.

164. Without knowledge sufficient to form a belief about the truth of the allegations and denies as a result.

165. Without knowledge sufficient to form a belief about the truth of the allegations and denies as a result.

166. Without knowledge sufficient to form a belief about the truth of the allegations and denies as a result.

167. Without knowledge sufficient to form a belief about the truth of the allegations and denies as a result.

168. Without knowledge sufficient to form a belief about the truth of the allegations and denies as a result.

169. Without knowledge sufficient to form a belief about the truth of the allegations and denies as a result.

170. Without knowledge sufficient to form a belief about the truth of the allegations and denies as a result.

171. Without knowledge sufficient to form a belief about the truth of the allegations and denies as a result.

172. Without knowledge sufficient to form a belief about the truth of the allegations and denies as a result.

173. Without knowledge sufficient to form a belief about the truth of the allegations and denies as a result.

174. Without knowledge sufficient to form a belief about the truth of the allegations and denies as a result.

175. Without knowledge sufficient to form a belief about the truth of the allegations and denies as a result.

176. Without knowledge sufficient to form a belief about the truth of the allegations and denies as a result.

177. Without knowledge sufficient to form a belief about the truth of the allegations and denies as a result.

178. Without knowledge sufficient to form a belief about the truth of the allegations and denies as a result.

179. Without knowledge sufficient to form a belief about the truth of the allegations and denies as a result.

180. Without knowledge sufficient to form a belief about the truth of the allegations and denies as a result.

181. Admit upon information and belief.

182. Admit upon information and belief.

183. Admit.

184. Admit.

{2425/000/00549915}

17

## COUNT SIX

### COMPLAINT TO VOID HI BAR UCC FILING, LIEN AND PRIORITY BASED ON ILLEGALITY ONLY TO THE EXTENT THAT IT CREATES A LIEN ON PROPERTY OF THE ESTATE FOR A PRIORITY DETERMINATION

### FVP V. HI BAR

185. Franklin repeats and realleges the responses contained in paragraphs 1 through 95 as if fully set forth herein.

186. Admit.

187. Admit.

188. Admit.

189. Admit.

190. Admit.

191. Admit only as to the stated language of the First Agreement. Otherwise without knowledge sufficient to form a belief about the truth of the allegations and denies as a result.

192. Admit.

193. Admit.

194. Admit.

195. Admit.

196. Admit.

197. Admit.

198. Admit.

199. Admit.

200. Admit.

201. Admit.

{2425/000/00549915}

202.    Admit.

203.    Admit.

204.    Admit.

205.    Admit.

206.    Admit.

207.    Admit.

208.    Admit.

209.    Admit.

210.    Admit.

## COUNT SEVEN

### EQUITABLE SUBORDINATION OF LIENS IN PROPERTY OF THE ESTATE BASED ON ILLEGALITY AND FRAUD

### FVP V. HI BAR

211.    Franklin repeats and realleges and responses contained in paragraphs 1 through 95, paragraphs 133 through 183 in Count Five, and paragraphs 187 through 209 in Count Six, as if fully set forth herein.

212.    Admit.

213.    Admit.

214.    Admit.

## COUNT EIGHT

### COMPLAINT TO VOID HI BAR UCC FILING, LIEN AND PRIORITY BASED ON FLORIDA UNIFORM FRAUDULENT TRANSFER ACT ONLY TO THE EXTENT THAT IT CREATES A LIEN ON PROPERTY OF THE ESTATE FOR A PRIORITY DETERMINATION

### FVP V. HI BAR

215.    Franklin repeats and realleges and responses contained in paragraphs 1 through 95

{2425/000/00549915}

19

as if fully set forth herein.

216.   Admit.

217.   Admit.

218.   Admit.

219.   Admit.

220.   Admit.

221.   Without knowledge sufficient to form a belief about the truth of the allegations and denies as a result.

222.   Admit.

223.   Admit.

224.   Admit.

225.   Admit.

226.   Admit.

227.   Without knowledge sufficient to form a belief about the truth of the allegations and denies as a result.

228.   Without knowledge sufficient to form a belief about the truth of the allegations and denies as a result.

229.   Admit only as to the stated position of the FVP Plaintiffs, with the qualification that any asserted interest of the Joint Plaintiffs in the Disputed Vehicles is subordinate to the interests of Franklin Capital Funding.

## AFFIRMATIVE DEFENSES

### *First Affirmative Defense*

Franklin hereby adopts and incorporates by references and pursuant to Fed. R. Civ. P. 10(c)

{2425/000/00549915}

all allegations and exhibits included in its Proofs of Claim [Claims Nos. 10-1 and 11-1] filed in the main bankruptcy case, as if fully restated herein.

### *Second Affirmative Defense*

The relief sought in the Complaint should be denied to the extent that any claims are barred, in whole or in part, by any one or more of the doctrines of (a) setoff, payment, and/or recoupment; (b) unclean hands; (c) accord and satisfaction; (d) unjust enrichment and/or (e) in *pari delicto*

### COUNTERCLAIMS AGAINST THE JOINT PLAINTIFFS AND CROSSCLAIMS AGAINST OTHER DEFENDANTS

### Jurisdiction and Venue

1.      On July 22, 2022 (the "Petition Date"), the Debtor filed a voluntary petition for relief under subchapter V of chapter 11 of the United States Bankruptcy Code, 11 U.S.C. § 101 *et seq*. (the "Bankruptcy Code" or "Code"), thereby initiating the above-captioned bankruptcy case.

2.      The Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 1334.

3.      This is a core proceeding under 28 U.S.C. § 157(b)(2).

4.      Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408–09.

5.      Franklin Capital Funding is represented by counsel as reflected in the signature pages below and has agreed to pay such counsel a reasonable fee for their services.

6.      All conditions precedent in this action have been performed, have occurred, or have been waived.

### Parties

7.      Franklin Capital Funding is a Delaware limited liability company with its principal place of business in Michigan.

8.      Hi Bar is a New York limited liability company with its principal place of business

{2425/000/00549915}

21

in New York County, New York.

9.      FVP Opportunity Fund III, LP is a Delaware limited partnership with its principal place of business in New York County, New York.

10.      FVP Investments, LLC is a Delaware limited liability company with its principal place of business in New York County, New York.

11.      FVP Servicing, LLC is a Delaware limited liability company with its principal place of business in New York County, New York.

12.      Karma of Palm Beach, Inc. ("Karma of Palm Beach") is a Florida corporation with its principal place of business in Palm Beach County, Florida.

13.      Karma of Broward, Inc. ("Karma of Broward") is a Florida corporation with its principal place of business in Broward County, Florida.

14.      Auto Wholesale of Boca, LLC (the "Debtor") is the debtor in this chapter 11 case and is a Florida limited liability company with its principal place of business in Palm Beach County, Florida, and doing business in Broward County, Florida and Palm Beach County, Florida, and is otherwise *sui juris*.

15.      Edward Brown is an individual who resides in Palm Beach County, Florida and is otherwise *sui juris*.

16.      Non-party, Excell Auto Group, Inc. ("Excell") is a Florida corporation and currently a debtor in its own separate chapter 7 bankruptcy case, *In re Excell Auto Group, Inc.*, Case No. 22-12790-EPK (Bankr. S.D. Fla. 2022).  Excell is being named for informational purposes only.

### General Allegations

A.      **Backgrounds of Franklin and the MCA's.**

17. Franklin is a private company that makes and services small business loans.

18. Franklin provides original loans by first engaging in a thorough underwriting review of the business applicant to ensure that the business qualifies to receive the loan. If a business applicant meets Franklin's underwriting requirements, Franklin typically agrees to loan the business customer a principal amount. The business customer, on the other hand, typically agrees to repay Franklin the principal amount plus interest in equal monthly payments over a fixed term, in accordance with the parties' written agreements.

19. In connection with the funding of its loans, Franklin also purchases existing financing obligations owing by the business customer to other creditors and consolidates such obligations into the loan obligations.

20. Of critical importance to Franklin in its underwriting of loans is to ensure that its business customer is in a position to repay its loan and that there is adequate security available to Franklin to safeguard repayment.

21. By contrast, a merchant cash advance is an agreement in which merchants can receive cash much more quickly with less underwriting than traditional loans offered by conventional financial institutions. This flexibility comes with a cost.

22. Under a merchant cash advance agreement, a funding company agrees to purchase a business customer's receivables at a discounted cash purchase price. For example, a funding company could purchase $25,000 of a business customers' receivables at the discounted cash purchase price of $20,000. The business customer receives the discounted cash purchase price, and the funding company debits the business customer's bank account for a certain percentage of the business customer's business either daily or weekly until the purchase price is repaid.

{2425/000/00549915}

23.     Such merchant cash advance funding companies currently are under intense scrutiny for what legislators and regulators have deemed heavy-handed lending and collection tactics. Merchant cash advance funding companies advance money at exorbitant interest rates and often require borrowers to execute a confession of judgment or consent to other legal process as a condition to obtaining the funds, opening the door for rampant abuse of power. Funding companies have been known to forge documents, lie about how much is owed, and fabricate defaults to convince a court, typically in New York, to obtain a judgment. *See, e.g.,* the Bloomberg article titled, "I hereby confess judgment" and the Yahoo! Finance article titled, "'We're coming after you': Inside the merchant cash advance industry." A borrower never even has a chance to dispute whether it committed a default or the amount outstanding before the merchant cash advance funding company seizes all of its assets.

**B.      Transactions Between Excell, Franklin and Spin.**

24.     Non-party, Spin Capital, LLC ("Spin") is a New York limited liability company.

25.     Hi Bar is an affiliate of Spin.

26.     Hi Bar and Spin (together, the "MCA's") are merchant cash advance funding companies that operate throughout the United States.

27.     In November 2021, Excell obtained a loan from Franklin and granted Franklin, among other things, a security interest in its accounts receivable and those of its affiliates as collateral.

28.     Concurrently, Franklin purchased the obligations of Excell and its affiliates to Spin, including any security interests that they had granted to Spin in their accounts receivable, among other collateral, and the parties agreed that Spin would not enter into any other agreements with Excell or its affiliates or otherwise interfere with Franklin's collateral.

29.     In particular, on or about November 3, 2021, Excell executed and delivered to Franklin a Promissory Note evidencing a loan in the original principal amount of $6,000,000 ('the 'Note").

30.     To further evidence the terms of the loan from Franklin, including all present and future loans and credit, Franklin and Excell executed a loan agreement dated November 3, 2021 (the "Loan Agreement").

31.     In executing the Loan Agreement, Excell represented and warranted to Franklin that it would not incur any debts beyond its ability to pay, that there were no other non-permitted security interests covering its assets, and that Excell would keep its assets unencumbered.

32.     As security for the loan, Excell and its affiliates, Karma of Palm Beach, Inc. ("Karma of Palm Beach") and Karma of Broward, Inc. ("Karma of Broward" and, together with Karma of Palm Beach, the "Karma Entities") executed and delivered to Franklin a Continuing Security Agreement dated November 3, 2021 (the "Security Agreement"), in which they granted Franklin a security interest in substantially all of their assets (the "Franklin Collateral").

33.     Franklin perfected its security interests by filing a UCC-1 financing statement with the State of Florida as to Excell on September 9, 2021, a UCC-1 financing statement with the State of Florida as to Karma of Palm Beach, Inc. on January 27, 2022, and a UCC-1 financing statement with the State of Florida as to Karma of Broward, Inc. on January 27, 2022 (collectively, "Financing Statements").

34.     Concurrently with the making of its loan to Excell, Franklin purchased from Spin, and Spin sold and assigned to Franklin, the obligations of Excell and its affiliates owing to Spin

under an Assignment of Obligations and Merchant Documents agreement (the "Assignment Agreement").

35.     Under the Assignment Agreement, Spin assigned to Franklin all of its right, title, and interest under its agreements with Excell and its affiliates, "including any claims, rights or actions [Spin] may have (whether known or unknown to [Spin] as of the date hereof) against any third party arising in connection with, or otherwise related to, [its agreements with Spin] or the Obligations [then owing to Spin]."

36.     In addition, Franklin and Spin agreed that Franklin could file UCC-3 assignments assigning from Spin to Franklin all UCC-1 financing statements that Spin had filed.

37.     Thereafter, Franklin filed any necessary UCC-3 assignments, and it then held the most senior perfected security interest in the assets of Excell and its affiliates, including its accounts receivable.

38.     On September 30, 2022, Franklin filed Proof of Claim No. 10-1 in the above-captioned bankruptcy case (the "Franklin Claim").

39.     A true and correct copy of the Franklin Claim is attached as **EXHIBIT "A"** and incorporated herein by reference.

40.     True and correct copies of the Note, Loan Agreement, Security Agreement, Financing Statements and Assignment Agreement are attached to the Franklin Claim as Exhibits A, B, C, D, and E, respectively.

41.     True and correct copies of additional UCC financing statements filed by Franklin are also attached to the Franklin Claim.

42.     In executing the Assignment Agreement, Spin further acknowledged that Franklin is in the business of making secured commercial loans and agreed, *inter alia*: (a) not to

{2425/000/00549915}

purchase any portion of accounts, receipts or other obligations from Excell or the Karma Entities (together, the "Borrowers"), (b) not to take extend credit to or take a security interest in assets of the Borrowers, and (c) in the event Spin received payment from the Borrowers, the payment would be held in trust for the benefit to Franklin.  *See* Ex. E, p. 2, ¶ 6.

### C.      The MCA's Defraud Franklin.

43.      However, Franklin has learned that, prior to closing on its loan to Excell, Excell had obtained a merchant cash advance from Spin, and Spin was aware that Franklin would not loan funds to Excell if it had an unpaid and outstanding  merchant cash advance.

44.      Upon information and belief, a representative of both Spin and Hi Bar—Josh Lubin—therefore advised Excell to transfer the balance on its merchant cash advance from Spin to Hi Bar. Lubin stated that he also had an interest in Hi Bar and that, once the balance was transferred to Hi Bar, Spin could issue a payoff letter to falsely represent to Franklin that the merchant cash advance had been paid off.

45.      In addition, after closing on the loan from Franklin, Spin and its related entities threatened Excell and its affiliates to enter into additional merchant cash advance agreements and demanded additional  payments.

46.      Despite assigning to Franklin all of the rights under its agreements with Excell and its affiliates, Spin, among other related merchant cash advance companies, including Hi Bar, continued to pursue the purchase  of the accounts, future accounts, contract rights, future sales, receipts or other obligations of the Borrowers, and to extend credit to the Borrowers.

47.      In doing so, Spin sought to avoid the provision in the Assignment Agreement prohibiting such activity by funding through affiliated entities.

{2425/000/00549915}

48. Spin and Hi Bar conspired with Excell to enter into new funding agreements and to obtain funds from Excell without Franklin's consent or approval after executing the Assignment Agreement.

49. There can be no doubt that Hi Bar, and possibly other affiliates, is merely a shell for Spin and/or its common investors and management because it demanded payment from Excell for the amounts settled by Franklin and was aware of the Assignment Agreement and sought to avoid it.

50. The funds that Spin and Hi Bar have obtained, debited, or sought to seize from the accounts of the Borrowers contain Franklin Collateral, including identifiable cash proceeds from their accounts receivable in which Franklin held a higher priority security interest.

51. Spin and Hi Bar were aware that Franklin held the most senior security interest in the accounts when they debited, obtained, or sought to seize funds from Excell and its affiliates and were aware that their actions-directly or indirectly-breached their agreements with Franklin.

**D.    The Vehicles.**

52. The Debtor alleges it is the owner of the following vehicles and funds:

   a.    Nineteen (19) automobiles, described in its Form 206A/B Schedule as assets at Part 8.

   b.    Two (2) automobiles more fully described as a 2016 Ford Rhino Black, VIN 1FDUF4HT8GEB18666 and a 2018 Mclaren 720s Black, VIN, SBM14DCA7JW001804, which are currently in the possession of the Debtor at its business location at 5471 N. Dixie Highway, Boca Raton, Florida or other locations unknown to Franklin.

c.   Two (2) automobiles more fully described as a 2015 Maclaren 650 S Convertible, Grey, VIN: SBM11FAA4FW003654 and a 2017 Lamborghini Huracan Red, VIN, ZHWUR2ZF8HLA08121, which are currently in the possession of Karma of Broward at its business in Broward County, Florida. Karma of Broward has possession of the vehicles, but Farache took the titles and claims ownership for the Debtor.

d.   Two (2) automobiles more fully described as a 2021 Rolls Royce Cullinan White, VIN SLATV8C09MU20497 and a 2021 Lamborghini Urus White, VIN ZPBUA1ZL1MLA12270, which are currently in the possession of Edward Brown and are located in Palm Beach County, Florida or some other location unknown to Franklin.

e.   One (1) automobile more fully described as a 2021 Jeep Gladiator Black, VIN: 1C6HJJAG0ML564806 which came into the possession of Farache and the Debtor, and was sold on April 14, 2022 by the Debtor for $130,000. The funds are currently held in the trust account of Jay Farrow, Esq. and are reflected in the Debtor's Form 206A/B Schedule as assets at Part 1, Cash and Cash Equivalents.   Franklin alleges that its claims as to this vehicle are identical to all the other vehicles in which it claims relief, and seeks the funds from the sale of this vehicle to be turned to it.

53.   The automobiles and vehicles referenced in the preceding paragraph, together with the proceeds of the vehicle that are being held in trust by Jay Farrow, Esq., shall be collectively referred to herein as the "Vehicles".

**E.   The Interests of the Other Parties in the Vehicles are Inferior to Those of Franklin.**

{2425/000/00549915}

54. The security interests of Franklin in the Vehicles are superior to any legal or beneficial ownership interest in the Vehicles, or any other interest in the Vehicles such as a lien or security interest, that is claimed by any other party in this adversary proceeding.

55. Franklin holds the senior security interest in assets of Excell.

56. Franklin holds additional security interests in assets of Karma of Broward and Karma of Palm Beach.

57. The Vehicles were transferred to the possession of the Debtor either: (a) directly from Excell, or (b) from Excell first to either Karma of Broward or Karma of Palm Beach, and then to the Debtor.

58. Whether receiving possession of the Vehicles from Excell, Karma of Broward or Karma of Palm Beach, the Debtor did not acquire the Vehicles free and clear of liens because the Debtor is not a good faith or ordinary course purchaser under the Uniform Commercial Code.

59. In the event Karma of Broward or Karma of Palm Beach received Vehicles from Excell, and then transferred such Vehicles to the Debtor, the Karma Entities did not acquire the Vehicles in good faith or in the ordinary course from Excell.

60. The Karma Entities, like the Debtor, thus acquired the Vehicles from Excell subject to Franklin's senior security interest.

61. Franklin has not entered into any business transaction with the Debtor, nor has it executed a release with respect to the Debtor.

62. The Debtor is not a buyer in the ordinary course of business with respect to the Vehicles under Fla. Stat. §§ 679.320 and 679.201(9).

63. Neither Karma of Broward nor Karma of Palm Beach is a buyer in the ordinary course of business with respect to the Vehicles under Fla. Stat. §§ 679.320 and 679.201(9).

{2425/000/00549915}

30

64. Upon information and belief, in addition to the Debtor, FVP, Karma, Hi Bar and Edward Brown may claim liens or other interests in the Vehicles; however, such interests are subordinate, junior and inferior to the interest of Franklin in the Vehicles.

**COUNT I – DECLARATORY JUDGMENT**
**PURSUANT TO 28 U.S.C. § 2201**
**(Against All Defendants)**

65. Franklin re-alleges and incorporates paragraphs 1 through 64 above as if fully set forth herein.

66. There is a bona fide, actual, present, practical need for the Court to issue a declaration regarding the validity, priority and extent of liens and other interests in the Vehicles, and to conclude that any liens, ownership interests, security interests or other interests in the Vehicles that may be claimed by the Defendants are subordinate, junior and inferior to the interest of Franklin in the Vehicles (the "Declaration").

67. The Declaration deals with a present, ascertained or ascertainable state of facts or present controversy as to a state of facts.

68. There exists a case of actual controversy between the parties that is ripe for decision.

69. There is a substantial controversy between parties having adverse legal interests of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

70. The controversy is not conjectural, hypothetical, or contingent.

71. The controversy is real, immediate, and creates a definite threat of future injury.

72. Franklin is entitled to the Declaration.

**WHEREFORE**, Franklin respectfully request that the Court enter (1) a declaratory judgment determining any liens, ownership interests, security interests or other interests in the

{2425/000/00549915}

Vehicles that may be claimed by the Defendants are subordinate, junior and inferior to the interest

of Franklin in the Vehicles, and (2) awarding court costs and interest, and such other relief as the

Court deems just and proper.

**COUNT II – EQUITABLE SUBORDINATION**
**PURSUANT TO 28 U.S.C. § 510(c)**
**(Against Hi Bar)**

73.     Franklin re-alleges and incorporates paragraphs 1 through 64 above as if fully set

forth herein.

74.     Hi Bar has engaged in inequitable conduct.

75.     The misconduct has resulted in injury to Franklin.

76.     To the extent Hi Bar holds an allowed claim against the Debtor, subordination of

the claim to the claim of Franklin is not inconsistent with the provisions of either the Bankruptcy

Act or Bankruptcy Code.

**WHEREFORE**, Franklin respectfully requests that the Court enter an order (1)

subordinating any allowed claim of Hi Bar, including a claim secured by the Vehicles, to be

subordinated to the claim of Franklin under 11 U.S.C. § 510(c); and (2) awarding court costs and

interest, and such other relief as the Court deems just and proper.

[Remainder of Page Intentionally Left Blank]

{2425/000/00549915}

## ATTORNEY CERTIFICATION

**I HEREBY CERTIFY** that I am admitted to the Bar of the United States District Court for the Southern District of Florida and I am in compliance with the additional qualifications to practice in this Court set forth in Local Rule 2090-1(A).

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was furnished via Notice of Electronic Filing to those parties registered to receive electronic noticing in this case on January 20, 2023.

Respectfully submitted,

**SHRAIBERG PAGE, P.A.**
Attorneys for Franklin
2385 NW Executive Center Drive, #300
Boca Raton, Florida 33431
Telephone: 561-443-0800
Facsimile: 561-998-0047
bss@slp.law
pdorsey@slp.law

By:    /s/ Patrick Dorsey
      Bradley S. Shraiberg, Esq.
      Florida Bar. No. 121622
      Patrick Dorsey, Esq.
      Florida Bar. No. 0085841

{2425/000/00549915}

# EXHIBIT A

**Fill in this information to identify the case:**

Debtor 1    AUTO WHOLESALE OF BOCA, LLC

Debtor 2
(Spouse, if filing)

United States Bankruptcy Court for the:   Southern District of Florida

Case number   22-15627-EPK

Official Form 410

# Proof of Claim
04/22

Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.

**Filers must leave out or redact** information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

**Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy** (Form 309) **that you received.**

| Part 1: | Identify the Claim |
|---|---|

**1. Who is the current creditor?**

Franklin Capital Funding, LLC
Name of the current creditor (the person or entity to be paid for this claim)

Other names the creditor used with the debtor

**2. Has this claim been acquired from someone else?**

☑ No

☐ Yes.  From whom?

**3. Where should notices and payments to the creditor be sent?**

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

**Where should notices to the creditor be sent?**

Bradley Shraiberg, Esq. - Shraiberg Page, PA
Name

2385 NW Executive Center Dr., #300
Number        Street

Boca Raton          FL          33431
City                State              ZIP Code

Contact phone  (561) 443-0800

Contact email  (561) 998-0047

**Where should payments to the creditor be sent?** (if different)

Name

Number        Street

City                State              ZIP Code

Contact phone

Contact email

Uniform claim identifier for electronic payments in chapter 13 (if you use one):

__ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __

**4. Does this claim amend one already filed?**

☑ No

☐ Yes.  Claim number on court claims registry (if known) _____

Filed on _____
MM  / DD  / YYYY

**5. Do you know if anyone else has filed a proof of claim for this claim?**

☑ No

☐ Yes.  Who made the earlier filing? _____

Official Form 410                    **Proof of Claim**                    page 1

| Part 2: | Give Information About the Claim as of the Date the Case Was Filed |
|---|---|

**6. Do you have any number you use to identify the debtor?**

☑ No

☐ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: ____ ____ ____ ____

**7. How much is the claim?** $_____ 6,535,055.13 . **Does this amount include interest or other charges?**

☐ No

☑ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

**8. What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as health care information.

Promissory Note, related loan and security agreements and other contracts, and judgment
_____

**9. Is all or part of the claim secured?**

☐ No

☑ Yes.  The claim is secured by a lien on property.

**Nature of property:**

☐ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim.*

☑ Motor vehicle

☑ Other. Describe:    All assets now owned or hereafter acquired _____

**Basis for perfection:**    Filed UCC-1 and UCC-3 statements _____

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

**Value of property**:    $ UNKNOWN _____

**Amount of the claim that is secured:**    $_____ 0.00

**Amount of the claim that is unsecured:** $_____ 6,535,055.13 (The sum of the secured and unsecured amounts should match the amount in line 7.)

**Amount necessary to cure any default as of the date of the petition:**    $_____ 6,535,055.13

**Annual Interest Rate** (when case was filed) 22.00 %

☑ Fixed

☐ Variable

**10. Is this claim based on a lease?**

☑ No

☐ Yes. **Amount necessary to cure any default as of the date of the petition.**    $_____

**11. Is this claim subject to a right of setoff?**

☑ No

☐ Yes. Identify the property: _____

12. **Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?**

A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority.

☑ No

☐ Yes. *Check one:*

**Amount entitled to priority**

☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).

$_____

☐ Up to $3,350* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7).

$_____

☐ Wages, salaries, or commissions (up to $15,150*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4).

$_____

☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8).

$_____

☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5).

$_____

☐ Other. Specify subsection of 11 U.S.C. § 507(a)(___) that applies.

$_____

\* Amounts are subject to adjustment on 4/01/25 and every 3 years after that for cases begun on or after the date of adjustment.

## Part 3:  Sign Below

The person completing this proof of claim must sign and date it. FRBP 9011(b).

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.**

*Check the appropriate box:*

☑ I am the creditor.

☐ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date  09 / 30 / 2022
                   MM / DD / YYYY

_____
Signature

**Print the name of the person who is completing and signing this claim:**

| | |
|---|---|
| Name | Avrohom Baum |
| | First name          Middle name          Last name |
| Title | Authorized Representative |
| Company | Franklin Capital Funding, LLC |
| | Identify the corporate servicer as the company if the authorized agent is a servicer. |
| Address | 232300 Northwestern Hwy, Suite 200 |
| | Number          Street |
| | Farmington Hills          MI          48334 |
| | City          State          ZIP Code |
| Contact phone | 248-243-4350          Email  sbaum@winglakecp.com |

Official Form 410    **Proof of Claim**    page 3

## ATTACHMENT TO PROOF OF CLAIM
## OF FRANKLIN CAPITAL FUNDING, LLC

Franklin Capital Funding, LLC is a creditor of Auto Wholesale of Boca, LLC (the "Debtor") by virtue of the following transactions:

**A.      Franklin Claims Against Excell and Karma.**

Wing Lake Partners f/k/a Franklin Capital Group, LLC is a Delaware limited liability company that maintains its principal place of business in Oakland County, Michigan.  Wing Lake Partners f/k/a Franklin Capital Group, LLC, along with its affiliates, including, Franklin Capital Funding, LLC, has made and serviced loans to and entered into business transactions with a third party, EXCELL Auto Group, Inc. ("Excell").  For ease of reference, the Franklin entities will be referred to as "Franklin" herein.

On or about November 3, 2021, Excell executed and delivered to Franklin a Promissory Note evidencing a loan in the original principal amount of $6,000,000 ("Note").  A copy of the Note is attached as **Exhibit A.**

To further evidence the terms of the loan from Franklin, including all present and future loans and credit, Franklin and Excell executed a loan agreement dated November 3, 2021 ("Loan Agreement"). A copy of the Loan Agreement is attached as **Exhibit B.**

As security for the loan, Excell and its affiliates, Karma of Palm Beach, Inc. ("Karma of Palm Beach") and Karma of Broward, Inc. ("Karma of Broward") (together, "Karma" or the "Karma Entities") executed and delivered to Franklin a Continuing Security Agreement dated November 3, 2021 ("Security Agreement"), in which they granted Franklin a security interest in substantially all of their assets ("Collateral").  A copy of the Security Agreement is attached as **Exhibit "C".**

{2425/000/00545710}

Franklin perfected its security interests by filing UCC-1 and UCC-3 financing statements with the State of Florida as to Excell and the affiliates thereof, including Karma (collectively, "Financing Statements"). Copies of the Financing Statements are attached as **Composite Exhibit D**.

Concurrently with the making of its loan to Excell, Franklin purchased from Spin Capital, LLC, a New York limited liability company ("Spin"), and Spin sold and assigned to Franklin, the obligations of Excell and its affiliates owing to Spin under an Assignment of Obligations and Merchant Documents agreement ("Assignment Agreement"). A copy of the Assignment Agreement is attached as **Exhibit E**.

Excell defaulted under the Note. On or about March 18, 2022, the Circuit Court for Oakland County, Michigan, entered a confessed judgment against the Debtor, Karma of Palm Beach, Inc., Karma of Broward, Inc., Scott Zankl and Kristen Zankl in the amount of $5,922,000.77 (the "Judgment"). A copy of the Judgment, together with the exhibits thereto, is attached as **EXHIBIT "F"**.

A copy of an assignment and conveyance and certification of release between Franklin Capital Group, LLC and Franklin Capital Funding, LLC, is attached as **Exhibit "G"**.

Franklin is owed an aggregate amount not less than $5,860,512.75 under the Judgment as of the petition date, April 8, 2022, calculated as follows:

| Principal | $5,829,687.06 |
|---|---|
| Post-Judgment Interest | $641,265.57 |
| Attorney's Fees and Costs | $64,102.50 |
| | |
| **Total** | **$6,535,055.13** |

**B.      Franklin Claims Against the Debtor.**

{2425/000/00545710}

The Debtor asserts an ownership interest in various assets acquired from Excell and Karma. To any extent the Debtor possesses such ownership interests, the security interests of Franklin in such assets are superior to any legal or beneficial ownership interest of the Debtor, or any other interest, such as a lien or security interest, that is claimed by other creditors or third parties.

The assets Franklin asserts a security interest in include, but are not limited to:

a. Nineteen (19) automobiles, described in the Debtor's Form 206A/B Schedule as assets at Part 8.

b. Two (2) automobiles more fully described as a 2016 Ford Rhino Black, VIN 1FDUF4HT8GEB18666 and a 2018 Mclaren 720s Black, VIN, SBM14DCA7JW001804, which are currently in the possession of the Debtor at its business location at 5471 N. Dixie Highway, Boca Raton, Florida or other locations unknown to Franklin.

c. Two (2) automobiles more fully described as a 2015 Maclaren 650 S Convertible, Grey, VIN: SBM11FAA4FW003654 and a 2017 Lamborghini Huracan Red, VIN, ZHWUR2ZF8HLA08121, which are currently in the possession of Karma of Broward at its business in Broward County, Florida. Karma of Broward has possession of the vehicles, but the principal of the Debtor, Moshe Farache, took the titles and claims ownership for the Debtor.

d. Two (2) automobiles more fully described as a 2021 Rolls Royce Cullinan White, VIN SLATV8C09MU20497 and a 2021 Lamborghini Urus White, VIN ZPBUA1ZL1MLA12270, which are currently in the possession of third party, Edward Brown, and are located in Palm Beach County, Florida or some other location unknown to Franklin.

e. One (1) automobile more fully described as a 2021 Jeep Gladiator Black, VIN: 1C6HJJAG0ML564806 which came into the possession of Farache and the Debtor, and was sold on April 14, 2022 by the Debtor for $130,000. The funds are currently held in the trust account of Jay Farrow, Esq. and are reflected in the Debtor's Form 206A/B Schedule as assets at Part 1, Cash and Cash Equivalents.  Franklin alleges that its claims as to this vehicle are identical to all the other vehicles in which it claims relief, and seeks the funds from the sale of this vehicle to be turned to it.

The automobiles and vehicles referenced in the preceding paragraphs (a)–(e), together with the proceeds of the vehicle that are being held in trust by Jay Farrow, Esq., shall be collectively referred to herein as the "Vehicles".

{2425/000/00545710}

The Debtor may allege that it is an ordinary course purchaser of the Vehicles and other assets such that the security interests of Franklin do not attach pursuant to Fla. Stat. §§ 679.201(9) and 320(1). However, this argument is without merit.

Specifically, on or about July 13, 2021 the Debtor and its principal, Moshe Farache, filed a UCC-1 financing statement against Excell.

Upon information and belief, during the year 2021 Farache and the Debtor created false paperwork to misrepresent that, after Karma of Broward or Karma of Palm Beach purchased a vehicle: (a) it would sell to the vehicle to Excell, and (b) Excell would then either sell the vehicle to the Debtor or transfer it back to the Karma entity. The Debtor apparently believed that these transactions would give it a basis to assert that it either held a security interest in the subject vehicle or that it was an ordinary course purchaser.

Upon information and belief, the transactions referenced in the preceding paragraph were shams, without any actual money representing the market value of the vehicles being exchanged between the transacting parties.

Upon information and belief, at no time in 2021 for the over one hundred fabricated transactions where the Debtor purported to acquire ownership in the Karma Entities' inventory, did the Debtor or Farache ever take possession of any of the vehicles. At all times the vehicles remained on the Karma Entities' lots until ultimate customers bought the vehicles by paying funds directly to the Karma Entities. In other words, the Karma Entities sold the vehicles to the end customer.

Upon information and belief, transactions in 2022 were no different. Farache, with the forced acquiescence under duress of the principal of Excell and the Karma Entities, Scott Zankl, created false paperwork to show ostensibly that after one of the Karma Entities purchased a vehicle

{2425/000/00545710}

from a third party, the vehicle would then be sold to Excell, which would then either transfer it to the Debtor, or back to one of the Karma Entities, or from the Debtor to one of those entities. The 2022 transactions were without objective market value being paid or adequate consideration being exchanged between any of the parties and when compared to the value of the vehicles ostensibly transacted. All the paper transactions were done at the request of Farache who believed that these transactions would give his company, the Debtor, a legitimate claim to a security interest in the vehicles.

Upon information and belief, some or all of the Vehicles that are in the possession of the Debtor, and the two in the possession of Scott Zankl's entity that owns the Broward location, were purchased by the Karma Entities. After the purchase by either of the Karma Entities, false paperwork was exchanged at the request of the Debtor to ostensibly show that the Debtor was a purchaser for value. However, the applicable bank records and other documentary evidence reflect that the Debtor received millions of dollars from the Karma Entities when it should have been paying those sums if the false purchase and sale paperwork was true.

Upon information and belief, on or about April 1, 2022, Farache took possession of a number of automobiles of Excell and the Karma Entities, including the Vehicles.

The Debtor claims it is the owner of the Vehicles on its bankruptcy schedules; however, it does not hold a legal or beneficial interest therein.

Upon information and belief, when Scott Zankl and his wife, Kristen Zankl, surrendered the Vehicles to Farache and the Debtor on or about April 1, 2022, they did so under duress.

The Vehicles are subject to the security interests of Franklin, for which the Debtor was on inquiry notice under Article 9 of the Uniform Commercial Code due to the financing statements

{2425/000/00545710}

filed with the Florida Secured Transactions Registry. The Vehicles were wrongfully taken and converted by the Debtor against the superior interests in the property of Franklin.

Franklin is continuing to investigate the transactions between Excell, the Karma Entities and the Debtor. Franklin expressly reserves the right to allege additional theories regarding its secured claims, including: (a) assets may have been transferred from Excell to the Debtor when the Debtor was not a purchaser in the ordinary course of business, (b) assets may have been transferred from Excell to the Karma Entities, and subsequently from the Karma Entities to the Debtor, when neither the Karma Entities nor the Debtors were purchasers in the ordinary course of business, or (c) Franklin is a secured creditor by virtue of a constructive trust, equitable lien, or other equitable claim. *See, e.g.*, 34 Fla. Jur 2d Liens § 4 ("An equitable lien is superior to all persons except bona fide purchasers or subsequent valid lienholders, without notice."); 55A Fla. Jur 2d Trusts § 107 (a constructive trust can be employed, *inter alia*, on property that "has not come into the hands of a bona fide purchaser for value and in good faith."). Franklin may also hold claims for tortious interference with contract, tortious interference with business relationships, fraud, civil theft, civil conspiracy and similar remedies against the Debtor, Excell and the Karma Entities.

C.      **Reservations of Rights.**

Franklin is filing this claim as an unsecured claim due: (a) to uncertainty regarding the value of property of the estate at this time, and (b) the fact that certain of its causes of action against the Debtor may give rise to money damages. Franklin intends to pursue any unsecured deficiency claims it holds in this bankruptcy case, and preserves its right to do so. For the avoidance of doubt, Franklin is also filing a substantially identical proof of claim as a secured claim, and reserves its ability to assert any part or all of the claim is secured under 11 U.S.C. § 506 and applicable law.

Franklin expressly reserves the right to file, amend, update, revise and/or supplement this Proof of Claim in any respect.  Without limiting the foregoing sentence: (a) Franklin intends to pursue any unsecured deficiency claims it holds in this bankruptcy case, and reserves the right to amend the secured and unsecured portions of its claims; (b) Franklin reserves the right to assert postpetition additions to the claim, including postpetition fees, expenses and interest, pursuant to 11 U.S.C. § 506 and any applicable law; (c) Franklin reserves the right to assert any other claims arising from or relating to Judgment and underlying contracts with Excell and the Karma Entities; and (d) Franklin reserves the right to assert any and all other claims, costs and expenses, whether liquidated, unliquidated, known, or unknown.

The filing of this Proof of Claim is not should not be construed to be: (a) a waiver or release of Franklin's rights against any other entity or person liable for all or part of any claims described herein, (b) a waiver of the right to withdraw the reference regarding any proceedings in this case involving Franklin, (c) a waiver of any right to subordination in favor of Franklin, or (d) an election of a remedy which waives or otherwise affects any other remedy of Franklin.

{2425/000/00545710}

# EXHIBIT A

# PROMISSORY NOTE
## (Term Loan)

$6,000,000

Maturity Date: November 3, 2024                    Dated:  November 3, 2021

**FOR VALUE RECEIVED,** on or before the Maturity Date stated above "Maturity Date"), the undersigned ("Borrower") promises to pay to the order of Franklin Capital Group, LLC (including its successors and assigns, "Lender"), at its offices located at 32300 Northwestern Hwy, Farmington Hills, Michigan 48334, or at such other place as Lender may designate in writing, the principal sum of Six Million Dollars ($6,000,000), plus interest as hereinafter provided, in lawful money of the United States.

The unpaid principal balance outstanding from time to time under this Promissory Note (Term Loan) (this "Note") shall bear interest at twenty two percent (22%) per annum.  Interest shall be calculated on the basis of a 360 day year for the actual number of days elapsed.  Interest shall be paid monthly in arrears on the last day of each month in the amounts and on the dates set forth on Schedule A hereto.

This Note shall be repaid by consecutive monthly installments of principal on the last day of each month, in the amounts and on the dates set forth on Schedule A hereto (as may be adjusted from time to time as necessary to reflect any prepayments).  The unpaid principal balance and all accrued interest thereon shall be due and payable in full on the Maturity Date (or earlier upon acceleration).  Amounts repaid may not be readvanced.

The sums advanced hereunder shall be charged to a loan account in Borrower's name on Lender's books (the "Loan Account"), and Lender shall credit to such account the amount of each repayment hereunder.  Lender shall render Borrower, from time to time, a statement of account setting forth the Borrower's loan balance in said Loan Account which shall be presumed to be correct and accepted by and binding upon Borrower, unless Lender receives a written statement of exceptions within ten (10) days after such statement has been rendered to Borrower.  Such statement of account shall be prima facie evidence of the loan and amounts owing to Lender by Borrower hereunder.

Any payment made by mail will be deemed tendered and received only upon actual receipt (time being of the essence), at the address of Lender designated for such payment whether or not Lender has authorized payment by mail or any other manner.  Borrower hereby expressly assumes all risk of loss or liability resulting from non-delivery or delay in delivery of any payment transmitted by mail or in any other manner.

No delay or failure of Lender in exercising any right, remedy, power or privilege hereunder shall affect such right, remedy, power or privilege, nor shall any single or partial exercise thereof preclude the exercise of any other right, remedy, power or privilege.  No delay or failure of Lender at any time to demand strict adherence to the terms of this Note shall be deemed to constitute a course of conduct inconsistent with the Lender's right at any time, before

or after any Event of Default (defined below), to demand strict adherence to the terms of this Note.

Unless separately agreed in writing by Lender in its sole and absolute discretion, Borrower shall not be permitted to prepay any principal or interest outstanding under this Note.

Nothing herein contained, nor any transaction relating thereto, or hereto, shall be construed or so operate as to require the Borrower to pay, or be charged, interest at a greater rate than the maximum allowed by the applicable law relating to this Note. Should any interest or other charges, charged, paid or payable by the Borrower in connection with this Note, or any other document delivered in connection herewith, result in the charging, compensation, payment or earning of interest in excess of the maximum allowed by the applicable law as aforesaid, then any and all such excess shall be and the same is hereby waived by the holder, and any and all such excess paid shall be automatically credited against and in reduction of the principal due under this Note.

As of the date of this Note, Borrower represents that Borrower has not made any qualified dispositions of any of Borrower's property to (a) a trust established under the Qualified Dispositions in Trust Act (codified at MCL 700.1041 et. seq.) ("Act"), or (b) any other asset protection trust.

Borrower agrees that Borrower will not make or attempt any qualified dispositions or other distribution or transfers of Borrower's property into a trust established under the Act, or any other asset protection trust, without obtaining the prior written consent of Lender. Lender's consent to any such requested distribution shall be at the sole and absolute discretion of Lender. Any consent provided by Lender described in this paragraph shall only be applicable for property identified and disclosed in writing by Borrower to Lender. Lender's consent shall not be applicable to: (x) any other property of Borrower which is not disclosed to Lender in writing as part of the qualified disposition under the Act; or (y) any other qualified disposition of property under the Act previously attempted or attempted in the future by Borrower.

Borrower acknowledges and agrees that if Lender does not provide its written consent to Borrower for a qualified or other disposition under the Act, then such disposition by Borrower shall not be valid under the Act with respect to Lender.

Borrower agrees that Borrower has an obligation to disclose immediately in writing to Lender any qualified dispositions or attempted qualified dispositions to a trust under the Act.

Borrower agrees that this Note constitutes a written agreement described in the Act between a transferor and a creditor providing for and establishing the obligations of a transferor as stated in Subsection (11) of Section 5 of the Act.

The terms used in the previous five paragraphs shall have the meaning ascribed to them in the Act, unless otherwise defined herein.

Any of the following events shall constitute an "Event of Default" under this Note: (a) Borrower shall default in the payment of any sum which is or becomes due and payable under this Note, or (b) any representation or warranty made by Borrower in this Note or in any other

2

Bodman_18055842_4

Loan Document or other agreement, certificate or document furnished in connection with this Note shall prove untrue in any material respect, or (c) Borrower shall fail to observe or perform any other condition, covenant or agreement of Borrower set forth in this Note or in any other Loan Document, or (d) Borrower or any guarantor of all or any portion of the indebtedness under this Note (each a "Guarantor") shall default in the performance of any of its obligations to Lender, and such default shall not be cured or remedied by Borrower or such Guarantor within any applicable period of grace or cure with respect thereto, or (e) the default in the payment of any other obligation of Borrower or any Guarantor for borrowed money, or in the observance or performance of any conditions, covenants or agreements related or given with respect to any obligations for borrowed money (including under or in respect of any Existing Indebtedness (as defined in the Letter Agreement) notwithstanding the consolidation of such Existing Indebtedness into the Term Loan (as defined in the Letter Agreement)) sufficient to permit the holder thereof to accelerate the maturity of such obligation, including, without limitation, obligations of Borrower or any Guarantor to Lender, or (f) a judgment for the payment of money in excess of the sum of Ten Thousand Dollars ($10,000) in the aggregate shall be rendered against Borrower or any Guarantor and such judgment shall remain unpaid, unvacated, unbonded or unstayed by appeal or otherwise for a period of thirty (30) consecutive days from the date of its entry and such judgment is not covered by insurance from a solvent insurer who is defending such action without reservation of rights, or (g) Borrower or any Guarantor (i) shall admit in writing the inability to pay its or his debts as they become due and payable; or (ii) shall make an assignment for the benefit of creditors; or (iii) shall be adjudicated a bankrupt; or (iv) shall file a voluntary petition in bankruptcy or effect a plan or other arrangement with creditors; or (v) shall have applied for, or permitted the appointment of, a receiver or trustee or custodian for all or substantially all of the property or assets of such Borrower or Guarantor, or a trustee, receiver or custodian shall have been appointed for all or substantially all of the property or assets of such Borrower or Guarantor who shall not have been discharged within sixty (60) days after the date of his appointment, or (h) Borrower or any Guarantor shall dissolve or merge with or into any entity not theretofore affiliated with Borrower or Guarantor, as applicable, or Borrower or any Guarantor shall dispose of all or any material portion of its assets or equity, or (i) any Guarantor shall deny its liability or obligations under its guaranty or shall notify the Lender of its intention to attempt to cancel, revoke or terminate its guaranty, or shall fail to observe or comply with any term, covenant, condition and requirement under its guaranty, or (j) any suit or proceeding is filed against Borrower or any Guarantor which, if adversely determined to Borrower or such Guarantor, would have, as determined by Lender in its sole discretion, a material adverse effect on such Borrower or Guarantor, which suit is not dismissed within sixty (60) days of its filing, or (k) Borrower or any Guarantor (if a natural person) shall die or shall be determined mentally incapacitated by a court of competent jurisdiction, or (l) any breach or default by Borrower of any material term or condition under any swap, interest protection agreement, derivatives agreement, or similar agreements now or hereafter entered into by Borrower with Lender or any affiliate of Lender, or (m) the occurrence of any event (including any change, for any reason whatsoever, in the management, ownership or control of Borrower) which Lender determines, in its sole discretion and judgment, would have a material adverse effect upon Borrower and/or its ability to pay or perform any of its liabilities or obligations under this Note or (n) Borrower shall terminate the Consulting Engagement (as defined in the Letter Agreement) or shall otherwise breach any of its obligations with respect thereto or (o) the Key Man Life Insurance Policy (as defined in the Letter Agreement) ceases to be in full force and effect or (p) within 90 days from

3

Bodman_18055842_4

the date hereof, the Key Man Life Insurance Policy shall not have been issued and subject to a first priority collateral assignment in favor of Lender (subject to documentation acceptable to Lender).

Upon the occurrence of an Event of Default: (a) the entire unpaid principal balance and all accrued interest shall at the sole option of Lender be immediately due and payable, without presentment, demand, protest or any further notice or any other formalities of any kind, all of which are hereby expressly and irrevocably waived, together with (to the extent permitted under applicable law) the costs, attorneys' fees, and outside consultants' fees reasonably incurred by Lender in collecting or enforcing payment, (b) Lender may proceed to protect and enforce all or any of its rights, remedies, powers and privileges under this Note by action at law, suit in equity or other appropriate proceedings, and (c) any commitment or obligation, if any, on the part of Lender to make loans or otherwise extend credit to or in favor of Borrower shall immediately terminate. Upon the occurrence and at any time during the continuance or existence of an Event of Default under subsection (g) of the preceding paragraph, then the Obligations and all indebtedness then outstanding thereunder shall automatically become immediately due and payable without any notice by Lender to Borrower and any commitment or obligation, if any, on the part of Lender to make loans or otherwise extend credit to or in favor of Borrower shall immediately terminate. Further, upon the occurrence or at any time during the continuance or existence of any Events of Default hereunder, Lender may collect, deal with and dispose of all or any part of any security in any manner permitted or authorized by the Michigan Uniform Commercial Code or other applicable law (including public or private sale), and after deducting expenses (including, without limitation, reasonable attorneys' fees and expenses), Lender may apply the proceeds thereof in part or full payment of any of the Obligations, whether due or not, in any manner or order Lender elects.

Borrower hereby grants to Lender a security interest in Lender's own indebtedness or liability to Borrower, if any, however evidenced, including a security interest in all of Borrower's bank deposits, instruments, negotiable documents and chattel paper which at any time are in the possession or control of Lender, as further security for repayment of the Obligations; and the Borrower hereby grants to Lender all rights and privileges afforded a secured party under the Michigan Uniform Commercial Code.

All payments other than scheduled payments paid hereunder shall, at the option of Lender, first be applied against any and all fees, costs and expenses (including expenses of collection), then against accrued interest, and the balance against principal in inverse order of maturity. Acceptance by Lender of any payment in an amount less than the amount then due shall be deemed an acceptance on account only, and the failure to pay the entire amount then due shall be and continue to be an Event of Default.

Borrower hereby waives presentment for payment, demand, notice of non-payment, notice of protest and protest of this Note, diligence in collection or bringing suit.

Borrower's obligations hereunder are cross-collateralized and cross-defaulted with all other indebtedness owing to Lender by Borrower.

4

No delay or omission of the Lender to exercise any right under this Note impairs that right nor can it be construed to waive any Event of Default or acquiesce in any Event of Default, and the making of an advance notwithstanding the existence of an Event of Default or the inability of the Borrower to satisfy the conditions precedent to such advance does not constitute a waiver or acquiescence. Any single or partial exercise of any right does not preclude any other or further exercise of it or the exercise of any other right, and no waiver, amendment or other variation of the terms of this Note is valid unless in writing signed by Borrower and Lender, and then only to the extent that such writing specifies. All remedies contained in this Note or afforded by law are cumulative and all are available to the Lender until this Note has been paid in full.

The Borrower must reimburse the Lender for any costs, internal charges and out-of-pocket expenses (including attorneys' fees and time charges of attorneys for the Lender, who may be employees of the Lender) paid or incurred by the Lender in connection with the preparation, review, execution, delivery, amendment, modification, administration, collection and enforcement of this Note. The Borrower further indemnifies the Lender, its directors, officers and employees against all losses, claims, damages, penalties, judgments, liabilities and expenses (including without limitation all expenses of litigation or preparation for litigation whether or not the Lender is a party) which any of them pay or incur arising out of or relating to this Note or the direct or indirect application or proposed application of the proceeds of this Note.

This Note, if executed by more than one Person, shall be the joint and several obligation of all of such Persons, and shall be binding upon each Borrower and its heirs, personal representatives, successors and assigns, whether expressed or not. The liability of each Borrower shall be absolute and unconditional, without regard to the liability of any other party hereto.

The terms of this Note bind and benefit the Borrower and the Lender and their respective successors and assigns, except that the Borrower shall not assign its rights or obligations under this Note. The Lender may at any time sell to one or more Persons participating interests in this Note. The Lender may at any time assign to one or more Persons all or any part of its rights and obligations under this Note, and the Borrower releases the Lender for the amount so assigned.

This Note is to be construed in accordance with the internal laws (but not the law of conflicts) of the State of Michigan. The Borrower irrevocably submits to the non-exclusive jurisdiction of any United States federal court sitting in the Eastern District of Michigan or any state court in Oakland County in the State of Michigan in any action or proceeding arising out of or relating to this Note, and the Borrower irrevocably agrees that all such claims may be heard and determined in any such court and irrevocably waives any present and future objection it may have as to the venue of any action or proceeding brought in that court, or that that court is an inconvenient forum. Any suit brought by Borrower related to this Note or the Loan Documents may only be brought in the United States federal court sitting in the Eastern District of Michigan or in a state court in Oakland County in the State of Michigan. Nothing herein shall limit the right of the Lender to bring any action or proceeding against the Borrower in the courts of any other jurisdiction if necessary or convenient to effect the relief sought.

5

Lender hereby notifies Borrower that pursuant to the requirements of the USA PATRIOT Act (Title III of Pub. L. 107-56, signed into law October 26, 2001) (the "Act"), and the Lender's policies and practices, Lender is required to obtain, verify and record certain information and documentation that identifies the Borrower, which information includes the name and address of the Borrower and such other information that will allow Lender to identify the Borrower in accordance with the Act.

## DEFINITIONS

As used in this Note, the following terms shall have the given meaning:

"Consulting Obligations" shall mean the obligations of Borrower arising in respect of the Consulting Engagement.

"Letter Agreement" shall mean the Letter Agreement, dated as of the date hereof between Borrower and Lender (as it may be amended, restated, supplemented or otherwise modified from time to time).

"Loan Documents" shall mean, collectively, this Note, any other promissory note evidencing other loans made by Lender to Borrower, the Letter Agreement, any guaranties, mortgage, security agreement, any swap agreements, other interest rate protection agreements, derivative agreements, any certificates (including, for the avoidance of doubt, the Perfection Certificate, dated as of the date hereof and executed by Company and each of the Guarantors), and any other document, instrument or agreement evidencing, securing or relating to this Note, together with any and all modifications and amendments to any of the foregoing.

"Obligations" shall mean, collectively, (i) Borrower's obligations for the payment of all sums advanced or to be advanced hereunder, together with interest on the outstanding principal balance of such sums and with any and all other sums payable by Borrower to the Lender pursuant to this Note or any other Loan Documents, along with Borrower's obligation for the payment of any letters of credit issued by Lender and payment and performance of all of the warranties, representations, covenants and agreements to be paid, fulfilled, observed and performed by Borrower under each Loan Document to which Borrower is a party and (ii) the Consulting Obligations.

"Person" shall mean any corporation, natural person, firm, limited liability company, joint venture, partnership, trust, unincorporated organization, enterprise, government or any department or agency of any government.

**LENDER AND BORROWER KNOWINGLY AND VOLUNTARILY WAIVE ANY RIGHT EITHER OF THEM TO HAVE TO A TRIAL BY JURY IN ANY PROCEEDING (WHETHER SOUNDING IN CONTRACT OR TORT) WHICH IS IN ANY WAY CONNECTED WITH THIS NOTE, ANY RELATED AGREEMENT, OR THE RELATIONSHIP ESTABLISHED UNDER IT.**

[remainder of page intentionally left blank]

6

IN WITNESS WHEREOF, the undersigned have executed this Note as of the date first written above.

BORROWER:

EXCELL AUTO GROUP, INC.

By:_____

Name: Scott Zankl
Title: Vice President

[Signature Page to Promissory Note (Term Loan) (18055842)]

## Schedule A

| Payment Date | Interest | Principal |
|---|---|---|
| November 30, 2021 | $99,000.00 | $41,555.66 |
| December 31, 2021 | $109,238.15 | $31,317.52 |
| January 31, 2022 | $108,663.99 | $31,891.67 |
| February 28, 2022 | $108,079.31 | $32,476.35 |
| March 31, 2022 | $107,483.91 | $33,071.75 |
| April 30, 2022 | $106,877.60 | $33,678.07 |
| May 31, 2022 | $106,260.16 | $34,295.50 |
| June 30, 2022 | $105,631.41 | $34,924.25 |
| July 31, 2022 | $104,991.14 | $35,564.53 |
| August 31, 2022 | $104,339.12 | $36,216.54 |
| September 30, 2022 | $103,675.15 | $36,880.51 |
| October 31, 2022 | $102,999.01 | $37,556.66 |
| November 30, 2022 | $102,310.47 | $38,245.20 |
| December 31, 2022 | $101,609.31 | $38,946.36 |
| January 31, 2023 | $100,895.29 | $39,660.37 |
| February 28, 2023 | $100,168.18 | $40,387.48 |
| March 31, 2023 | $99,427.75 | $41,127.92 |
| April 30, 2023 | $98,673.73 | $41,881.93 |
| May 31, 2023 | $97,905.90 | $42,649.77 |
| June 30, 2023 | $97,123.99 | $43,431.68 |
| July 31, 2023 | $96,327.74 | $44,227.93 |
| August 31, 2023 | $95,516.89 | $45,038.77 |
| September 30, 2023 | $94,691.18 | $45,864.48 |
| October 31, 2023 | $93,850.33 | $46,705.33 |
| November 30, 2023 | $92,994.07 | $72,561.59 |
| December 31, 2023 | $91,663.77 | $73,891.89 |
| January 31, 2024 | $90,309.09 | $75,246.58 |
| February 28, 2024 | $88,929.57 | $76,626.10 |
| March 31, 2024 | $87,524.76 | $78,030.91 |
| April 30, 2024 | $86,094.19 | $79,461.47 |
| May 31, 2024 | $84,637.40 | $80,918.27 |
| June 30, 2024 | $83,153.89 | $82,401.77 |
| July 31, 2024 | $81,643.20 | $83,912.47 |
| August 31, 2024 | $80,104.80 | $85,450.86 |
| September 30, 2024 | $78,538.20 | $87,017.46 |
| October 31, 2024 | $76,942.88 | $88,612.78 |

Bodman_18055842_4

# EXHIBIT B

November 3, 2021

Excell Auto Group, Inc.
1001 Clint Moore Road
Boca Raton, FL 33487

Ladies and Gentlemen:

This letter (the "Agreement") constitutes an agreement by and between Franklin Capital Group, LLC (including its successors and assigns, "Lender"), and Excell Auto Group, Inc., a Florida corporation (herein called "Company"), pertaining to certain loans and other credit which Lender has made or may from time to time hereafter make available to Company.  Capitalized terms used but not defined herein shall have the meanings assigned to such terms in the Promissory Note (Term Loan), dated as of the date hereof, made by Company to Lender (as it may be amended, restated, supplemented or otherwise modified from time to time, the "Term Note" and, together with any future loans evidenced by a note, the "Term Notes"), in respect of the term loan made to Company on the date hereof, in an aggregate principal amount equal to $6,000,000 (the "Term Loan" and, together with any future loans made by Lender to Borrower, the "Term Loans").

In consideration of the Obligations and all present and future loans and credit from time to time made available by Lender to or in favor of Company, and in consideration of all present and future liabilities, obligations and indebtedness of Company to Lender, howsoever created, evidenced, existing or arising, whether direct or indirect, absolute or contingent, joint or several, now or hereafter existing or arising, or due or to become due, and all extensions and/or renewals thereof (herein collectively called the "Liabilities"), Company covenants and agrees as follows:

1.     As used in this Agreement, the following terms shall have the following respective meanings set forth below:

"**Capital Expenditure**" shall mean any expenditure by a Person for (a) an asset which will be used in a year or years subsequent to the year in which the expenditure is made and which asset is properly classified in relevant financial statements of such Person as equipment, real property, a fixed asset or a similar type of capitalized asset in accordance with GAAP (as defined below), or (b) an asset relating to or acquired in connection with an acquired business, and (c) any and all acquisition costs related to (a) or (b) above.

"**Capital Securities**" shall mean shares, interests, participations or other equivalents (however designated, whether voting or non-voting) of capital, whether now outstanding or issued or acquired after the date hereof, including common shares, preferred shares, membership interests in a limited liability company, limited or general partnership interests in a partnership or any other equivalent of such ownership interest.

"**Consulting Engagement**" shall mean Company's engagement of Franklin Capital Management, LLC ("Franklin Management") as a consultant (the "Consulting Engagement") under that certain engagement letter, dated as of the date hereof, between Franklin Management and Company (or such other agreement evidencing such Consulting Engagement).

"**Corporate Guarantor**" shall mean any Guarantor that is not an Individual Guarantor. As of the date hereof, the Corporate Guarantors are Karma of Palm Beach, Inc., a Florida corporation ("Karma Palm Beach") and Karma of Broward, Inc., a Florida corporation ("Karma Broward").

"**Guaranty**" shall mean a guaranty in form and substance satisfactory to Lender pursuant to which a Person guaranties payment of all or any portion of the Liabilities.

"**Individual Guarantor**" shall mean each Guarantor that is a natural person. As of the date hereof, the Individual Guarantors are Scott Zankl and Kristen Zankl.

"**Key Man Life Insurance Policy**" shall mean a "key man life insurance policy" insuring the life of Scott Zankl, to be in the face amount of at least $5,000,000 (or such lesser amount as agreed by Lender in its sole discretion) to be obtained by Company and collaterally assigned to Lender within 30 days of the date hereof.

"**Loan Documents**" shall mean, collectively, this Letter Agreement, the Note, any other promissory notes evidencing other loans made by Lender to Company, any guaranties, mortgage, security agreement, any swap agreements, other interest rate protection agreements, derivative agreements, any certificates (including, for the avoidance of doubt, the Perfection Certificate, dated as of the date hereof and executed by Company and each of the Guarantors), and any other or document, instrument or agreement evidencing, securing or relating to this Agreement, together with any and all modifications and amendments to any of the foregoing.

"**Material Adverse Effect**" shall mean a material, adverse effect on (i) the business, property or condition (financial or otherwise) of Company, any subsidiary of Company or any Guarantor; (ii) Company's, any subsidiary's or any Guarantor's ability to perform its obligations hereunder or any other Loan Document to which it is a party, or (iii) the validity or enforceability of this Agreement or any other Loan Document.

"**Organizational Documents**" shall mean, with respect to any Person, its articles of incorporation, articles of organization, bylaws, operating agreement, partnership agreement, declaration of trust or other trust agreement, or such other applicable organizational documents, including all of the exhibits thereto.

"**Permitted Affiliate Transactions**" shall mean any transaction between Company and any of its affiliates (including, for the avoidance of doubt, Karma Palm Beach and Karma Broward) for the sale and transfer of any motor vehicle; provided that (a) immediately prior to such sale and transfer, all necessary steps shall have been taken such that Lender maintains a valid, enforceable, perfected first priority secured interest in such motor vehicle and the proceeds thereof, (b) such sale is properly documented in form and substance acceptable to Lender, and (c) contemporaneous with the closing of such sale, the sale proceeds are deposited into an account maintained by Company that is subject to an account control agreement (satisfactory to Lender) in favor of Lender.

2

2.      Each loan or other extension of credit made by Lender to or otherwise in favor of Company shall be evidenced by and subject to a promissory note or other agreement or evidence of indebtedness acceptable to Lender, and executed and delivered by Company unto Lender.

3.      Company represents and warrants to Lender, and such representations and warranties shall be deemed to be continuing representations and warranties during the entire life of this Agreement, and thereafter, so long as any Liabilities remain unpaid and outstanding:

(a)     <u>Organization and Existence</u>.

    (i)     As of the date hereof, neither Company nor any Corporate Guarantor has any subsidiaries.

    (ii)    Company and each of its subsidiaries  (i) is duly organized, validly existing and in good standing as a corporation, general partnership, limited partnership or limited liability company, as applicable, under the laws of the state in which it is incorporated, organized, or formed; (ii) has all necessary power and authority and full legal right to own its property and to carry on its businesses; and (iii) has all necessary power and authority, and full legal right, to enter into this Agreement and each of the other Loan Documents to which it is a party, and to perform, observe and comply with all of its agreements and obligations under this Agreement and the other Loan Documents;

    (iii)   Each Corporate Guarantor  (i) is duly organized, validly existing and in good standing as a corporation, general partnership, limited partnership or limited liability company, as applicable, under the laws of the state in which it is incorporated, organized, or formed; (ii) has all necessary power and authority and full legal right to own its property and to carry on its businesses; and (iii) has all necessary power and authority, and full legal right, to enter into this Agreement and each of the other Loan Documents to which it is a party, and to perform, observe and comply with all of its agreements and obligations under this Agreement and the other Loan Documents;

    (iv)    Company and each Corporate Guarantor has provided Lender with true, correct and complete copies of its Organizational Documents.  All of the Organizational Documents are unmodified since the date delivered to Lender and are in full force and effect;

(b)     <u>Due Authorization</u>.

    (i)     The execution and delivery by Company of this Agreement and the other Loan Documents to which Company is a party, the execution and delivery by each Corporate Guarantor of each of the Loan Documents to which it is a party, the performance by Company and each Corporate Guarantor of all of its agreements and obligations under such documents and the making of the borrowings contemplated by this Agreement have been duly

3

Bodman_18055845_4

authorized by all necessary action on the part of Company and such Corporate Guarantor , as applicable, and do not and will not (i) contravene any provision of its Organizational Documents; (ii) conflict with, or result in a breach of the terms, conditions or provisions of, or constitute a default under, or result in the creation of any lien (other than those in favor of Lender pursuant to the Loan Documents) upon any of its property under any agreement, indenture, mortgage or other instrument to which it is a party or by which it is bound or affected; (iii) violate or contravene any provision of any law, rule or regulation (including, without limitation, the Regulations of the Board of Governors of the Federal Reserve System) or any order, ruling or interpretation thereunder or any decree, order or judgment of any court or governmental or regulatory authority, bureau, agency or official binding on it; or (iv) require any waivers, consents or approvals by any of its creditors or trustees for its creditors.

(ii)     Except as to matters which Company or a Corporate Guarantor has procured, obtained or performed prior to or concurrently with Company's execution and delivery of this Agreement, no approval, consent, order, authorization or license by, or giving notice to, or taking any other action with respect to, any governmental or regulatory authority or agency is required under any provision of any applicable law for (i) Company's execution and delivery of this Agreement and the other Loan Documents to which it is a party or Company's performance of its obligations under this Agreement and the other Loan Documents and the borrowings contemplated by this Agreement, (ii) the execution and delivery by any Guarantor of any Loan Documents to which it is a party or such Guarantor's performance of its obligations under such other Loan Documents, or (iii) the continuing legality, validity, binding effect, enforceability or admissibility in evidence of this Agreement and the other Loan Documents.

(c)     <u>Material Adverse Effect</u>. There are no actions, suits or proceedings pending or, to the actual knowledge of Company, threatened against Company, any subsidiary or any Guarantor, which could, if determined adversely to Company, such subsidiary or such Guarantor, reasonably be expected to have a Material Adverse Effect upon Company, such subsidiary or such Guarantor.

(d)     <u>Loan Documents</u>. Each Loan Document to which Company or any Guarantor is a party constitutes the legal, valid and binding obligation of Company and such Guarantor, enforceable against Company and such Guarantor in accordance with its terms (except as such enforceability may be limited by bankruptcy, insolvency or similar laws generally affecting the enforcement of creditor's rights).

(e)     <u>No Default</u>. No event has occurred and is continuing, and no condition exists, which constitutes (or would, with the provision of notice or the passage of time, or both, constitute) an Event of Default. Neither Company nor any Guarantor has

4

any right to rescind, cancel or terminate this Agreement or any other Loan Document.

(f)     Financial Statements. All of the financial statements of Company, each subsidiary of Company, and each Guarantor delivered to Lender in connection with the transactions contemplated by the Loan Documents have been prepared in accordance with generally accepted accounting principles consistently applied ("GAAP"), and fairly present in all material respects the financial condition of Company, such subsidiary and such Guarantor as of the dates on which the same were prepared.  There are no material liabilities or obligations, secured or unsecured (whether accrued, absolute or actual, contingent or otherwise), not reflected in such financial statements, which, in accordance with GAAP, should have been reflected therein.  From the date of the most recent financial statements provided to Lender until the date hereof, there has been no materially adverse change in the financial condition of Company, any subsidiary of Company or any Guarantor.

(g)     Tax Returns. Each of Company and its subsidiaries, and each Guarantor has filed all federal, state and other tax returns required to be filed in respect of all taxing periods prior to the date of this Agreement (or has been granted extensions with respect to same), and has paid or made reasonable provision, in accordance with applicable laws for the payment of all taxes (if any) which have or may become due and payable pursuant to any such returns (or pursuant to any matters raised by audits).  Each of Company, each of its subsidiaries and each Guarantor has paid or caused to be paid all real and personal property taxes and assessments and other governmental charges lawfully levied or imposed on or against Company, such subsidiary or Guarantor or its property (other than those presently payable without payment of interest or penalty and those which are subject to contests initiated in good faith and diligently prosecuted and as to which adequate reserves have been provided).

(h)     Solvency. Company does not intend to, and does not believe that it will, incur debts beyond its ability to pay as they mature, taking into account the timing of and amounts of cash to be received by it and the timing of the amounts of cash to be payable on or in respect of its indebtedness.  Company is solvent, and, giving effect to the closing of the transactions contemplated by this Agreement and the disbursement of the proceeds of any loans from Lender, shall remain solvent.

(i)     Encumbrances. There are no security interests in, or liens, mortgages, or other encumbrances on, any of Company's or any Guarantor's property or assets, except Permitted Liens (as defined below).

(j)     Inventory.  Company has provided Lender with (i) a true and correct list of all inventory owned by Company, Karma Palm Beach and Karma Broward, (ii) copies of all existing floor plans or other financing documents or credit facilities with respect to which any inventory of Company, Karma Palm Beach or Karma

5

Broward is subject to a lien in favor of a third party and (iii) all physical titles of all vehicles owned by Company.

(k)     Merchant Cash Advances. Neither Company nor any Guarantor is party to any agreement with any merchant cash advance company or similar party other than those disclosed to Lender in writing, including copies of all documents and agreements arising under or in connection therewith.

4.     So long as Lender shall have any commitment or obligation, if any, to make or extend loans, advances or other credit to or in favor of Company, and so long as any Liabilities remain unpaid and/or outstanding, Company covenants and agrees that it shall and it shall cause each of its subsidiaries, each Corporate Guarantor and each of its subsidiaries to:

(a)     Furnish to Lender, or cause to be furnished to Lender, in each case, in form and detail and on a reporting basis satisfactory to Lender, the following:

(i)     as soon as available, and in any event not later than 60 days after and as of the end of each fiscal year of Company, consolidated and consolidating financial statements of Company and its consolidated subsidiaries for and as of the end of each such fiscal year, containing the consolidated and consolidating balance sheets of Company and its consolidated subsidiaries as of the close of each such fiscal year, consolidated and consolidating statements of income and retained earnings and a statement of cash flows of Company and its consolidated subsidiaries for each such fiscal year, and such other comments and financial details as are usually included in similar reports. Such financial statements shall be prepared in accordance with GAAP, shall be in such detail as Lender may reasonably require, and shall be audited by independent certified public accountants of recognized standing selected by Company and acceptable to Lender;

(ii)     as soon as available, and in any event not later than 15 days after and as of the end of each month of each fiscal year of Company, consolidated and consolidating financial statements of Company and its consolidated subsidiaries, containing the balance sheet of Company and its consolidated subsidiaries as of the end of each such month, consolidated and consolidating statements of income and retained earning and a statement of cash flows for Company and its consolidated subsidiaries for such month and for the portion of the fiscal year of Company through the end of the month then ending, and such other comments and financial details as are usually included in similar reports. Such financial statements shall be prepared in accordance with GAAP, shall be in such detail as Lender may reasonably require, and shall be certified as to accuracy and fairness by the chief executive or chief financial officer of Company (or, if none exists, such other officer with similar duties and responsibilities and familiarity with Company's finances and operations);

6

(iii)    simultaneous with the delivery to Lender of the respective financial statements required in sub-sections (i) and (ii) above, a compliance certificate in form and detail satisfactory to Lender, certified by the chief financial officer of such Company, certifying that, as of the date thereof, to the best of each such person's knowledge, no Default or Event of Default shall have occurred and be continuing or exist, or if any Default or Event of Default shall have occurred and be continuing or exist, specifying, in detail, the nature and period of existence thereof and any action taken or proposed to be taken by Companies in respect thereof;

(iv)    as soon as available, and in any event within 15 days after and as of the end of each month, agings of Company's and its subsidiaries' accounts receivable and accounts payable and an inventory report of Company and its subsidiaries for and as of the end of each such month, each in form satisfactory to Lender, certified by a duly authorized officer of Company and its subsidiaries;

(v)    (a) within 15 days after filing, the federal income tax returns for Company and each of its consolidated subsidiaries, including all schedules thereto and (b) within 15 days after filing, the federal payroll tax returns for Company and each of its consolidated subsidiaries, including all schedules thereto;

(vi)    within 15 days after and as of the end of each month of each fiscal year of Company, statements for each bank account maintained by Company;

(vii)    (A) as soon as available, and in any event within 60 days after each year, a personal financial statement for each Individual Guarantor as of the last day of the preceding year, in form acceptable to Lender and certified by such Individual Guarantor as to the accuracy and completeness, and (B) within 10 days of filing, a copy of each Individual Guarantor's federal income tax return, including all schedules thereto; and

(viii)    promptly, at such times as Lender may reasonably require, in form and detail satisfactory to Lender, such other information and reports as may be required under the terms of any Loan Documents or as Lender may reasonably request from time to time.

(b)    Promptly inform Lender of the occurrence of any Event of Default, or any condition or event which, with the giving of notice or the passage of time, or both, would constitute an Event of Default (any such condition or event, a "Default"), under any of the Liabilities or Loan Documents, and of any condition or event which has had or could have a material adverse effect upon Company's business, properties, financial condition or its ability to observe, perform or comply with its liabilities and obligations hereunder or otherwise in respect of any of the Liabilities or the Loan Documents.

7

(c)    (i) Keep proper books of record and account in which full and correct entries shall be made of all of its financial transactions and its assets and businesses so as to permit the presentation of financial statements (including, without limitation, those financial statements to be delivered to Lender pursuant to Section 4(a) above) prepared in accordance with GAAP; provided that (x) Lender, in its sole discretion, may require Company to employ a certified public accountant acceptable to Lender to maintain such books and records and (y) within 90 days from the date of this Agreement, such books and records shall be maintained in QuickBooks Online and (ii) permit Lender, or its attorneys, accountants or other representatives, upon reasonable advance notice (unless a Default or Event of Default has occurred and is continuing, in which case such notice shall not be required), to visit all of Company's and each of its consolidated subsidiaries' offices and to make inquiries as to Company's and such subsidiary's financial matters with their respective directors, members, managers, officers, employees, and independent certified public accountants; and permit Lender, or its attorneys, accountants or other representatives, to inspect, audit and examine Company's and each of its respective consolidated subsidiaries' books, accounts, records, ledgers and assets and properties of every kind and description, wherever located (including, for the avoidance, as maintained in QuickBooks Online), at all reasonable times.  Company shall reimburse Lender for all reasonable costs and expenses incurred by Lender in connection with such inspections, examinations and audits, and to pay to Lender such fees as Lender may reasonably charge in respect of such inspections, examinations and audits, or as otherwise mutually agreed upon by Company and Lender.

(d)    Maintain insurance of the type and in the manner set forth in Section 4(k) of the Continuing Security Agreement, dated as of the date hereof, between Company and Lender and the other debtors party thereto from time to time.

(e)    Preserve and maintain its existence and all of its rights, franchises and privileges.

(f)    Comply with all applicable laws, and will promptly notify Lender in the event that Company or any of their respective subsidiaries receives any notice, claim or demand from any governmental authority asserting the violation of any applicable legal requirement which could reasonably be expected to have a material adverse effect upon Company or any of its subsidiaries.

(g)    Obtain all such approvals, consents, orders, authorizations and licenses from, give all such notices promptly to, register, enroll or file all such agreements, instruments or documents promptly with, and promptly take all such other action with respect to, any governmental authority, regulatory agency or official or any central bank or other fiscal or monetary authority, agency or official, as may be required from time to time under any provision of any applicable law:

(i)    for the performance by Company, such Corporate Guarantor or such subsidiary of any of its agreements or obligations under the Term Note, this Agreement or any other Loan Document to which it is a party or for

8

the payment by Company, such Corporate Guarantor or such subsidiary to Lender of any sums which shall become due and payable by it thereunder;

(ii)    to ensure the continuing legality, validity, binding effect or enforceability of the Term Note or any other Loan Document;

(iii)   to continue the proper operation of the business and operations of Company, each Corporate Guarantor and each of their respective subsidiaries.

(h)     (i) Cause any newly formed or acquired direct or indirect subsidiary to (x) become a Guarantor and (y) cause Lender to have a first priority security interest in all of its assets, and take all such actions requested by Lender in order to perfect Lender's security interest therein and (ii) without limiting the foregoing clause (i), execute, acknowledge and deliver, or cause to be executed, acknowledged and delivered, any and all further assurances reasonably requested by Lender from time to time in order to give full effect to any of the Loan Documents.

(i)     Use the proceeds of any loans from Lender or the proceeds of any collateral securing the Liabilities only for (i) working capital, (ii) general corporate purposes, (iii) the payments of costs, fees and expenses in connection with this Agreement, the other Loan Documents, and the Consulting Engagement, and (iv) the repayment or consolidation of certain indebtedness for borrowed money or other financing obligations of Company existing prior to the date of this Agreement, including but not limited to bank financings and merchant advance obligations (in each case in this clause (iv) which may have been acquired by Lender from the provider of such financing arrangement).

(j)     (i) Keep its assets, whether now owned or hereafter acquired, free of any lien, charge or claim (other than the (x) liens for taxes or assessments or governmental charges or levies not yet due or delinquent, or which can thereafter be paid without penalty, or which are being contested in good faith by proceedings diligently pursued, (y) any other lien, encumbrance or charge acceptable to and approved in writing by Lender and (z) the liens and encumbrances arising under the Loan Documents (collectively, "Permitted Liens")); and (ii) not encumber its assets, whether now owned or hereafter acquired, or any portion thereof or interest therein, permit any lien, levy, attachment or restraint to be made or filed against its assets, whether now owned or hereafter acquired, or any portion thereof or interest therein or permit any receiver or assignee for the benefit of creditors to be appointed to take possession of its assets, whether now owned or hereafter acquired, or any portion thereof.

(k)     Deliver to Lender the following, each of which shall be in form and substance acceptable to Lender: (a) executed landlord waivers or other collateral access agreements with respect to all locations leased by Company or any Corporate

9

Bodman_18055845_4

Guarantor and (b) executed bailee letters with respect to all locations at which Company stores any inventory or other assets.

(l)     Subject to the occurrence of any Default or Event of Default, and upon the written request of Lender, use commercially reasonable efforts to make such financial adjustments (including with respect to compensation and other budgetary matters) that Lender believes in good faith will improve the overall financial stability of the Company and its subsidiaries as a whole.

(m)     (i) Maintain all of its bank accounts with a bank that has entered into a control agreement with Lender with respect to such accounts in form and substance satisfactory to Lender and (ii) permit Lender to have "view access" to each of its bank accounts.

(n)     (i) Utilize ADP (or such other payroll service vendor satisfactory to Lender in its sole discretion) for the purposes of managing payroll and withholding taxes, (ii) promptly upon receipt, furnish to Lender payroll reports from such payroll service vendor evidencing current payment (or deposit, as the case may be) of all employer and employee withholding taxes and assessments and (iii) take such actions as may be required by ADP (or such other satisfactory payroll service) in order to authorize Lender to have full access to all reports and other information that such vendor makes available to Company or such Corporate Guarantor.

(o)     With respect to Company, if requested by Lender, hire a chief executive officer or chief financial officer deemed acceptable by Franklin Management, which officer shall (x) have such duties and responsibilities typical of such office and (y) receive aggregate compensation deemed reasonable by Franklin Management.

(p)     With respect to Company only, if requested by Lender, request inforce illustrations with respect to the Key Man Life Insurance Policy from an insurance company satisfactory to Lender, and deliver such illustrations to Lender promptly upon receipt thereof.

(q)     Maintain the Key Man Life Insurance Policy in full force and effect.

(r)     With respect to Company only, within one business day of receipt by Company of the proceeds of the Term Loan, use a portion of the proceeds of the Term Loan as specified under the heading "Paid out of Proceeds by Company" in the Closing Statement and Authorization dated as of the date hereof (if any) and executed by Company (the "Closing Statement").

(s)     With respect to Company, immediately upon acquiring the same, cause to be delivered to Lender (or otherwise cause Lender to be listed as the lienholder on) each certificate of title or ownership certificate covering any collateral securing any part of any of the Liabilities, including but not limited to motor vehicles, and otherwise comply with the certificate of title or ownership laws of the relevant jurisdiction issuing such certificate of title or ownership certificate in order to

10

Bodman_18055845_4

properly evidence and validly perfect Lender's first priority security interest in the assets represented by such certificate of title or ownership certificate.

(t)     Within 30 days of the date hereof, cause all debt and other obligations of Company (including, without limitation, under existing floor plans or similar credit facilities) to be paid in full, evidenced by a payoff letter in form and substance satisfactory to Lender, and cause all liens or other encumbrances in respect thereof to be terminated in a manner satisfactory to Lender, and take, or cause any such lienholder to take, such actions reasonably necessary to effectuate or evidence the foregoing.

5.     So long as Lender shall have any commitment or obligation, if any, to make or extend loans, advances or other credit to or in favor of Company, and so long as any Liabilities remain unpaid and/or outstanding, Company covenants and agrees that it shall not and it shall not permit any of its subsidiaries or any Corporate Guarantor or any of its subsidiaries to:

(a)     Modify, amend or terminate any of its Organizational Documents, or permit any of its Organizational Documents to be modified, amended or terminated, without the prior written consent of Lender.  Lender's consent to any such modification, amendment or termination shall not be unreasonably withheld, provided (a) that there shall be no Default or Event of Default at the time of Company's request for such consent, and (b) the proposed modification, amendment or termination does not (with the provision of notice or the passage of time, or both) violate any provision of any Loan Document.

(b)     Directly or indirectly (i) except in the ordinary course of business, sell, transfer, lease, assign or otherwise dispose of all or any portion of its assets or any interest therein; (ii) except for Permitted Liens, encumber, hypothecate, create a security interest or create or permit any lien upon or affecting its assets or any portion thereof or interest therein; (iii) assign, transfer or encumber any interest of Company or any of its subsidiaries under this Agreement or under any other Loan Document; (iv) purchase, acquire, issue or redeem any of its Capital Securities or make any material change in its capital structure; (v) change its name, consolidate with or merge into any other Person or permit any other Person to merge into it; or (vi) enter into any sale-leaseback transaction.

(c)     Directly or indirectly, become or remain obligated for any indebtedness for borrowed money, or for any indebtedness incurred in connection with the acquisition of any property, real or personal, tangible or intangible, except: (i) indebtedness to Lender and (ii) current unsecured trade payables and accrued liabilities arising in the ordinary course of its business.

(d)     Directly or indirectly, (i) make any loan, investment, advance or extension of credit to any Person, (ii) purchase, create or acquire all or substantially all of the properties or assets of any other Person or any Capital Securities of any other Person, (iii) incur any obligation as surety or guarantor, other than in the ordinary course of business, (iv) enter into any transaction with an affiliate that is not (x)

11

on an arms' length basis or otherwise on terms and conditions as favorable to Company as would be obtainable in a transaction with a Person that is not an affiliate or (y) a Permitted Affiliate Transaction, or (v) subordinate any indebtedness due it from any Person to indebtedness of other creditors of such Person.

(e) Pay any dividends or make any other distributions (whether in cash, securities or other property) with respect to any of its Capital Securities, including but not limited to repayment of any loans made by any of its members or shareholders, return of capital contributions, distributions upon termination, liquidation or dissolution, or any development, property management, accounting or other fees payable to any of its members or shareholders; provided that (i) Company and any Corporate Guarantor may pay cash dividends or distributions to its shareholders, partners or members, as applicable, from time to time during a year to the extent necessary to enable such shareholders, partners, or members to pay income taxes for such year and make estimated income tax payments to satisfy their liabilities under federal and state income tax law for such year which arise solely from such shareholders', partners', members', status as a shareholder, partner, or member, as applicable, of Company and (ii) any of Company's subsidiaries or any Corporate Guarantor's subsidiaries may make any such dividends or other distributions to Company or such Corporate Guarantor, as applicable.

(f) Terminate the Consulting Engagement or otherwise breach its obligations with respect thereto.

(g) Make or incur any (i) Capital Expenditures other than in the ordinary course of business, or as Lender may otherwise agree in writing or (ii) other expenditure that is not, in the good faith judgment of Company, reasonably necessary for the purpose of carrying out its business or the business of its subsidiaries (as applicable), or that would otherwise impede Company's or any Corporate Guarantor's ability to perform its obligations hereunder or under any other Loan Document to which it is a party.

(h) Make any payment of wages, salary, bonus or other compensation to any of Company's or any Corporate Guarantor's equityholders, officers, directors, managers, or their respective family members or affiliates in excess of $450,000 in the aggregate in any fiscal year of Company, or such greater amount as agreed in writing by Lender in its reasonable discretion.

6. Expenses; Taxes; Indemnity.

(a) Company hereby agrees to pay all stamp, document, transfer, recording, filing, registration, search, sales and excise fees and taxes and all similar impositions (excluding taxes on the overall net income or gross receipts of Lender) now or hereafter determined by Lender to be payable in connection with this Agreement or any other Loan Document or any other documents, instruments or transactions pursuant to or in connection herewith or therewith, and Company agrees to save

12

Lender harmless from and against any and all present or future claims, liabilities or losses with respect to or resulting from any omission to pay or delay in paying any such fees, taxes or impositions.

(b)     Company hereby agrees to reimburse and indemnify Lender, its affiliates and their respective investors, officers, directors, employees, advisors and agents (collectively, the "Indemnified Parties") from and against any and all losses, liabilities, claims, damages, expenses, obligations, penalties, actions, judgments, suits, costs or disbursements of any kind or nature whatsoever (including, without limitation, the fees and disbursements of counsel for such Indemnified Party in connection with any investigative, administrative or judicial proceeding commenced or threatened, whether or not such Indemnified Party shall be designated a party thereto) that may at any time be imposed on, asserted against or incurred by such Indemnified Party as a result of, or arising out of, or in any way related to or by reason of, this Agreement or any other Loan Document or any transaction from time to time contemplated hereby or thereby, but excluding any such losses, liabilities, claims, damages, expenses, obligations, penalties, actions, judgments, suits, costs or disbursements resulting solely from the gross negligence or willful misconduct of such Indemnified Party, as finally determined by a court of competent jurisdiction.

7.      Company shall pay Lender a commitment fee in an aggregate principal amount equal to 2.75% of the Term Loan, which fee shall be earned, due and payable upon the making of the Term Loan, and paid to Lender by deducting such amount from the total Term Loan proceeds advanced to Company.

8.      (a) Company and/or certain of its subsidiaries or affiliates have certain existing indebtedness owing to third parties (collectively, the "Third Parties") for borrowed money or other financing obligations, including but not limited to bank financings and merchant advance obligations (the "Existing Indebtedness"). Company acknowledges and agrees that: (i) the amount of the Existing Indebtedness is accurately reflected on the Closing Statement and is due and owing in full now without setoff or defenses of any kind; (ii) Lender may purchase (or may have purchased) all or any portion of the Existing Indebtedness from the Third Parties at a discount (a "Purchase Discount") and may enforce such Existing Indebtedness at par; (iii) any portion of the Existing Indebtedness purchased by Lender shall be consolidated into and shall constitute part of the Term Loan on a dollar for dollar basis (based on the par value of such Existing Indebtedness) and shall, together with any Withheld Proceeds (as defined below) reduce the cash proceeds of the Term Loan otherwise available for disbursement; (iv) Lender has no further obligations to Company with respect to the Existing Indebtedness; and (v) any portion of the Existing Indebtedness not purchased by Lender (as determined by Lender in its sole discretion) must be paid in full either: (x) upon closing of the Term Loan, in which case a portion of the Term Loan proceeds may be disbursed directly to pay such portion of the Existing Indebtedness or (y) at such later date as Lender may determine in its sole discretion, in which case Lender may withhold proceeds of the Term Loan (the "Withheld Proceeds") in an amount equal to the par value of such Existing Indebtedness not so prepaid ("Unpaid Existing Indebtedness").

13

(b)    Company also acknowledges and agrees that Lender may have been able to (or, with respect to Unpaid Existing Indebtedness, may be able to) negotiate, on behalf of Company, with the providers of certain of the Existing Indebtedness for the repayment of such Existing Indebtedness in an amount below the par value of such Existing Indebtedness (such difference, the "Repayment Discount").   In consideration of Lender making the Term Loan, Company agrees that 100% of such Repayment Discount shall be, in such amounts as directed by Lender in its sole discretion, either (1) paid to Lender for its own account (which such payment shall not reduce the principal amount of the Term Loan or any of the Liabilities) or (2) deposited into the Cash Collateral Account for application to future regularly scheduled payments due in respect of the Term Note and the Consulting Engagement (or for other purposes acceptable to Lender in its sole discretion).   The Repayment Discount shall be distributed in accordance with the preceding sentence either (i) directly out of the proceeds of the Term Loan when made or (ii) with respect to any Unpaid Existing Indebtedness, out of the Withheld Proceeds not used by Lender for the repayment of such Unpaid Existing Indebtedness.

(c)   Company further acknowledges that (i) Company is in default under each of the documents evidencing or otherwise relating to all of the Existing Indebtedness ("Existing Defaults"), (ii) Lender's consolidation of such Existing Indebtedness into the Term Loan does not constitute a novation or cure any Existing Defaults and, accordingly, an Event of Default exists under the Loan Documents as of the date hereof and (iii) Lender may exercise any rights or remedies available to it under the Loan Documents or applicable law arising from the existence of any such Event of Default.

9.      Without in any way whatsoever limiting or affecting Lender's right to make demand for payment of all or any part of any of the Liabilities which may, at any time, be payable upon demand, Company hereby acknowledges and agrees that, in addition to any and all other provisions set forth in any of the Loan Documents relating to any Default or Event of Default thereunder, an Event of Default shall also occur under the Liabilities and the Loan Documents in the event that there shall be any change, for any reason whatsoever, in (i) the management of Company, which could, in the sole discretion and judgment of Lender, have a material adverse effect upon Company and/or its ability to pay or perform any of its liabilities or obligations in respect of the Liabilities and the Loan Documents or (ii) the ownership or control of Company.

10.     A portion of the Term Loan in an aggregate principal amount equal to $1,800,000 shall be disbursed into a cash collateral account in the name of Lender (or such other Person as directed by Lender) (the "Cash Collateral Account).   Company hereby authorizes Lender to apply such amounts as required under the Term Note and the Consulting Engagement when due; provided that, if requested by Company, Lender may agree in its sole discretion to permit Company to use amounts in the Cash Collateral Account for other purposes approved by Lender.

11.     Any failure by Company to fully observe, perform or otherwise comply with any of the covenants or agreements of Company set forth in this Agreement shall constitute an Event of Default under the Liabilities and the Loan Documents, and Lender shall be entitled to exercise any and all rights and remedies available to or otherwise conferred upon Lender as a result thereof, whether by agreement, by law or otherwise.

14

12.     **Company hereby acknowledges and agrees that Company's compliance with the terms and conditions set forth herein, and the absence of any Default or Event of Default by Company in the observance or performance of any of the covenants or agreements of Company hereunder, shall not in any way limit, restrict or otherwise affect or impair Lender's right or ability to make demand for payment of any or all of the Liabilities which may be on a demand basis at any time in Lender's sole and absolute discretion, with or without reason or cause, and the existence of any Default or Event of Default hereunder shall not be the sole reason or basis for enabling Lender to make demand for payment of all or any part of such Liabilities.**

13.     All accounting terms not specifically defined in this Agreement shall be determined and construed in accordance with GAAP.

14.     No forbearance on the part of Lender in enforcing any of its rights or remedies under this Agreement or any other Loan Document, nor any renewal, extension or rearrangement of any payment or covenant to be made or performed by Company hereunder or any such other Loan Document, shall constitute a waiver of any of the terms of this Agreement or such Loan Document or of any such right or remedy.

15.     This Agreement shall be governed by and construed and enforced in accordance with the laws of the State of Michigan. Company irrevocably submits to the non-exclusive jurisdiction of any United States federal court sitting in the Eastern District of Michigan or any state court in Oakland County in the State of Michigan in any action or proceeding arising out of or relating to this Agreement, and Company irrevocably agrees that all such claims may be heard and determined in any such court and irrevocably waives any present and future objection it may have as to the venue of any action or proceeding brought in that court, or that that court is an inconvenient forum. Any suit brought by Company related to this Agreement or the Loan Documents may only be brought in the United States federal court sitting in the Eastern District of Michigan or in a state court in Oakland County in the State of Michigan. Nothing herein shall limit the right of Lender to bring any action or proceeding against Company in the courts of any other jurisdiction if necessary or convenient to effect the relief sought.

16.     Company agrees to pay to or reimburse Lender, upon demand, for all costs and expenses (including, without limitation, reasonable attorneys' fees, whether in-house or outside counsel) incurred by Lender in connection with the documentation, preparation, execution, delivery, amendment, administration and performance of this Agreement, the other Loan Documents, and otherwise in respect of the Liabilities, and the consummation and the closing of the transactions contemplated hereby or thereby, any Default or Event of Default under or in respect of any of the Liabilities or in collecting or in attempting to collect any of the Liabilities, in perfecting, maintaining or defending any of Lender's liens or security interests (or the priority thereof), if any, in any collateral securing any part of any of the Liabilities, or otherwise in enforcing any of Lender's rights or remedies under any of the Loan Documents or otherwise in respect of any of the Liabilities.  Company waives any rights to assert against Lender, any defense (legal or equitable), set-off, counterclaim, or claim which Company may now or at any time hereafter have against Lender or any other party liable to Lender or that may arise, directly or indirectly from the present or future lack of perfection, sufficiency, validity, or enforceability of the Liabilities or any security therefor.

15

17.    This Agreement shall inure to the benefit of and shall be binding upon the parties hereto and their respective successors and assigns; provided, however, that Company shall not assign or transfer any of its rights or obligations hereunder or otherwise in respect of any of the Liabilities without the prior written consent of Lender.    Company acknowledges that Lender may, at any time, assign its rights under this Agreement and any other Loan Document, including without limitation  Lender's rights to payment and enforcement of the Liabilities.

18.    Company acknowledges that Lender, its investors, principals and/or affiliates may be (a) providing debt financing, equity capital or other services (including financial advisory or consulting services) to other companies in respect of which Company and its subsidiaries may have conflicting interests regarding the transactions described herein or otherwise or (b) engaged in a broad range of transactions (including providing merchant cash advances or merchant consumer financing) that may involve interests that differ from the interests of Company and its subsidiaries.    Without limiting the foregoing, certain providers of merchant cash advances (including providers who may have provided merchant cash advances to the Company), or their principals, may be referral sources to Lender and may also be investors in Lender or an affiliate of Lender. Company further acknowledges that neither Lender, its investors, principals and/or affiliates have any obligation to disclose such interests and transactions to Company or its subsidiaries by virtue of any fiduciary, advisory or agency relationship, and Company and its subsidiaries waive, to the fullest extent permitted by law, any actual or alleged conflict of interest, and any claims they may have against, Lender, its investors, principals and/or affiliates, for breach of fiduciary duty or alleged breach of fiduciary duty, and agree that Lender, its investors, principals and or affiliates shall have no liability (whether direct or indirect) to Company and its subsidiaries in respect of such a conflict of interest or fiduciary duty claim, or to any person alleging a conflict of interest or asserting a fiduciary duty claim on behalf of or in right of Company and its subsidiaries, including any stockholders, employees or creditors. Company further acknowledges that Lender is not a fiduciary of Company or any of its subsidiaries. Company also (i) acknowledges that Lender, its investors, principals and/or affiliates may refer Company or its subsidiaries and/or affiliates to certain providers of goods or services, for which Lender, its investors, principals and/or affiliates might receive a referral or similar fee, (ii) consents to any such arrangements and (iii) waives, to the fullest extent permitted by law, any claims Company may have against Lender, its investors, principals and/or affiliates in connection with the foregoing.

19.    Company hereby releases Lender, Franklin Management, their respective affiliates and subsidiaries and all of their respective officers, directors, employees, shareholders, agents, attorneys and representatives as well as their respective successors and assigns from any and all claims, obligations, rights, causes of action, and liabilities, of whatever kind or nature, whether known or unknown, whether foreseen or unforeseen, arising on or before the date hereof (the "Released Matters").    Without limiting the generality of the foregoing, Company hereby waives the provisions of any statute or doctrine to the effect that a general release does not extend to claims which a releasing party does not know or suspect to exist in its favor at the time of executing the release, which if known by such releasing party would have materially affected the releasing party's settlement with the party being released.    Company acknowledges that the agreements in this paragraph are intended to be in full satisfaction of all or any alleged injuries or damages arising in connection with the Released Matters.    If Company asserts or commences any claim, counter-claim, demand, obligation, liability or cause of action in derogation of the

16

foregoing release or challenges the enforceability of the foregoing release (in each case, a "Violation"), then Company agrees to pay in addition to such other damages as any party being released may sustain as a result of such Violation, all reasonable attorneys' fees and expenses (including in-house and outside counsel) incurred by such party being released as a result of such Violation.

20.     COMPANY AND LENDER ACKNOWLEDGE THAT THE RIGHT TO TRIAL BY JURY IS A CONSTITUTIONAL ONE, BUT THAT IT MAY BE WAIVED. EACH PARTY, AFTER CONSULTING (OR HAVING HAD THE OPPORTUNITY TO CONSULT) WITH COUNSEL OF ITS CHOICE, KNOWINGLY AND VOLUNTARILY, AND FOR THEIR MUTUAL BENEFIT, WAIVES ANY RIGHT TO TRIAL BY JURY IN THE EVENT OF LITIGATION REGARDING THE PERFORMANCE OR ENFORCEMENT OF, OR IN ANY WAY RELATED TO, THIS AGREEMENT OR THE LIABILITIES.

[Remainder of Page Intentionally Left Blank]

17

Bodman_18055845_4

DocuSign Envelope ID: 351DAF47-FA7E-4065-9486-57AA5484521A

If the foregoing is acceptable to Company, please indicate such with the signature(s) of Company as provided below.

Very truly yours,

FRANKLIN CAPITAL GROUP, LLC

DocuSigned by:

*Shaya Baum*

FA0863623F534CA...  aum

Title: Authorized Representative

ACCEPTED, ACKNOWLEDGED
AND AGREED:

EXCELL AUTO GROUP, INC.

By: *Scott*

Name: Scott Zankl
Title: Vice President

[Signature Page to Loan Agreement (18055845)]

# EXHIBIT C

## Continuing Security Agreement

Dated as of November 3, 2021

1.      **Grant of Security Interest.**  Each of the undersigned (each, a "Debtor") grants to Franklin Capital Group, LLC (including its successors and assigns, the "Lender"), whose address is 32300 Northwestern Highway, Farmington Hills, MI 48334, a continuing security interest in the Collateral, as defined below, to secure the payment and performance when due, whether by stated maturity, demand, acceleration or otherwise, of all of the Liabilities (as defined below) of such Debtor and all Liabilities of Excell Auto Group, Inc., (the "Borrower").

"Liabilities", as used in this Continuing Security Agreement (this "Agreement"), means all obligations, indebtedness and liabilities of the Debtor and/or Borrower to the Lender and/or any of the Lender's subsidiaries, affiliates or successors, now existing or later arising, including, without limitation, all loans, advances, interest, costs, overdraft indebtedness, credit card indebtedness, lease obligations, management and services fees or obligations relating to any interest rate, currency or commodity swap agreement, cap or collar agreement, and any other agreement or arrangement designated to protect against fluctuations in interest rates, currency exchange rates or commodity prices, all monetary obligations incurred or accrued during the pendency of any Bankruptcy, insolvency, receivership or other similar proceedings, regardless of whether allowed or allowable in such proceeding, and including all "Liabilities" as defined in any of the other Loan Documents, and all renewals, extensions, modifications, consolidations or substitutions of any of the foregoing in this definition, whether the Debtor or the Borrower may be liable jointly with others or individually liable as a debtor, maker, co-maker, drawer, endorser, guarantor, surety or otherwise, and whether voluntarily or involuntarily incurred, due or not due, absolute or contingent, direct or indirect, known or unknown, liquidated or unliquidated. Liabilities also include all interest, costs, expenses, and attorneys' fees accruing to, or incurred in either collecting any of the Liabilities of the Debtor or the Borrower or protecting, maintaining, or liquidating any collateral for any of the Liabilities, including the Collateral.

"Loan Documents", as used in this Agreement, means, collectively, (i) this Agreement, (ii) the "Loan Documents" (as defined in the Promissory Note (Term Loan) dated as of the date hereof, made by Borrower in favor of Lender), (iii) the "Loan Documents" (as defined in the Letter Agreement, dated as of the date hereof, between Borrower and Lender) and (iv) any guaranty, mortgage, security agreement, swap agreement, other interest rate protection agreement, derivative agreement, and any other document, instrument or agreement evidencing, securing or relating to any of the foregoing, together with any and all modifications and amendments to any of the foregoing.

"Consulting Engagement Documents", as used in this Agreement, means, collectively, (i) the Engagement Letter, dated as of the date hereof, between Borrower and Franklin Capital Management, LLC ("Consultant") and (ii) any guaranty, mortgage, security agreement, and any other document, instrument or agreement evidencing, securing or relating to any of the foregoing, together with any and all modifications and amendments to any of the foregoing.

2.      **Description of Collateral.** "Collateral," as used in this Agreement, means all personal property of the Debtor including, without limitation, all of the following property Debtor now or later owns or has an interest in, wherever located:

(a)      all of the Debtor's Accounts, Chattel Paper, Deposit Accounts, Documents, Equipment, Farm Products, Fixtures, Goods, General Intangibles, Instruments, Inventory, Investment Property, Letter of Credit Rights (whether or not given in support of Accounts), Software, as defined below (words and phrases used herein and not otherwise specifically defined herein shall have the respective meanings assigned to such terms as such terms are defined in the Uniform Commercial Code of the State of Michigan, as in effect from time to time (the "UCC")), present and future, including but not limited to any items listed on Schedule 1 attached hereto, if any;

Bodman_18055849_2

(b)    all present and future insurance claims relating to any of the above;

(c)    all Goods, Instruments (including, without limit, promissory notes), Documents (including, without limit, negotiable Documents), policies and certificates of insurance, Deposit Accounts, and money or other property (except real property which is not a fixture) which are now or later in possession of Lender, or as to which Lender now or later controls possession by documents or otherwise;

(d)    all present and future books, records, and data of the Debtor relating to any of the above; and

(e)    all present and future accessions, additions and attachments to, proceeds, parts, products, replacement, substitutions, Supporting Obligations and rights arising out of, any of the above, including but not limited to stock rights, subscription rights, interest, distributions, dividends, stock dividends, stock splits, or liquidating dividends, renewals, all cash and Accounts, insurance policies and proceeds, arising from the sale, rent, lease, casualty loss or other disposition of any of the above and cash and other property which were proceeds of any of the above and are recovered by a bankruptcy trustee or otherwise as a preferential transfer by the Debtor.

In the definition of Collateral, a reference to a type of collateral shall not be limited by a separate reference to a more specific or narrower type of that collateral.

Where the Collateral is in the possession of the Lender, the Debtor agrees to deliver to the Lender any property which represents an increase in the Collateral or profits or proceeds of the Collateral.

3.    **Collateral Definitions.**

(a)    **"Accounts"** means all of the Debtor's (i) "accounts," (including without limit "health-care insurance receivables") as defined in Article 9 of the UCC, (ii) rights to any refund of taxes paid at any time to any governmental entity, (iii) contract rights, and (iv) commercial tort claims.

(b)    **"Chattel Paper"** means all of the Debtor's "chattel paper" (including without limit "electronic chattel paper" and "tangible chattel paper") as such terms are defined in Article 9 of the UCC.

(c)    **"Deposit Accounts"** means all of the Debtor's "deposit accounts," as defined in Article 9 of the UCC.

(d)    **"Documents"** means all of the Debtor's "documents," "documents of title" or a "warehouse receipts," as such terms are defined in the UCC.

(e)    **"Equipment"** means (i) all of the Debtor's "equipment," as defined in Article 9 of the UCC, and (ii) any Documents issued with respect to any of Debtor's "equipment" (as defined in the UCC).

(f)    **"Farm Products"** means all of the Debtor's "farm products," as defined in Article 9 of the UCC. The Debtor will provide the Lender with a written list of the buyers, commission merchants or selling agents to or through whom it may sell any Farm Products, in form acceptable to the Lender. The Debtor will keep this list current by notice to the Lender at least seven (7) days prior to any sale. In this paragraph the terms "buyers," "commission merchants," and "selling agents" have the meanings given to them in the Federal Food Security Act of 1985, as amended, and in the UCC, as applicable.

(g)    **"Fixtures"** means all of the Debtor's "fixtures," as defined in Article 9 of the UCC.

(h)    **"General Intangibles"** means (i) all of the Debtor's "general intangibles," (including without limit "payment intangibles") as such terms are defined in Article 9 of the UCC, and (ii) whether or not constituting "investment property" as defined in Article 9 of the UCC, all pledged stock, meaning, collectively, all shares of

2

Bodman_18055849_2

capital stock listed in Schedule I, together with any other shares, stock certificates, options, interests or rights of any nature whatsoever in respect of the capital stock of any person that may be issued or granted to, or held by, any Debtor, its successors and assigns.

(i)      **"Goods"** means all of the Debtor's "goods," as defined in Article 9 of the UCC.

(j)      **"Instruments"** means all of the Debtor's "instruments," as defined in Article 9 of the UCC

(k)      **"Inventory"** means (i) all of the Debtor's "inventory," as defined in Article 9 of the UCC, and (ii) any Documents issued with respect to any of Debtor's "inventory" (as defined in the UCC).

(l)      **"Investment Property"** means (i) all of the Debtor's "investment property," as defined in Article 9 of the UCC, including, without limit, securities, securities accounts, security entitlements, and financial assets, and (ii) whether or not constituting "investment property" as defined, (a) all pledged notes, meaning, collectively, all promissory notes listed in Schedule I, all other promissory notes issued to or held by any Debtor, its successors and assigns, and (b) all pledged stock, meaning, collectively, all shares of capital stock listed in Schedule I, together with any other shares, stock certificates, options, interests or rights of any nature whatsoever in respect of the capital stock of any person that may be issued or granted to, or held by, any Debtor, its successors and assigns.

(m)      **"Letter of Credit Rights"** means all of the Debtor's "letter of credit rights," as defined in Article 9 of the UCC.

(n)      **"Software"** means all of the Debtor's "software," as defined in Article 9 of the UCC.

(o)      **"Supporting Obligation"** means a Letter of Credit Right or secondary obligation that supports the payment or performance of an Account, Chattel Paper, a Document, a General Intangible, an Instrument, or Investment Property.

4.      **Representations, Warranties, and Covenants.** The Debtor represents and warrants to and covenants with the Lender that:

(a)      Its principal residence or chief executive office is at the address set forth in the Perfection Certificate, dated as of the date hereof, executed by Debtor and the guarantors signatory thereto (the "Perfection Certificate");

(b)      If the Debtor is not a natural person (i) the Debtor's name as it appears in this Agreement is identical to the name of the Debtor appearing in the Debtor's organizational documents, as amended, including any trust documents; and (ii) both the Taxpayer I.D. No. and the State Organization No., if any, set forth in the Perfection Certificate are correct;

(c)      If the Debtor is not a natural person, (i) that it is duly organized, existing and in good standing pursuant to the laws under which it is organized; and (ii) that the execution and delivery of this Agreement and the performance of the obligations it imposes (A) are within its powers and have been duly authorized by all necessary action of its governing body; (B) do not contravene the terms of its articles of incorporation or articles of organization, its by-laws, or any partnership agreement, operating agreement or other agreement governing its affairs;

(d)      The execution and delivery of this Agreement and the performance of the obligations it imposes do not violate any law, conflict with any agreement by which it is bound, or require the consent or approval of any governmental authority or any third party;

(e)      This Agreement is a valid and binding agreement, enforceable according to its terms;

3

(f)     All balance sheets, profit and loss statement, and other financial statements furnished to the Lender are accurate and fairly reflect the financial condition of the organizations and persons to which they apply on their effective dates, including contingent liabilities of every type, which financial condition has not changed materially and adversely since those dates;

(g)     It will pay its Liabilities to the Lender;

(h)     It is or will become the owner of the Collateral free from any liens, encumbrances or security interests, except for this security interest and existing liens disclosed to and accepted by the Lender in writing, and will defend the Collateral against all claims and demands of all persons at any time claiming any interest in it;

(i)     No person, other than Lender or Consultant, has possession or control (as defined in the UCC) of the Collateral;

(j)     It will keep the Collateral free of liens, encumbrances and other security interests (other than pursuant to this Agreement, the other Loan Documents, or the Consulting Engagement Documents), maintain it in good repair, not use it illegally, and exhibit it to the Lender on demand;

(k)     It will protect the Collateral from loss, damage, or deterioration from any cause. At its own expense, the Debtor will maintain comprehensive casualty insurance and other insurance on the Collateral as may be reasonably required by Lender against such risks, in such amounts, with such deductibles and with such companies as may be satisfactory to the Lender, and provide the Lender with proof of insurance acceptable to the Lender. Each insurance policy shall contain a lender's loss payable endorsement satisfactory to the Lender and a prohibition against cancellation or amendment of the policy or removal of the Lender as loss payee without at least 30 days prior written notice to the Lender. In all events, the amounts of such insurance coverages shall conform to prudent business practices and shall be in such minimum amounts that the Debtor will not be deemed a co-insurer. The Debtor will promptly deliver to Lender, at Lender's request, evidence satisfactory to Lender that such insurance has been so procured and, with respect to casualty insurance, made payable to Lender.  The Debtor hereby appoints Lender, or any employee or agent of Lender, as Debtor's attorney-in-fact, which appointment is coupled with an interest and irrevocable, and authorizes Lender, or any employee or agent of Lender, on behalf of the Debtor, to adjust and compromise any loss under said insurance and to endorse any check or draft payable to the Debtor in connection with returned or unearned premiums on said insurance or the proceeds of said insurance, and any amount so collected may be applied toward satisfaction of the Liabilities; provided, however, that Lender shall not be required hereunder so to act.  If the Debtor fails to maintain satisfactory insurance, Lender has the option (but not the obligation) to do so and the Debtor agrees to repay all amounts so expended by Lender immediately upon demand, together with interest at the highest lawful default rate which could be charged by Lender on any of the Liabilities;

(l)     It will not sell or offer to sell, lease, license or otherwise transfer the Collateral, nor change the location of the Collateral, without the written consent of the Lender, except for sale of Inventory in the ordinary course of business;

(m)     It will pay promptly when due all taxes and assessments upon the Collateral, or for its use or operation.  If the Debtor fails to pay any of these taxes, assessments, or other charges in the time provided above, Lender has the option (but not the obligation) to do so and the Debtor agrees to repay all amounts so expended by Lender immediately upon demand, together with interest at the highest lawful default rate which could be charged by Lender on any of the Liabilities;

(n)     No financing statement covering all or any part of the Collateral or any proceeds is on file in any public office, unless the Lender has approved that filing. The Debtor irrevocably authorizes Lender to file one or more financing statements in form satisfactory to the Lender and will pay the cost of filing them in all public

4

offices where filing is deemed by the Lender to be necessary or desirable. In addition, the Debtor shall execute and deliver, or cause to be executed and delivered, such other documents as the Lender may from time to time request to perfect or to further evidence the security interest created in the Collateral by this Agreement, including, without limitation: (i) any certificates of title to the Collateral with the security interest of the Lender noted thereon or executed applications for such certificates of title in form satisfactory to the Lender; (ii) any assignments of claims under government contracts which are included as part of the Collateral, together with any notices and related documents as the Lender may from time to time request; (iii) any assignment of any specific account receivable as the Lender may from time to time request; (iv) a notice of security interest and a control agreement with respect to any Collateral, all in form and substance satisfactory to the Lender; (v) a notice to and acknowledgment from any bailee or other person in possession of any Collateral, all in form and substance satisfactory to the Lender; and (vi) any consent to the assignment of proceeds of any letter of credit, all in form and substance satisfactory to the Lender;

(o)     Lender has no obligation to acquire or perfect any lien on or security interest in any asset(s), whether real property or personal property, to secure payment of the Liabilities, and the Debtor is not relying upon assets in which the Lender may have a lien or security interest for payment of the Liabilities;

(p)     It will not, without the prior written consent of the Lender, change (i) the Debtor's name, (ii) the Debtor's business organization, (iii) the jurisdiction under which the Debtor's business organization is formed or organized, or (iv) the address of the Debtor's chief executive office or principal residence or of any additional places of the Debtor's business;

(q)     It will (i) provide any information that Lender may reasonably request, and will permit Lender to inspect and copy its books and records and (ii) allow the Lender or the Lender's representative to enter upon all premises where Collateral is kept or may be located and inspect the Collateral, in each case, on the terms set forth in the Loan Documents;

(r)     It will allow the Lender to take such actions in its own name or in the Debtor's name as Lender, in its sole discretion, deems necessary or appropriate to establish exclusive control (as defined in the UCC) over any Collateral of such nature where control perfects the Lender's security interest;

(s)     The Lender shall have the right now and at any time in the future, in its sole and absolute discretion and without notice to the Debtor, to (i) prepare, file, and sign the Debtor's name on any proof of claim in bankruptcy or similar document against any owner of the Collateral and (ii) prepare, file, and sign the Debtor's name on any notice of lien, assignment or satisfaction of lien, or similar document in connection with the Collateral.  The Debtor authorizes the Lender to file financing statements containing the collateral description "All of the Debtor's assets whether now owned or hereafter acquired" or such lesser amount of assets as the Lender may determine, or the Lender may, at its option, file financing statements containing any collateral description which reasonably describes the Collateral in which a security interest is granted under this Agreement;

(t)     At any time and without notice, Lender may, as to any Collateral: (a) cause any or all of such Collateral to be transferred to its name or to the name of its nominees; (b) receive or collect, by legal proceedings or otherwise, all dividends, interest, principal payments and other sums and all other distributions at any time payable or receivable on account of such Collateral, and hold the same as Collateral, or apply the same to the Liabilities, the manner and distribution of the application to be in the sole discretion of Lender; (c) enter into any extension, subordination, reorganization, deposit, merger or consolidation agreement or any other agreement relating to or affecting such Collateral, and deposit or surrender control of such Collateral, and accept other property in exchange for such Collateral and hold or apply the property or money so received pursuant to this Agreement; and (d) take such actions in its own name or in the Debtor's name as Lender, in its sole discretion, deems necessary or appropriate to establish exclusive control (as defined in the UCC) over

5

any Collateral of such nature that perfection of the Lender's security interest may be accomplished by control; and

(u)     The Debtor shall hold in trust for Lender all payments received in connection with the Collateral, and all proceeds from the sale, lease or other disposition of any Collateral, and shall deposit all such payments and proceeds into bank accounts with a bank that has entered into a control agreement with Lender with respect to such accounts in form and substance satisfactory to Lender.

5.     **Accounts.**

(a)     The Debtor will, in the usual course of its business and at its own cost and expense, on the Lender's behalf but not as the Lender's agent, demand and receive and use its best efforts to collect all moneys due or to become due on the Accounts. Until the Lender gives notice to the Debtor to the contrary or until the Debtor is in default, it may use the funds collected in its business. Upon notice from the Lender or upon an Event of Default, the Debtor agrees that all sums of money it receives on account of or in payment or settlement of the Accounts shall be held by it as trustee for the Lender without commingling with any of its funds, and shall immediately be delivered to the Lender with endorsement to the Lender's order of any check or similar instrument.  If Lender notifies the Debtor that the Liabilities are on a remittance basis, the Debtor shall notify its account debtors that all electronic payments on any Account shall be made directly to an account at Lender designated by and under the exclusive control of Lender, and all other payments on the Accounts shall be made directly to a post office box designated by and under the exclusive control of Lender. Lender shall apply received payments in such order and manner as Lender elects, in its sole discretion.  All notices required in this paragraph will be immediately effective when sent. Such notices need not be given prior to the Lender taking action.  It is agreed that, at any time the Lender elects, it shall be entitled, in its own name or in the name of the Debtor or otherwise, but at the expense and cost of the Debtor, to collect, demand, receive, sue for or compromise any and all Accounts, and to give good and sufficient releases, to endorse any checks, drafts or other orders for the payment of money payable to the Debtor in payment and, in its discretion, to file any claims or take any action or proceeding which the Lender may deem necessary or advisable.  It is expressly understood and agreed, however, that the Lender shall not be required or obligated in any manner to make any demand or to make any inquiry as to the nature or sufficiency of any payment received by it or to present or file any claim or take any other action to collect or enforce the payment of any amounts which may have been assigned to it or to which it may be entitled at any time or times.

(b)     The Debtor appoints the Lender or the Lender's designee as the Debtor's attorney-in-fact to do all things with reference to the Collateral as provided for in this section including without limitation (1) to notify the post office authorities to change the Debtor's mailing address to one designated by the Lender, (2) to receive, open and dispose of mail addressed to the Debtor, (3) to sign the Debtor's name on any invoice or bill of lading relating to any Collateral, on assignments and verifications of account and on notices to the Debtor's customers, and (4) to do all things necessary to carry out this Agreement. The Debtor ratifies and approves all acts of the Lender as attorney-in-fact.

(c)     The Lender shall not be liable for any act or omission, nor any error of judgment or mistake of fact or law, for any loss or damage which the Debtor may suffer as a result of Lender's processing of items or its exercise of any other rights or remedies under this Agreement, but only for its gross negligence or willful misconduct. Except as caused by Lender's gross negligence or willful misconduct, the Debtor agrees to indemnify and hold Lender harmless from and against any third party claims, demands or actions, and all related expenses or liabilities, including, without limitation, attorneys fees and causes of action whatsoever. This power being coupled with an interest is irrevocable until the Liabilities have been fully satisfied.

(d)     Immediately upon the Debtor's receipt of any Collateral evidenced by an agreement, Instruments, Chattel Paper or Documents ("Special Collateral"), the Debtor shall mark the Special Collateral to show that it is subject to the Lender's security interest and shall deliver the original to the Lender together with

6

appropriate endorsements and other specific evidence of assignment in form and substance satisfactory to the Lender.

(e)    On each occasion on which the Debtor evidences to Lender the account balances on and the nature and extent of any Accounts, the Debtor shall be deemed to have warranted that, except as otherwise indicated: (a) each of those Accounts is valid and enforceable without performance by the Debtor of any act; (b) each of those account balances are in fact owing; (c) there are no setoffs, recoupments, credits, contra accounts, counterclaims or defenses against any of those Accounts; (d) as to any Accounts represented by a note, trade acceptance, draft or other instrument or by any chattel paper or document, the same has/have been endorsed and/or delivered by the Debtor to Lender; (e) the Debtor has not received with respect to any Account, any notice of the death of the related account debtor, nor of the dissolution, liquidation, termination of existence, insolvency, business failure, appointment of a receiver for, assignment for the benefit of creditors by, or filing of a petition in bankruptcy by or against, the account debtor; and (f) as to each Account, except as may be expressly permitted by Lender to the contrary in another document, the account debtor is not an affiliate of the Debtor, the United States of America or any department, agency or instrumentality of it, or a citizen or resident of any jurisdiction outside of the United States. The Debtor will do all acts and will execute all writings requested by Lender to perform, enforce performance of, and collect all Accounts. Debtor will deliver to Lender such documents, instruments and other writings evidencing or otherwise relating to the Accounts as Lender may reasonably request from time to time. The Debtor shall neither make nor permit any modification, compromise or substitution for any Account without the prior written consent of Lender. Lender may at any time and from time to time verify Accounts directly with account debtors or by other methods acceptable to Lender without notifying the Debtor. The Debtor agrees, at Lender's request, to arrange or cooperate with Lender in arranging for verification of Accounts.

6.    **Additional Covenants.** If the Debtor is not liable for all or any part of the Liabilities (such Liabilities being referred to in this paragraph as the "Debt"), then the Debtor agrees that:

(a)    If any monies become available to the Lender that it can apply to any Debt, the Lender may apply them to Debt not secured by this Agreement.

(b)    Without notice to or the consent of the Debtor, the Lender may (i) take any action it chooses against the Borrower, against any collateral for the Debt, or against any other person liable for the Debt; (ii) release the Borrower or any other person liable for the Debt, release any collateral for the Debt, and neglect to perfect any interest in any such collateral; (iii) forbear or agree to forbear from exercising any rights or remedies, including any right of setoff, that it has against the Borrower, any other person liable for the Debt, or any other collateral for the Debt; (iv) extend to the Borrower additional Debt to be secured by this Agreement; or (v) renew, extend, modify or amend any Debt, and deal with the Borrower or any other person liable for the Debt as it chooses.

(c)    None of the Debtor's obligations under this Agreement shall be affected by (i) any act or omission of the Lender; (ii) the voluntary or involuntary liquidation, sale or other disposition of all or substantially all of the assets of the Borrower, (iii) any receivership, insolvency, bankruptcy, reorganization or other similar proceedings affecting the Borrower or any of its assets; or (iv) any change in the composition or structure of the Borrower or any Debtor, including a merger or consolidation with any other entity.

(d)    The Lender's rights under this section and this Agreement are unconditional and absolute, regardless of the unenforceability of any provision of any agreement between the Borrower and the Lender, or the existence of any defense, setoff or counterclaim that the Borrower may be able to assert against the Lender.

(e)    The Debtor waives all rights of subrogation, contribution, reimbursement, indemnity, exoneration, implied contract, recourse to security, setoff and any other claim (as that term is defined in the

7

federal Bankruptcy Code, as amended from time to time) that it may have or acquire in the future against the Borrower, any other person liable for the Debt, or any collateral for the Debt, because of the existence of this Agreement, the Debtor's performance under this Agreement, or the Lender's availing itself of any rights or remedies under this Agreement.

(f)     If any payment to the Lender on any Debt is wholly or partially invalidated, set aside, declared fraudulent or required to be repaid under any bankruptcy or insolvency act or code, under any state or federal law, or under common law or equitable principles, then this Agreement shall remain in full force and effect or be reinstated, as the case may be, until payment in full to the Lender of the repaid amounts, and of the Debt. If this Agreement must be reinstated, the Debtor agrees to execute and deliver to the Lender new agreements and financing statements, if necessary, in form and substance acceptable to the Lender, covering the Collateral.

7.     **Default/Remedies.**

(a)     If (i) any of the Liabilities are not paid, when due, whether upon demand or at maturity, whether by acceleration or otherwise, (ii) any warranty, representation, covenant, financial statement, or other information made, given or furnished to Lender by or on behalf of Borrower, the Debtor, or any guarantor of any of the Liabilities ("Guarantor") shall be, or shall prove to have been, false or materially misleading when made, given, or furnished; (iii) any substantial loss, theft, damage or destruction to or of any Collateral, or the issuance or filing of any attachment, levy, garnishment or the commencement of any proceeding in connection with any Collateral or of any other judicial process of, upon or in respect of Borrower, the Debtor, any Guarantor, or any Collateral, (iv) there shall occur any sale or other disposition by Borrower, the Debtor, or any Guarantor of any substantial portion of its assets or property or voluntary suspension of the transaction of business by Borrower, the Debtor, or any Guarantor, or death, dissolution, termination of existence, merger, consolidation, insolvency, business failure, or assignment for the benefit of creditors of or by Borrower, the Debtor, or any Guarantor; or commencement of any proceedings under any state or federal bankruptcy or insolvency laws or laws for the relief of debtors by or against Borrower, the Debtor, or any Guarantor; or the appointment of a receiver, trustee, court appointee, sequestrator or otherwise, for all or any part of the property of Borrower, the Debtor, or any Guarantor, (v) Lender deems the margin of Collateral insufficient or itself insecure, in good faith believing that the prospect of payment of the Liabilities or performance of this Agreement is impaired or shall fear deterioration, removal, or waste of Collateral; or (vi) any default or event of default shall occur under any instrument, agreement or other document evidencing, securing or otherwise relating to any of the Liabilities (including, for the avoidance of doubt, under any of the Loan Documents) or under the Consulting Engagement Documents (the foregoing (i) through (vi), each an "Event of Default"), then Lender may at its discretion and without prior notice to the Debtor declare any or all of the Liabilities to be immediately due and payable, and shall have and may exercise any right or remedy available to it including, without limitation, any one or more of the following rights and remedies: (1) exercise all the rights and remedies upon default, in foreclosure and otherwise, available to secured parties under the provisions of the Uniform Commercial Code and other applicable law, (2) institute legal proceedings to foreclose upon the lien and security interest granted by this Agreement, to recover judgment for all amounts then due and owing as Liabilities, and to collect the same out of any Collateral or the proceeds of any sale of it, (3) institute legal proceedings for the sale, under the judgment or decree of any court of competent jurisdiction, of any or all Collateral, (4) require the Debtor to assemble the Collateral and make it available to the Lender at a place to be designated by the Lender which is reasonably convenient to both parties, (5) personally or by agents, attorneys, or appointment of a receiver, enter upon any premises where Collateral may then be located, and take possession with or without demand and with or without process of law of all or any of it and/or render it unusable; and without being responsible for loss or damage to such Collateral, hold, operate, sell, ship, reclaim, recover, store, finish, maintain, repair, lease, or dispose of all or any Collateral at one or more public or private sales, leasings or other dispositions, at places (including, without limit, the Debtor's premises) and times and on terms and conditions as Lender may deem fit, without any previous demand or advertisement; and except as provided in this Agreement, all notice of sale, lease or other disposition, and advertisement, and

8

other notice or demand, any right or equity of redemption, and any obligation of a prospective purchaser or lessee to inquire as to the power and authority of Lender to sell, lease, or otherwise dispose of the Collateral or as to the application by Lender of the proceeds of sale or otherwise, which would otherwise be required by, or available to the Debtor under, applicable law are expressly waived by the Debtor to the fullest extent permitted.

(b)      Should an Event of Default occur, the Debtor will pay to the Lender all costs reasonably incurred by the Lender for the purpose of enforcing its rights hereunder, to the extent not prohibited by law, including, without limitation: costs of foreclosure; costs of obtaining money damages; and a reasonable fee for the services of internal and outside attorneys employed or engaged by the Lender for any purpose related to this Agreement, including, without limitation, consultation, drafting documents, sending notices or instituting, prosecuting or defending litigation or any proceeding, all such costs shall bear interest at the highest per annum rate applicable to any of the Liabilities, but not in excess of the maximum rate permitted by law.

(c)      The Debtor agrees that upon an Event of Default the Lender may dispose of any of the Collateral in its then present condition, that the Lender has no duty to repair or clean the Collateral prior to sale, and that the disposal of the Collateral in its present condition or without repair or clean-up shall not affect the commercial reasonableness of such sale or disposition. The Lender's compliance with any applicable state or federal law requirements in connection with the disposition of the Collateral will not adversely affect the commercial reasonableness of any sale of the Collateral. The Lender may disclaim warranties of title, possession, quiet enjoyment, and the like, and the Debtor agrees that any such action shall not affect the commercial reasonableness of the sale. In connection with the right of the Lender to take possession of the Collateral, the Lender may take possession of any other items of property in or on the Collateral at the time of taking possession, and hold them for the Debtor without liability on the part of the Lender. The Debtor expressly agrees that Lender may enter upon the premises where the Collateral is believed to be located without any obligation of payment to the Debtor, and that the Lender may, without cost, use any and all of the Debtor's "equipment" (as defined in the UCC) in the manufacturing or processing of any "inventory" (as defined in the UCC) or in growing, raising, cultivating, caring for, harvesting, loading and transportation of any of the Collateral that constitutes "farm products" (as defined in the UCC). If there is any statutory requirement for notice, that requirement shall be met if the Lender sends notice to the Debtor at least ten (10) days prior to the date of sale, disposition, or other event giving rise to the required notice, and such notice shall be deemed commercially reasonable. The Debtor is liable for any deficiency remaining after disposition of the Collateral.

(d)      The proceeds of any sale or other disposition of Collateral authorized by this Agreement shall be applied by Lender first upon all expenses authorized by the UCC and all attorneys fees and legal expenses incurred by Lender; then the balance of the proceeds of the sale or other disposition shall be applied to the payment of interest on the Liabilities, then to the payment of principal on Liabilities, then any remaining proceeds shall be paid over to the Debtor or to such other person(s) as may be entitled to it under applicable law. The Debtor shall remain liable for any deficiency, which shall be due to Lender immediately upon demand. The Debtor agrees that Lender shall be under no obligation to accept any noncash proceeds in connection with any sale or disposition of Collateral unless failure to do so would be commercially unreasonable.  If Lender agrees in its sole discretion to accept noncash proceeds (unless the failure to do so would be commercially unreasonable), Lender may ascribe any commercially reasonable value to such proceeds.  Without limiting the foregoing, Lender may also apply any discount factor in determining the present value of proceeds to be received in the future or may elect to apply proceeds to be received in the future only as and when such proceeds are actually received in cash by Lender.

(e)      At any sale pursuant to this Section 7, whether under the power of sale, by virtue of judicial proceedings or otherwise, it shall not be necessary for Lender or a public officer under order of a court to have present physical or constructive possession of Collateral to be sold. The recitals contained in any conveyances and receipts made and given by Lender or the public officer to any purchaser at any sale made pursuant to this Agreement shall, to the extent permitted by applicable law, conclusively establish the truth and accuracy of the matters stated (including, without limit, as to the amounts of the principal of and interest on the Liabilities, the

9

accrual and nonpayment of it and advertisement and conduct of the sale); and all prerequisites to the sale shall be presumed to have been satisfied and performed. Upon any sale of any Collateral, the receipt of the officer making the sale under judicial proceedings or of Lender shall be sufficient discharge to the purchaser for the purchase money, and the purchaser shall not be obligated to see to the application of the money. Any sale of any Collateral under this Agreement shall be a perpetual bar against the Debtor with respect to that Collateral. At any sale or other disposition of the Collateral pursuant to this Section 7, Lender disclaims all warranties which would otherwise be given under the Uniform Commercial Code, including, without limit, a disclaimer of any warranty relating to title, possession, quiet enjoyment or the like, and Lender may communicate these disclaimers to a purchaser at such disposition. This disclaimer of warranties will not render the sale commercially unreasonable. Lender may, in its discretion, bid and purchase any of the Collateral at any sale pursuant to this Section 7.

8.      **Waivers.**  The Debtor absolutely, unconditionally, knowingly, and expressly waives:

(a)      To the extent not expressly prohibited by applicable law, any right to require Lender to (a) proceed against any person or property; (b) give notice of the terms, time and place of any public or private sale of personal property security held from the Debtor or any other person, or otherwise comply with the provisions of Section 9.504 of the Uniform Commercial Code in effect prior to July 1, 2001 or its successor provisions thereafter; or (c) pursue any other remedy in the Lender's power. The Debtor waives notice of acceptance of this Agreement and presentment, demand, protest, notice of protest, dishonor, notice of dishonor, notice of default, notice of intent to accelerate or demand payment of any Liabilities, any and all other notices to which the Debtor might otherwise be entitled, and diligence in collecting any Liabilities, and agrees that the Lender may, once or any number of times, modify the terms of any Liabilities, compromise, extend, increase, accelerate, renew or forbear to enforce payment of any or all Liabilities, or permit Borrower to incur additional Liabilities, all without notice to the Debtor and without affecting in any manner the unconditional obligation of the Debtor under this Agreement. The Debtor unconditionally and irrevocably waives each and every defense and setoff of any nature which, under principles of guaranty or otherwise, would operate to impair or diminish in any way the obligation of the Debtor under this Agreement, and acknowledges that such waiver is by this reference incorporated into each security agreement, collateral assignment, pledge and/or other document from the Debtor now or later securing the Liabilities, and acknowledges that as of the date of this Agreement no such defense or setoff exists. The Debtor ratifies and approves all acts of Lender acting in its capacity as the Debtor's attorney-in-fact under this Agreement. Neither Lender nor its attorney-in-fact will be liable for any acts or omissions or for any error of judgment or mistake of fact or law.

(b)      Its right to require Lender to institute suit against, or to exhaust any rights and remedies which Lender has or may have against, Borrower or any third party, or against any Collateral provided by Borrower or any third party.  In this regard, the Debtor is bound to the payment of all Liabilities whether now existing or hereafter accruing, as fully as if such Liabilities were directly owing to Lender by the Debtor.  The Debtor waives any defense arising by reason of any disability or other defense (other than the defense that the Liabilities shall have been fully and finally performed and indefeasibly paid) of Borrower or by reason of the cessation from any cause whatsoever of the liability of Borrower in respect thereof.

(c)      (i) Any rights to assert against Lender, any defense (legal or equitable), set-off, counterclaim, or claim which the Debtor may now or at any time hereafter have against the Borrower or any other party liable to Lender; (ii) any defense, set-off, counterclaim, or claim, of any kind or nature, arising directly or indirectly from the present or future lack of perfection, sufficiency, validity, or enforceability of the Liabilities or any security therefor; (iii) any defense the Debtor has to performance hereunder, and any right the Debtor has to be exonerated arising by reason of: the impairment or suspension of Lender's rights or remedies against Borrower; the alteration by Lender of the Liabilities; any discharge of the Liabilities by operation of law as a result of Lender's intervention or omission; or the acceptance by Lender of anything in partial satisfaction of the Liabilities; (iv) the benefit of any statute of limitations affecting the Debtor's liability hereunder or the enforcement thereof, and any act which shall defer or delay the operation of any statute of limitations

10

applicable to the Liabilities shall similarly operate to defer or delay the operation of such statute of limitations applicable to the Debtor's liability hereunder.

(d)     Any defense arising by reason of or deriving from (i) any claim or defense based upon an election of remedies by Lender; or (ii) any election by Lender under the Bankruptcy Code Section 1111(b) to limit the amount of, or any collateral securing, its claim against Borrower.

(e)     Any and all rights (whether by subrogation, indemnity, reimbursement, or otherwise) to recover from Borrower or any other person any amounts paid or the value of any Collateral given by the Debtor pursuant to this Agreement until such time as all of the Liabilities have been fully paid.

9.     **Miscellaneous.**

(a)     Where the Collateral is located at, used in or attached to a facility not owned by the Debtor, the Debtor will obtain from the lessor, or other appropriate party, a consent to the granting of this security interest and a subordination of the lessor's interest in any of the Collateral, in form acceptable to the Lender.

(b)     At its option the Lender may, but shall be under no duty or obligation to, discharge taxes, liens, security interests or other encumbrances at any time levied or placed on the Collateral, pay for insurance on the Collateral, and pay for the maintenance and preservation of the Collateral, and the Debtor agrees to reimburse the Lender on demand for any payment made or expense incurred by the Lender, with interest at the maximum legal rate.

(c)     No delay on the part of Lender in the exercise of any right or remedy shall operate as a waiver, nothing in this Agreement is intended, nor shall it be construed, to preclude Lender from pursuing any other right or remedy provided by law or in equity, and no waiver or indulgence by the Lender of any default or Event of Default shall be effective unless in writing and signed by an authorized officer of the Lender, nor shall a waiver on one occasion be construed as a waiver of that right on any future occasion or a waiver of any other right.

(d)     The Lender shall not be required to marshal any present or future collateral security (including this Agreement and the Collateral) for the Liabilities or any of them or to resort to such collateral security or other assurances of payment in any particular order.  To the extent that it lawfully may, the Debtor hereby agrees that it will not invoke any law relating to the marshaling of collateral which might cause delay in or impede the enforcement of the Lender's rights under this Agreement or under any other instrument creating or evidencing any of the Liabilities or under which any of the Liabilities is outstanding or by which any of the Liabilities is secured or payment thereof is otherwise assured, and, to the extent allowed by applicable law, the Debtor irrevocably waives the benefits of all such laws.

(e)     If any provision of this Agreement is invalid, it shall be ineffective only to the extent of its invalidity, and the remaining provisions shall be valid and effective.

(f)     Notice from one party to another relating to this Agreement shall be deemed effective if made in writing (including telecommunications) and delivered to the recipient's address, telex number or telecopier number set forth above by any of the following means: (i) hand delivery, (ii) registered or certified mail, postage prepaid, with return receipt requested, (iii) first class or express mail, postage prepaid, (iv) Federal Express or like overnight courier service or (v) telecopy, telex or other wire transmission with request for assurance of receipt in a manner typical with respect to communications of that type. Notice made in accordance with this section shall be deemed delivered on receipt if delivered by hand or wire transmission, on the third business day after mailing if mailed by first class, registered or certified mail, or on the next business day after mailing or deposit with an overnight courier service if delivered by express mail or overnight courier.

11

(g)     To the extent that any of the Liabilities is payable upon demand, nothing contained in this Agreement shall modify the terms and conditions of those Liabilities nor shall anything stated in this Agreement prevent Lender from making demand, with or without notice and with or without reason, and whether or not a default or Event of Default has occurred, for immediate payment of any or all of those Liabilities at any time.

(h)     All rights of the Lender shall inure to the benefit of the Lender's successors and assigns; and all obligations of the Debtor shall bind the Debtor's heirs, executors, administrators, successors and assigns. If there is more than one Debtor, their obligations are joint and several.  Debtor acknowledges that Lender may, at any time, assign its rights under this Agreement and any other Loan Document, including without limitation Lender's rights to payment and enforcement of the Liabilities.

(i)     The Debtor shall pay or reimburse the Lender for all costs, fees and expenses incurred by the Lender or for which the Lender becomes obligated in connection with the enforcement of this Agreement, including attorneys' fees of counsel to the Lender, which shall also include attorneys' fees and time charges of attorneys who may be employees of the Lender of any of it subsidiaries or affiliates, plus costs and expenses of such attorneys or of the Lender; search fees, costs and expenses; and all taxes payable in connection with this Agreement.  The Debtor shall pay any and all stamp and other taxes, UCC search fees, filing fees and other costs and expenses in connection with the execution and delivery of this Agreement to be delivered hereunder, and agrees to save and hold the Lender harmless from and against any and all liabilities with respect to or resulting from any delay in paying or omission to pay such costs and expenses.  That portion of the Liabilities consisting of costs, expenses or advances to be reimbursed by the Debtor to the Lender pursuant to this Agreement which are not paid on or prior to the date hereof shall be payable by the Debtor to the Lender on demand.  If at any time or times hereafter the Lender: (i) employs counsel for advice or other representation (A) with respect to this Agreement, (B) to represent the Lender in any litigation, contest, dispute, suit or proceeding or to commence, defend, or intervene or to take any other action in or with respect to any litigation, contest, dispute, suit, or proceeding (whether instituted by the Lender, the Debtor, or any other party) in any way or respect relating to this Agreement, or (C) to enforce any rights of the Lender against the Debtor or any other party under of this Agreement; (ii) takes any action to protect, collect, sell, liquidate, or otherwise dispose of any of the Collateral; and/or (iii) attempts to or enforces any of the Lender's rights or remedies under this Agreement, the costs and expenses incurred by the Lender in any manner or way with respect to the foregoing, shall be part of the Liabilities, payable by the Debtor to the Lender on demand.

(j)     A carbon, photographic or other reproduction of this Agreement is sufficient, and can be filed as a financing statement, The Lender is irrevocably appointed the Debtor's attorney-in-fact to execute any financing statement on the Debtor's behalf covering the Collateral.

(k)     The terms and provisions of this security agreement shall be governed by and construed in accordance with the laws of the State of Michigan (without regard to conflict of law principles). The Debtor irrevocably submits to the non-exclusive jurisdiction of any United States federal court sitting in the Eastern District of Michigan or any state court in Oakland County in the State of Michigan in any action or proceeding arising out of or relating to this Agreement, and the Debtor irrevocably agrees that all such claims may be heard and determined in any such court and irrevocably waives any present and future objection it may have as to the venue of any action or proceeding brought in that court, or that that court is an inconvenient forum. Any suit brought by the Debtor related to this Agreement may only be brought in the United States federal court sitting in the Eastern District of Michigan or in a state court in Oakland County in the State of Michigan. Nothing herein shall limit the right of the Lender to bring any action or proceeding against the Debtor in the courts of any other jurisdiction if necessary or convenient to effect the relief sought.

(l)     The parties intend that the terms used herein which are defined in the UCC have, at all times, the broadest and most inclusive meanings possible.  Accordingly, if the UCC shall in the future be amended or held by a court to define any term used herein more broadly or inclusively than the UCC in effect on the date of this Agreement, then such term, as used herein, shall be given such broadened meaning.  If the Uniform

12

Commercial Code shall in the future be amended or held by a court to define any term used herein more narrowly, or less inclusively, than the UCC in effect on the date of this Agreement, such amendment or holding shall be disregarded in defining terms used in this Agreement.

10.    **Release**.  The Debtor hereby releases the Lender, its affiliates and subsidiaries and all of their respective officers, directors, employees, shareholders, agents, attorneys and representatives as well as their respective successors and assigns from any and all claims, obligations, rights, causes of action, and liabilities, of whatever kind or nature, whether known or unknown, whether foreseen or unforeseen, arising on or before the date hereof (the "Released Matters").  Without limiting the generality of the foregoing, the Debtor hereby waives the provisions of any statute or doctrine to the effect that a general release does not extend to claims which a releasing party does not know or suspect to exist in its favor at the time of executing the release, which if known by such releasing party would have materially affected the releasing party's settlement with the party being released.  The Debtor acknowledges that the agreements in this paragraph are intended to be in full satisfaction of all or any alleged injuries or damages arising in connection with the Released Matters.  If the Debtor asserts or commences any claim, counter-claim, demand, obligation, liability or cause of action in derogation of the foregoing release or challenges the enforceability of the foregoing release (in each case, a "Violation"), then the Debtor  agrees to pay in addition to such other damages as any party being released may sustain as a result of such Violation, all reasonable attorneys' fees and expenses (including in-house and outside counsel) incurred by such party being released as a result of such Violation.

11.    **Information Sharing.** The Lender may provide, without any limitation whatsoever, any information or knowledge the Lender may have about the undersigned or any matter relating to this Agreement and any related documents to any of its subsidiaries or affiliates or their successors, or to any one or more purchasers or potential purchasers of this Agreement or any related documents, and the undersigned waives any right to privacy the undersigned may have with respect to such matters. The Debtor agrees that the Lender may at any time sell, assign or transfer one or more interests or participations in all or any part of its rights or obligations in this Agreement to one or more purchasers whether or not related to the Lender.

12.    **WAIVER OF JURY TRIAL.** THE LENDER AND THE DEBTOR, AFTER CONSULTING OR HAVING HAD THE OPPORTUNITY TO CONSULT WITH COUNSEL, KNOWINGLY AND VOLUNTARILY AND FOR THEIR MUTUAL BENEFIT WAIVE ANY RIGHT EITHER OF THEM HAVE TO A TRIAL BY JURY IN ANY PROCEEDING (WHETHER SOUNDING IN CONTRACT OR TORT) WHICH IS IN ANY WAY CONNECTED WITH THIS OR ANY RELATED AGREEMENT, OR THE RELATIONSHIP ESTABLISHED UNDER THEM. THIS PROVISION MAY ONLY BE MODIFIED IN A WRITTEN INSTRUMENT EXECUTED BY LENDER AND THE DEBTOR.

13.    **Perfection of Certain Collateral**. The Lender and Debtor acknowledge that Debtor is also granting a security interest in the Collateral in favor of Consultant. In the event that the Lender takes possession of or has "control" (as such term is used in the Uniform Commercial Code as in effect in each applicable jurisdiction) over any Collateral for purposes of perfecting its lien therein, the Lender shall be deemed to be holding such Collateral on its own behalf, and as representative for Consultant solely for purposes of perfection of Consultant's lien under the Uniform Commercial Code; provided that the Lender shall not have any duty or liability to protect or preserve any rights pertaining to any of the Collateral for Consultant.

13

IN WITNESS WHEREOF, the undersigned have executed this Agreement as of the date first written above.

**Debtor:**

EXCELL AUTO GROUP, INC.

By: _____
    Name: Scott Zankl
    Title: Vice President

KARMA OF PALM BEACH, INC.

By: _____
    Name: Scott Zankl
    Title: President

KARMA OF BROWARD, INC.

By: _____
    Name: Scott Zankl
    Title: Vice President

Accepted and Agreed:

**Lender:**

DocuSigned by: L GROUP, LLC

_Shaya Baum_
FA0863623F534CA... _____ um
    Title: Authorized Representative

Bodman_18055849_2

15

## SCHEDULE I

## PLEDGED SHARES

| Pledgor/Record & Beneficial Owner | Issuing Entity | Class of Issued Stock/Units | Certificate No. of Issued Shares/Units | Number of Shares/Units Issued | Total Shares/Units Issued in such Class |
|---|---|---|---|---|---|
| | | | | | |

15

Bodman_18055849_2

# EXHIBIT D

**UCC FINANCING STATEMENT**

FOLLOW INSTRUCTIONS

FLORIDA SECURED TRANSACTION REGISTRY

**A. NAME & PHONE OF CONTACT AT FILER (optional)**
CSC 1-800-858-5294

**B. E-MAIL CONTACT AT FILER (optional)**
SPRFiling@cscglobal.com

$ 50

FILED

2021 Sep 09 03:59 PM

****** 202108401154 ******

**C. SEND ACKNOWLEDGMENT TO: (Name and Address)**

2180 73344
CSC
801 Adlai Stevenson Drive
Springfield, IL 62703

Filed In: Florida
(S.O.S.)

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S NAME: Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of Item 1 blank, check here ☐ and provide the Individual Debtor information in Item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 1a. ORGANIZATION'S NAME EXCELL AUTO GROUP, INC. | | | |
|---|---|---|---|
| OR 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 1c. MAILING ADDRESS 6454 EAST ROGERS CIRCLE | CITY BOCA RATON | STATE FL | POSTAL CODE 33487 | COUNTRY USA |

2. DEBTOR'S NAME: Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of Item 2 blank, check here ☐ and provide the Individual Debtor information in Item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 2a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| OR 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

3. SECURED PARTY'S NAME (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only one Secured Party name (3a or 3b)

| 3a. ORGANIZATION'S NAME FRANKLIN CAPITAL GROUP, LLC | | | |
|---|---|---|---|
| OR 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 3c. MAILING ADDRESS 32300 NORTHWESTERN HWY. | CITY FARMINGTON HILLS | STATE MI | POSTAL CODE 48334 | COUNTRY USA |

4. COLLATERAL: This financing statement covers the following collateral:
Florida Documentary Stamp Tax is not required.
All personal property of the Debtor including, without limitation, all of the following property Debtor now or later owns or has an interest in, wherever located:

a) all of the Debtor's Accounts, Chattel Paper, Deposit Accounts, Documents, Equipment, Farm Products, Fixtures, Goods, General Intangibles, Instruments, Inventory, Investment Property, Letter of Credit Rights (whether or not given in support of Accounts), Software, as defined below (words and phrases used herein and not otherwise specifically defined herein shall have the respective meanings assigned to such terms as such terms are defined in the Uniform Commercial Code of the State of Michigan, as in effect from time to time (the "UCC"), present and future, including but not limited to any items listed on Schedule 1 attached hereto, if any;
b) all present and future insurance claims relating to any of the above;
c) all Goods, Instruments (including, without limit, promissory notes), Documents (including, without limit, negotiable

5. Check only if applicable and check only one box: Collateral is ☐ held in a Trust (see UCC1Ad, Item 17 and Instructions) ☐ being administered by a Decedent's Personal Representative

6a. Check only if applicable and check only one box:
☐ Public-Finance Transaction ☐ Manufactured-Home Transaction ☐ A Debtor is a Transmitting Utility

6b. Check only if applicable and check only one box:
☐ Agricultural Lien ☐ Non-UCC Filing

7. ALTERNATIVE DESIGNATION (if applicable): ☐ Lessee/Lessor ☐ Consignee/Consignor ☐ Seller/Buyer ☐ Bailee/Bailor ☐ Licensee/Licensor

8. OPTIONAL FILER REFERENCE DATA: NJR/ASW (15492-1)

2180 73344

FILING OFFICE COPY — UCC FINANCING STATEMENT (Form UCC1) (Rev. 04/20/11)

# UCC FINANCING STATEMENT ADDENDUM

FOLLOW INSTRUCTIONS

9. NAME OF FIRST DEBTOR: Same as line 1a or 1b on Financing Statement; if line 1b was left blank because Individual Debtor name did not fit, check here ☐

| 9a. ORGANIZATION'S NAME |
|---|
| EXCELL AUTO GROUP, INC. |

OR

| 9b. INDIVIDUAL'S SURNAME |
|---|
| FIRST PERSONAL NAME |
| ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

10. DEBTOR'S NAME: Provide (10a or 10b) only one additional Debtor name or Debtor name that did not fit in line 1b or 2b of the Financing Statement (Form UCC1) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name) and enter the mailing address in line 10c

| 10a. ORGANIZATION'S NAME |  |  |  |  |
|---|---|---|---|---|
| OR 10b. INDIVIDUAL'S SURNAME |  |  |  |  |
| INDIVIDUAL'S FIRST PERSONAL NAME |  |  |  |  |
| INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S) |  |  |  | SUFFIX |
| 10c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

11. ☐ ADDITIONAL SECURED PARTY'S NAME or ☐ ASSIGNOR SECURED PARTY'S NAME: Provide only one name (11a or 11b)

| 11a. ORGANIZATION'S NAME |  |  |  |  |
|---|---|---|---|---|
| OR 11b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) |  | SUFFIX |
| 11c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

12. ADDITIONAL SPACE FOR ITEM 4 (Collateral):
Documents), policies and certificates of insurance, Deposit Accounts, and money or other property (except real property which is not a fixture) which are now or later in possession of Secured Party, or as to which Secured Party now or later controls possession by documents or otherwise;
d) all present and future books, records, and data of the Debtor relating to any of the above; and
e) all present and future accessions, additions and attachments to, proceeds, parts, products, replacement, substitutions, Supporting Obligations and rights arising out of, any of the above, including but not limited to stock rights,

| 13. ☐ This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS (if applicable) | 14. This FINANCING STATEMENT: ☐ covers timber to be cut ☐ covers as-extracted collateral ☐ is filed as a fixture filing |
|---|---|
| 15. Name and address of a RECORD OWNER of real estate described in item 16 (if Debtor does not have a record interest): | 16. Description of real estate: |

17. MISCELLANEOUS:

FILING OFFICE COPY — UCC FINANCING STATEMENT ADDENDUM (Form UCC1Ad) (Rev. 04/20/11)

## UCC FINANCING STATEMENT ADDENDUM

FOLLOW INSTRUCTIONS

| 9. NAME OF FIRST DEBTOR: Same as line 1a or 1b on Financing Statement; if line 1b was left blank because Individual Debtor name did not fit, check here ☐ |
|---|
| 9a. ORGANIZATION'S NAME |
| EXCELL AUTO GROUP, INC. |

OR

| 9b. INDIVIDUAL'S SURNAME |
|---|
| FIRST PERSONAL NAME |
| ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

10. DEBTOR'S NAME: Provide (10a or 10b) only one additional Debtor name or Debtor name that did not fit in line 1b or 2b of the Financing Statement (Form UCC1) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name) and enter the mailing address in line 10c

| 10a. ORGANIZATION'S NAME | | | | | |
|---|---|---|---|---|---|
| OR 10b. INDIVIDUAL'S SURNAME | | | | | |
| INDIVIDUAL'S FIRST PERSONAL NAME | | | | | |
| INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S) | | | | | SUFFIX |
| 10c. MAILING ADDRESS | CITY | | STATE | POSTAL CODE | COUNTRY |

11. ☐ ADDITIONAL SECURED PARTY'S NAME or ☐ ASSIGNOR SECURED PARTY'S NAME: Provide only one name (11a or 11b)

| 11a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| OR 11b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 11c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

12. ADDITIONAL SPACE FOR ITEM 4 (Collateral):
subscription rights, interest, distributions, dividends, stock dividends, stock splits, or liquidating dividends, renewals, all cash and Accounts, insurance policies and proceeds, arising from the sale, rent, lease, casualty loss or other disposition of any of the above and cash and other property which were proceeds of any of the above and are recovered by a bankruptcy trustee or otherwise as a preferential transfer by the Debtor.

In this description of Collateral, a reference to a type of collateral shall not be limited by a separate reference to a more

| 13. ☐ This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS (if applicable) | 14. This FINANCING STATEMENT: ☐ covers timber to be cut ☐ covers as-extracted collateral ☐ is filed as a fixture filing |
|---|---|
| 15. Name and address of a RECORD OWNER of real estate described in Item 16 (if Debtor does not have a record interest): | 16. Description of real estate: |

17. MISCELLANEOUS:

FILING OFFICE COPY — UCC FINANCING STATEMENT ADDENDUM (Form UCC1Ad) (Rev. 04/20/11)

# UCC FINANCING STATEMENT ADDENDUM

FOLLOW INSTRUCTIONS

9. NAME OF FIRST DEBTOR: Same as line 1a or 1b on Financing Statement; if line 1b was left blank because Individual Debtor name did not fit, check here ☐

| 9a. ORGANIZATION'S NAME |
|---|
| EXCELL AUTO GROUP, INC. |

OR

| 9b. INDIVIDUAL'S SURNAME |
|---|
| FIRST PERSONAL NAME |
| ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

10. DEBTOR'S NAME: Provide (10a or 10b) only one additional Debtor name or Debtor name that did not fit in line 1b or 2b of the Financing Statement (Form UCC1) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name) and enter the mailing address in line 10c

| 10a. ORGANIZATION'S NAME |
|---|

OR

| 10b. INDIVIDUAL'S SURNAME |
|---|
| INDIVIDUAL'S FIRST PERSONAL NAME |
| INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

| 10c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|

11. ☐ ADDITIONAL SECURED PARTY'S NAME  or  ☐ ASSIGNOR SECURED PARTY'S NAME: Provide only one name (11a or 11b)

| 11a. ORGANIZATION'S NAME |
|---|

OR

| 11b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|

| 11c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|

12. ADDITIONAL SPACE FOR ITEM 4 (Collateral):
specific or narrower type of that collateral.

UNDER AN AGREEMENT BETWEEN DEBTOR AND SECURED PARTY, DEBTOR HAS AGREED NOT TO SELL, ASSIGN, PLEDGE OR OTHERWISE ENCUMBER THE COLLATERAL DESCRIBED IN THIS FINANCING STATEMENT, WHICH INCLUDES ALL AFTER ACQUIRED PROPERTY, INCLUDING ALL OF DEBTOR'S ACCOUNTS, FUTURE ACCOUNTS, CONTRACT RIGHTS, FUTURE SALES, RECEIPTS AND OTHER

| 13. ☐ This FINANCING STATEMENT is to be filed (for record) (or recorded) in the REAL ESTATE RECORDS (if applicable) | 14. This FINANCING STATEMENT: ☐ covers timber to be cut  ☐ covers as-extracted collateral  ☐ is filed as a fixture filing |
|---|---|
| 15. Name and address of a RECORD OWNER of real estate described in Item 16 (if Debtor does not have a record interest): | 16. Description of real estate: |

17. MISCELLANEOUS:

FILING OFFICE COPY — UCC FINANCING STATEMENT ADDENDUM (Form UCC1Ad) (Rev. 04/20/11)

# UCC FINANCING STATEMENT ADDENDUM
FOLLOW INSTRUCTIONS

9. NAME OF FIRST DEBTOR: Same as line 1a or 1b on Financing Statement; if line 1b was left blank because Individual Debtor name did not fit, check here ☐

9a. ORGANIZATION'S NAME
EXCELL AUTO GROUP, INC.

OR 9b. INDIVIDUAL'S SURNAME

FIRST PERSONAL NAME

ADDITIONAL NAME(S)/INITIAL(S)          SUFFIX

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

10. DEBTOR'S NAME: Provide (10a or 10b) only one additional Debtor name or Debtor name that did not fit in line 1b or 2b of the Financing Statement (Form UCC1) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name) and enter the mailing address in line 10c.

10a. ORGANIZATION'S NAME

OR 10b. INDIVIDUAL'S SURNAME

INDIVIDUAL'S FIRST PERSONAL NAME

INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S)          SUFFIX

| 10c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

11. ☐ ADDITIONAL SECURED PARTY'S NAME or ☐ ASSIGNOR SECURED PARTY'S NAME: Provide only one name (11a or 11b)

11a. ORGANIZATION'S NAME

| OR 11b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| | | | |

| 11c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

12. ADDITIONAL SPACE FOR ITEM 4 (Collateral)
OBLIGATIONS. THE SALE, ASSIGNMENT, PLEDGE OR ENCUMBERING OF ANY SUCH COLLATERAL WOULD CONSTITUTE TORTIOUS INTERFERENCE WITH SECURED PARTY'S CONTRACTUAL RELATIONSHIP WITH DEBTOR. IN THE EVENT THAT ANY THIRD PARTY PURCHASES, TAKES AN ASSIGNMENT OR PLEDGE OF, AND/OR IS GRANTED A SECURITY INTEREST IN ANY OF THE ASSETS DESCRIBED IN THIS FINANCING STATMENT, SECURED PARTY ASSERTS A CLAIM TO ANY PROCEEDS THEREOF RECEIVED BY SUCH THIRD PARTY. DEBTOR HAS ALSO AGREED TO HOLD IN TRUST FOR SECURED PARTY ALL PAYMENTS RECEIVED IN

13. ☐ This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS (if applicable)

14. This FINANCING STATEMENT:
☐ covers timber to be cut   ☐ covers as-extracted collateral   ☐ is filed as a fixture filing

15. Name and address of a RECORD OWNER of real estate described in item 16 (if Debtor does not have a record interest):

16. Description of real estate:

17. MISCELLANEOUS:

FILING OFFICE COPY — UCC FINANCING STATEMENT ADDENDUM (Form UCC1Ad) (Rev. 04/20/11)

# UCC FINANCING STATEMENT ADDENDUM
FOLLOW INSTRUCTIONS

9. NAME OF FIRST DEBTOR: Same as line 1a or 1b on Financing Statement; if line 1b was left blank because Individual Debtor name did not fit, check here ☐

9a. ORGANIZATION'S NAME
**EXCELL AUTO GROUP, INC.**

OR

9b. INDIVIDUAL'S SURNAME

FIRST PERSONAL NAME

ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

10. DEBTOR'S NAME: Provide (10a or 10b) only one additional Debtor name or Debtor name that did not fit in line 1b or 2b of the Financing Statement (Form UCC1) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name) and enter the mailing address in line 10c

10a. ORGANIZATION'S NAME

OR

10b. INDIVIDUAL'S SURNAME

INDIVIDUAL'S FIRST PERSONAL NAME

INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX

| 10c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|

11. ☐ ADDITIONAL SECURED PARTY'S NAME or ☐ ASSIGNOR SECURED PARTY'S NAME: Provide only one name (11a or 11b)

11a. ORGANIZATION'S NAME

OR

| 11b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|

| 11c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|

12. ADDITIONAL SPACE FOR ITEM 4 (Collateral):
CONNECTION WITH SECURED PARTY'S COLLATERAL, AND FROM THE SALE, LEASE OR OTHER DISPOSITION OF SUCH COLLATERAL ANY ATTEMPT BY A THIRD PARTY TO EXERCISE DOMINION OR CONTROL OVER THE COLLATERAL DESCRIBED IN THIS FINANCING STATEMENT WOULD CONSTITUTE CONVERSION OF SECURED PARTY'S COLLATERAL.

13. ☐ This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS (if applicable)

14. This FINANCING STATEMENT:
☐ covers timber to be cut ☐ covers as-extracted collateral ☐ is filed as a fixture filing

15. Name and address of a RECORD OWNER of real estate described in item 16 (if Debtor does not have a record interest):

16. Description of real estate:

17. MISCELLANEOUS:

FILING OFFICE COPY — UCC FINANCING STATEMENT ADDENDUM (Form UCC1Ad) (Rev. 04/20/11)

FLORIDA SECURED TRANSACTION REGISTRY

## UCC FINANCING STATEMENT
**FOLLOW INSTRUCTIONS**

FILED

**A. NAME & PHONE OF CONTACT AT FILER (optional)**
CSC 1-800-858-5294

**B. E-MAIL CONTACT AT FILER (optional)**
SPRFiling@cscglobal.com

2022 Jan 27 04:10 PM

\*\*\*\*\*\* 202200284738 \*\*\*\*\*\*

**C. SEND ACKNOWLEDGMENT TO: (Name and Address)**

2209 64968
CSC
801 Adlai Stevenson Drive
Springfield, IL 62703

Filed in: Florida
(S.O.S.)

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**1. DEBTOR'S NAME:** Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

**1a. ORGANIZATION'S NAME** KARMA OF PALM BEACH, INC.

OR

| 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| | | | |

| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 1001 CLINT MOORE RD., STE. 101 | BOCA RATO | FL | 33487 | USA |

**2. DEBTOR'S NAME:** Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

**2a. ORGANIZATION'S NAME**

OR

| 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| | | | |

| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

**3. SECURED PARTY'S NAME (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY):** Provide only one Secured Party name (3a or 3b)

**3a. ORGANIZATION'S NAME** FRANKLIN CAPITAL GROUP, LLC

OR

| 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| | | | |

| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 32300 NORTHWESTERN HWY. | FARMINGTON HILLS | MI | 48334 | USA |

**4. COLLATERAL:** This financing statement covers the following collateral:
Florida Documentary Stamp Tax is not required.
All personal property of the Debtor including, without limitation, all of the following property Debtor now or later owns or has an interest in, wherever located:

a) all of the Debtor's Accounts, Chattel Paper, Deposit Accounts, Documents, Equipment, Farm Products, Fixtures, Goods, General Intangibles, Instruments, Inventory, Investment Property, Letter of Credit Rights (whether or not given in support of Accounts), Software, as defined below (words and phrases used herein and not otherwise specifically defined herein shall have the respective meanings assigned to such terms as such terms are defined in the Uniform Commercial Code of the State of Michigan, as in effect from time to time (the "UCC"), present and future, including but not limited to any items listed on Schedule 1 attached hereto, if any;
b) all present and future insurance claims relating to any of the above;
c) all Goods, Instruments (including, without limit, promissory notes), Documents (including, without limit, negotiable

**5.** Check only if applicable and check only one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and Instructions) ☐ being administered by a Decedent's Personal Representative

**6a.** Check only if applicable and check only one box:
☐ Public-Finance Transaction ☐ Manufactured-Home Transaction ☐ A Debtor is a Transmitting Utility

**6b.** Check only if applicable and check only one box:
☐ Agricultural Lien ☐ Non-UCC Filing

**7. ALTERNATIVE DESIGNATION (if applicable):** ☐ Lessee/Lessor ☐ Consignee/Consignor ☐ Seller/Buyer ☐ Bailee/Bailor ☐ Licensee/Licensor

**8. OPTIONAL FILER REFERENCE DATA:** NJR/ASW (15492-72)

2209 64968

FILING OFFICE COPY — UCC FINANCING STATEMENT (Form UCC1) (Rev. 04/20/11)

## UCC FINANCING STATEMENT ADDENDUM
FOLLOW INSTRUCTIONS

9. NAME OF FIRST DEBTOR: Same as line 1a or 1b on Financing Statement; if line 1b was left blank because Individual Debtor name did not fit, check here ☐

9a. ORGANIZATION'S NAME

KARMA OF PALM BEACH, INC.

OR

9b. INDIVIDUAL'S SURNAME

FIRST PERSONAL NAME

ADDITIONAL NAME(S)/INITIAL(S)                     SUFFIX

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

10. DEBTOR'S NAME: Provide (10a or 10b) only one additional Debtor name or Debtor name that did not fit in line 1b or 2b of the Financing Statement (Form UCC1) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name) and enter the mailing address in line 10c

10a. ORGANIZATION'S NAME

OR

10b. INDIVIDUAL'S SURNAME

INDIVIDUAL'S FIRST PERSONAL NAME

INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S)                     SUFFIX

| 10c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|

11. ☐ ADDITIONAL SECURED PARTY'S NAME or ☐ ASSIGNOR SECURED PARTY'S NAME: Provide only one name (11a or 11b)

11a. ORGANIZATION'S NAME

OR

| 11b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| 11c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

12. ADDITIONAL SPACE FOR ITEM 4 (Collateral):

Documents), policies and certificates of insurance, Deposit Accounts, and money or other property (except real property which is not a fixture) which are now or later in possession of Secured Party, or as to which Secured Party now or later controls possession by documents or otherwise;

d) all present and future books, records, and data of the Debtor relating to any of the above; and

e) all present and future accessions, additions and attachments to, proceeds, parts, products, replacement, substitutions, Supporting Obligations and rights arising out of, any of the above, including but not limited to stock rights,

13. ☐ This FINANCING STATEMENT is to be filed (for record) (or recorded) in the REAL ESTATE RECORDS (if applicable)

14. This FINANCING STATEMENT: ☐ covers timber to be cut ☐ covers as-extracted collateral ☐ is filed as a fixture filing

15. Name and address of a RECORD OWNER of real estate described in item 16 (if Debtor does not have a record interest):

16. Description of real estate:

17. MISCELLANEOUS:

FILING OFFICE COPY — UCC FINANCING STATEMENT ADDENDUM (Form UCC1Ad) (Rev. 04/20/11)

## UCC FINANCING STATEMENT ADDENDUM
FOLLOW INSTRUCTIONS

**9. NAME OF FIRST DEBTOR:** Same as line 1a or 1b on Financing Statement; if line 1b was left blank because Individual Debtor name did not fit, check here ☐

**9a. ORGANIZATION'S NAME**
KARMA OF PALM BEACH, INC.

OR **9b. INDIVIDUAL'S SURNAME**

**FIRST PERSONAL NAME**

**ADDITIONAL NAME(S)/INITIAL(S)** | **SUFFIX**

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**10. DEBTOR'S NAME:** Provide (10a or 10b) only one additional Debtor name or Debtor name that did not fit in line 1b or 2b of the Financing Statement (Form UCC1) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name) and enter the mailing address in line 10c

**10a. ORGANIZATION'S NAME**

OR **10b. INDIVIDUAL'S SURNAME**

**INDIVIDUAL'S FIRST PERSONAL NAME**

**INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S)** | **SUFFIX**

**10c. MAILING ADDRESS** | **CITY** | **STATE** | **POSTAL CODE** | **COUNTRY**

**11.** ☐ **ADDITIONAL SECURED PARTY'S NAME** or ☐ **ASSIGNOR SECURED PARTY'S NAME:** Provide only one name (11a or 11b)

**11a. ORGANIZATION'S NAME**

OR **11b. INDIVIDUAL'S SURNAME** | **FIRST PERSONAL NAME** | **ADDITIONAL NAME(S)/INITIAL(S)** | **SUFFIX**

**11c. MAILING ADDRESS** | **CITY** | **STATE** | **POSTAL CODE** | **COUNTRY**

**12. ADDITIONAL SPACE FOR ITEM 4 (Collateral):**
subscription rights, interest, distributions, dividends, stock dividends, stock splits, or liquidating dividends, renewals, all cash and Accounts, insurance policies and proceeds, arising from the sale, rent, lease, casualty loss or other disposition of any of the above and cash and other property which were proceeds of any of the above and are recovered by a bankruptcy trustee or otherwise as a preferential transfer by the Debtor.

In this description of Collateral, a reference to a type of collateral shall not be limited by a separate reference to a more

**13.** ☐ This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS (if applicable)

**14. This FINANCING STATEMENT:**
☐ covers timber to be cut ☐ covers as-extracted collateral ☐ is filed as a fixture filing

**15.** Name and address of a RECORD OWNER of real estate described in item 16 (if Debtor does not have a record interest):

**16.** Description of real estate:

**17. MISCELLANEOUS:**

FILING OFFICE COPY — UCC FINANCING STATEMENT ADDENDUM (Form UCC1Ad) (Rev. 04/20/11)

## UCC FINANCING STATEMENT ADDENDUM
FOLLOW INSTRUCTIONS

9. NAME OF FIRST DEBTOR: Same as line 1a or 1b on Financing Statement; if line 1b was left blank because Individual Debtor name did not fit, check here ☐

| 9a. ORGANIZATION'S NAME |
| --- |
| KARMA OF PALM BEACH, INC. |

OR

| 9b. INDIVIDUAL'S SURNAME |
| --- |
| FIRST PERSONAL NAME |

| ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| --- | --- |

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

10. DEBTOR'S NAME: Provide (10a or 10b) only one additional Debtor name or Debtor name that did not fit in line 1b or 2b of the Financing Statement (Form UCC1) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name) and enter the mailing address in line 10c

| 10a. ORGANIZATION'S NAME |
| --- |

OR

| 10b. INDIVIDUAL'S SURNAME |
| --- |
| INDIVIDUAL'S FIRST PERSONAL NAME |

| INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S) | | | | SUFFIX |
| --- | --- | --- | --- | --- |
| 10c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

11. ☐ ADDITIONAL SECURED PARTY'S NAME or ☐ ASSIGNOR SECURED PARTY'S NAME: Provide only one name (11a or 11b)

| 11a. ORGANIZATION'S NAME | | | |
| --- | --- | --- | --- |

OR

| 11b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| --- | --- | --- | --- |
| 11c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

12. ADDITIONAL SPACE FOR ITEM 4 (Collateral):
specific or narrower type of that collateral.

UNDER AN AGREEMENT BETWEEN DEBTOR AND SECURED PARTY, DEBTOR HAS AGREED NOT TO SELL, ASSIGN, PLEDGE OR OTHERWISE ENCUMBER THE COLLATERAL DESCRIBED IN THIS FINANCING STATEMENT, WHICH INCLUDES ALL AFTER ACQUIRED PROPERTY, INCLUDING ALL OF DEBTOR'S ACCOUNTS, FUTURE ACCOUNTS, CONTRACT RIGHTS, FUTURE SALES, RECEIPTS AND OTHER

| 13. ☐ This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS (if applicable) | 14. This FINANCING STATEMENT: ☐ covers timber to be cut ☐ covers as-extracted collateral ☐ is filed as a fixture filing |
| --- | --- |
| 15. Name and address of a RECORD OWNER of real estate described in Item 16 (if Debtor does not have a record interest): | 16. Description of real estate: |

17. MISCELLANEOUS:

FILING OFFICE COPY — UCC FINANCING STATEMENT ADDENDUM (Form UCC1Ad) (Rev. 04/20/11)

# UCC FINANCING STATEMENT ADDENDUM
FOLLOW INSTRUCTIONS

**9. NAME OF FIRST DEBTOR:** Same as line 1a or 1b on Financing Statement; if line 1b was left blank, because Individual Debtor name did not fit, check here ☐

**9a. ORGANIZATION'S NAME**

KARMA OF PALM BEACH, INC.

OR **9b. INDIVIDUAL'S SURNAME**

**FIRST PERSONAL NAME**

**ADDITIONAL NAME(S)/INITIAL(S)**  | **SUFFIX**

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**10. DEBTOR'S NAME:** Provide (10a or 10b) only one additional Debtor name or Debtor name that did not fit in line 1b or 2b of the Financing Statement (Form UCC1) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name) and enter the mailing address in line 10c

**10a. ORGANIZATION'S NAME**

OR **10b. INDIVIDUAL'S SURNAME**

**INDIVIDUAL'S FIRST PERSONAL NAME**

**INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S)** | **SUFFIX**

**10c. MAILING ADDRESS** | **CITY** | **STATE** | **POSTAL CODE** | **COUNTRY**

**11.** ☐ ADDITIONAL SECURED PARTY'S NAME or ☐ ASSIGNOR SECURED PARTY'S NAME: Provide only one name (11a or 11b)

**11a. ORGANIZATION'S NAME**

OR **11b. INDIVIDUAL'S SURNAME** | **FIRST PERSONAL NAME** | **ADDITIONAL NAME(S)/INITIAL(S)** | **SUFFIX**

**11c. MAILING ADDRESS** | **CITY** | **STATE** | **POSTAL CODE** | **COUNTRY**

**12. ADDITIONAL SPACE FOR ITEM 4 (Collateral):**
OBLIGATIONS, THE SALE, ASSIGNMENT, PLEDGE OR ENCUMBERING OF ANY SUCH COLLATERAL WOULD CONSTITUTE TORTIOUS INTERFERENCE WITH SECURED PARTY'S CONTRACTUAL RELATIONSHIP WITH DEBTOR. IN THE EVENT THAT ANY THIRD PARTY PURCHASES, TAKES AN ASSIGNMENT OR PLEDGE OF, AND/OR IS GRANTED A SECURITY INTEREST IN ANY OF THE ASSETS DESCRIBED IN THIS FINANCING STATMENT, SECURED PARTY ASSERTS A CLAIM TO ANY PROCEEDS THEREOF RECEIVED BY SUCH THIRD PARTY. DEBTOR HAS ALSO AGREED TO HOLD IN TRUST FOR SECURED PARTY ALL PAYMENTS RECEIVED IN

**13.** ☐ This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS (if applicable)

**14. This FINANCING STATEMENT:**
☐ covers timber to be cut ☐ covers as-extracted collateral ☐ is filed as a fixture filing

**15.** Name and address of a RECORD OWNER of real estate described in item 16 (if Debtor does not have a record interest):

**16.** Description of real estate:

**17. MISCELLANEOUS:**

FILING OFFICE COPY — UCC FINANCING STATEMENT ADDENDUM (Form UCC1Ad) (Rev. 04/20/11)

# UCC FINANCING STATEMENT ADDENDUM
FOLLOW INSTRUCTIONS

**9. NAME OF FIRST DEBTOR:** Same as line 1a or 1b on Financing Statement; if line 1b was left blank because Individual Debtor name did not fit, check here ☐

| 9a. ORGANIZATION'S NAME |
|---|
| KARMA OF PALM BEACH, INC. |

OR

| 9b. INDIVIDUAL'S SURNAME |
|---|
| FIRST PERSONAL NAME |

| ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**10. DEBTOR'S NAME:** Provide (10a or 10b) only one additional Debtor name or Debtor name that did not fit in line 1b or 2b of the Financing Statement (Form UCC1) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name) and enter the mailing address in line 10c

| 10a. ORGANIZATION'S NAME |
|---|

OR

| 10b. INDIVIDUAL'S SURNAME | | | | |
|---|---|---|---|---|
| INDIVIDUAL'S FIRST PERSONAL NAME | | | | |
| INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S) | | | | SUFFIX |
| 10c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

**11.** ☐ ADDITIONAL SECURED PARTY'S NAME or ☐ ASSIGNOR SECURED PARTY'S NAME: Provide only one name (11a or 11b)

| 11a. ORGANIZATION'S NAME | | | |
|---|---|---|---|

OR

| 11b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| 11c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

**12. ADDITIONAL SPACE FOR ITEM 4 (Collateral):**
CONNECTION WITH SECURED PARTY'S COLLATERAL, AND FROM THE SALE, LEASE OR OTHER DISPOSITION OF SUCH COLLATERAL ANY ATTEMPT BY A THIRD PARTY TO EXERCISE DOMINION OR CONTROL OVER THE COLLATERAL DESCRIBED IN THIS FINANCING STATEMENT WOULD CONSTITUTE CONVERSION OF SECURED PARTY'S COLLATERAL.

**13.** ☐ This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS (if applicable)

**14.** This FINANCING STATEMENT: ☐ covers timber to be cut ☐ covers as-extracted collateral ☐ is filed as a fixture filing

**15.** Name and address of a RECORD OWNER of real estate described in item 16 (if Debtor does not have a record interest):

**16.** Description of real estate:

**17. MISCELLANEOUS:**

FILING OFFICE COPY — UCC FINANCING STATEMENT ADDENDUM (Form UCC1Ad) (Rev. 04/20/11)

FLORIDA SECURED TRANSACTION REGISTRY

## UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS

FILED

**A. NAME & PHONE OF CONTACT AT FILER (optional)**
CSC    1-800-858-5294

**B. E-MAIL CONTACT AT FILER (optional)**
SPRFiling@cscglobal.com        50

2022 Jan 27 04:10 PM

****** 202200284908 ******

**C. SEND ACKNOWLEDGMENT TO:  (Name and Address)**

2209 64506
CSC
801 Adlai Stevenson Drive
Springfield, IL 62703

Filed in: Florida
(S.O.S.)

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**1. DEBTOR'S NAME:** Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 1a. ORGANIZATION'S NAME | KARMA OF BROWARD, INC. | | | |
|---|---|---|---|---|
| OR 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| 1c. MAILING ADDRESS 1699 S. FEDERAL HWY., STE. 300 | CITY BOCA RATON | STATE FL | POSTAL CODE 33432 | COUNTRY USA |

**2. DEBTOR'S NAME:** Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 2a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| OR 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

**3. SECURED PARTY'S NAME** (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only one Secured Party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | FRANKLIN CAPITAL GROUP, LLC | | | |
|---|---|---|---|---|
| OR 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| 3c. MAILING ADDRESS 32300 NORTHWESTERN HWY. | CITY FARMINGTON HILLS | STATE MI | POSTAL CODE 48334 | COUNTRY USA |

**4. COLLATERAL:** This financing statement covers the following collateral:
Florida Documentary Stamp Tax is not required.
All personal property of the Debtor including, without limitation, all of the following property Debtor now or later owns or has an interest in, wherever located:

a) all of the Debtor's Accounts, Chattel Paper, Deposit Accounts, Documents, Equipment, Farm Products, Fixtures, Goods, General Intangibles, Instruments, Inventory, Investment Property, Letter of Credit Rights (whether or not given in support of Accounts), Software, as defined below (words and phrases used herein and not otherwise specifically defined herein shall have the respective meanings assigned to such terms as such terms are defined in the Uniform Commercial Code of the State of Michigan, as in effect from time to time (the "UCC"), present and future, including but not limited to any items listed on Schedule 1 attached hereto, if any;
b) all present and future insurance claims relating to any of the above;
c) all Goods, Instruments (including, without limit, promissory notes), Documents (including, without limit, negotiable

**5.** Check only if applicable and check only one box: Collateral is ☐ held in a Trust (see UCC1Ad, Item 17 and Instructions) ☐ being administered by a Decedent's Personal Representative
**6a.** Check only if applicable and check only one box: | **6b.** Check only if applicable and check only one box:
☐ Public-Finance Transaction    ☐ Manufactured-Home Transaction    ☐ A Debtor is a Transmitting Utility | ☐ Agricultural Lien    ☐ Non-UCC Filing
**7. ALTERNATIVE DESIGNATION (if applicable):** ☐ Lessee/Lessor    ☐ Consignee/Consignor    ☐ Seller/Buyer    ☐ Bailee/Bailor    ☐ Licensee/Licensor
**8. OPTIONAL FILER REFERENCE DATA:** NJR/ASW (15492-72)

2209 64506

FILING OFFICE COPY — UCC FINANCING STATEMENT (Form UCC1) (Rev. 04/20/11)

# UCC FINANCING STATEMENT ADDENDUM
FOLLOW INSTRUCTIONS

9. NAME OF FIRST DEBTOR: Same as line 1a or 1b on Financing Statement; if line 1b was left blank because Individual Debtor name did not fit, check here ☐

| 9a. ORGANIZATION'S NAME |
| --- |
| KARMA OF BROWARD, INC. |

OR

| 9b. INDIVIDUAL'S SURNAME |
| --- |
| FIRST PERSONAL NAME |
| ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

10. DEBTOR'S NAME: Provide (10a or 10b) only one additional Debtor name or Debtor name that did not fit in line 1b or 2b of the Financing Statement (Form UCC1) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name) and enter the mailing address in line 10c.

| 10a. ORGANIZATION'S NAME |
| --- |

OR

| 10b. INDIVIDUAL'S SURNAME |
| --- |
| INDIVIDUAL'S FIRST PERSONAL NAME |
| INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

| 10c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| --- | --- | --- | --- | --- |

11. ☐ ADDITIONAL SECURED PARTY'S NAME  or  ☐ ASSIGNOR SECURED PARTY'S NAME: Provide only one name (11a or 11b)

| 11a. ORGANIZATION'S NAME |
| --- |

OR

| 11b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| --- | --- | --- | --- |

| 11c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| --- | --- | --- | --- | --- |

12. ADDITIONAL SPACE FOR ITEM 4 (Collateral):
Documents); policies and certificates of insurance, Deposit Accounts, and money or other property (except real property which is not a fixture) which are now or later in possession of Secured Party; or as to which Secured Party now or later controls possession by documents or otherwise;
d) all present and future books, records, and data of the Debtor relating to any of the above; and
e) all present and future accessions, additions and attachments to, proceeds, parts, products, replacement, substitutions, Supporting Obligations and rights arising out of, any of the above, including but not limited to stock rights,

13. ☐ This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS (if applicable)

14. This FINANCING STATEMENT:
☐ covers timber to be cut    ☐ covers as-extracted collateral    ☐ is filed as a fixture filing

15. Name and address of a RECORD OWNER of real estate described in Item 16 (if Debtor does not have a record interest):

16. Description of real estate:

17. MISCELLANEOUS:

FILING OFFICE COPY — UCC FINANCING STATEMENT ADDENDUM (Form UCC1Ad) (Rev. 04/20/11)

## UCC FINANCING STATEMENT ADDENDUM

FOLLOW INSTRUCTIONS

9. NAME OF FIRST DEBTOR: Same as line 1a or 1b on Financing Statement; if line 1b was left blank because Individual Debtor name did not fit, check here ☐

**9a. ORGANIZATION'S NAME**

KARMA OF BROWARD, INC.

OR

9b. INDIVIDUAL'S SURNAME

FIRST PERSONAL NAME

ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

10. DEBTOR'S NAME: Provide (10a or 10b) only one additional Debtor name or Debtor name that did not fit in line 1b or 2b of the Financing Statement (Form UCC1) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name) and enter the mailing address in line 10c

10a. ORGANIZATION'S NAME

OR

10b. INDIVIDUAL'S SURNAME

INDIVIDUAL'S FIRST PERSONAL NAME

INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX

| 10c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|

11. ☐ ADDITIONAL SECURED PARTY'S NAME  or  ☐ ASSIGNOR SECURED PARTY'S NAME: Provide only one name (11a or 11b)

11a. ORGANIZATION'S NAME

OR

| 11b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|

| 11c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|

12. ADDITIONAL SPACE FOR ITEM 4 (Collateral):

subscription rights, interest, distributions, dividends, stock dividends, stock splits, or liquidating dividends, renewals, all cash and Accounts, insurance policies and proceeds, arising from the sale, rent, lease, casualty loss or other disposition of any of the above and cash and other property which were proceeds of any of the above and are recovered by a bankruptcy trustee or otherwise as a preferential transfer by the Debtor.

In this description of Collateral, a reference to a type of collateral shall not be limited by a separate reference to a more

13. ☐ This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS (if applicable)

14. This FINANCING STATEMENT: ☐ covers timber to be cut   ☐ covers as-extracted collateral   ☐ is filed as a fixture filing

15. Name and address of a RECORD OWNER of real estate described in Item 16 (if Debtor does not have a record interest):

16. Description of real estate:

17. MISCELLANEOUS:

FILING OFFICE COPY — UCC FINANCING STATEMENT ADDENDUM (Form UCC1Ad) (Rev. 04/20/11)

# UCC FINANCING STATEMENT ADDENDUM
FOLLOW INSTRUCTIONS

9. NAME OF FIRST DEBTOR: Same as line 1a or 1b on Financing Statement; if line 1b was left blank because Individual Debtor name did not fit, check here ☐

9a. ORGANIZATION'S NAME
KARMA OF BROWARD, INC.

OR

9b. INDIVIDUAL'S SURNAME

FIRST PERSONAL NAME

ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

10. DEBTOR'S NAME: Provide (10a or 10b) only one additional Debtor name or Debtor name that did not fit in line 1b or 2b of the Financing Statement (Form UCC1) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name) and enter the mailing address in line 10c

10a. ORGANIZATION'S NAME

OR

10b. INDIVIDUAL'S SURNAME

INDIVIDUAL'S FIRST PERSONAL NAME

INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX

10c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY

11. ☐ ADDITIONAL SECURED PARTY'S NAME  or  ☐ ASSIGNOR SECURED PARTY'S NAME: Provide only one name (11a or 11b)

11a. ORGANIZATION'S NAME

OR

11b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX

11c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY

12. ADDITIONAL SPACE FOR ITEM 4 (Collateral):
specific or narrower type of that collateral.

UNDER AN AGREEMENT BETWEEN DEBTOR AND SECURED PARTY, DEBTOR HAS AGREED NOT TO SELL, ASSIGN, PLEDGE OR OTHERWISE ENCUMBER THE COLLATERAL DESCRIBED IN THIS FINANCING STATEMENT, WHICH INCLUDES ALL AFTER ACQUIRED PROPERTY, INCLUDING ALL OF DEBTOR'S ACCOUNTS, FUTURE ACCOUNTS, CONTRACT RIGHTS, FUTURE SALES, RECEIPTS AND OTHER

13. ☐ This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS (if applicable)

14. This FINANCING STATEMENT:
☐ covers timber to be cut   ☐ covers as-extracted collateral   ☐ is filed as a fixture filing

15. Name and address of a RECORD OWNER of real estate described in item 16 (if Debtor does not have a record interest):

16. Description of real estate:

17. MISCELLANEOUS:

FILING OFFICE COPY — UCC FINANCING STATEMENT ADDENDUM (Form UCC1Ad) (Rev. 04/20/11)

# UCC FINANCING STATEMENT ADDENDUM

FOLLOW INSTRUCTIONS

**9. NAME OF FIRST DEBTOR:** Same as line 1a or 1b on Financing Statement; if line 1b was left blank because Individual Debtor name did not fit, check here ☐

**9a. ORGANIZATION'S NAME**
KARMA OF BROWARD, INC.

OR **9b. INDIVIDUAL'S SURNAME**

**FIRST PERSONAL NAME**

**ADDITIONAL NAME(S)/INITIAL(S)** | **SUFFIX**

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**10. DEBTOR'S NAME:** Provide (10a or 10b) only one additional Debtor name or Debtor name that did not fit in line 1b or 2b of the Financing Statement (Form UCC1) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name) and enter the mailing address in line 10c

**10a. ORGANIZATION'S NAME**

OR **10b. INDIVIDUAL'S SURNAME**

**INDIVIDUAL'S FIRST PERSONAL NAME**

**INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S)** | **SUFFIX**

**10c. MAILING ADDRESS** | **CITY** | **STATE** | **POSTAL CODE** | **COUNTRY**

**11.** ☐ **ADDITIONAL SECURED PARTY'S NAME** or ☐ **ASSIGNOR SECURED PARTY'S NAME:** Provide only one name (11a or 11b)

**11a. ORGANIZATION'S NAME**

OR **11b. INDIVIDUAL'S SURNAME** | **FIRST PERSONAL NAME** | **ADDITIONAL NAME(S)/INITIAL(S)** | **SUFFIX**

**11c. MAILING ADDRESS** | **CITY** | **STATE** | **POSTAL CODE** | **COUNTRY**

**12. ADDITIONAL SPACE FOR ITEM 4 (Collateral):**
OBLIGATIONS. THE SALE, ASSIGNMENT, PLEDGE OR ENCUMBERING OF ANY SUCH COLLATERAL WOULD CONSTITUTE TORTIOUS INTERFERENCE WITH SECURED PARTY'S CONTRACTUAL RELATIONSHIP WITH DEBTOR. IN THE EVENT THAT ANY THIRD PARTY PURCHASES, TAKES AN ASSIGNMENT OR PLEDGE OF, AND/OR IS GRANTED A SECURITY INTEREST IN ANY OF THE ASSETS DESCRIBED IN THIS FINANCING STATMENT, SECURED PARTY ASSERTS A CLAIM TO ANY PROCEEDS THEREOF RECEIVED BY SUCH THIRD PARTY. DEBTOR HAS ALSO AGREED TO HOLD IN TRUST FOR SECURED PARTY ALL PAYMENTS RECEIVED IN

**13.** ☐ This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS (if applicable)

**14.** This FINANCING STATEMENT:
☐ covers timber to be cut ☐ covers as-extracted collateral ☐ is filed as a fixture filing

**15.** Name and address of a RECORD OWNER of real estate described in item 16 (if Debtor does not have a record interest):

**16.** Description of real estate:

**17. MISCELLANEOUS:**

FILING OFFICE COPY — UCC FINANCING STATEMENT ADDENDUM (Form UCC1Ad) (Rev. 04/20/11)

# UCC FINANCING STATEMENT ADDENDUM
FOLLOW INSTRUCTIONS

**9. NAME OF FIRST DEBTOR:** Same as line 1a or 1b on Financing Statement; if line 1b was left blank because Individual Debtor name did not fit, check here ☐

9a. ORGANIZATION'S NAME
KARMA OF BROWARD, INC.

OR
9b. INDIVIDUAL'S SURNAME

FIRST PERSONAL NAME

ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**10. DEBTOR'S NAME:** Provide (10a or 10b) only one additional Debtor name or Debtor name that did not fit in line 1b or 2b of the Financing Statement (Form UCC1) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name) and enter the mailing address in line 10c

10a. ORGANIZATION'S NAME

OR
10b. INDIVIDUAL'S SURNAME

INDIVIDUAL'S FIRST PERSONAL NAME

INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX

10c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY

**11.** ☐ ADDITIONAL SECURED PARTY'S NAME or ☐ ASSIGNOR SECURED PARTY'S NAME: Provide only one name (11a or 11b)

11a. ORGANIZATION'S NAME

OR
11b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX

11c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY

**12. ADDITIONAL SPACE FOR ITEM 4 (Collateral):**
CONNECTION WITH SECURED PARTY'S COLLATERAL, AND FROM THE SALE, LEASE OR OTHER DISPOSITION OF SUCH COLLATERAL ANY ATTEMPT BY A THIRD PARTY TO EXERCISE DOMINION OR CONTROL OVER THE COLLATERAL DESCRIBED IN THIS FINANCING STATEMENT WOULD CONSTITUTE CONVERSION OF SECURED PARTY'S COLLATERAL.

**13.** ☐ This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS (if applicable).

**14. This FINANCING STATEMENT:**
☐ covers timber to be cut ☐ covers as-extracted collateral ☐ is filed as a fixture filing

**15.** Name and address of a RECORD OWNER of real estate described in item 16 (if Debtor does not have a record interest):

**16.** Description of real estate:

**17. MISCELLANEOUS:**

FILING OFFICE COPY — UCC FINANCING STATEMENT ADDENDUM (Form UCC1Ad) (Rev. 04/20/11)

**STATE OF FLORIDA UNIFORM COMMERCIAL CODE**
**FINANCING STATEMENT FORM**

A. NAME & DAYTIME PHONE NUMBER OF CONTACT PERSON

JENNA SCHNEIDER; 4258905332

Email  LEGAL@GETBACKD.COM

B. SEND ACKNOWLEDGEMENT TO:

**FILED**

2020 Oct 28 10:06 AM

\*\*\*\*\*\*\* 20200516365X \*\*\*\*\*\*\*

**THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY**

**1. DEBTOR'S EXACT FULL LEGAL NAME** - INSERT ONLY ONE DEBTOR NAME (1a OR 1b) - Do Not Abbreviate or Combine Names

| 1a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| EXCELL AUTO GROUP, INC. | | | |
| 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 1c. MAILING ADDRESS Line One | | | |
| 1001 CLINT MOORE ROAD | This space not available. | | |
| MAILING ADDRESS Line Two | CITY | STATE | POSTAL CODE | COUNTRY |
| SUITE 101 | BOCA RATON | FL | 33487 | US |

**2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME** - INSERT ONLY ONE DEBTOR NAME (2a OR 2b) - Do Not Abbreviate or Combine Names

| 2a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| ZANKL | KRISTEN | | |
| 2c. MAILING ADDRESS Line One | | | |
| 16937 PIERRE CIRCLE | This space not available. | | |
| MAILING ADDRESS Line Two | CITY | STATE | POSTAL CODE | COUNTRY |
| | DELRAY | FL | 33446 | US |

**3. SECURED PARTY'S NAME**   (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - INSERT ONLY ONE SECURED PARTY NAME (3a OR 3b)

| 3a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| AUSTIN BUSINESS FINANCE, LLC | | | |
| 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 3c. MAILING ADDRESS Line One | | | |
| 2101 S IH 35 FRONTAGE ROAD | This space not available. | | |
| MAILING ADDRESS Line Two | CITY | STATE | POSTAL CODE | COUNTRY |
| FOURTH FLOOR | AUSTIN | TX | 78741 | US |

**4. This FINANCING STATEMENT covers the following collateral:**

All inventory, fixtures, equipment, vehicles, accounts receivable, goods and the profits therefrom, stocks, bonds, cash or cash equivalents, household goods and furnishings, investment property, negotiable instruments, and general intangibles.

**5. ALTERNATE DESIGNATION (if applicable)**      ☐ LESSEE/LESSOR      ☐ CONSIGNEE/CONSIGNOR      ☐ BAILEE/BAILOR
☐ AG LIEN      ☐ NON-UCC FILING      ☐ SELLER/BUYER

**6. Florida DOCUMENTARY STAMP TAX** - YOU ARE REQUIRED TO CHECK **EXACTLY ONE**   BOX

☑ All documentary stamps due and payable or to become due and payable pursuant to s. 201.22 F.S., have been paid.

☐ Florida Documentary Stamp Tax is not required.

**7. OPTIONAL FILER REFERENCE DATA**

STANDARD FORM - FORM UCC-1 (REV.05/2013)      Filing Office Copy      Approved by the Secretary of State, State of Florida

Case 22-15627-EPK   Claim 10   Filed 09/30/22   Page 75 of 147

FLORIDA SECURED TRANSACTION REGISTRY

# UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS

**A. NAME & PHONE OF CONTACT AT FILER (optional)**
CSC   1-800-858-5294

**B. E-MAIL CONTACT AT FILER (optional)**
SPRFiling@cscglobal.com

**C. SEND ACKNOWLEDGMENT TO:** (Name and Address)

2180 73764
CSC
801 Adlai Stevenson Drive
Springfield, IL 62703

Filed In: Florida
(S.O.S.)

FILED

2021 Sep 09 03:59 PM

****** 202108401146 ******

**THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY**

1. **DEBTOR'S NAME:** Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 1a. ORGANIZATION'S NAME | EXCELL AUTO GROUP, INC. | | | |
|---|---|---|---|---|
| 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 1c. MAILING ADDRESS 6454 EAST ROGERS CIRCLE | CITY BOCA RATON | STATE FL | POSTAL CODE 33487 | COUNTRY USA |

2. **DEBTOR'S NAME:** Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 2a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

3. **SECURED PARTY'S NAME** (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only one Secured Party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | FRANKLIN CAPITAL MANAGEMENT, LLC | | | |
|---|---|---|---|---|
| 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 3c. MAILING ADDRESS 32300 NORTHWESTERN HWY. | CITY FARMINGTON HILLS | STATE MI | POSTAL CODE 48334 | COUNTRY USA |

4. **COLLATERAL:** This financing statement covers the following collateral:
Florida Documentary Stamp Tax is not required.
All personal property of the Debtor including, without limitation, all of the following property Debtor now or later owns or has an interest in, wherever located:

a) all of the Debtor's Accounts, Chattel Paper, Deposit Accounts, Documents, Equipment, Farm Products, Fixtures, Goods, General Intangibles, Instruments, Inventory, Investment Property, Letter of Credit Rights (whether or not given in support of Accounts), Software, as defined below (words and phrases used herein and not otherwise specifically defined herein shall have the respective meanings assigned to such terms as such terms are defined in the Uniform Commercial Code of the State of Michigan, as in effect from time to time (the "UCC"), present and future, including but not limited to any items listed on Schedule 1 attached hereto, if any;
b) all present and future insurance claims relating to any of the above;
c) all Goods, Instruments (including, without limit, promissory notes), Documents (including, without limit, negotiable

5. Check only if applicable and check only one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and Instructions) ☐ being administered by a Decedent's Personal Representative

6a. Check only if applicable and check only one box:
☐ Public-Finance Transaction ☐ Manufactured-Home Transaction ☐ A Debtor is a Transmitting Utility

6b. Check only if applicable and check only one box:
☐ Agricultural Lien ☐ Non-UCC Filing

7. ALTERNATIVE DESIGNATION (if applicable): ☐ Lessee/Lessor ☐ Consignee/Consignor ☐ Seller/Buyer ☐ Bailee/Bailor ☐ Licensee/Licensor

8. OPTIONAL FILER REFERENCE DATA: NJR/ASW (15492-1)

2180 73764

**FILING OFFICE COPY** — UCC FINANCING STATEMENT (Form UCC1) (Rev. 04/20/11)

Case 22-15627-EPK   Claim 10   Filed 09/30/22   Page 76 of 147

# UCC FINANCING STATEMENT ADDENDUM

FOLLOW INSTRUCTIONS

9. NAME OF FIRST DEBTOR:  Same as line 1a or 1b on Financing Statement; if line 1b was left blank because Individual Debtor name did not fit, check here ☐

| | |
|---|---|
| **9a. ORGANIZATION'S NAME** | |
| EXCELL AUTO GROUP, INC. | |
| **OR** 9b. INDIVIDUAL'S SURNAME | |
| FIRST PERSONAL NAME | |
| ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

10. DEBTOR'S NAME:  Provide (10a or 10b) only one additional Debtor name or Debtor name that did not fit in line 1b or 2b of the Financing Statement (Form UCC1) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name) and enter the mailing address in line 10c

| | | | | |
|---|---|---|---|---|
| **10a. ORGANIZATION'S NAME** | | | | |
| **OR** 10b. INDIVIDUAL'S SURNAME | | | | |
| INDIVIDUAL'S FIRST PERSONAL NAME | | | | |
| INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S) | | | | SUFFIX |
| 10c.  MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

11. ☐ ADDITIONAL SECURED PARTY'S NAME  or  ☐ ASSIGNOR SECURED PARTY'S NAME:  Provide only one name (11a or 11b)

| | | | |
|---|---|---|---|
| **11a. ORGANIZATION'S NAME** | | | |
| **OR** 11b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 11c.  MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

12. ADDITIONAL SPACE FOR ITEM 4 (Collateral):

Documents), policies and certificates of insurance, Deposit Accounts, and money or other property (except real property which is not a fixture) which are now or later in possession of Secured Party, or as to which Secured Party now or later controls possession by documents or otherwise;

d) all present and future books, records, and data of the Debtor relating to any of the above; and

e) all present and future accessions, additions and attachments to, proceeds, parts, products, replacement, substitutions, Supporting Obligations and rights arising out of, any of the above, including but not limited to stock rights,

13. ☐ This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS  (if applicable)

14. This FINANCING STATEMENT:
☐ covers timber to be cut    ☐ covers as-extracted collateral    ☐ is filed as a fixture filing

15. Name and address of a RECORD OWNER of real estate described in item 16 (if Debtor does not have a record interest):

16. Description of real estate:

17. MISCELLANEOUS:

FILING OFFICE COPY — UCC FINANCING STATEMENT ADDENDUM (Form UCC1Ad) (Rev. 04/20/11)

Case 22-15627-EPK   Claim 10   Filed 09/30/22   Page 77 of 147

# UCC FINANCING STATEMENT ADDENDUM

FOLLOW INSTRUCTIONS

9. NAME OF FIRST DEBTOR:  Same as line 1a or 1b on Financing Statement; if line 1b was left blank because Individual Debtor name did not fit, check here ☐

| | |
|---|---|
| 9a. ORGANIZATION'S NAME | |
| EXCELL AUTO GROUP, INC. | |

OR

| 9b. INDIVIDUAL'S SURNAME | |
|---|---|
| FIRST PERSONAL NAME | |
| ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

**THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY**

10. DEBTOR'S NAME:  Provide (10a or 10b) only one additional Debtor name or Debtor name that did not fit in line 1b or 2b of the Financing Statement (Form UCC1) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name) and enter the mailing address in line 10c

| 10a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|

OR

| 10b. INDIVIDUAL'S SURNAME | | | | |
|---|---|---|---|---|
| INDIVIDUAL'S FIRST PERSONAL NAME | | | | |
| INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S) | | | | SUFFIX |
| 10c.  MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

11. ☐ ADDITIONAL SECURED PARTY'S NAME  or  ☐ ASSIGNOR SECURED PARTY'S NAME:  Provide only one name (11a or 11b)

| 11a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|

OR

| 11b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| 11c.  MAILING ADDRESS | CITY | STATE  POSTAL CODE | COUNTRY |

12. ADDITIONAL SPACE FOR ITEM 4 (Collateral):
subscription rights, interest, distributions, dividends, stock dividends, stock splits, or liquidating dividends, renewals, all cash and Accounts, insurance policies and proceeds, arising from the sale, rent, lease, casualty loss or other disposition of any of the above and cash and other property which were proceeds of any of the above and are recovered by a bankruptcy trustee or otherwise as a preferential transfer by the Debtor.

In this description of Collateral, a reference to a type of collateral shall not be limited by a separate reference to a more

| 13. ☐ This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS  (if applicable) | 14. This FINANCING STATEMENT: ☐ covers timber to be cut   ☐ covers as-extracted collateral   ☐ is filed as a fixture filing |
|---|---|
| 15. Name and address of a RECORD OWNER of real estate described in item 16 (if Debtor does not have a record interest): | 16. Description of real estate: |

17. MISCELLANEOUS:

FILING OFFICE COPY — UCC FINANCING STATEMENT ADDENDUM (Form UCC1Ad) (Rev. 04/20/11)

Case 22-15627-EPK  Claim 10  Filed 09/30/22  Page 78 of 147

# UCC FINANCING STATEMENT ADDENDUM

FOLLOW INSTRUCTIONS

**9. NAME OF FIRST DEBTOR:** Same as line 1a or 1b on Financing Statement; if line 1b was left blank because Individual Debtor name did not fit, check here ☐

**9a. ORGANIZATION'S NAME**

EXCELL AUTO GROUP, INC.

OR

**9b. INDIVIDUAL'S SURNAME**

FIRST PERSONAL NAME

ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**10. DEBTOR'S NAME:** Provide (10a or 10b) only one additional Debtor name or Debtor name that did not fit in line 1b or 2b of the Financing Statement (Form UCC1) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name) and enter the mailing address in line 10c

**10a. ORGANIZATION'S NAME**

OR

**10b. INDIVIDUAL'S SURNAME**

INDIVIDUAL'S FIRST PERSONAL NAME

INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX

| 10c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

**11.** ☐ ADDITIONAL SECURED PARTY'S NAME or ☐ ASSIGNOR SECURED PARTY'S NAME: Provide only one name (11a or 11b)

**11a. ORGANIZATION'S NAME**

OR

| 11b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| | | | |

| 11c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

**12. ADDITIONAL SPACE FOR ITEM 4 (Collateral):**
specific or narrower type of that collateral.

UNDER AN AGREEMENT BETWEEN DEBTOR AND SECURED PARTY, DEBTOR HAS AGREED NOT TO SELL, ASSIGN, PLEDGE OR OTHERWISE ENCUMBER THE COLLATERAL DESCRIBED IN THIS FINANCING STATEMENT, WHICH INCLUDES ALL AFTER ACQUIRED PROPERTY, INCLUDING ALL OF DEBTOR'S ACCOUNTS, FUTURE ACCOUNTS, CONTRACT RIGHTS, FUTURE SALES, RECEIPTS AND OTHER

**13.** ☐ This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS (if applicable)

**14.** This FINANCING STATEMENT:
☐ covers timber to be cut   ☐ covers as-extracted collateral   ☐ is filed as a fixture filing

**15.** Name and address of a RECORD OWNER of real estate described in item 16 (if Debtor does not have a record interest):

**16.** Description of real estate:

**17. MISCELLANEOUS:**

FILING OFFICE COPY — UCC FINANCING STATEMENT ADDENDUM (Form UCC1Ad) (Rev. 04/20/11)

# UCC FINANCING STATEMENT ADDENDUM

FOLLOW INSTRUCTIONS

9. NAME OF FIRST DEBTOR: Same as line 1a or 1b on Financing Statement; if line 1b was left blank because Individual Debtor name did not fit, check here ☐

| 9a. ORGANIZATION'S NAME |
|---|
| EXCELL AUTO GROUP, INC. |

OR

9b. INDIVIDUAL'S SURNAME

FIRST PERSONAL NAME

ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX

**THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY**

10. DEBTOR'S NAME: Provide (10a or 10b) only one additional Debtor name or Debtor name that did not fit in line 1b or 2b of the Financing Statement (Form UCC1) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name) and enter the mailing address in line 10c

10a. ORGANIZATION'S NAME

OR

10b. INDIVIDUAL'S SURNAME

INDIVIDUAL'S FIRST PERSONAL NAME

INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX

| 10c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

11. ☐ ADDITIONAL SECURED PARTY'S NAME or ☐ ASSIGNOR SECURED PARTY'S NAME: Provide only one name (11a or 11b)

11a. ORGANIZATION'S NAME

OR

| 11b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| | | | |

| 11c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

12. ADDITIONAL SPACE FOR ITEM 4 (Collateral):

OBLIGATIONS. THE SALE, ASSIGNMENT, PLEDGE OR ENCUMBERING OF ANY SUCH COLLATERAL WOULD CONSTITUTE TORTIOUS INTERFERENCE WITH SECURED PARTY'S CONTRACTUAL RELATIONSHIP WITH DEBTOR. IN THE EVENT THAT ANY THIRD PARTY PURCHASES, TAKES AN ASSIGNMENT OR PLEDGE OF, AND/OR IS GRANTED A SECURITY INTEREST IN ANY OF THE ASSETS DESCRIBED IN THIS FINANCING STATMENT, SECURED PARTY ASSERTS A CLAIM TO ANY PROCEEDS THEREOF RECEIVED BY SUCH THIRD PARTY. DEBTOR HAS ALSO AGREED TO HOLD IN TRUST FOR SECURED PARTY ALL PAYMENTS RECEIVED IN

| 13. ☐ This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS (if applicable) | 14. This FINANCING STATEMENT: ☐ covers timber to be cut ☐ covers as-extracted collateral ☐ is filed as a fixture filing |
|---|---|
| 15. Name and address of a RECORD OWNER of real estate described in item 16 (if Debtor does not have a record interest): | 16. Description of real estate: |

17. MISCELLANEOUS:

FILING OFFICE COPY — UCC FINANCING STATEMENT ADDENDUM (Form UCC1Ad) (Rev. 04/20/11)

Case 22-15627-EPK   Claim 10   Filed 09/30/22   Page 80 of 147

# UCC FINANCING STATEMENT **ADDENDUM**

FOLLOW INSTRUCTIONS

9. NAME OF FIRST DEBTOR: Same as line 1a or 1b on Financing Statement; if line 1b was left blank because Individual Debtor name did not fit, check here ☐

| 9a. ORGANIZATION'S NAME |
|---|
| EXCELL AUTO GROUP, INC. |

OR

| 9b. INDIVIDUAL'S SURNAME |
|---|
| FIRST PERSONAL NAME |
| ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

**THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY**

10. DEBTOR'S NAME: Provide (10a or 10b) only one additional Debtor name or Debtor name that did not fit in line 1b or 2b of the Financing Statement (Form UCC1) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name) and enter the mailing address in line 10c

| 10a. ORGANIZATION'S NAME |
|---|

OR

| 10b. INDIVIDUAL'S SURNAME | | | |
|---|---|---|---|
| INDIVIDUAL'S FIRST PERSONAL NAME | | | |
| INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S) | | | SUFFIX |

| 10c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|

11. ☐ ADDITIONAL SECURED PARTY'S NAME  or  ☐ ASSIGNOR SECURED PARTY'S NAME: Provide only one name (11a or 11b)

| 11a. ORGANIZATION'S NAME | | | |
|---|---|---|---|

OR

| 11b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| 11c. MAILING ADDRESS | CITY | STATE  POSTAL CODE | COUNTRY |

12. ADDITIONAL SPACE FOR ITEM 4 (Collateral):
CONNECTION WITH SECURED PARTY'S COLLATERAL, AND FROM THE SALE, LEASE OR OTHER DISPOSITION OF SUCH COLLATERAL ANY ATTEMPT BY A THIRD PARTY TO EXERCISE DOMINION OR CONTROL OVER THE COLLATERAL DESCRIBED IN THIS FINANCING STATEMENT WOULD CONSTITUTE CONVERSION OF SECURED PARTY'S COLLATERAL.

| 13. ☐ This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS (if applicable) | 14. This FINANCING STATEMENT: ☐ covers timber to be cut  ☐ covers as-extracted collateral  ☐ is filed as a fixture filing |
|---|---|
| 15. Name and address of a RECORD OWNER of real estate described in item 16 (if Debtor does not have a record interest): | 16. Description of real estate: |

17. MISCELLANEOUS:

FILING OFFICE COPY — UCC FINANCING STATEMENT ADDENDUM (Form UCC1Ad) (Rev. 04/20/11)

FLORIDA SECURED TRANSACTION REGISTRY

FILED

# UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS

2021 Mar 26 09:56 AM

****** 202106583131 ******

**A. NAME & PHONE OF CONTACT AT FILER (optional)**
Name: Wolters Kluwer Lien Solutions Phone: 800-331-3282 Fax: 818-662-4141

**B. E-MAIL CONTACT AT FILER (optional)**
uccfilingreturn@wolterskluwer.com

**C. SEND ACKNOWLEDGMENT TO: (Name and Address)**

Lien Solutions                    79641585
P.O. Box 29071
Glendale, CA  91209-9071          FLFL

File with: Department of State, FL

**THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY**

1. **DEBTOR'S NAME:** Provide only <u>one</u> Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 1a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| EXCELL AUTO GROUP INC | | | | |
| 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| | | | | |
| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 1001 CLINTMOORE RD | BOCA RATON | FL | 33487 | USA |

2. **DEBTOR'S NAME:** Provide only <u>one</u> Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 2a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| | | | | |
| 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| ZANKL | KRISTEN | | | |
| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 16937 PIERRE CIRCLE | DELRAY BEACH | FL | 33446 | USA |

3. **SECURED PARTY'S NAME** (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only <u>one</u> Secured Party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| C T Corporation System, as representative | | | | |
| 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| | | | | |
| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 330 N Brand Blvd, Suite 700; Attn: SPRS | Glendale | CA | 91203 | USA |

4. **COLLATERAL:** This financing statement covers the following collateral:
Receivables - All assets now owned or hereafter acquired and wherever located, including but not limited to, the following subcategories of assets: a. Accounts, including but not limited to, credit card receivables; b. Chattel Paper; c.Inventory; d. Equipment; e. Instruments, including but not limited to, Promissory Notes; f. Investment Property; g. Documents; h. Deposit Accounts; i. Letter of Credit Rights; j. General Intangibles; k. Supporting Obligations; and i. Proceeds and Products of the foregoing. NOTICE PURSUANT TO AN AGREEMENT BETWEEN DEBTOR AND SECURED PARTY, DEBTOR HAS AGREED NOT TO FURTHER ENCUMBER THE COLLATERAL DESCRIBED HEREIN. THE FURTHER ENCUMBERING OF WHICH MAY CONSTITUTE THE TORTIOUS INTERFERENCE WITH THE SECURED PARTY'S RIGHT BY SUCH ENCUMBRANCES IN THE EVENT THAT ANY ENTITY IS GRANTED A SECURITY INTEREST IN DEBTOR'S ACCOUNTS, CHATTEL PAPER OR GENERAL INTANGIBLES CONTRARY TO THE ABOVE, THE SECURED PARTY ASSERTS A CLAIM TO ANY PROCEEDS THEREOF RECEIVED BY SUCH ENTITY.

☐ All documentary stamps due and payable or to become due and payable pursuant to s. 201.22.F.S. have been paid       ☒ Florida documentary stamp tax is not required

5. Check <u>only</u> if applicable and check <u>only</u> one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and Instructions) ☐ being administered by a Decedent's Personal Representative

6a. Check <u>only</u> if applicable and check <u>only</u> one box:
☐ Public-Finance Transaction  ☐ Manufactured-Home Transaction  ☐ A Debtor is a Transmitting Utility

6b. Check <u>only</u> if applicable and check <u>only</u> one box:
☐ Agricultural Lien  ☐ Non-UCC Filing

7. ALTERNATIVE DESIGNATION (if applicable): ☐ Lessee/Lessor  ☐ Consignee/Consignor  ☐ Seller/Buyer  ☐ Bailee/Bailor  ☐ Licensee/Licensor

8. OPTIONAL FILER REFERENCE DATA:
79641585

**FILING OFFICE COPY — UCC FINANCING STATEMENT (Form UCC1) (Rev. 04/20/11)**

Prepared by Lien Solutions, P.O. Box 29071,
Glendale, CA 91209-9071 Tel (800) 331-3282

# UCC FINANCING STATEMENT ADDENDUM
FOLLOW INSTRUCTIONS

9. NAME OF FIRST DEBTOR: Same as line 1a or 1b on Financing Statement; if line 1b was left blank because Individual Debtor name did not fit, check here ☐

| 9a. ORGANIZATION'S NAME |
| --- |
| EXCELL AUTO GROUP INC |

OR

| 9b. INDIVIDUAL'S SURNAME | |
| --- | --- |
| FIRST PERSONAL NAME | |
| ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

**THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY**

10. DEBTOR'S NAME: Provide (10a or 10b) only one additional Debtor name or Debtor name that did not fit in line 1b or 2b of the Financing Statement (Form UCC1) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name) and enter the mailing address in line 10c

| 10a. ORGANIZATION'S NAME | | | | |
| --- | --- | --- | --- | --- |

OR

| 10b. INDIVIDUAL'S SURNAME | | | | |
| --- | --- | --- | --- | --- |
| ZANKL | | | | |
| INDIVIDUAL'S FIRST PERSONAL NAME | | | | |
| THOMAS SCOTT | | | | |
| INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S) | | | | SUFFIX |

| 10c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| --- | --- | --- | --- | --- |
| 16937 PIERRE CIRCLE | DELRAY BEACH | FL | 33446 | USA |

11. ☐ ADDITIONAL SECURED PARTY'S NAME   or   ☐ ASSIGNOR SECURED PARTY'S NAME:  Provide only one name (11a or 11b)

| 11a. ORGANIZATION'S NAME | | | |
| --- | --- | --- | --- |

OR

| 11b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| --- | --- | --- | --- |
| 11c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

12. ADDITIONAL SPACE FOR ITEM 4 (Collateral):

13. ☐ This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS  (if applicable)

14. This FINANCING STATEMENT:
☐ covers timber to be cut   ☐ covers as-extracted collateral   ☐ is filed as a fixture filing

15. Name and address of a RECORD OWNER of real estate described in item 16 (if Debtor does not have a record interest):

16. Description of real estate:

17. MISCELLANEOUS:  79641585-FL-0                    C T Corporation System, as        File with: Department of State, FL

**FILING OFFICE COPY** — UCC FINANCING STATEMENT ADDENDUM (Form UCC1Ad) (Rev. 04/20/11)

Prepared by Lien Solutions, P.O. Box 29071, Glendale, CA 91209-9071 Tel (800) 331-3282

# UCC FINANCING STATEMENT ADDITIONAL PARTY

FOLLOW INSTRUCTIONS

18. NAME OF FIRST DEBTOR: Same as line 1a or 1b on Financing Statement; if line 1b was left blank because Individual Debtor name did not fit, check here ☐

18a. ORGANIZATION'S NAME

EXCELL AUTO GROUP INC

OR

18b. INDIVIDUAL'S SURNAME

FIRST PERSONAL NAME

ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX

**THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY**

19. ADDITIONAL DEBTOR'S NAME: Provide only one Debtor name (19a or 19b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)

| 19a. ORGANIZATION'S NAME | | | | | |
|---|---|---|---|---|---|
| KARMA OF BROWARD, INC | | | | | |
| OR 19b. INDIVIDUAL'S SURNAME | | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 19c. MAILING ADDRESS | | CITY | STATE | POSTAL CODE | COUNTRY |
| 1699 S. FEDERAL HIGHWAY, SUITE 300 | | BOCA RATON | FL | 33432 | USA |

20. ADDITIONAL DEBTOR'S NAME: Provide only one Debtor name (20a or 20b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)

| 20a. ORGANIZATION'S NAME | | | | | |
|---|---|---|---|---|---|
| KARMA OF PALM BEACH, INC. | | | | | |
| OR 20b. INDIVIDUAL'S SURNAME | | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 20c. MAILING ADDRESS | | CITY | STATE | POSTAL CODE | COUNTRY |
| 1001 CLINT MOORE ROAD, SUITE 101 | | BOCA RATON | FL | 33487 | USA |

21. ADDITIONAL DEBTOR'S NAME: Provide only one Debtor name (21a or 21b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)

| 21a. ORGANIZATION'S NAME | | | | | |
|---|---|---|---|---|---|
| | | | | | |
| OR 21b. INDIVIDUAL'S SURNAME | | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 21c. MAILING ADDRESS | | CITY | STATE | POSTAL CODE | COUNTRY |

22. ☐ ADDITIONAL SECURED PARTY'S NAME    or    ☐ ASSIGNOR SECURED PARTY'S NAME: Provide only one name (22a or 22b)

| 22a. ORGANIZATION'S NAME | | | | | |
|---|---|---|---|---|---|
| | | | | | |
| OR 22b. INDIVIDUAL'S SURNAME | | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 22c. MAILING ADDRESS | | CITY | STATE | POSTAL CODE | COUNTRY |

23. ☐ ADDITIONAL SECURED PARTY'S NAME    or    ☐ ASSIGNOR SECURED PARTY'S NAME: Provide only one name (23a or 23b)

| 23a. ORGANIZATION'S NAME | | | | | |
|---|---|---|---|---|---|
| | | | | | |
| OR 23b. INDIVIDUAL'S SURNAME | | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 23c. MAILING ADDRESS | | CITY | STATE | POSTAL CODE | COUNTRY |

24. MISCELLANEOUS: 79641585-FL-0          C T Corporation System, as          File with: Department of State, FL

**FILING OFFICE COPY** — UCC FINANCING STATEMENT ADDITIONAL PARTY (Form UCC1AP) (Rev. 08/22/11)

Prepared by Lien Solutions, P.O. Box 29071,
Glendale, CA 91209-9071 Tel (800) 331-3282

FLORIDA SECURED TRANSACTION REGISTRY

## UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS

FILED

**A. NAME & PHONE OF CONTACT AT FILER (optional)**
CSC   1-800-858-5294

**B. E-MAIL CONTACT AT FILER (optional)**
SPRFiling@cscglobal.com

**C. SEND ACKNOWLEDGMENT TO:** (Name and Address)

2209 65206
CSC
801 Adlai Stevenson Drive
Springfield, IL 62703

Filed In: Florida
(S.O.S.)

2022 Jan 27 04:10 PM

****** 202200284762 ******

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. **DEBTOR'S NAME:** Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 1a. ORGANIZATION'S NAME | KARMA OF PALM BEACH, INC. | | | |
|---|---|---|---|---|
| 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 1c. MAILING ADDRESS 1001 CLINT MOORE RD., STE. 101 | CITY BOCA RATO | STATE FL | POSTAL CODE 33487 | COUNTRY USA |

2. **DEBTOR'S NAME:** Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 2a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

3. **SECURED PARTY'S NAME** (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only one Secured Party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | FRANKLIN CAPITAL MANAGEMENT, LLC | | | |
|---|---|---|---|---|
| 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 3c. MAILING ADDRESS 32300 NORTHWESTERN HWY. | CITY FARMINGTON HILLS | STATE MI | POSTAL CODE 48334 | COUNTRY USA |

4. **COLLATERAL:** This financing statement covers the following collateral:
Florida Documentary Stamp Tax is not required.
All personal property of the Debtor including, without limitation, all of the following property Debtor now or later owns or has an interest in, wherever located:

a) all of the Debtor's Accounts, Chattel Paper, Deposit Accounts, Documents, Equipment, Farm Products, Fixtures, Goods, General Intangibles, Instruments, Inventory, Investment Property, Letter of Credit Rights (whether or not given in support of Accounts), Software, as defined below (words and phrases used herein and not otherwise specifically defined herein shall have the respective meanings assigned to such terms as such terms are defined in the Uniform Commercial Code of the State of Michigan, as in effect from time to time (the "UCC"), present and future, including but not limited to any items listed on Schedule 1 attached hereto, if any;
b) all present and future insurance claims relating to any of the above;
c) all Goods, Instruments (including, without limit, promissory notes), Documents (including, without limit, negotiable

5. Check only if applicable and check only one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and Instructions) ☐ being administered by a Decedent's Personal Representative

6a. Check only if applicable and check only one box:
☐ Public-Finance Transaction  ☐ Manufactured-Home Transaction  ☐ A Debtor is a Transmitting Utility

6b. Check only if applicable and check only one box:
☐ Agricultural Lien  ☐ Non-UCC Filing

7. ALTERNATIVE DESIGNATION (if applicable): ☐ Lessee/Lessor  ☐ Consignee/Consignor  ☐ Seller/Buyer  ☐ Bailee/Bailor  ☐ Licensee/Licensor

8. OPTIONAL FILER REFERENCE DATA: NJR/ASW (15492-72)

2209 65206

FILING OFFICE COPY — UCC FINANCING STATEMENT (Form UCC1) (Rev. 04/20/11)

# UCC FINANCING STATEMENT ADDENDUM

FOLLOW INSTRUCTIONS

9. NAME OF FIRST DEBTOR: Same as line 1a or 1b on Financing Statement; if line 1b was left blank because Individual Debtor name did not fit, check here ☐

9a. ORGANIZATION'S NAME
**KARMA OF PALM BEACH, INC.**

OR

9b. INDIVIDUAL'S SURNAME

FIRST PERSONAL NAME

ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX

**THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY**

10. DEBTOR'S NAME: Provide (10a or 10b) only one additional Debtor name or Debtor name that did not fit in line 1b or 2b of the Financing Statement (Form UCC1) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name) and enter the mailing address in line 10c

10a. ORGANIZATION'S NAME

OR

10b. INDIVIDUAL'S SURNAME

INDIVIDUAL'S FIRST PERSONAL NAME

INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX

| 10c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|

11. ☐ ADDITIONAL SECURED PARTY'S NAME  or  ☐ ASSIGNOR SECURED PARTY'S NAME: Provide only one name (11a or 11b)

11a. ORGANIZATION'S NAME

OR

| 11b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|

| 11c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|

12. ADDITIONAL SPACE FOR ITEM 4 (Collateral):

Documents), policies and certificates of insurance, Deposit Accounts, and money or other property (except real property which is not a fixture) which are now or later in possession of Secured Party, or as to which Secured Party now or later controls possession by documents or otherwise;

d) all present and future books, records, and data of the Debtor relating to any of the above; and

e) all present and future accessions, additions and attachments to, proceeds, parts, products, replacement, substitutions, Supporting Obligations and rights arising out of, any of the above, including but not limited to stock rights,

13. ☐ This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS (if applicable)

14. This FINANCING STATEMENT:
☐ covers timber to be cut   ☐ covers as-extracted collateral   ☐ is filed as a fixture filing

15. Name and address of a RECORD OWNER of real estate described in item 16 (if Debtor does not have a record interest):

16. Description of real estate:

17. MISCELLANEOUS:

**FILING OFFICE COPY — UCC FINANCING STATEMENT ADDENDUM (Form UCC1Ad) (Rev. 04/20/11)**

Case 22-15627-EPK   Claim 10   Filed 09/30/22   Page 86 of 147

# UCC FINANCING STATEMENT ADDENDUM

FOLLOW INSTRUCTIONS

**9. NAME OF FIRST DEBTOR:** Same as line 1a or 1b on Financing Statement; if line 1b was left blank because Individual Debtor name did not fit, check here ☐

| | |
|---|---|
| **9a. ORGANIZATION'S NAME** | |
| KARMA OF PALM BEACH, INC. | |
| **OR** **9b. INDIVIDUAL'S SURNAME** | |
| FIRST PERSONAL NAME | |
| ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

**THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY**

**10. DEBTOR'S NAME:** Provide (10a or 10b) only one additional Debtor name or Debtor name that did not fit in line 1b or 2b of the Financing Statement (Form UCC1) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name) and enter the mailing address in line 10c

| | | | | |
|---|---|---|---|---|
| **10a. ORGANIZATION'S NAME** | | | | |
| **OR** **10b. INDIVIDUAL'S SURNAME** | | | | |
| INDIVIDUAL'S FIRST PERSONAL NAME | | | | |
| INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S) | | | | SUFFIX |
| **10c. MAILING ADDRESS** | CITY | STATE | POSTAL CODE | COUNTRY |

**11.** ☐ ADDITIONAL SECURED PARTY'S NAME or ☐ ASSIGNOR SECURED PARTY'S NAME: Provide only one name (11a or 11b)

| | | | | |
|---|---|---|---|---|
| **11a. ORGANIZATION'S NAME** | | | | |
| **OR** **11b. INDIVIDUAL'S SURNAME** | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| **11c. MAILING ADDRESS** | CITY | STATE | POSTAL CODE | COUNTRY |

**12. ADDITIONAL SPACE FOR ITEM 4 (Collateral):**

subscription rights, interest, distributions, dividends, stock dividends, stock splits, or liquidating dividends, renewals, all cash and Accounts, insurance policies and proceeds, arising from the sale, rent, lease, casualty loss or other disposition of any of the above and cash and other property which were proceeds of any of the above and are recovered by a bankruptcy trustee or otherwise as a preferential transfer by the Debtor.

In this description of Collateral, a reference to a type of collateral shall not be limited by a separate reference to a more

| | |
|---|---|
| **13.** ☐ This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS (if applicable) | **14. This FINANCING STATEMENT:** ☐ covers timber to be cut   ☐ covers as-extracted collateral   ☐ is filed as a fixture filing |
| **15.** Name and address of a RECORD OWNER of real estate described in item 16 (if Debtor does not have a record interest): | **16. Description of real estate:** |

**17. MISCELLANEOUS:**

**FILING OFFICE COPY — UCC FINANCING STATEMENT ADDENDUM (Form UCC1Ad) (Rev. 04/20/11)**

Case 22-15627-EPK   Claim 10   Filed 09/30/22   Page 87 of 147

# UCC FINANCING STATEMENT ADDENDUM
FOLLOW INSTRUCTIONS

**9. NAME OF FIRST DEBTOR:** Same as line 1a or 1b on Financing Statement; if line 1b was left blank because Individual Debtor name did not fit, check here ☐

| 9a. ORGANIZATION'S NAME |
|---|
| KARMA OF PALM BEACH, INC. |

OR

| 9b. INDIVIDUAL'S SURNAME |
|---|
| |
| FIRST PERSONAL NAME |
| |

| ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|

**THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY**

**10. DEBTOR'S NAME:** Provide (10a or 10b) only one additional Debtor name or Debtor name that did not fit in line 1b or 2b of the Financing Statement (Form UCC1) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name) and enter the mailing address in line 10c

| 10a. ORGANIZATION'S NAME |
|---|

OR

| 10b. INDIVIDUAL'S SURNAME |
|---|
| INDIVIDUAL'S FIRST PERSONAL NAME |

| INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|

| 10c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|

**11.** ☐ ADDITIONAL SECURED PARTY'S NAME or ☐ ASSIGNOR SECURED PARTY'S NAME: Provide only one name (11a or 11b)

| 11a. ORGANIZATION'S NAME |
|---|

OR

| 11b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|

| 11c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|

**12. ADDITIONAL SPACE FOR ITEM 4 (Collateral):**
specific or narrower type of that collateral.

UNDER AN AGREEMENT BETWEEN DEBTOR AND SECURED PARTY, DEBTOR HAS AGREED NOT TO SELL, ASSIGN, PLEDGE OR OTHERWISE ENCUMBER THE COLLATERAL DESCRIBED IN THIS FINANCING STATEMENT, WHICH INCLUDES ALL AFTER ACQUIRED PROPERTY, INCLUDING ALL OF DEBTOR'S ACCOUNTS, FUTURE ACCOUNTS, CONTRACT RIGHTS, FUTURE SALES, RECEIPTS AND OTHER

**13.** ☐ This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS (if applicable)

**14.** This FINANCING STATEMENT:
☐ covers timber to be cut   ☐ covers as-extracted collateral   ☐ is filed as a fixture filing

**15.** Name and address of a RECORD OWNER of real estate described in item 16 (if Debtor does not have a record interest):

**16.** Description of real estate:

**17. MISCELLANEOUS:**

**FILING OFFICE COPY — UCC FINANCING STATEMENT ADDENDUM (Form UCC1Ad) (Rev. 04/20/11)**

Case 22-15627-EPK   Claim 10   Filed 09/30/22   Page 88 of 147

# UCC FINANCING STATEMENT ADDENDUM

FOLLOW INSTRUCTIONS

**9. NAME OF FIRST DEBTOR:** Same as line 1a or 1b on Financing Statement; if line 1b was left blank because Individual Debtor name did not fit, check here ☐

9a. ORGANIZATION'S NAME

KARMA OF PALM BEACH, INC.

OR

9b. INDIVIDUAL'S SURNAME

FIRST PERSONAL NAME

ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX

**THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY**

**10. DEBTOR'S NAME:** Provide (10a or 10b) only one additional Debtor name or Debtor name that did not fit in line 1b or 2b of the Financing Statement (Form UCC1) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name) and enter the mailing address in line 10c

OR

10a. ORGANIZATION'S NAME

10b. INDIVIDUAL'S SURNAME

INDIVIDUAL'S FIRST PERSONAL NAME

INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX

10c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY

**11.** ☐ ADDITIONAL SECURED PARTY'S NAME or ☐ ASSIGNOR SECURED PARTY'S NAME: Provide only one name (11a or 11b)

OR

11a. ORGANIZATION'S NAME

11b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX

11c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY

**12. ADDITIONAL SPACE FOR ITEM 4 (Collateral):**
OBLIGATIONS. THE SALE, ASSIGNMENT, PLEDGE OR ENCUMBERING OF ANY SUCH COLLATERAL WOULD CONSTITUTE TORTIOUS INTERFERENCE WITH SECURED PARTY'S CONTRACTUAL RELATIONSHIP WITH DEBTOR. IN THE EVENT THAT ANY THIRD PARTY PURCHASES, TAKES AN ASSIGNMENT OR PLEDGE OF, AND/OR IS GRANTED A SECURITY INTEREST IN ANY OF THE ASSETS DESCRIBED IN THIS FINANCING STATMENT, SECURED PARTY ASSERTS A CLAIM TO ANY PROCEEDS THEREOF RECEIVED BY SUCH THIRD PARTY. DEBTOR HAS ALSO AGREED TO HOLD IN TRUST FOR SECURED PARTY ALL PAYMENTS RECEIVED IN

**13.** ☐ This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS (if applicable)

**14. This FINANCING STATEMENT:** ☐ covers timber to be cut ☐ covers as-extracted collateral ☐ is filed as a fixture filing

**15.** Name and address of a RECORD OWNER of real estate described in item 16 (if Debtor does not have a record interest):

**16.** Description of real estate:

**17. MISCELLANEOUS:**

**FILING OFFICE COPY — UCC FINANCING STATEMENT ADDENDUM (Form UCC1Ad) (Rev. 04/20/11)**

Case 22-15627-EPK   Claim 10   Filed 09/30/22   Page 89 of 147

# UCC FINANCING STATEMENT ADDENDUM

FOLLOW INSTRUCTIONS

**9. NAME OF FIRST DEBTOR:**  Same as line 1a or 1b on Financing Statement; if line 1b was left blank because Individual Debtor name did not fit, check here ☐

| | |
|---|---|
| **9a. ORGANIZATION'S NAME** | |
| KARMA OF PALM BEACH, INC. | |
| OR **9b. INDIVIDUAL'S SURNAME** | |
| FIRST PERSONAL NAME | |
| ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

**THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY**

**10. DEBTOR'S NAME:**  Provide (10a or 10b) only one additional Debtor name or Debtor name that did not fit in line 1b or 2b of the Financing Statement (Form UCC1) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name) and enter the mailing address in line 10c

| | | | | |
|---|---|---|---|---|
| **10a. ORGANIZATION'S NAME** | | | | |
| OR **10b. INDIVIDUAL'S SURNAME** | | | | |
| INDIVIDUAL'S FIRST PERSONAL NAME | | | | |
| INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S) | | | | SUFFIX |

| 10c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

**11.** ☐ ADDITIONAL SECURED PARTY'S NAME  or  ☐ ASSIGNOR SECURED PARTY'S NAME:  Provide only one name (11a or 11b)

| 11a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| OR **11b. INDIVIDUAL'S SURNAME** | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

| 11c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

**12. ADDITIONAL SPACE FOR ITEM 4 (Collateral):**
CONNECTION WITH SECURED PARTY'S COLLATERAL, AND FROM THE SALE, LEASE OR OTHER DISPOSITION OF SUCH COLLATERAL ANY ATTEMPT BY A THIRD PARTY TO EXERCISE DOMINION OR CONTROL OVER THE COLLATERAL DESCRIBED IN THIS FINANCING STATEMENT WOULD CONSTITUTE CONVERSION OF SECURED PARTY'S COLLATERAL.

**13.** ☐ This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS  (if applicable)

**14. This FINANCING STATEMENT:**
☐ covers timber to be cut    ☐ covers as-extracted collateral    ☐ is filed as a fixture filing

**15.** Name and address of a RECORD OWNER of real estate described in item 16 (if Debtor does not have a record interest):

**16.** Description of real estate:

**17. MISCELLANEOUS:**

**FILING OFFICE COPY — UCC FINANCING STATEMENT ADDENDUM (Form UCC1Ad) (Rev. 04/20/11)**

Case 22-01238-EPK Doc 206 Filed 01/20/23 Page 124 of 181

**Florida Secured Transaction Registry**

# FILED

2021 Oct 26 04:02 PM

****** 202108916438 ******

A. NAME & DAYTIME PHONE NUMBER OF CONTACT PERSON

ONLINE DEPT.; 888-507-4593

Email ONLINE@FICOSO.COM

B. SEND ACKNOWLEDGEMENT TO:

**THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY**

| **1a. INITIAL FINANCING STATEMENT FILE #** 202106787470 | **1b.** ☐ This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS. |

**2. CURRENT RECORD INFORMATION - DEBTOR NAME - INSERT ONLY ONE DEBTOR NAME (2a OR 2b)**

2a. ORGANIZATION'S NAME
EXCELL AUTO GROUP, INC.

2b. INDIVIDUAL'S NAME (SURNAME, FIRST PERSONAL NAME, ADDITIONAL NAME(S)/INITIAL(S), SUFFIX)

**3. CURRENT RECORD INFORMATION - SECURED PARTY NAME - INSERT ONLY ONE SECURED PARTY NAME (3a OR 3b)**

3a. ORGANIZATION'S NAME
KRISTEN ZANKL

3b. INDIVIDUAL'S NAME (SURNAME, FIRST PERSONAL NAME, ADDITIONAL NAME(S)/INITIAL(S), SUFFIX)

| 4. | ☐ **TERMINATION:** | Effectiveness of the Financing Statement identified above is terminated with respect to security interest(s) of the Secured Party authorizing this Termination Statement. |
| 5. | ☐ **CONTINUATION:** | Effectiveness of the Financing Statement identified above with respect to security interest(s) of the Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law. |
| 6. | ☐ **ASSIGNMENT** ☐ Full or ☐ Partial : | Give name of assignee in item 9a or 9b and address of assignee in item 9c; and also give name of assignor in item 11. |
| 7. | ☑ **AMENDMENT** | (PARTY INFORMATION): This Amendment affects ☐ Debtor or ☑ Secured Party of record. Check only one of these two boxes. |

Also check one of the following three boxes and provide appropriate information in items 8 and/or 9.

☑ **CHANGE** name and/or address: Give current record name in item 8a or 8b; Also give new name (if name change) in item 9a or 9b and/or new address (if address change) in item 9c.

☐ **DELETE** name: Give record name to be deleted in item 8a or 8b.

☐ **ADD** name: Complete item 9a or 9b, and 9c; also complete items 9d-9g (if applicable).

**8. CURRENT RECORD INFORMATION** - INSERT ONLY ONE NAME (8a OR 8b) - Do Not Abbreviate or Combine names

8a. ORGANIZATION'S NAME
KRISTEN ZANKL

8b. INDIVIDUAL'S NAME (SURNAME, FIRST PERSONAL NAME, ADDITIONAL NAME(S)/INITIAL(S), SUFFIX)

**9. CHANGED (NEW) OR ADDED INFORMATION:** - INSERT ONLY ONE NAME (9a OR 9b) - Do Not Abbreviate or Combine names

9a. ORGANIZATION'S NAME
DIVERSE CAPITAL, LLC

| 9b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| | | | |

| 9c. MAILING ADDRESS Line One
750 MAIN ST, SUITE 906 | This space not available. | | | |
| MAILING ADDRESS Line Two | CITY HARTFORD | STATE CT | POSTAL CODE 06103 | COUNTRY USA |

**10. AMENDMENT (COLLATERAL CHANGE):** check only one box.

Describe collateral ☐ deleted or ☐ added, or give entire ☐ restated collateral description, or describe collateral ☐ assigned.

**11. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT**

(name of assignor, if this is an Assignment). If this is an Amendment authorized by a Debtor, which adds collateral or adds the authorizing Debtor, or if this is a Termination authorized by a Debtor, check here ☐ and enter name of DEBTOR authorizing this Amendment.

11a. ORGANIZATION'S NAME
KRISTEN ZANKL

11b. INDIVIDUAL'S NAME (SURNAME, FIRST PERSONAL NAME, ADDITIONAL NAME(S)/INITIAL(S), SUFFIX)

**12. OPTIONAL FILER REFERENCE DATA** [UCC3-671172.2]

STANDARD FORM - FORM UCC-3 (REV.08/2018)  Filing Office Copy  Approved by the Secretary of State, State of Florida

# UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS

FLORIDA SECURED TRANSACTION REGISTRY

**A. NAME & PHONE OF CONTACT AT FILER (optional)**
CSC   1-800-858-5294

**B. E-MAIL CONTACT AT FILER (optional)**
SPRFiling@cscglobal.com

**C. SEND ACKNOWLEDGMENT TO:  (Name and Address)**

2209 64674
CSC
801 Adlai Stevenson Drive
Springfield, IL 62703

Filed In: Florida
(S.O.S.)

FILED

2022 Jan 27 04:10 PM

****** 202200284770 ******

**THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY**

1. **DEBTOR'S NAME:** Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 1a. ORGANIZATION'S NAME KARMA OF BROWARD, INC. | | | |
|---|---|---|---|
| 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 1c. MAILING ADDRESS 1699 S. FEDERAL HWY., STE. 300 | CITY BOCA RATON | STATE FL  POSTAL CODE 33432 | COUNTRY USA |

2. **DEBTOR'S NAME:** Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 2a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 2c. MAILING ADDRESS | CITY | STATE  POSTAL CODE | COUNTRY |

3. **SECURED PARTY'S NAME** (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only one Secured Party name (3a or 3b)

| 3a. ORGANIZATION'S NAME FRANKLIN CAPITAL MANAGEMENT, LLC | | | |
|---|---|---|---|
| 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 3c. MAILING ADDRESS 32300 NORTHWESTERN HWY. | CITY FARMINGTON HILLS | STATE MI  POSTAL CODE 48334 | COUNTRY USA |

4. **COLLATERAL:** This financing statement covers the following collateral:
Florida Documentary Stamp Tax is not required.
All personal property of the Debtor including, without limitation, all of the following property Debtor now or later owns or has an interest in, wherever located:

a) all of the Debtor's Accounts, Chattel Paper, Deposit Accounts, Documents, Equipment, Farm Products, Fixtures, Goods, General Intangibles, Instruments, Inventory, Investment Property, Letter of Credit Rights (whether or not given in support of Accounts), Software, as defined below (words and phrases used herein and not otherwise specifically defined herein shall have the respective meanings assigned to such terms as such terms are defined in the Uniform Commercial Code of the State of Michigan, as in effect from time to time (the "UCC"), present and future, including but not limited to any items listed on Schedule 1 attached hereto, if any;
b) all present and future insurance claims relating to any of the above;
c) all Goods, Instruments (including, without limit, promissory notes), Documents (including, without limit, negotiable

5. Check only if applicable and check only one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and Instructions) ☐ being administered by a Decedent's Personal Representative

6a. Check only if applicable and check only one box:
☐ Public-Finance Transaction   ☐ Manufactured-Home Transaction   ☐ A Debtor is a Transmitting Utility

6b. Check only if applicable and check only one box:
☐ Agricultural Lien   ☐ Non-UCC Filing

7. ALTERNATIVE DESIGNATION (if applicable): ☐ Lessee/Lessor   ☐ Consignee/Consignor   ☐ Seller/Buyer   ☐ Bailee/Bailor   ☐ Licensee/Licensor

8. OPTIONAL FILER REFERENCE DATA: NJR/ASW (15492-72)

2209 64674

**FILING OFFICE COPY — UCC FINANCING STATEMENT (Form UCC1) (Rev. 04/20/11)**

Case 22-15627-EPK   Claim 10   Filed 09/30/22   Page 92 of 147

# UCC FINANCING STATEMENT ADDENDUM

FOLLOW INSTRUCTIONS

9. NAME OF FIRST DEBTOR:  Same as line 1a or 1b on Financing Statement; if line 1b was left blank because Individual Debtor name did not fit, check here ☐

| 9a. ORGANIZATION'S NAME |  |  |
|---|---|---|
| KARMA OF BROWARD, INC. |  |  |

OR

| 9b. INDIVIDUAL'S SURNAME |  |  |
|---|---|---|
| FIRST PERSONAL NAME |  |  |
| ADDITIONAL NAME(S)/INITIAL(S) |  | SUFFIX |

**THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY**

10. DEBTOR'S NAME:  Provide (10a or 10b) only one additional Debtor name or Debtor name that did not fit in line 1b or 2b of the Financing Statement (Form UCC1) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name) and enter the mailing address in line 10c

| 10a. ORGANIZATION'S NAME |  |  |  |  |
|---|---|---|---|---|

OR

| 10b. INDIVIDUAL'S SURNAME |  |  |  |  |
|---|---|---|---|---|
| INDIVIDUAL'S FIRST PERSONAL NAME |  |  |  |  |
| INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S) |  |  |  | SUFFIX |

| 10c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|

11. ☐ ADDITIONAL SECURED PARTY'S NAME  or  ☐ ASSIGNOR SECURED PARTY'S NAME: Provide only one name (11a or 11b)

| 11a. ORGANIZATION'S NAME |  |  |  |
|---|---|---|---|

OR

| 11b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| 11c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

12. ADDITIONAL SPACE FOR ITEM 4 (Collateral):

Documents), policies and certificates of insurance, Deposit Accounts, and money or other property (except real property which is not a fixture) which are now or later in possession of Secured Party, or as to which Secured Party now or later controls possession by documents or otherwise;

d) all present and future books, records, and data of the Debtor relating to any of the above; and

e) all present and future accessions, additions and attachments to, proceeds, parts, products, replacement, substitutions, Supporting Obligations and rights arising out of, any of the above, including but not limited to stock rights,

| 13. ☐ This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS (if applicable) | 14. This FINANCING STATEMENT: ☐ covers timber to be cut ☐ covers as-extracted collateral ☐ is filed as a fixture filing |
|---|---|
| 15. Name and address of a RECORD OWNER of real estate described in item 16 (if Debtor does not have a record interest): | 16. Description of real estate: |

17. MISCELLANEOUS:

FILING OFFICE COPY — UCC FINANCING STATEMENT ADDENDUM (Form UCC1Ad) (Rev. 04/20/11)

Case 22-15627-EPK   Claim 10   Filed 09/30/22   Page 93 of 147

# UCC FINANCING STATEMENT ADDENDUM
FOLLOW INSTRUCTIONS

9. NAME OF FIRST DEBTOR:  Same as line 1a or 1b on Financing Statement; if line 1b was left blank because Individual Debtor name did not fit, check here ☐

| 9a. ORGANIZATION'S NAME |
|---|
| KARMA OF BROWARD, INC. |

OR

| 9b. INDIVIDUAL'S SURNAME |
|---|
| FIRST PERSONAL NAME |
| ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

10. DEBTOR'S NAME:  Provide (10a or 10b) only one additional Debtor name or Debtor name that did not fit in line 1b or 2b of the Financing Statement (Form UCC1) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name) and enter the mailing address in line 10c

| 10a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|

OR

| 10b. INDIVIDUAL'S SURNAME | | | | |
|---|---|---|---|---|
| INDIVIDUAL'S FIRST PERSONAL NAME | | | | |
| INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S) | | | | SUFFIX |

| 10c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|

11. ☐ ADDITIONAL SECURED PARTY'S NAME  or  ☐ ASSIGNOR SECURED PARTY'S NAME: Provide only one name (11a or 11b)

| 11a. ORGANIZATION'S NAME | | | |
|---|---|---|---|

OR

| 11b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| 11c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

12. ADDITIONAL SPACE FOR ITEM 4 (Collateral):
subscription rights, interest, distributions, dividends, stock dividends, stock splits, or liquidating dividends, renewals, all cash and Accounts, insurance policies and proceeds, arising from the sale, rent, lease, casualty loss or other disposition of any of the above and cash and other property which were proceeds of any of the above and are recovered by a bankruptcy trustee or otherwise as a preferential transfer by the Debtor.

In this description of Collateral, a reference to a type of collateral shall not be limited by a separate reference to a more

| 13. ☐ This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS  (if applicable) | 14. This FINANCING STATEMENT: |
|---|---|
| | ☐ covers timber to be cut   ☐ covers as-extracted collateral   ☐ is filed as a fixture filing |
| 15. Name and address of a RECORD OWNER of real estate described in item 16 (if Debtor does not have a record interest): | 16. Description of real estate: |

17. MISCELLANEOUS:

FILING OFFICE COPY — UCC FINANCING STATEMENT ADDENDUM (Form UCC1Ad) (Rev. 04/20/11)

Case 22-15627-EPK    Claim 10    Filed 09/30/22    Page 94 of 147

# UCC FINANCING STATEMENT ADDENDUM

FOLLOW INSTRUCTIONS

9. NAME OF FIRST DEBTOR:  Same as line 1a or 1b on Financing Statement; if line 1b was left blank because Individual Debtor name did not fit, check here ☐

9a. ORGANIZATION'S NAME

**KARMA OF BROWARD, INC.**

OR

9b. INDIVIDUAL'S SURNAME

FIRST PERSONAL NAME

ADDITIONAL NAME(S)/INITIAL(S)                SUFFIX

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

10. DEBTOR'S NAME: Provide (10a or 10b) only one additional Debtor name or Debtor name that did not fit in line 1b or 2b of the Financing Statement (Form UCC1) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name) and enter the mailing address in line 10c

10a. ORGANIZATION'S NAME

OR

10b. INDIVIDUAL'S SURNAME

INDIVIDUAL'S FIRST PERSONAL NAME

INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S)                SUFFIX

| 10c.  MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

11. ☐ ADDITIONAL SECURED PARTY'S NAME  or  ☐ ASSIGNOR SECURED PARTY'S NAME:  Provide only one name (11a or 11b)

11a. ORGANIZATION'S NAME

OR

| 11b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| | | | |

| 11c.  MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

12. ADDITIONAL SPACE FOR ITEM 4 (Collateral):
specific or narrower type of that collateral.

UNDER AN AGREEMENT BETWEEN DEBTOR AND SECURED PARTY, DEBTOR HAS AGREED NOT TO SELL, ASSIGN, PLEDGE OR OTHERWISE ENCUMBER THE COLLATERAL DESCRIBED IN THIS FINANCING STATEMENT, WHICH INCLUDES ALL AFTER ACQUIRED PROPERTY, INCLUDING ALL OF DEBTOR'S ACCOUNTS, FUTURE ACCOUNTS, CONTRACT RIGHTS, FUTURE SALES, RECEIPTS AND OTHER

13. ☐ This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS  (if applicable)

14. This FINANCING STATEMENT:
☐ covers timber to be cut    ☐ covers as-extracted collateral    ☐ is filed as a fixture filing

15. Name and address of a RECORD OWNER of real estate described in item 16 (if Debtor does not have a record interest):

16. Description of real estate:

17. MISCELLANEOUS:

**FILING OFFICE COPY** — UCC FINANCING STATEMENT ADDENDUM (Form UCC1Ad) (Rev. 04/20/11)

Case 22-15627-EPK    Claim 10    Filed 09/30/22    Page 95 of 147

# UCC FINANCING STATEMENT **ADDENDUM**

FOLLOW INSTRUCTIONS

9. NAME OF FIRST DEBTOR:  Same as line 1a or 1b on Financing Statement; if line 1b was left blank
because Individual Debtor name did not fit, check here ☐

| 9a. ORGANIZATION'S NAME |
|---|
| KARMA OF BROWARD, INC. |

OR

| 9b. INDIVIDUAL'S SURNAME |
|---|
| FIRST PERSONAL NAME |
| ADDITIONAL NAME(S)/INITIAL(S)                          SUFFIX |

**THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY**

10. DEBTOR'S NAME:  Provide (10a or 10b) only <u>one</u> additional Debtor name or Debtor name that did not fit in line 1b or 2b of the Financing Statement (Form UCC1) (use exact, full name;
do not omit, modify, or abbreviate any part of the Debtor's name) and enter the mailing address in line 10c

| 10a. ORGANIZATION'S NAME |
|---|

OR

| 10b. INDIVIDUAL'S SURNAME |
|---|
| INDIVIDUAL'S FIRST PERSONAL NAME |
| INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S)                          SUFFIX |

| 10c.  MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

11. ☐ ADDITIONAL SECURED PARTY'S NAME  <u>or</u>  ☐ ASSIGNOR SECURED PARTY'S NAME:  Provide only <u>one</u> name (11a or 11b)

| 11a. ORGANIZATION'S NAME |
|---|

OR

| 11b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| | | | |

| 11c.  MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

12. ADDITIONAL SPACE FOR ITEM 4 (Collateral):

OBLIGATIONS. THE SALE, ASSIGNMENT, PLEDGE OR ENCUMBERING OF ANY SUCH COLLATERAL WOULD CONSTITUTE TORTIOUS INTERFERENCE WITH SECURED PARTY'S CONTRACTUAL RELATIONSHIP WITH DEBTOR. IN THE EVENT THAT ANY THIRD PARTY PURCHASES, TAKES AN ASSIGNMENT OR PLEDGE OF, AND/OR IS GRANTED A SECURITY INTEREST IN ANY OF THE ASSETS DESCRIBED IN THIS FINANCING STATMENT, SECURED PARTY ASSERTS A CLAIM TO ANY PROCEEDS THEREOF RECEIVED BY SUCH THIRD PARTY. DEBTOR HAS ALSO AGREED TO HOLD IN TRUST FOR SECURED PARTY ALL PAYMENTS RECEIVED IN

| 13. ☐ This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS  (if applicable) | 14. This FINANCING STATEMENT:  ☐ covers timber to be cut   ☐ covers as-extracted collateral   ☐ is filed as a fixture filing |
|---|---|
| 15. Name and address of a RECORD OWNER of real estate described in item 16 (if Debtor does not have a record interest): | 16. Description of real estate: |

17. MISCELLANEOUS:

**FILING OFFICE COPY — UCC FINANCING STATEMENT ADDENDUM (Form UCC1Ad) (Rev. 04/20/11)**

Case 22-15627-EPK   Claim 10   Filed 09/30/22   Page 96 of 147

# UCC FINANCING STATEMENT ADDENDUM

FOLLOW INSTRUCTIONS

9. NAME OF FIRST DEBTOR:  Same as line 1a or 1b on Financing Statement; if line 1b was left blank because Individual Debtor name did not fit, check here ☐

9a. ORGANIZATION'S NAME

**KARMA OF BROWARD, INC.**

OR

9b. INDIVIDUAL'S SURNAME

FIRST PERSONAL NAME

ADDITIONAL NAME(S)/INITIAL(S)   | SUFFIX

**THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY**

10. DEBTOR'S NAME:  Provide (10a or 10b) only one additional Debtor name or Debtor name that did not fit in line 1b or 2b of the Financing Statement (Form UCC1) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name) and enter the mailing address in line 10c

10a. ORGANIZATION'S NAME

OR

10b. INDIVIDUAL'S SURNAME

INDIVIDUAL'S FIRST PERSONAL NAME

INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S)   | SUFFIX

| 10c.  MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

11. ☐ ADDITIONAL SECURED PARTY'S NAME  or  ☐ ASSIGNOR SECURED PARTY'S NAME:  Provide only one name (11a or 11b)

11a. ORGANIZATION'S NAME

OR

| 11b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| | | | |

| 11c.  MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

12. ADDITIONAL SPACE FOR ITEM 4 (Collateral):

CONNECTION WITH SECURED PARTY'S COLLATERAL, AND FROM THE SALE, LEASE OR OTHER DISPOSITION OF SUCH COLLATERAL ANY ATTEMPT BY A THIRD PARTY TO EXERCISE DOMINION OR CONTROL OVER THE COLLATERAL DESCRIBED IN THIS FINANCING STATEMENT WOULD CONSTITUTE CONVERSION OF SECURED PARTY'S COLLATERAL.

13. ☐ This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS  (if applicable)

14. This FINANCING STATEMENT:  ☐ covers timber to be cut   ☐ covers as-extracted collateral   ☐ is filed as a fixture filing

15. Name and address of a RECORD OWNER of real estate described in item 16 (if Debtor does not have a record interest):

16. Description of real estate:

17. MISCELLANEOUS:

FILING OFFICE COPY — UCC FINANCING STATEMENT ADDENDUM (Form UCC1Ad) (Rev. 04/20/11)

FLORIDA SECURED TRANSACTION REGISTRY

# UCC FINANCING STATEMENT AMENDMENT

FOLLOW INSTRUCTIONS

**A. NAME & PHONE OF CONTACT AT FILER (optional)**
CSC    1-800-858-5294

**B. E-MAIL CONTACT AT FILER (optional)**
SPRFiling@cscglobal.com

**C. SEND ACKNOWLEDGMENT TO:  (Name and Address)**

2209 59669
CSC
801 Adlai Stevenson Drive
Springfield, IL 62703

Filed In: Florida
(S.O.S.)

FILED

2021 Nov 05 03:56 PM

****** 202109046722 ******

**THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY**

**1a. INITIAL FINANCING STATEMENT FILE NUMBER**
202106583131 03/26/2021

**1b.** ☐ This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS
Filer: attach Amendment Addendum (Form UCC3Ad) and provide Debtor's name in item 13

**2.** ☐ **TERMINATION:** Effectiveness of the Financing Statement identified above is terminated with respect to the security interest(s) of Secured Party authorizing this Termination Statement

**3.** ☑ **ASSIGNMENT** (full or partial):  Provide name of Assignee in item 7a or 7b, and address of Assignee in item 7c and name of Assignor in item 9
For partial assignment, complete items 7 and 9 and also indicate affected collateral in item 8

**4.** ☐ **CONTINUATION:**  Effectiveness of the Financing Statement identified above with respect to the security interest(s) of Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law

**5.** ☐ **PARTY INFORMATION CHANGE:**

Check one of these two boxes:      AND Check one of these three boxes to:

This Change affects ☐ Debtor or ☐ Secured Party of record

☐ CHANGE name and/or address: Complete item 6a or 6b; and item 7a or 7b and item 7c
☐ ADD name: Complete item 7a or 7b, and item 7c
☐ DELETE name: Give record name to be deleted in item 6a or 6b

**6. CURRENT RECORD INFORMATION:**  Complete for Party Information Change - provide only one name (6a or 6b)

**6a. ORGANIZATION'S NAME** C T CORPORATION SYSTEM, AS REPRESENTATIVE

OR

| 6b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
|  |  |  |  |

**7. CHANGED OR ADDED INFORMATION:**  Complete for Assignment or Party Information Change - provide only one name (7a or 7b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)

**7a. ORGANIZATION'S NAME** FRANKLIN CAPITAL GROUP, LLC

OR

7b. INDIVIDUAL'S SURNAME

INDIVIDUAL'S FIRST PERSONAL NAME

INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S)        SUFFIX

| 7c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 32300 NORTHWESTERN HWY. | FARMINGTON HILLS | MI | 48334 | USA |

**8.** ☐ **COLLATERAL CHANGE:**  Also check one of these four boxes: ☐ ADD collateral  ☐ DELETE collateral  ☐ RESTATE covered collateral  ☐ ASSIGN collateral
Indicate collateral:

**9. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT:** Provide only one name (9a or 9b) (name of Assignor, if this is an Assignment)
If this is an Amendment authorized by a DEBTOR, check here ☐ and provide name of authorizing Debtor

**9a. ORGANIZATION'S NAME** C T CORPORATION SYSTEM, AS REPRESENTATIVE

OR

| 9b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
|  |  |  |  |

**10. OPTIONAL FILER REFERENCE DATA:** Debtor: EXCELL AUTO GROUP INC - NJR/ASW (15492-72)

2209 59669

**FILING OFFICE COPY — UCC FINANCING STATEMENT AMENDMENT (Form UCC3) (Rev. 04/20/11)**

**FLORIDA SECURED TRANSACTION REGISTRY**

# UCC FINANCING STATEMENT AMENDMENT

FOLLOW INSTRUCTIONS

| | |
|---|---|
| A. NAME & PHONE OF CONTACT AT FILER (optional)<br>CSC   1-800-858-5294 | FILED |
| B. E-MAIL CONTACT AT FILER (optional)<br>SPRFiling@cscglobal.com | 2021 Nov 05 03:56 PM |
| C. SEND ACKNOWLEDGMENT TO: (Name and Address)<br>2209 61230<br>CSC<br>801 Adlai Stevenson Drive<br>Springfield, IL 62703<br>Filed In: Florida (S.O.S.) | ****** 202109046730 ****** |

**THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY**

| 1a. INITIAL FINANCING STATEMENT FILE NUMBER<br>20200516365X 10/28/2020 | 1b. ☐ This FINANCING STATEMENT AMENDMENT is to be filed [for record]<br>(or recorded) in the REAL ESTATE RECORDS<br>Filer: attach Amendment Addendum (Form UCC3Ad) and provide Debtor's name in item 13 |
|---|---|

2. ☐ **TERMINATION:** Effectiveness of the Financing Statement identified above is terminated with respect to the security interest(s) of Secured Party authorizing this Termination Statement

3. ☑ **ASSIGNMENT** (full or partial): Provide name of Assignee in item 7a or 7b, and address of Assignee in item 7c and name of Assignor in item 9
For partial assignment, complete items 7 and 9 and also indicate affected collateral in item 8

4. ☐ **CONTINUATION:** Effectiveness of the Financing Statement identified above with respect to the security interest(s) of Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law

5. ☐ **PARTY INFORMATION CHANGE:**

Check one of these two boxes:                    AND Check one of these three boxes to:

This Change affects ☐ Debtor or ☐ Secured Party of record  |  ☐ CHANGE name and/or address: Complete item 6a or 6b; and item 7a or 7b and item 7c  |  ☐ ADD name: Complete item 7a or 7b, and item 7c  |  ☐ DELETE name: Give record name to be deleted in item 6a or 6b

6. CURRENT RECORD INFORMATION: Complete for Party Information Change - provide only one name (6a or 6b)

| 6a. ORGANIZATION'S NAME AUSTIN BUSINESS FINANCE, LLC | | | |
|---|---|---|---|
| OR 6b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

7. CHANGED OR ADDED INFORMATION: Complete for Assignment or Party Information Change - provide only one name (7a or 7b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)

| 7a. ORGANIZATION'S NAME FRANKLIN CAPITAL GROUP, LLC | | | |
|---|---|---|---|
| OR 7b. INDIVIDUAL'S SURNAME | | | |
| INDIVIDUAL'S FIRST PERSONAL NAME | | | |
| INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S) | | | SUFFIX |

| 7c. MAILING ADDRESS 32300 NORTHWESTERN HWY. | CITY FARMINGTON HILLS | STATE MI | POSTAL CODE 48334 | COUNTRY USA |
|---|---|---|---|---|

8. ☐ **COLLATERAL CHANGE:** Also check one of these four boxes: ☐ ADD collateral ☐ DELETE collateral ☐ RESTATE covered collateral ☐ ASSIGN collateral

Indicate collateral:

9. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT: Provide only one name (9a or 9b) (name of Assignor, if this is an Assignment)
If this is an Amendment authorized by a DEBTOR, check here ☐ and provide name of authorizing Debtor

| 9a. ORGANIZATION'S NAME AUSTIN BUSINESS FINANCE, LLC | | | |
|---|---|---|---|
| OR 9b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

10. OPTIONAL FILER REFERENCE DATA: Debtor: EXCELL AUTO GROUP, INC. - NJR/ASW (15492-72)          2209 61230

FILING OFFICE COPY — UCC FINANCING STATEMENT AMENDMENT (Form UCC3) (Rev. 04/20/11)

███████████████
███████████████
███████████████
███████████████

# UCC FINANCING STATEMENT **AMENDMENT**

FLORIDA SECURED TRANSACTION REGISTRY

FOLLOW INSTRUCTIONS

**A. NAME & PHONE OF CONTACT AT FILER (optional)**
CSC   1-800-858-5294

**B. E-MAIL CONTACT AT FILER (optional)**
SPRFiling@cscglobal.com

**C. SEND ACKNOWLEDGMENT TO:   (Name and Address)**

⌐ 2212 81473
CSC
801 Adlai Stevenson Drive
Springfield, IL 62703
⌐                                    Filed In: Florida
                                              (S.O.S.) ⌐

FILED

2021 Nov 05 03:56 PM

****** 202109046749 ******

**THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY**

| **1a. INITIAL FINANCING STATEMENT FILE NUMBER** 202106787470 04/15/2021 | **1b.** ☐ This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS Filer: attach Amendment Addendum (Form UCC3Ad) and provide Debtor's name in item 13 |

**2.** ☐ **TERMINATION:** Effectiveness of the Financing Statement identified above is terminated with respect to the security interest(s) of Secured Party authorizing this Termination Statement

**3.** ☑ **ASSIGNMENT** (full or partial): Provide name of Assignee in item 7a or 7b, and address of Assignee in item 7c and name of Assignor in item 9
For partial assignment, complete items 7 and 9 and also indicate affected collateral in item 8

**4.** ☐ **CONTINUATION:** Effectiveness of the Financing Statement identified above with respect to the security interest(s) of Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law

**5.** ☐ **PARTY INFORMATION CHANGE:**

Check one of these two boxes:          AND Check one of these three boxes to:

This Change affects ☐ Debtor or ☐ Secured Party of record          ☐ CHANGE name and/or address: Complete item 6a or 6b; and item 7a or 7b and item 7c          ☐ ADD name: Complete item 7a or 7b, and item 7c          ☐ DELETE name: Give record name to be deleted in item 6a or 6b

**6. CURRENT RECORD INFORMATION:** Complete for Party Information Change - provide only one name (6a or 6b)

| 6a. ORGANIZATION'S NAME DIVERSE CAPITAL, LLC | | | |
|---|---|---|---|
| OR 6b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

**7. CHANGED OR ADDED INFORMATION:** Complete for Assignment or Party Information Change - provide only one name (7a or 7b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)

| 7a. ORGANIZATION'S NAME FRANKLIN CAPITAL GROUP, LLC | | | |
|---|---|---|---|
| OR 7b. INDIVIDUAL'S SURNAME | | | |
| INDIVIDUAL'S FIRST PERSONAL NAME | | | |
| INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S) | | | SUFFIX |

| 7c. MAILING ADDRESS 32300 NORTHWESTERN HWY. | CITY FARMINGTON HILLS | STATE MI | POSTAL CODE 48334 | COUNTRY USA |

**8.** ☐ **COLLATERAL CHANGE:** Also check one of these four boxes:   ☐ ADD collateral   ☐ DELETE collateral   ☐ RESTATE covered collateral   ☐ ASSIGN collateral

Indicate collateral:

**9. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT:** Provide only one name (9a or 9b) (name of Assignor, if this is an Assignment)
If this is an Amendment authorized by a DEBTOR, check here ☐ and provide name of authorizing Debtor

| 9a. ORGANIZATION'S NAME DIVERSE CAPITAL, LLC | | | |
|---|---|---|---|
| OR 9b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

**10. OPTIONAL FILER REFERENCE DATA:** Debtor: EXCELL AUTO GROUP, INC. - NJR/ASW (15492-72)

2212 81473

**FILING OFFICE COPY — UCC FINANCING STATEMENT AMENDMENT (Form UCC3) (Rev. 04/20/11)**

**STATE OF FLORIDA UNIFORM COMMERICAL CODE**
**FINANCING STATEMENT FORM**

A. NAME & DAYTIME PHONE NUMBER OF CONTACT PERSON

ONLINE DEPT.; 888-507-4593

Email  ONLINE@FICOSO.COM

B. SEND ACKNOWLEDGEMENT TO:

# FILED

2021 Apr 15 01:28 PM

****** 202106787470 ******

**THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY**

**1. DEBTOR'S EXACT FULL LEGAL NAME** - INSERT ONLY ONE DEBTOR NAME (1a OR 1b) - Do Not Abbreviate or Combine Names

| 1a. ORGANIZATION'S NAME |  |  |  |
|---|---|---|---|
| EXCELL AUTO GROUP, INC. |  |  |  |

| 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
|  |  |  |  |

| 1c. MAILING ADDRESS Line One | | |
|---|---|---|
| 1001 CLINTMOORE ROAD #101 | This space not available. | |

| MAILING ADDRESS Line Two | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
|  | BOCA RATON | FL | 33487 | USA |

**2. SECURED PARTY'S NAME**    (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - INSERT ONLY ONE SECURED PARTY NAME (2a OR 2b)

| 2a. ORGANIZATION'S NAME |  |  |  |
|---|---|---|---|
| KRISTEN ZANKL |  |  |  |

| 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
|  |  |  |  |

| 2c. MAILING ADDRESS Line One | | |
|---|---|---|
| 16937 PIERRE CIRCLE | This space not available. | |

| MAILING ADDRESS Line Two | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
|  | DELRAY BEACH | FL | 33446 | USA |

**3. ADDITIONAL SECURED PARTY'S NAME**    (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - INSERT ONLY ONE SECURED PARTY NAME (3a OR 3b)

| 3a. ORGANIZATION'S NAME |  |  |  |
|---|---|---|---|
|  |  |  |  |

| 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| ZANKL | SCOTT |  |  |

| 3c. MAILING ADDRESS Line One | | |
|---|---|---|
| 16937 PIERRE CIRCLE | This space not available. | |

| MAILING ADDRESS Line Two | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
|  | DELRAY BEACH | FL | 33446 | USA |

**4. This FINANCING STATEMENT covers the following collateral:**

SEE ATTACHED EXHIBIT A

**5. ALTERNATE DESIGNATION (if applicable)**
☐ LESSEE/LESSOR  ☐ CONSIGNEE/CONSIGNOR  ☐ BAILEE/BAILOR
☐ AG LIEN  ☐ NON-UCC FILING  ☐ SELLER/BUYER

**6. Florida DOCUMENTARY STAMP TAX** - YOU ARE REQUIRED TO CHECK **EXACTLY ONE** BOX

☐ All documentary stamps due and payable or to become due and payable pursuant to s. 201.22 F.S., have been paid.
☑ Florida Documentary Stamp Tax is not required.

**7. OPTIONAL FILER REFERENCE DATA**     [UCC1-671172] EXCELL AUTO

STANDARD FORM - FORM UCC-1 (REV.05/2013)     Filing Office Copy     Approved by the Secretary of State, State of Florida

**STATE OF FLORIDA UNIFORM COMMERICAL CODE
FINANCING STATEMENT FORM - ADDENDUM**

**8. NAME OF FIRST DEBTOR (1a OR 1b) ON RELATED FINANCING STATEMENT**

8a. ORGANIZATION'S NAME

EXCELL AUTO GROUP, INC.

| 8b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| | | | |

**THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY**

**9. MISCELLANEOUS**

**10. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME** - INSERT ONLY ONE DEBTOR NAME (10a OR 10b) - Do Not Abbreviate or Combine Names

10a. ORGANIZATION'S NAME

| 10b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| | | | |

| 10c. MAILING ADDRESS Line One | | | | |
|---|---|---|---|---|
| | This space not available. | | | |
| MAILING ADDRESS Line Two | CITY | STATE | POSTAL CODE | COUNTRY |

**11. ADDITIONAL SECURED PARTY'S NAME** or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - INSERT ONLY ONE SECURED PARTY NAME (11a OR 11b)

11a. ORGANIZATION'S NAME

| 11b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| | | | |

| 11c. MAILING ADDRESS Line One | | | | |
|---|---|---|---|---|
| | This space not available. | | | |
| MAILING ADDRESS Line Two | CITY | STATE | POSTAL CODE | COUNTRY |

12. This FINANCING STATEMENT covers ☐ timber to be cut or ☐ as-extracted collateral, or is filed as a ☐ fixture filing.

13. Description of real estate:

14. Name and address of a RECORD OWNER of above-described real estate (if Debtor does not have a record interest):

15. Additional collateral description:

16. Check only if applicable and check only one box.
Collateral ☐ Held in Trust
☐ Being administrated by Decendent's Personal Representative

17. Check only if applicable and check only one box.
☐ Debtor is a TRANSMITTING UTILITY
☐ Filed in connection with a Manufactured-Home Transaction - effective 30 years

STANDARD FORM - FORM UCC-1 ADDENDUM (REV.05/2013)          Filing Office Copy          Approved by the Secretary of State, State of Florida

EXHIBIT A

All Assets now owned or hereafter acquired and wherever located, including but not limited to, the following subcategories of assets:

a. Accounts, including but not limited to, credit card receivables; b. Chattel Paper; c. Inventory; d. Equipment; e. Instruments, including but not limited to, Promissory Notes; f. Investment Property; g. Documents; h. Deposit Accounts; i. Letter of Credits Rights; j. General Intangibles; k. Supporting Obligations; and l. Proceeds and Products of the foregoing.

NOTICE PURSUANT TO AN AGREEMENT BETWEEN DEBTOR AND SECURED PARTY, DEBTOR HAS AGREED NOT TO FURTHER ENCUMBER THE COLLATERAL DESCRIBED HEREIN, THE FURTHER ENCUMBERING OF WHICH MAY CONSTITUTE THE TORTIOUS INTERFERENCE WITH THE SECURED PARTY'S RIGHT BY SUCH ENCUMBRANCE IN THE EVENT THAT ANY ENTITY IS GRANTED A SECURITY INTEREST IN DEBTOR'S ACCOUNTS, CHATTEL PAPER OR GENERAL INTANGIBLES CONTRARY TO THE ABOVE, THE SECURED PARTY ASSERTS A CLAIM TO ANY PROCEEDS THEREOF RECEIVED BY SUCH ENTITY.

# EXHIBIT E

DocuSign Envelope ID: A9238ED1-827F-40BD-90DC-7DB819E8499C

## ASSIGNMENT OF OBLIGATIONS AND MERCHANT DOCUMENTS

Assignment of Obligations and Merchant Documents ("Assignment") executed and delivered as of October $\frac{11/1}{\phantom{xx}}$, 2021 by Spin Capital, with EIN:_____, ("Assignor") to Franklin Capital Group, LLC ("Assignee").

**RECITALS:**

Assignee desires to purchase from Assignor, and Assignor has agreed to sell to Assignee all outstanding obligations ("Obligations") of Excell Auto Group, Inc. and each of its affiliates (collectively, "Company") owing to Assignor under each of (i) the Revenue Purchase  Agreement, dated as of June 1, 2021, by and between Assignor and Company, and (ii) the Revenue Purchase Agreement, dated as of July 9, 2021, by and between Assignor and Company (collectively, the "Merchant Agreements") and all rights of Assignor under any similar or related documents (including without limitation, any guaranties, security agreements, forbearance agreements, settlement agreements and judgments), including with respect to all collateral securing the obligations of Company under the Merchant Agreements or securing any guaranties in respect thereof (the documents, including the Merchant Agreements, are defined collectively as the "Merchant Documents"), for a purchase price of $1.00 (the "Purchase Price").

For good and valuable consideration, the receipt and adequacy of which is acknowledged, Assignor agrees as follows:

1.      The total amount of the outstanding Obligations as of October 21, 2021 is $1.00.

2.      Effective upon receipt by Assignor of the Purchase Price, which Purchase Price must be paid by Assignee to Assignor by no later than November 3, 2021 (the "Deadline") by wire transfer of immediately available funds in accordance with wire instructions set forth below:

(a)      Assignor sells, transfers and assigns to Assignee the Obligations and all of Assignor's right, title and interest under the Merchant Documents, including any claims, rights or actions Assignor may have (whether known or unknown to Assignor as of the date hereof) against any third party arising in connection with, or otherwise related to, the Merchant Documents or the Obligations ("Third Party Claims");

(b)      Assignee is authorized to file UCC-3 assignments, assigning from Assignor to Assignee all UCC-1 financing statements that Assignor has of record against Company or any guarantors or pledgors of collateral securing the Obligations (collectively, the "Credit Parties"), including without limitation those identified on the attached Exhibit 1; and

(c)      Upon request of Assignee, Assignor will (i) file all necessary papers dismissing any litigation and assigning or discharging (as directed by Assignee) any judgments that may have been entered in favor of Assignor against Company, (ii) execute and deliver such documents as are necessary to rescind or retract any garnishments or instructions given by Assignor to (x) account debtors or customers of Company directing such parties to make payments to Assignor, or (y) any bank or financial institution regarding Company's deposit or other accounts with such bank or financial institution, and (iii) execute and deliver such additional documents and take such other actions as are necessary or advisable in order to evidence or otherwise give effect to the purposes of this Assignment.

3.      Assignor will forbear from exercising any remedies with respect to the Obligations, whether under the Merchant Documents or otherwise (including with respect to any Third Party Claims), through the Deadline.

4.      Assignor represents and warrants to Assignee that (i) Assignor's exact legal name and EIN are as set forth in the preamble above, (ii) the completed form W-9 provided to Assignee by Assignor on or prior to the date hereof is true and accurate, (iii) Assignor has not sold, assigned, transferred, granted a participation in or pledged the Obligations, the Merchant Documents or the Third Party Claims and Assignor owns the Obligations, the Merchant Documents and the Third Party Claims free and clear of any lien or other encumbrance and (iv) Assignor (including any of its affiliates) has not entered into any written or oral agreement with Company relating to this Assignment or receipt of any compensation from Company in consideration for entering into this Assignment.  The sale, transfer and assignment is made without recourse, representations or warranties of any kind, except as set forth above.

Bodman_18052354_1

DocuSign Envelope ID: A9238ED1-827F-40BD-90DC-7DB819E8499C

5.      Assignor represents and warrants to Assignee that Company is currently in default under the terms of the Merchant Documents and, without limiting the effect of Section 2(a) above, all claims, rights or actions that Assignor may have against Company (or any guarantors of the Obligations) are sold, assigned and transferred to Assignee in connection with this Assignment.

6.      Assignor acknowledges that Assignee is in the business of making secured commercial loans.  On and after the date of this Assignment, Assignor covenants to Assignee that, so long as Assignee has a UCC financing statement filed of record against any of the Credit Parties or any other person or entity, whether or not related to the Credit Parties (any such Credit Party, person or entity, a "Debtor") that includes language notifying parties that further sales, assignments, pledges or encumbrances with respect to the collateral described in Assignee's UCC financing statement are prohibited, or words of similar import: (a) Assignor shall not purchase any portion of accounts, future accounts, contract rights, future sales, receipts or other obligations from such Debtor, (b) Assignor shall  not extend credit to such Debtor, (c) Assignor shall not take a security interest in the assets of such Debtor, and (d) if Assignor violates any of the provisions of clauses (a), (b), or (c) above, its debt and lien shall be subordinate and it shall be subject to a permanent standstill and it shall not  take any legal action or otherwise exercise any rights or remedies against such Debtor.  Assignor further covenants and agrees that it shall not accept any payments from any of the Credit Parties on account of, or related to, the Obligations (including any compensation in consideration for entering into this Assignment), and Assignor acknowledges and agrees that any such payments, if received, shall be held in trust for the benefit of Assignee and promptly paid over to Assignee in the form received (with proper endorsements or assignment if necessary).

7.      Assignor shall execute the Evidence of Assignment attached hereto as Exhibit 2, which Assignee, Company, or any designee of any of the foregoing may, at any time after receipt by Assignor of the Purchase Price, provide to any other person as evidence of this Assignment.

8.      This Assignment and any dispute, controversy or claim (whether or not arising out of or in connection with this Assignment) between Assignor and Assignee shall be governed by and construed in accordance with the laws of the State of Michigan, without reference to conflicts of laws.  Assignor submits to the non-exclusive jurisdiction and venue of the federal court located in the Eastern District of Michigan or the state courts located in Oakland County, Michigan and shall waive any right to trial by jury, and any suit brought by Assignor, whether or not arising out of or in connection with this Assignment, may only be brought in such courts.  Nothing shall limit the right of Assignee to bring any action or proceeding in the courts of any other jurisdiction if necessary or convenient to effect the relief sought.

9.      Assignor agrees to indemnify and hold Assignee harmless from and against all losses, costs, damages, liabilities and expenses, including, without limitation, in-house and outside attorneys' fees and disbursements, incurred by Assignee in connection with this Assignment or the transactions contemplated hereby, or enforcing the obligations of Assignor under this Assignment, or in exercising any rights or remedies of Assignee or in the prosecution or defense of any action or proceeding concerning any matter arising under or in connection with this Assignment. If Assignor fails to perform any of its obligations arising under or in connection with this Assignment and/or violates any provision of this Assignment, Assignee shall be entitled to triple the amount of its actual/compensatory damages and, in such event, Assignee shall be entitled to its reasonable attorney fees and expenses (in addition to any other relief to which Assignee may be entitled).

10.      Electronic and/or facsimile signatures on this Assignment shall be effective for all purposes.

11.      Assignor's wire instructions are as set forth below:

TD Bank                                                    031101266

| Bank | ABA Transit Number |
|------|--------------------|
| Spin Capital | 4362466504 |
| **Account Title** | **Account Number** |

1460 Arboretum Pkwy
Lakewood, NJ 08701

DocuSign Envelope ID: A9238ED1-827F-40BD-90DC-7DB819E8499C

**ASSIGNOR:**

**SPIN CAPITAL**

By: _Josh Lubin_____
       8C1F4BC2DA904D5...

Its: _President_____

Bodman_18052354_1

DocuSign Envelope ID: A9238ED1-827F-40BD-90DC-7DB819E8499C

## EXHIBIT 1

UCC-1 Filings

| Debtor | UCC File No. | Date of Filing | Place of Filing |
|--------|-------------|----------------|-----------------|
|        |             |                |                 |

Bodman_18052354_1

DocuSign Envelope ID: A9238ED1-827F-40BD-90DC-7DB819E8499C

**EXHIBIT 2**

[Evidence of Assignment attached]

Bodman_18052354_1

DocuSign Envelope ID: A9238ED1-827F-40BD-90DC-7DB819E8499C

## Evidence of Assignment

To Whom It May Concern:

Reference is made to that certain (i) Revenue Purchase Agreement, dated as of June 1, 2021, by and between Excell Auto Group, Inc. ("Company") and Spin Capital ("Assignor"), and (ii) Revenue Purchase Agreement, dated as of July 9, 2021, by and between Company and Assignor (collectively, the "Merchant Agreements") and all rights of Assignor under any similar or related documents (including without limitation, any guaranties, security agreements, settlement agreements, forbearance agreements and judgments), including with respect to all collateral securing the obligations of Company under the Merchant Agreements or securing any guaranties in respect thereof (the documents, including the Merchant Agreements, are defined collectively as the "Merchant Documents").

Assignor hereby confirms that in connection with that certain Assignment of Obligations and Merchant Documents, dated as of October ___, 2021, between Assignor and Franklin Capital Group, LLC ("Assignee"), (i) Assignor has sold, transferred and assigned all of its right, title and interest in the Merchant Documents to Assignee, (ii) Assignor no longer has any rights or interest in the accounts, receivables, or other assets of Company or its guarantors that were sold, assigned, transferred or pledged to Assignor under or in connection with the Merchant Documents and (iii) this Evidence of Assignment may be relied upon by any person as evidence of the foregoing.

**ASSIGNOR:**

**SPIN CAPITAL**

By: _Josh Lubin_ _____

Its: President _____

**DocuSign**

## Certificate Of Completion

Envelope Id: A9238ED1827F40BD90DC7DB819E8499C

Status: Completed

Subject: Please DocuSign: Franklin Capital_Excell -- (Spin Capital) Assignment of Obligations and and Me...

Source Envelope:

| | | |
|---|---|---|
| Document Pages: 6 | Signatures: 2 | Envelope Originator: |
| Certificate Pages: 4 | Initials: 0 | Wing Lake Capital Partners |
| AutoNav: Enabled | | 32300 Northwestern Hwy |
| EnvelopeId Stamping: Enabled | | Suite 200 |
| Time Zone: (UTC-08:00) Pacific Time (US & Canada) | | Farmington Hills, MI  48334 |
| | | docusign@winglakecp.com |
| | | IP Address: 107.147.212.64 |

## Record Tracking

| | | |
|---|---|---|
| Status: Original | Holder: Wing Lake Capital Partners | Location: DocuSign |
| 10/26/2021 12:05:11 PM | docusign@winglakecp.com | |

| Signer Events | Signature | Timestamp |
|---|---|---|
| Josh Lubin<br>josh@spincapital.com<br>Security Level: Email, Account Authentication (None) | *DocuSigned by:*<br>*Josh Lubin*<br>6C1F4BC2DA604D5...<br><br>Signature Adoption: Pre-selected Style<br>Using IP Address: 75.127.161.34 | Sent: 10/26/2021 12:11:00 PM<br>Resent: 10/28/2021 6:18:28 AM<br>Viewed: 10/26/2021 12:27:35 PM<br>Signed: 11/1/2021 1:13:20 PM |
| **Electronic Record and Signature Disclosure:**<br>   Accepted: 10/26/2021 12:27:35 PM<br>   ID: ba30ce3e-e601-4a25-8e88-52772d5d91b0 | | |

| In Person Signer Events | Signature | Timestamp |
|---|---|---|

| Editor Delivery Events | Status | Timestamp |
|---|---|---|

| Agent Delivery Events | Status | Timestamp |
|---|---|---|

| Intermediary Delivery Events | Status | Timestamp |
|---|---|---|

| Certified Delivery Events | Status | Timestamp |
|---|---|---|

| Carbon Copy Events | Status | Timestamp |
|---|---|---|

| Witness Events | Signature | Timestamp |
|---|---|---|

| Notary Events | Signature | Timestamp |
|---|---|---|

| Envelope Summary Events | Status | Timestamps |
|---|---|---|
| Envelope Sent | Hashed/Encrypted | 10/26/2021 12:11:00 PM |
| Certified Delivered | Security Checked | 10/26/2021 12:27:35 PM |
| Signing Complete | Security Checked | 11/1/2021 1:13:20 PM |
| Completed | Security Checked | 11/1/2021 1:13:20 PM |

| Payment Events | Status | Timestamps |
|---|---|---|

## Electronic Record and Signature Disclosure

Electronic Record and Signature Disclosure created on: 3/29/2019 1:31:30 PM
Parties agreed to: Josh Lubin

## ELECTRONIC RECORD AND SIGNATURE DISCLOSURE

From time to time, Franklin Capital Group (we, us or Company) may be required by law to provide to you certain written notices or disclosures. Described below are the terms and conditions for providing to you such notices and disclosures electronically through the DocuSign system. Please read the information below carefully and thoroughly, and if you can access this information electronically to your satisfaction and agree to this Electronic Record and Signature Disclosure (ERSD), please confirm your agreement by selecting the check-box next to 'I agree to use electronic records and signatures' before clicking 'CONTINUE' within the DocuSign system.

### Getting paper copies

At any time, you may request from us a paper copy of any record provided or made available electronically to you by us. You will have the ability to download and print documents we send to you through the DocuSign system during and immediately after the signing session and, if you elect to create a DocuSign account, you may access the documents for a limited period of time (usually 30 days) after such documents are first sent to you. After such time, if you wish for us to send you paper copies of any such documents from our office to you, you will be charged a $0.00 per-page fee. You may request delivery of such paper copies from us by following the procedure described below.

### Withdrawing your consent

If you decide to receive notices and disclosures from us electronically, you may at any time change your mind and tell us that thereafter you want to receive required notices and disclosures only in paper format. How you must inform us of your decision to receive future notices and disclosure in paper format and withdraw your consent to receive notices and disclosures electronically is described below.

### Consequences of changing your mind

If you elect to receive required notices and disclosures only in paper format, it will slow the speed at which we can complete certain steps in transactions with you and delivering services to you because we will need first to send the required notices or disclosures to you in paper format, and then wait until we receive back from you your acknowledgment of your receipt of such paper notices or disclosures. Further, you will no longer be able to use the DocuSign system to receive required notices and consents electronically from us or to sign electronically documents from us.

### All notices and disclosures will be sent to you electronically

Unless you tell us otherwise in accordance with the procedures described herein, we will provide electronically to you through the DocuSign system all required notices, disclosures, authorizations, acknowledgements, and other documents that are required to be provided or made available to you during the course of our relationship with you. To reduce the chance of you inadvertently not receiving any notice or disclosure, we prefer to provide all of the required notices and disclosures to you by the same method and to the same address that you have given us. Thus, you can receive all the disclosures and notices electronically or in paper format through the paper mail delivery system. If you do not agree with this process, please let us know as described below. Please also see the paragraph immediately above that describes the consequences of your electing not to receive delivery of the notices and disclosures electronically from us.

**How to contact Franklin Capital Group:**

You may contact us to let us know of your changes as to how we may contact you electronically, to request paper copies of certain information from us, and to withdraw your prior consent to receive notices and disclosures electronically as follows:
To contact us by email send messages to: Mhowell@FranklinCapital.net

**To advise Franklin Capital Group of your new email address**

To let us know of a change in your email address where we should send notices and disclosures electronically to you, you must send an email message to us at Mhowell@FranklinCapital.net and in the body of such request you must state: your previous email address, your new email address. We do not require any other information from you to change your email address.

If you created a DocuSign account, you may update it with your new email address through your account preferences.

**To request paper copies from Franklin Capital Group**

To request delivery from us of paper copies of the notices and disclosures previously provided by us to you electronically, you must send us an email to Mhowell@FranklinCapital.net and in the body of such request you must state your email address, full name, mailing address, and telephone number. We will bill you for any fees at that time, if any.

**To withdraw your consent with Franklin Capital Group**

To inform us that you no longer wish to receive future notices and disclosures in electronic format you may:

i. decline to sign a document from within your signing session, and on the subsequent page, select the check-box indicating you wish to withdraw your consent, or you may;

ii. send us an email to Mhowell@FranklinCapital.net and in the body of such request you must state your email, full name, mailing address, and telephone number. We do not need any other information from you to withdraw consent.. The consequences of your withdrawing consent for online documents will be that transactions may take a longer time to process..

**Required hardware and software**

The minimum system requirements for using the DocuSign system may change over time. The current system requirements are found here: https://support.docusign.com/guides/signer-guide-signing-system-requirements.

**Acknowledging your access and consent to receive and sign documents electronically**

To confirm to us that you can access this information electronically, which will be similar to other electronic notices and disclosures that we will provide to you, please confirm that you have read this ERSD, and (i) that you are able to print on paper or electronically save this ERSD for your future reference and access; or (ii) that you are able to email this ERSD to an email address where you will be able to print on paper or save it for your future reference and access. Further, if you consent to receiving notices and disclosures exclusively in electronic format as described herein, then select the check-box next to 'I agree to use electronic records and signatures' before clicking 'CONTINUE' within the DocuSign system.

By selecting the check-box next to 'I agree to use electronic records and signatures', you confirm that:

- You can access and read this Electronic Record and Signature Disclosure; and
- You can print on paper this Electronic Record and Signature Disclosure, or save or send this Electronic Record and Disclosure to a location where you can print it, for future reference and access; and
- Until or unless you notify Franklin Capital Group as described above, you consent to receive exclusively through electronic means all notices, disclosures, authorizations, acknowledgements, and other documents that are required to be provided or made available to you by Franklin Capital Group during the course of your relationship with Franklin Capital Group.

# EXHIBIT F

This case has been designated an e-filing case. For more information please visit www.oakgov.com/efiling.

Case 22-15318-EPK    Doc 206    Filed 03/20/23    Page 149 of 181

## STATE OF MICHIGAN
## IN THE CIRCUIT COURT FOR OAKLAND COUNTY

FRANKLIN CAPITAL GROUP, LLC a Michigan limited liability company,

      Plaintiff,

v.

EXCELL AUTO GROUP, INC., a Florida corporation, KARMA OF PALM BEACH, INC., a Florida corporation, KARMA OF BROWARD, INC., a Florida corporation, SCOTT ZANKL, and individual, and KRISTEN ZANKL, an individual,

      Defendants.

Case No.    -    -CZ

Hon.    2022-193116-CZ

JUDGE YASMINE I. POLES

**CONFESSED JUDGMENT**

_____

BODMAN PLC
By:    J. Adam Behrendt (P58607)
       Noel J. Ravenscroft (P77729)
201 West Big Beaver Road, Suite 500
Troy, Michigan 48084
(248) 743-6000
Attorneys for Franklin Capital Group, LLC
jbehrendt@bodmanlaw.com
nravenscroft@bodmanlaw.com

_____

FILED    Received for Filing    Oakland County Clerk    3/18/2022 9:34 AM

4860-1425-6406.v1

## CONFESSED JUDGMENT

At a session of said Court, held in the
Oakland County Circuit Court, State of Michigan

on ___3/18/2022_____, 2022

PRESENT: Hon. ___YASMINE I. POLES_____
Oakland Circuit Court Judge

Counsel for plaintiff appeared before the Court and demonstrated that Excell Auto Group, Inc., Karma of Palm Beach, Inc., Karma of Broward, Inc., Scott Zankl, and Kristen Zankl ("defendants") consented and confessed to the entry of this Confessed Judgment ("Judgment"). Counsel for plaintiff further demonstrated that defendants waived any requirement that the Court make any specific findings to support entry of this Judgment and their rights to appeal. *See* Warrant Authorizing Confession of Judgment attached as **Exhibit A**. Additionally, the Court is otherwise satisfied that entry of this Judgment is justified.

Having been otherwise fully advised on the premises;

IT IS HEREBY ORDERED AND ADJUDGED that Franklin Capital Group, LLC has a judgment against defendants in the amount of $5,922,000.77, representing $5,862,758.81 in unpaid principal and $53,741.96 in accrued interest under the Term Note dated November 3, 2021, and $5,500.00 in attorney fees and expenses. This Judgment shall accrue interest at the contractual rate in place at the time of entry.

IT IS FURTHER ORDERED AND ADJUDGED that this Judgment shall be effective and enforceable immediately upon entry. Defendants shall have no right to appeal this Judgment pursuant to their waiver of such rights.

2

4860-1425-6406.v1

This is a final order that resolves the last pending claim and closes the case.

IT IS SO ORDERED.

/s/  YASMINE I. POLES

Hon.

Dated: 3/18/2022

mz

3

# EXHIBIT A

4

## WARRANT AUTHORIZING CONFESSION OF JUDGMENT

Franklin Capital Group, LLC ("Lender"), Excell Auto Group, Inc. ("Company"), and Karma of Palm Beach, Inc., Karma of Broward, Inc., Scott Zankl, and Kristen Zankl (collectively, the "Guarantors") enter into this Warrant Authorizing Confessed Judgment ("Warrant") as of November 3, 2021.

## I.    RECITALS.

A.    For purposes of this Warrant, the obligations owed to Lender include, but are not limited to, the following:

1.  Term Note, dated as of the date hereof, between Lender and Company, in the original principal amount of $6,000,000 ("Term Note"); plus

2.  all present and future loans and credit from time to time made available by Lender to or in favor of Company, whether direct or indirect, absolute or contingent, joint or several, now or hereafter existing or arising, or due or to become due, and all extensions and/or renewals thereof (collectively with the Term Note, the "Indebtedness").

A copy of the Term Note is attached as **Exhibit A**. As of the date of this Warrant, the outstanding Indebtedness, excluding attorney fees, expenses and costs was $6,000,000.

B.    Guarantors acknowledge and agree that they have executed a certain Continuing Guaranty, dated as of the date hereof, of the Indebtedness owed by Company to Lender ("Continuing Guaranty"). Under the Continuing Guaranty, Guarantors guaranteed to pay the Indebtedness when due, whether by stated maturity, demand, acceleration or otherwise, to Lender. A copy of the Continuing Guaranty is attached as **Exhibit B**.

C.    Company and Guarantors acknowledge that they owe Lender the Indebtedness as set forth in the Term Note.

D.    Without waiver or limitation as to any of Lender's rights in any of its collateral, or as to any of its remedies and to avoid the uncertainties of litigation, Lender, Company, and Guarantors have agreed to the execution of this Warrant providing for the entry of a confessed judgment.

**Now, therefore, it is agreed as follows:**

1.    Company and Guarantors hereby consent and authorize any attorney employed by Bodman PLC, or such other law firm as Lender designates at its sole discretion, to appear before any Michigan or federal court of record, to have a judgment entered against Company and Guarantors in the form of the confessed judgment attached as **Exhibit C** to this Warrant awarding a money judgment in favor of Lender and against Company and Guarantors in the amount of the then-current Indebtedness, plus without limitation, Lender's attorney fees and expenses. Company and Guarantors agree that Lender may elect to enter a judgment against them at any time and can modify the confessed judgment to insert the amount of the then-current Indebtedness and to modify the confessed judgment attached as Exhibit C to the extent necessary in accordance with this

paragraph and to ensure its entry by any Michigan or federal court of record and to effectuate the intent of this Warrant. Company and Guarantors consent to Bodman PLC's representation of them (or another firm as selected by Lender) and agree that such representation is for convenience of Lender only in effectuating the parties' agreement and Company and Guarantors acknowledge that this right shall not create an attorney-client relationship. Company and Guarantors waive all conflicts of interest.

2.	Company and Guarantors expressly acknowledge their agreement and understanding that such a confessed judgment may be entered without further notice to them and may be enforced immediately.

3.	Company and Guarantors irrevocably waive any requirement, under common law, by court rule, statute or from any other source, that a court, in entering such a confessed judgment, make any specific findings to support entry of said confessed judgment.

4.	Company and Guarantors expressly acknowledge that they have had the opportunity to consult with counsel with respect to the terms of this Warrant, have sought the advice that they deem is necessary, and **specifically waive any right that they may have to a trial by jury**.

5.	Company and Guarantors expressly waive all rights that they may have to appeal such a confessed judgment and any and all counterclaims or rights of setoff that they may have against Lender relating to the Term Note, the Continuing Guaranty, and the Indebtedness, of any kind, type or description, whether known or unknown, disputed or undisputed, accrued or unaccrued, liquidated or contingent, foreseen or unforeseen, and asserted or unasserted.

**FRANKLIN CAPITAL GROUP, LLC**

Dated: November 3, 2021

Shaya Baum
FA0863823F534CA...

Its: Authorized Representative

**BORROWER:**

EXCELL AUTO GROUP, INC.

By:_____
Name: Scott Zankl
Title: Vice President

**GAURANTORS:**

KARMA OF PALM BEACH INC.

By:_____
Name: Scott Zankl
Title: President

Bodman_18055850_2

KARMA OF BROWARD, INC.

By:_____

Name: Scott Zankl

Title: Vice President

_____

Scott Zankl, individually

_____

Kristen Zankl, individually

# Exhibit A

(Term Note)

Bodman_18055850_2

# PROMISSORY NOTE
## (Term Loan)

$6,000,000

Maturity Date: November 3, 2024                                    Dated:  November 3, 2021

   **FOR VALUE RECEIVED,** on or before the Maturity Date stated above "Maturity Date"), the undersigned ("Borrower") promises to pay to the order of Franklin Capital Group, LLC (including its successors and assigns, "Lender"), at its offices located at 32300 Northwestern Hwy, Farmington Hills, Michigan 48334, or at such other place as Lender may designate in writing, the principal sum of Six Million Dollars ($6,000,000), plus interest as hereinafter provided, in lawful money of the United States.

   The unpaid principal balance outstanding from time to time under this Promissory Note (Term Loan) (this "Note") shall bear interest at twenty two percent (22%) per annum.  Interest shall be calculated on the basis of a 360 day year for the actual number of days elapsed.  Interest shall be paid monthly in arrears on the last day of each month in the amounts and on the dates set forth on Schedule A hereto.

   This Note shall be repaid by consecutive monthly installments of principal on the last day of each month, in the amounts and on the dates set forth on Schedule A hereto (as may be adjusted from time to time as necessary to reflect any prepayments).  The unpaid principal balance and all accrued interest thereon shall be due and payable in full on the Maturity Date (or earlier upon acceleration).  Amounts repaid may not be readvanced.

   The sums advanced hereunder shall be charged to a loan account in Borrower's name on Lender's books (the "Loan Account"), and Lender shall credit to such account the amount of each repayment hereunder.  Lender shall render Borrower, from time to time, a statement of account setting forth the Borrower's loan balance in said Loan Account which shall be presumed to be correct and accepted by and binding upon Borrower, unless Lender receives a written statement of exceptions within ten (10) days after such statement has been rendered to Borrower.  Such statement of account shall be prima facie evidence of the loan and amounts owing to Lender by Borrower hereunder.

   Any payment made by mail will be deemed tendered and received only upon actual receipt (time being of the essence), at the address of Lender designated for such payment whether or not Lender has authorized payment by mail or any other manner.  Borrower hereby expressly assumes all risk of loss or liability resulting from non-delivery or delay in delivery of any payment transmitted by mail or in any other manner.

   No delay or failure of Lender in exercising any right, remedy, power or privilege hereunder shall affect such right, remedy, power or privilege, nor shall any single or partial exercise thereof preclude the exercise of any other right, remedy, power or privilege.  No delay or failure of Lender at any time to demand strict adherence to the terms of this Note shall be deemed to constitute a course of conduct inconsistent with the Lender's right at any time, before

Bodman_18055842_4

or after any Event of Default (defined below), to demand strict adherence to the terms of this Note.

Unless separately agreed in writing by Lender in its sole and absolute discretion, Borrower shall not be permitted to prepay any principal or interest outstanding under this Note.

Nothing herein contained, nor any transaction relating thereto, or hereto, shall be construed or so operate as to require the Borrower to pay, or be charged, interest at a greater rate than the maximum allowed by the applicable law relating to this Note. Should any interest or other charges, charged, paid or payable by the Borrower in connection with this Note, or any other document delivered in connection herewith, result in the charging, compensation, payment or earning of interest in excess of the maximum allowed by the applicable law as aforesaid, then any and all such excess shall be and the same is hereby waived by the holder, and any and all such excess paid shall be automatically credited against and in reduction of the principal due under this Note.

As of the date of this Note, Borrower represents that Borrower has not made any qualified dispositions of any of Borrower's property to (a) a trust established under the Qualified Dispositions in Trust Act (codified at MCL 700.1041 et. seq.) ("Act"), or (b) any other asset protection trust.

Borrower agrees that Borrower will not make or attempt any qualified dispositions or other distribution or transfers of Borrower's property into a trust established under the Act, or any other asset protection trust, without obtaining the prior written consent of Lender. Lender's consent to any such requested distribution shall be at the sole and absolute discretion of Lender. Any consent provided by Lender described in this paragraph shall only be applicable for property identified and disclosed in writing by Borrower to Lender. Lender's consent shall not be applicable to: (x) any other property of Borrower which is not disclosed to Lender in writing as part of the qualified disposition under the Act; or (y) any other qualified disposition of property under the Act previously attempted or attempted in the future by Borrower.

Borrower acknowledges and agrees that if Lender does not provide its written consent to Borrower for a qualified or other disposition under the Act, then such disposition by Borrower shall not be valid under the Act with respect to Lender.

Borrower agrees that Borrower has an obligation to disclose immediately in writing to Lender any qualified dispositions or attempted qualified dispositions to a trust under the Act.

Borrower agrees that this Note constitutes a written agreement described in the Act between a transferor and a creditor providing for and establishing the obligations of a transferor as stated in Subsection (11) of Section 5 of the Act.

The terms used in the previous five paragraphs shall have the meaning ascribed to them in the Act, unless otherwise defined herein.

Any of the following events shall constitute an "Event of Default" under this Note: (a) Borrower shall default in the payment of any sum which is or becomes due and payable under this Note, or (b) any representation or warranty made by Borrower in this Note or in any other

2

Loan Document or other agreement, certificate or document furnished in connection with this Note shall prove untrue in any material respect, or (c) Borrower shall fail to observe or perform any other condition, covenant or agreement of Borrower set forth in this Note or in any other Loan Document, or (d) Borrower or any guarantor of all or any portion of the indebtedness under this Note (each a "Guarantor") shall default in the performance of any of its obligations to Lender, and such default shall not be cured or remedied by Borrower or such Guarantor within any applicable period of grace or cure with respect thereto, or (e) the default in the payment of any other obligation of Borrower or any Guarantor for borrowed money, or in the observance or performance of any conditions, covenants or agreements related or given with respect to any obligations for borrowed money (including under or in respect of any Existing Indebtedness (as defined in the Letter Agreement) notwithstanding the consolidation of such Existing Indebtedness into the Term Loan (as defined in the Letter Agreement)) sufficient to permit the holder thereof to accelerate the maturity of such obligation, including, without limitation, obligations of Borrower or any Guarantor to Lender, or (f) a judgment for the payment of money in excess of the sum of Ten Thousand Dollars ($10,000) in the aggregate shall be rendered against Borrower or any Guarantor and such judgment shall remain unpaid, unvacated, unbonded or unstayed by appeal or otherwise for a period of thirty (30) consecutive days from the date of its entry and such judgment is not covered by insurance from a solvent insurer who is defending such action without reservation of rights, or (g) Borrower or any Guarantor (i) shall admit in writing the inability to pay its or his debts as they become due and payable; or (ii) shall make an assignment for the benefit of creditors; or (iii) shall be adjudicated a bankrupt; or (iv) shall file a voluntary petition in bankruptcy or effect a plan or other arrangement with creditors; or (v) shall have applied for, or permitted the appointment of, a receiver or trustee or custodian for all or substantially all of the property or assets of such Borrower or Guarantor, or a trustee, receiver or custodian shall have been appointed for all or substantially all of the property or assets of such Borrower or Guarantor who shall not have been discharged within sixty (60) days after the date of his appointment, or (h) Borrower or any Guarantor shall dissolve or merge with or into any entity not theretofore affiliated with Borrower or Guarantor, as applicable, or Borrower or any Guarantor shall dispose of all or any material portion of its assets or equity, or (i) any Guarantor shall deny its liability or obligations under its guaranty or shall notify the Lender of its intention to attempt to cancel, revoke or terminate its guaranty, or shall fail to observe or comply with any term, covenant, condition and requirement under its guaranty, or (j) any suit or proceeding is filed against Borrower or any Guarantor which, if adversely determined to Borrower or such Guarantor, would have, as determined by Lender in its sole discretion, a material adverse effect on such Borrower or Guarantor, which suit is not dismissed within sixty (60) days of its filing, or (k) Borrower or any Guarantor (if a natural person) shall die or shall be determined mentally incapacitated by a court of competent jurisdiction, or (l) any breach or default by Borrower of any material term or condition under any swap, interest protection agreement, derivatives agreement, or similar agreements now or hereafter entered into by Borrower with Lender or any affiliate of Lender, or (m) the occurrence of any event (including any change, for any reason whatsoever, in the management, ownership or control of Borrower) which Lender determines, in its sole discretion and judgment, would have a material adverse effect upon Borrower and/or its ability to pay or perform any of its liabilities or obligations under this Note or (n) Borrower shall terminate the Consulting Engagement (as defined in the Letter Agreement) or shall otherwise breach any of its obligations with respect thereto or (o) the Key Man Life Insurance Policy (as defined in the Letter Agreement) ceases to be in full force and effect or (p) within 90 days from

3

the date hereof, the Key Man Life Insurance Policy shall not have been issued and subject to a first priority collateral assignment in favor of Lender (subject to documentation acceptable to Lender).

Upon the occurrence of an Event of Default: (a) the entire unpaid principal balance and all accrued interest shall at the sole option of Lender be immediately due and payable, without presentment, demand, protest or any further notice or any other formalities of any kind, all of which are hereby expressly and irrevocably waived, together with (to the extent permitted under applicable law) the costs, attorneys' fees, and outside consultants' fees reasonably incurred by Lender in collecting or enforcing payment, (b) Lender may proceed to protect and enforce all or any of its rights, remedies, powers and privileges under this Note by action at law, suit in equity or other appropriate proceedings, and (c) any commitment or obligation, if any, on the part of Lender to make loans or otherwise extend credit to or in favor of Borrower shall immediately terminate. Upon the occurrence and at any time during the continuance or existence of an Event of Default under subsection (g) of the preceding paragraph, then the Obligations and all indebtedness then outstanding thereunder shall automatically become immediately due and payable without any notice by Lender to Borrower and any commitment or obligation, if any, on the part of Lender to make loans or otherwise extend credit to or in favor of Borrower shall immediately terminate. Further, upon the occurrence or at any time during the continuance or existence of any Events of Default hereunder, Lender may collect, deal with and dispose of all or any part of any security in any manner permitted or authorized by the Michigan Uniform Commercial Code or other applicable law (including public or private sale), and after deducting expenses (including, without limitation, reasonable attorneys' fees and expenses), Lender may apply the proceeds thereof in part or full payment of any of the Obligations, whether due or not, in any manner or order Lender elects.

Borrower hereby grants to Lender a security interest in Lender's own indebtedness or liability to Borrower, if any, however evidenced, including a security interest in all of Borrower's bank deposits, instruments, negotiable documents and chattel paper which at any time are in the possession or control of Lender, as further security for repayment of the Obligations; and the Borrower hereby grants to Lender all rights and privileges afforded a secured party under the Michigan Uniform Commercial Code.

All payments other than scheduled payments paid hereunder shall, at the option of Lender, first be applied against any and all fees, costs and expenses (including expenses of collection), then against accrued interest, and the balance against principal in inverse order of maturity. Acceptance by Lender of any payment in an amount less than the amount then due shall be deemed an acceptance on account only, and the failure to pay the entire amount then due shall be and continue to be an Event of Default.

Borrower hereby waives presentment for payment, demand, notice of non-payment, notice of protest and protest of this Note, diligence in collection or bringing suit.

Borrower's obligations hereunder are cross-collateralized and cross-defaulted with all other indebtedness owing to Lender by Borrower.

4

No delay or omission of the Lender to exercise any right under this Note impairs that right nor can it be construed to waive any Event of Default or acquiesce in any Event of Default, and the making of an advance notwithstanding the existence of an Event of Default or the inability of the Borrower to satisfy the conditions precedent to such advance does not constitute a waiver or acquiescence. Any single or partial exercise of any right does not preclude any other or further exercise of it or the exercise of any other right, and no waiver, amendment or other variation of the terms of this Note is valid unless in writing signed by Borrower and Lender, and then only to the extent that such writing specifies. All remedies contained in this Note or afforded by law are cumulative and all are available to the Lender until this Note has been paid in full.

The Borrower must reimburse the Lender for any costs, internal charges and out-of-pocket expenses (including attorneys' fees and time charges of attorneys for the Lender, who may be employees of the Lender) paid or incurred by the Lender in connection with the preparation, review, execution, delivery, amendment, modification, administration, collection and enforcement of this Note. The Borrower further indemnifies the Lender, its directors, officers and employees against all losses, claims, damages, penalties, judgments, liabilities and expenses (including without limitation all expenses of litigation or preparation for litigation whether or not the Lender is a party) which any of them pay or incur arising out of or relating to this Note or the direct or indirect application or proposed application of the proceeds of this Note.

This Note, if executed by more than one Person, shall be the joint and several obligation of all of such Persons, and shall be binding upon each Borrower and its heirs, personal representatives, successors and assigns, whether expressed or not. The liability of each Borrower shall be absolute and unconditional, without regard to the liability of any other party hereto.

The terms of this Note bind and benefit the Borrower and the Lender and their respective successors and assigns, except that the Borrower shall not assign its rights or obligations under this Note. The Lender may at any time sell to one or more Persons participating interests in this Note. The Lender may at any time assign to one or more Persons all or any part of its rights and obligations under this Note, and the Borrower releases the Lender for the amount so assigned.

This Note is to be construed in accordance with the internal laws (but not the law of conflicts) of the State of Michigan. The Borrower irrevocably submits to the non-exclusive jurisdiction of any United States federal court sitting in the Eastern District of Michigan or any state court in Oakland County in the State of Michigan in any action or proceeding arising out of or relating to this Note, and the Borrower irrevocably agrees that all such claims may be heard and determined in any such court and irrevocably waives any present and future objection it may have as to the venue of any action or proceeding brought in that court, or that that court is an inconvenient forum. Any suit brought by Borrower related to this Note or the Loan Documents may only be brought in the United States federal court sitting in the Eastern District of Michigan or in a state court in Oakland County in the State of Michigan. Nothing herein shall limit the right of the Lender to bring any action or proceeding against the Borrower in the courts of any other jurisdiction if necessary or convenient to effect the relief sought.

5

Lender hereby notifies Borrower that pursuant to the requirements of the USA PATRIOT Act (Title III of Pub. L. 107-56, signed into law October 26, 2001) (the "Act"), and the Lender's policies and practices, Lender is required to obtain, verify and record certain information and documentation that identifies the Borrower, which information includes the name and address of the Borrower and such other information that will allow Lender to identify the Borrower in accordance with the Act.

## DEFINITIONS

As used in this Note, the following terms shall have the given meaning:

"Consulting Obligations" shall mean the obligations of Borrower arising in respect of the Consulting Engagement.

"Letter Agreement" shall mean the Letter Agreement, dated as of the date hereof between Borrower and Lender (as it may be amended, restated, supplemented or otherwise modified from time to time).

"Loan Documents" shall mean, collectively, this Note, any other promissory note evidencing other loans made by Lender to Borrower, the Letter Agreement, any guaranties, mortgage, security agreement, any swap agreements, other interest rate protection agreements, derivative agreements, any certificates (including, for the avoidance of doubt, the Perfection Certificate, dated as of the date hereof and executed by Company and each of the Guarantors), and any other document, instrument or agreement evidencing, securing or relating to this Note, together with any and all modifications and amendments to any of the foregoing.

"Obligations" shall mean, collectively, (i) Borrower's obligations for the payment of all sums advanced or to be advanced hereunder, together with interest on the outstanding principal balance of such sums and with any and all other sums payable by Borrower to the Lender pursuant to this Note or any other Loan Documents, along with Borrower's obligation for the payment of any letters of credit issued by Lender and payment and performance of all of the warranties, representations, covenants and agreements to be paid, fulfilled, observed and performed by Borrower under each Loan Document to which Borrower is a party and (ii) the Consulting Obligations.

"Person" shall mean any corporation, natural person, firm, limited liability company, joint venture, partnership, trust, unincorporated organization, enterprise, government or any department or agency of any government.

**LENDER AND BORROWER KNOWINGLY AND VOLUNTARILY WAIVE ANY RIGHT EITHER OF THEM TO HAVE TO A TRIAL BY JURY IN ANY PROCEEDING (WHETHER SOUNDING IN CONTRACT OR TORT) WHICH IS IN ANY WAY CONNECTED WITH THIS NOTE, ANY RELATED AGREEMENT, OR THE RELATIONSHIP ESTABLISHED UNDER IT.**

[remainder of page intentionally left blank]

6

IN WITNESS WHEREOF, the undersigned have executed this Note as of the date first written above.

BORROWER:

EXCELL AUTO GROUP, INC.

By:_____

Name: Scott Zankl
Title: Vice President

[Signature Page to Promissory Note (Term Loan) (18055842)]

## Schedule A

| Payment Date | Interest | Principal |
|---|---|---|
| November 30, 2021 | $99,000.00 | $41,555.66 |
| December 31, 2021 | $109,238.15 | $31,317.52 |
| January 31, 2022 | $108,663.99 | $31,891.67 |
| February 28, 2022 | $108,079.31 | $32,476.35 |
| March 31, 2022 | $107,483.91 | $33,071.75 |
| April 30, 2022 | $106,877.60 | $33,678.07 |
| May 31, 2022 | $106,260.16 | $34,295.50 |
| June 30, 2022 | $105,631.41 | $34,924.25 |
| July 31, 2022 | $104,991.14 | $35,564.53 |
| August 31, 2022 | $104,339.12 | $36,216.54 |
| September 30, 2022 | $103,675.15 | $36,880.51 |
| October 31, 2022 | $102,999.01 | $37,556.66 |
| November 30, 2022 | $102,310.47 | $38,245.20 |
| December 31, 2022 | $101,609.31 | $38,946.36 |
| January 31, 2023 | $100,895.29 | $39,660.37 |
| February 28, 2023 | $100,168.18 | $40,387.48 |
| March 31, 2023 | $99,427.75 | $41,127.92 |
| April 30, 2023 | $98,673.73 | $41,881.93 |
| May 31, 2023 | $97,905.90 | $42,649.77 |
| June 30, 2023 | $97,123.99 | $43,431.68 |
| July 31, 2023 | $96,327.74 | $44,227.93 |
| August 31, 2023 | $95,516.89 | $45,038.77 |
| September 30, 2023 | $94,691.18 | $45,864.48 |
| October 31, 2023 | $93,850.33 | $46,705.33 |
| November 30, 2023 | $92,994.07 | $72,561.59 |
| December 31, 2023 | $91,663.77 | $73,891.89 |
| January 31, 2024 | $90,309.09 | $75,246.58 |
| February 28, 2024 | $88,929.57 | $76,626.10 |
| March 31, 2024 | $87,524.76 | $78,030.91 |
| April 30, 2024 | $86,094.19 | $79,461.47 |
| May 31, 2024 | $84,637.40 | $80,918.27 |
| June 30, 2024 | $83,153.89 | $82,401.77 |
| July 31, 2024 | $81,643.20 | $83,912.47 |
| August 31, 2024 | $80,104.80 | $85,450.86 |
| September 30, 2024 | $78,538.20 | $87,017.46 |
| October 31, 2024 | $76,942.88 | $88,612.78 |

Bodman_18055842_4

# Exhibit B

(Continuing Guaranty)

Bodman_18055850_2

## Continuing Guaranty

Dated as of November 3, 2021

**Guaranty:** To induce Franklin Capital Group, LLC (including its successors and assigns, the "Lender") directly or through any of its branches, offices, subsidiaries, or affiliates to provide or extend certain financial accommodations and Liabilities to Excell Auto Group, Inc. a Florida corporation (the "Borrower"), and because each of the undersigned (each a "Guarantor") has determined that executing this Guaranty is in its interest and to its financial benefit, the Guarantor absolutely and unconditionally guaranties to the Lender the full and prompt payment of all Liabilities when due, whether at stated maturity, on demand, by acceleration or otherwise. The Guarantor's obligations under this Continuing Guaranty (this "Guaranty") shall be payable in lawful money of the United States of America.

**Liabilities:** The term "Liabilities" as used in this Guaranty means (i) all obligations, indebtedness and liabilities of the Borrower to the Lender, and any of its subsidiaries, affiliates or successors, now existing or later arising, including, without limitation, all loans, advances, interest, costs, expenses, fees, overdraft indebtedness, credit card indebtedness, letter of credit indebtedness or lease obligations, (ii) all costs and expenses, including attorneys' fees, that the Lender may pay or incur in collecting from the Borrower, the Guarantor or any other guarantor of all or any of the Liabilities and for liquidating any collateral, (iii) all monetary obligations incurred or accrued during the pendency of any bankruptcy, insolvency, receivership or other similar proceedings, regardless of whether allowed or allowable in such proceeding, including reasonable attorneys' fees, (iv) all "Liabilities" as defined in each of the other Loan Documents and (v) all renewals, extensions, modifications, consolidations or substitutions of any of the foregoing, whether the Borrower may be liable jointly with others or individually liable as a debtor, maker, co-maker, drawer, endorser, guarantor, surety or otherwise, and whether voluntarily or involuntarily incurred, known or unknown, due or not due, absolute or contingent, direct or indirect, liquidated or unliquidated.  Notwithstanding anything to the contrary in this Guaranty, the term "Liabilities" shall not include any Excluded Swap Obligation (as hereinafter defined).  "Excluded Swap Obligation" means any obligation of Borrower to Lender with respect to a "swap," as defined in Section 1a(47) of the Commodity Exchange Act ("CEA"), if and to the extent that Guarantor's guaranteeing of such swap obligation, or Guarantor's granting of a security interest or lien to secure such swap obligation, is or becomes illegal under the CEA, or any rule, regulation or order of the Commodity Futures Trading Commission (or the application or official interpretation of any thereof), by virtue of Guarantor's failure for any reason to constitute an "eligible contract participant," as defined in Section 1a(18) of the CEA and the regulations thereunder, at the time such guarantee or grant of such security interest becomes effective with respect to such swap obligation. If any such swap obligation arises under a master agreement governing more than one swap, the foregoing exclusion shall apply only to those swap obligations that are attributable to swaps in respect of which Guarantor's guaranteeing of, or Guarantor's granting of a security interest or lien to secure, such swaps is or becomes illegal.

"Consulting Engagement Documents", as used in this Guaranty, means, collectively, (i) the Engagement Letter, dated as of the date hereof, between Borrower and Franklin Capital Management, LLC ("Consultant") and (ii) any guaranty, mortgage, security agreement, and any other document, instrument or agreement evidencing, securing or relating to any of the foregoing, together with any and all modifications and amendments to any of the foregoing.

"Loan Documents", as used in this Guaranty, means, collectively, (i) this Guaranty, (ii) the "Loan Documents" (as defined in the Promissory Note (Term Loan) dated as of the date hereof, made by Borrower in favor of Lender (the "Note")), (iii) the "Loan Documents" (as defined in the Letter Agreement, dated as of the date hereof, between Borrower and Lender) and (iv) any guaranty, mortgage, security agreement, swap agreement, other interest rate protection agreement, derivative agreement, and any other document, instrument or agreement evidencing, securing or relating to any of the foregoing, together with any and all modifications and amendments to any of the foregoing.

**Limitation:**  Guarantor's obligation under this Guaranty is UNLIMITED unless expressly limited in the Additional Terms and Conditions of this Guaranty.  Unless expressly limited in the Additional Terms and

Conditions of this Guaranty, there is no limit on the liability and obligations of Guarantor under this Guaranty, and this obligation (whether unlimited or limited to the extent specified in the Additional Terms and Conditions) shall include, IN ADDITION TO any limited amount of principal guaranteed, all interest on all Liabilities, and all costs and expenses of any kind incurred by the Lender in collection efforts against the Borrower and/or the Guarantor or otherwise incurred by the Lender in any way relating to the Liabilities or this Guaranty, including without limit attorneys' fees. With respect to the limitation, if any, stated in the Additional Terms and Conditions below on the amount of principal guaranteed under this Guaranty, Guarantor agrees that (a) this limitation shall not be a limitation on the amount of Borrower's Liabilities to the Lender; (b) any payments by the Guarantor shall not reduce the maximum liability of the Guarantor under this Guaranty unless written notice to that effect is actually received by the Lender at, or prior to, the time of the payment; and (c) the liability of the Guarantor to the Lender shall at all times be deemed to be the aggregate liability of the Guarantor under this Guaranty and any other guaranties previously or subsequently given to the Lender by the Guarantor and not expressly revoked, modified or invalidated in writing.

**Continued Reliance.**  The Guarantor may terminate its obligation under this Guaranty as to future Liabilities (except as provided below) by (and only by) delivering written notice of termination to the Lender and receiving from Lender written acknowledgment of delivery.  Such notice shall be effective upon the opening of business on the fifth (5th) day following written acknowledgment of delivery. If terminated, the Guarantor will continue to be liable to the Lender for any Liabilities created, assumed or committed to at the time the termination becomes effective, and all subsequent renewals, extensions, modifications and amendments of those Liabilities, until all of the same have been fully paid.  Termination by any other Guarantor or guarantor shall not release the Guarantor from its obligations under this Guaranty. The Lender has no duty to give notice of termination by any guarantor or Guarantor to any remaining Guarantors.  The Guarantor shall indemnify the Lender against all claims, damages, costs and expenses, including, without limit, attorney fees, incurred by the Lender in connection with any suit, claim or action against the Lender arising out of any modification or termination of a Borrower loan or any refusal by the Lender to extend additional credit in connection with the termination of this Guaranty.

**Security.**  As security for this Guaranty, the Guarantor pledges, assigns and grants to the Lender a continuing security interest and lien upon and right of setoff as to and in the following described property and all of its additions, substitutions, increments, proceeds and products, whether now owned or later acquired ("Collateral"):

1. All securities and other property of the Guarantor in the custody, possession or control of the Lender (other than property held by the Lender solely in a fiduciary capacity);

2. All property or securities declared or acknowledged by the Guarantor to constitute security for any past, present or future liability, direct or indirect, of the Guarantor to the Lender;

3. All claims of any nature, whether now existing or later acquired, that Guarantor has against Borrower (excepting claims under a deed of trust or mortgage covering California real property), including the right of the Lender to collect and realize upon such claims; and

4. All balances of deposit accounts of the Guarantor with the Lender ("deposit account" having the meaning given to it §9-102(a)(29) of the UCC (as defined below)).

The Guarantor agrees that no security now or later held by the Lender for the payment of any Liabilities, whether from the Borrower, any guarantor, or otherwise, and whether in the nature of a security interest, pledge, lien, assignment, setoff, suretyship, guaranty, indemnity, insurance or otherwise, shall affect in any manner the unconditional obligation of the Guarantor under this Guaranty, and the Lender, in its sole discretion, without notice to the Guarantor, may release, exchange, enforce and otherwise deal with any security without affecting in any manner the unconditional obligation of the Guarantor under this Guaranty.

2

The Lender shall have the right at any time to apply its own debt or liability to the Guarantor in whole or partial payment of this Guaranty or other present or future liabilities of the Guarantor, direct or indirect, without any requirement for mutual maturity.

If the Guarantor fails to pay any amount owing under this Guaranty, the Lender shall have all of the rights and remedies provided by law or under any other agreement to liquidate or foreclose on and sell the Collateral, including but not limited to the rights and remedies of a secured party under the Uniform Commercial Code of the State of Michigan, as in effect from time to time (the "UCC"). These rights and remedies shall be cumulative and not exclusive and are further set forth in the Loan Documents.

For purposes of the following paragraphs and the definition of "Liabilities", "any collateral" shall include the Collateral and any other collateral securing the Liabilities.

**Action Regarding Borrower.** If any monies become available that the Lender can apply to the Liabilities, the Lender may apply them in any manner it chooses, including but not limited to applying them against Liabilities which are not covered by this Guaranty. The Lender can take any action against the Borrower, any collateral, or any other person liable for any of the Liabilities. The Lender can release the Borrower or anyone else from its liability for the Liabilities, either in whole or in part, or release any collateral, and need not perfect a security interest in any collateral. The Lender does not have to exercise any rights that it has against the Borrower or anyone else, or make any effort to realize on any collateral or right of set-off. If the Borrower requests more credit or any other benefit, the Lender may grant it and the Lender may grant renewals, extensions, modifications and amendments of any of the Liabilities and otherwise deal with the Borrower or any other person as the Lender sees fit and as if this Guaranty were not in effect. The Guarantor's obligations under this Guaranty shall not be released or affected by (a) any act or omission of the Lender, (b) the voluntary or involuntary liquidation, sale or other disposition of all or substantially all of the assets of the Borrower, or any receivership, insolvency, bankruptcy, reorganization, or other similar proceedings affecting the Borrower or any of its assets, or (c) any change in the composition or structure of the Borrower or the Guarantor, including a merger or consolidation with any other person or entity.

**Nature of Guaranty.** This Guaranty is a guaranty of payment and not of collection. The Lender can insist that the Guarantor pay immediately, and the Lender is not required to attempt to collect first from the Borrower, any collateral, or any other person liable for any of the Liabilities. The obligation of the Guarantor shall be unconditional and absolute, regardless of the invalidity, irregularity, or unenforceability of any provision of any agreement between the Borrower and the Lender by reason of bankruptcy, insolvency or other law or order of any kind or for any reason, or the existence of any defense, setoff or counterclaim which the Borrower may assert. This Guaranty shall remain effective whether the Liabilities are from time to time reduced and later increased or entirely extinguished and later reincurred. This Guaranty shall remain effective with respect to successive transactions which shall either continue the Liabilities, increase or decrease the Liabilities, or from time to time create new Liabilities after all or any prior Liabilities have been satisfied, until this Guaranty is terminated in the manner and to the extent provided below.

**Other Guarantors.** If there is more than one Guarantor, their obligations under this Guaranty shall be joint and several. In addition, each Guarantor shall be jointly and severally liable with any other guarantor of any of the Liabilities.  Lender, in its sole discretion, may release any one or more of the Guarantors or other guarantors for any consideration which it deems adequate, and may fail or elect not to prove a claim against the estate of any bankrupt, insolvent, incompetent or deceased Guarantor or other guarantor; and after that, without notice to any Guarantor, the Lender may extend or renew any or all Liabilities and may permit the Borrower to incur additional Liabilities, in each case, without affecting in any manner the unconditional obligation of the remaining Guarantors. This Guaranty is not conditioned on anyone else executing this or any other guaranty.

**Rights of Subrogation.** The Guarantor subordinates any claim of any nature that it now or later has against the Borrower to and in favor of all Liabilities and agrees not to accept payment or satisfaction of any claim that the Guarantor now or later may have against the Borrower without the prior written consent of the Lender.

3

Should any payment, distribution, security, or proceeds, be received by the Guarantor upon or with respect to any claim that the Guarantor now or may later have against the Borrower, the Guarantor shall immediately deliver the same to the Lender in the form received (except for endorsement or assignment by the Guarantor where required by the Lender) for application on the Liabilities, whether matured or unmatured, and until delivered the same shall be held in trust by the Guarantor as the property of the Lender. The Guarantor further agrees that if any payments to the Lender on any of the Liabilities are in whole or in part invalidated, declared to be fraudulent or preferential, set aside or required to be repaid to a trustee, receiver or any other party under any bankruptcy act or code, state or federal law, common law or equitable doctrine, this Guaranty and the Lender's interest in any collateral remain in full force and effect (or are reinstated as the case may be) until payment in full of those amounts. Any payment is due on demand.

**Reinstatement.** Notwithstanding any prior revocation, termination, surrender or discharge of this Guaranty (or of any lien, pledge or security interest securing this Guaranty) in whole or in part, the effectiveness of this Guaranty, and of all liens, pledges and security interests securing this Guaranty, shall automatically continue or be reinstated, as the case may be, in the event that any payment received or credit given by the Lender in respect of the Liabilities is returned, disgorged or rescinded as a preference, impermissible setoff, fraudulent conveyance, diversion of trust funds or otherwise under any applicable state or federal law, including, without limitation, laws pertaining to bankruptcy or insolvency, in which case this Guaranty, and all liens, pledges and security interests securing this Guaranty, shall be enforceable against the Guarantor as if the returned, disgorged or rescinded payment or credit had not been received or given by the Lender, and whether or not the Lender relied upon this payment or credit or changed its position as a consequence of it.  In the event of continuation or reinstatement of this Guaranty and the liens, pledges and security interests securing it, the Guarantor agrees upon demand by the Lender, to execute and deliver to the Lender those documents which the Lender determines are appropriate to further evidence (in the public records or otherwise) this continuation or reinstatement, although the failure of the Guarantor to do so shall not affect in any way the reinstatement or continuation.  If the Guarantor does not execute and deliver to the Lender upon demand such documents, the Lender and each Lender officer is irrevocably appointed (which appointment is coupled with an interest) the true and lawful attorney of the Guarantor (with full power of substitution) to execute and deliver such documents in the name and on behalf of the Guarantor.

**Waivers.** The Guarantor waives, to the extent not expressly prohibited by applicable law, any right it may have to receive notice of the following matters before the Lender enforces any of its rights: (a) the Lender's acceptance of this Guaranty, (b) any credit or other Liabilities that the Lender extends to the Borrower, (c) any presentment, demand, protest, notice of protest, dishonor, notice of dishonor, notice of default, notice of intent to accelerate or demand payment or notice of acceleration of any Indebtedness, any and all other notices to which the Guarantor might otherwise be entitled, and diligence in collecting any Liabilities and (d) any action that the Lender takes regarding the Borrower, anyone else, any collateral, or any of the Liabilities, which it might be entitled to by law or under any other agreement, including, without limitations, the terms, time and place of any public or private sale of personal property security held from the Borrower or any other person, and the provisions of  Section 9-611 or 9-621 of the Michigan or any other applicable Uniform Commercial Code, as the same may be amended, revised or replaced from time to time. The Lender may waive or delay enforcing any of its rights without losing them. Any waiver shall affect only the specific terms and time period stated in the waiver. No modification, waiver or amendment of this Guaranty shall be effective unless it is in writing and signed by the party against whom it is being enforced.

The Guarantor unconditionally and irrevocably waives each and every defense and setoff of any nature which, under principles of guaranty or otherwise, would operate to impair or diminish in any way the obligation of the Guarantor under this Guaranty, and acknowledges that each such waiver is by this reference incorporated into each security agreement, collateral assignment, pledge and/or other document from the Guarantor now or later securing this Guaranty and/or the Liabilities, and acknowledges that as of the date of this Guaranty no such defense or setoff exists. The Guarantor acknowledges that the effectiveness of this Guaranty is subject to no conditions of any kind.

4

Bodman_18055838_2

The Guarantor agrees that the Lender may, once or any number of times, modify the terms of any Liabilities, compromise, extend, increase, accelerate, renew or forbear to enforce payment of any or all Liabilities, or permit the Borrower to incur additional Liabilities, all without notice to the Guarantor and without affecting in any manner the unconditional obligation of the Guarantor under this Guaranty.

**Information.**   The Guarantor delivers this Guaranty based solely on its independent investigation of (or decision not to investigate) the financial condition of Borrower and is not relying on any information furnished by the Lender.  The Guarantor assumes full responsibility for keeping itself informed of the Borrower's financial condition and assets, and all other circumstances bearing upon the risk of nonpayment of any of the Liabilities and the nature, scope and extent of the Guarantor's risks under this Guaranty, and the Guarantor accepts the full range of risk encompassed by this Guaranty. The Guarantor represents and warrants that it (i) has not relied on any representation of the Lender as to Borrower's financial condition and assets, creditworthiness, and all other circumstances bearing upon the risk of nonpayment of any of the Liabilities and (ii) has established adequate means of obtaining from the Borrower on a continuing basis financial and other information pertaining to the Borrower's financial condition. The Lender has no duty to advise the Guarantor of information known to it regarding Borrower's (or any other Guarantor's or guarantor's) operations, condition, assets, liabilities, circumstances or risks, or the occurrence of any default with respect the Liabilities, or otherwise, notwithstanding any effect these facts may have upon the Guarantor's risk under this Guaranty or the Guarantor's rights against the Borrower.

**Representations by Guarantor.**  (a) As of the date of this Guaranty, each Guarantor represents that such Guarantor has not made any qualified dispositions of any of his/her/its property to (i) a trust established under the Qualified Dispositions in Trust Act (codified at MCL 700.1041 et. seq.) ("Act"), or (ii) any other asset protection trust.

Each Guarantor agrees to not make or attempt any qualified dispositions or other distribution or transfers of any of its property into a trust established under the Act, or any other asset protection trust, without obtaining the prior written consent of the Lender. Lender's consent to any such requested distribution shall be at the sole and absolute discretion of the Lender.  Any consent provided by Lender described in this paragraph shall only be applicable for property identified and disclosed in writing by a Guarantor to Lender. Lender's consent shall not be applicable to: (x) any other property of any Guarantor which is not disclosed to Lender in writing as part of the qualified disposition under the Act; or (y) any other qualified disposition of property under the Act previously attempted or attempted in the future by any Guarantor.

Each Guarantor acknowledges and agrees that if Lender does not provide its written consent to a Guarantor for a qualified or other disposition under the Act, then such disposition by the Guarantor shall not be valid under the Act with respect to Lender.

Each Guarantor agrees that such Guarantor has an obligation to disclose immediately in writing to Lender any qualified dispositions or attempted qualified dispositions to a trust under the Act and any other disposition to an asset protection trust.

Each Guarantor agrees that this Guaranty constitutes a written agreement described in the Act between a transferor and a creditor providing for and establishing the obligations of a transferor as stated in Subsection (11) of Section 5 of the Act.

Each Guarantor's failure to comply with any provisions of this section shall constitute a default, Default or Event of Default, as applicable, under the Loan Documents. The Lender shall have those rights and remedies upon the occurrence of a default, Default or Event of Default, as applicable, as set forth in each applicable Loan Document, including without limitation the right to accelerate the payment of any amounts outstanding under the Note.

The terms used in this Section (a) shall have the meaning ascribed to them in the Act, unless otherwise defined in this Guaranty.

5

(b) The Guarantor represents: (i) that the execution and delivery of this Guaranty and the performance of the obligations it imposes do not violate any law, conflict with any agreement by which it is bound, or require the consent or approval of any governmental authority or any third party; (ii) that this Guaranty is a valid and binding agreement, enforceable according to its terms; and (iii) that all balance sheets, profit and loss statements, and other financial statements furnished by it to the Lender are accurate and fairly reflect the financial condition of the organizations and persons to which they apply on their effective dates, including contingent liabilities of every type, which financial condition has not changed materially and adversely since those dates. Each Guarantor, other than a natural person, further represents: (i) that it is duly organized, existing and in good standing pursuant to the laws under which it is organized; and (ii) that the execution and delivery of this Guaranty and the performance of the obligations it imposes (A) are within its powers and have been duly authorized by all necessary action of its governing body and (B) do not contravene the terms of its articles of incorporation or organization, its by-laws, or any partnership, operating or other agreement governing its affairs.

**Lending Installations.**  The Liabilities may be booked at any office, branch, subsidiary or affiliate of the Lender, as selected by the Lender. All terms of this Guaranty apply to and may be enforced by or on behalf of any such office, branch, subsidiary or affiliate of the Lender. Without limiting the rights of the Lender under applicable law, the Guarantor authorizes the Lender to apply any sums outstanding to the credit of the Guarantor with any such office, branch, subsidiary or affiliate of the Lender toward the payment of the Liabilities by the Guarantor under this Guaranty, whether or not all or any part of the Liabilities is then due.

**Notices.**  Notice from one party to another relating to this Guaranty shall be deemed effective if made in writing (including telecommunications) and delivered to the recipient's address or email listed below its signature to this Guaranty by any of the following means: (a) hand delivery, (b) registered or certified mail, postage prepaid, with return receipt requested, (c) first class or express mail, postage prepaid, (d) Federal Express or like overnight courier service or (e) facsimile, telex or other wire transmission with request for assurance of receipt in a manner typical with respect to communications of that type. Notice made in accordance with this section shall be deemed delivered on receipt if delivered by hand or wire transmission, on the third business day after mailing if mailed by first class, registered or certified mail, or on the next business day after mailing or deposit with an overnight courier service if delivered by express mail or overnight courier. Notwithstanding the foregoing, notice of termination of this Guaranty shall be deemed received only upon the receipt of actual written notice by the Lender in accordance with the paragraph above labeled "Continued Reliance." Notice shall be delivered as follows:

> If to the Guarantor: at the address below its signature hereto

> If to Lender:

> Franklin Capital Group, LLC
> 32300 Northwestern Hwy, Suite #200
> Farmington Hills, Michigan 48334
> Attn: Loan Servicing
> Phone: (248) 538-4024
> Email: service@franklincapital.net

**Law and Judicial Forum that Apply.**  This agreement is governed by Michigan law, without regard to conflict of law principles. The Guarantor irrevocably submits to the non-exclusive jurisdiction of any United States federal court sitting in the Eastern District of Michigan or any state court in Oakland County in the State of Michigan in any action or proceeding arising out of or relating to this Guaranty, and the Guarantor irrevocably agrees that all such claims may be heard and determined in any such court and irrevocably waives any present and future objection it may have as to the venue of any action or proceeding brought in that court, or that that court is an inconvenient forum. Any suit brought by the Guarantor related to this Guaranty may only be brought in the United States federal court sitting in the Eastern District of Michigan or in a state court in Oakland County in the State of Michigan. Nothing herein shall limit the right of the Lender to bring any action or

6

proceeding against the Guarantor in the courts of any other jurisdiction if necessary or convenient to effect the relief sought.

**Miscellaneous.**  The Guarantor's liability under this Guaranty is independent of its liability under any other guaranty previously or subsequently executed by the Guarantor or any one of them, singularly or together with others, as to all or any part of the Liabilities, and may be enforced for the full amount of this Guaranty regardless of the Guarantor's liability under any other guaranty. This Guaranty is binding on the Guarantor's heirs, successors and assigns (including, without limitation, any debtor in possession or trustee in bankruptcy for the Guarantor), and will operate to the benefit of the Lender and its successors and assigns. The use of headings are included for the convenience of reference only and shall not limit the provisions of this Guaranty for any purpose. This Guaranty, together with each other Loan Document to which the Guarantor is a party, constitutes the entire agreement of the Guarantor and the Lender with respect to the subject matter of this Guaranty. The Guarantor acknowledges that the Lender has the right to sell, assign, transfer, negotiate, or grant participations in all or any part of the Liabilities and any related obligations, including, without limit, this Guaranty, without notice to the Guarantor.  In the event any one or more provisions of this Guaranty is deemed invalid, illegal or unenforceable in any respect, the remaining provisions of this Guaranty shall continue in full force and effect as if such invalid, illegal or unenforceable provision(s) was not a part of this Guaranty. The Guarantor has knowingly and voluntarily entered into this Guaranty in good faith, and acknowledges that the terms of this Guaranty are reasonable.

**Conflict.**  The Guarantor acknowledges that Lender, its investors, principals and/or affiliates may be (a) providing debt financing, equity capital or other services (including financial advisory or consulting services) to other companies in respect of which the Guarantor may have conflicting interests regarding the transactions described herein or otherwise or (b) engaged in a broad range of transactions (including providing merchant cash advances or merchant consumer financing) that may involve interests that differ from the interests of the Guarantor.  Without limiting the foregoing, certain providers of merchant cash advances (including providers who may have provided merchant cash advances to the Borrower), or their principals, may be referral sources to the Lender and may also be investors in Lender or an affiliate of Lender. The Guarantor further acknowledges that neither Lender, its investors, principals and/or affiliates have any obligation to disclose such interests and transactions to the Guarantor by virtue of any fiduciary, advisory or agency relationship, and the Guarantor waives, to the fullest extent permitted by law, any actual or alleged conflict of interest, and any claims they may have against, Lender, its investors, principals and/or affiliates, for breach of fiduciary duty or alleged breach of fiduciary duty, and agree that the Lender, its investors, principals and or affiliates shall have no liability (whether direct or indirect) to the Guarantor in respect of such a conflict of interest or fiduciary duty claim, or to any person alleging a conflict of interest or asserting a fiduciary duty claim on behalf of or in right of the Guarantor, including any creditors thereof.  The Guarantor further acknowledges that Lender is not a fiduciary of the Guarantor.

**Release**.  The Guarantor hereby releases the Lender, its affiliates and subsidiaries and all of their respective officers, directors, employees, shareholders, agents, attorneys and representatives as well as their respective successors and assigns from any and all claims, obligations, rights, causes of action, and liabilities, of whatever kind or nature, whether known or unknown, whether foreseen or unforeseen, arising on or before the date hereof (the "Released Matters").  Without limiting the generality of the foregoing, the Guarantor hereby waives the provisions of any statute or doctrine to the effect that a general release does not extend to claims which a releasing party does not know or suspect to exist in its favor at the time of executing the release, which if known by such releasing party would have materially affected the releasing party's settlement with the party being released.  The Guarantor acknowledges that the agreements in this paragraph are intended to be in full satisfaction of all or any alleged injuries or damages arising in connection with the Released Matters.  If the Guarantor asserts or commences any claim, counter-claim, demand, obligation, liability or cause of action in derogation of the foregoing release or challenges the enforceability of the foregoing release (in each case, a "Violation"), then the Guarantor agrees to pay in addition to such other damages as any party being released may sustain as a result of such Violation, all reasonable attorneys' fees and expenses (including in-house and outside counsel) incurred by such party being released as a result of such Violation.

7

**Information Sharing.**   The Lender may provide, without any limitation whatsoever, any information or knowledge the Lender may have about the Guarantor or any matter relating to this Guaranty and any related documents to any of its subsidiaries or affiliates or their successors, to the Borrower, or to any one or more purchasers or potential purchasers of the Liabilities or this Guaranty or any related documents, and the Guarantor waives any right to privacy the Guarantor may have with respect to such matters. The Guarantor agrees that the Lender may without notice and at any time sell, negotiate, assign or transfer one or more interests or participations in all or any part of its rights or obligations under the documents evidencing the Liabilities or in this Guaranty to one or more purchasers whether or not related to the Lender. This Guaranty may only be modified or amended in a written instrument executed by the Lender and the Guarantor.

**Additional Terms and Conditions**.  None.

**Waiver of Jury Trial**.  Lender and the Guarantor acknowledge that the right to a trial by jury is a constitutional right that may be waived. After consulting or being given the opportunity to consult with legal counsel, the Lender and the Guarantor knowingly and voluntarily waive any right either of them have to a trial by jury in any proceeding (whether sounding in contract or tort) which is in any way connected with this Guaranty, any related agreement or the relationship established under them, or the Liabilities.

[remainder of page intentionally left blank]

8

Bodman_18055838_2

IN WITNESS WHEREOF, the undersigned have caused this Guaranty to be executed as of the date first written above.

Guarantors:

KARMA OF PALM BEACH, INC.

By: _____
    Name: Scott Zankl
    Title: President

KARMA OF BROWARD, INC.

By: _____
    Name: Scott Zankl
    Title: Vice President

_____
Scott Zankl, individually

_____
Kristen Zankl, individually

Address:
1001 Clint Moore Road
Boca Raton, FL 33487
Phone: 516-756-1933
Email: scott@excellauto.com

# EXHIBIT C

Bodman_18055850_2

**STATE OF MICHIGAN**
**IN THE CIRCUIT COURT FOR OAKLAND COUNTY**

FRANKLIN CAPITAL GROUP, LLC a
Michigan limited liability company,

      Plaintiff,

v.

EXCELL AUTO GROUP, INC., a Florida
corporation, KARMA OF PALM BEACH, INC.,
a Florida corporation, KARMA OF BROWARD,
INC., a Florida corporation, SCOTT ZANKL,
and individual, and KRISTEN ZANKL, an
individual,

      Defendants.

Case No.    -          -CB

Hon.

**CONFESSED JUDGMENT**

_____

BODMAN PLC
By:    J. Adam Behrendt (P58607)
        Noel J. Ravenscroft (P77729)
201 West Big Beaver Road, Suite 500
Troy, Michigan 48084
(248) 743-6000
Attorneys for Franklin Capital Group, LLC
jbehrendt@bodmanlaw.com
nravenscroft@bodmanlaw.com

_____

Bodman_18055850_2

## <u>CONFESSED JUDGMENT</u>

At a session of said Court, held in the
Oakland County Circuit Court, State of Michigan

on _____, 20__

PRESENT: Hon. _____
Oakland Circuit Court Judge

Counsel for plaintiff appeared before the Court and demonstrated that Excell Auto Group, Inc., Karma of Palm Beach, Inc., Karma of Broward, Inc., Scott Zankl, and Kristen Zankl ("defendants") consented and confessed to the entry of this Confessed Judgment ("Judgment"). Counsel for plaintiff further demonstrated that defendants waived any requirement that the Court make any specific findings to support entry of this Judgment and their rights to appeal. Additionally, the Court is otherwise satisfied that entry of this Judgment is justified.

Having been otherwise fully advised on the premises;

IT IS HEREBY ORDERED AND ADJUDGED that Franklin Capital Group, LLC has a judgment against defendants in the amount of $_____, representing $_____ in unpaid principal and $_____ in accrued interest under the Term Note dated November 3, 2021, and $_____ in attorney fees and expenses. This Judgment shall accrue interest at the contractual rate in place at the time of entry.

IT IS FURTHER ORDERED AND ADJUDGED that this Judgment shall be effective and enforceable immediately upon entry. Defendants shall have no right to appeal this Judgment pursuant to their waiver of such rights.

This is a final order that resolves the last pending claim and closes the case.

IT IS SO ORDERED.

_____
Hon.

Dated: _____

## CONSENT

Defendants hereby approve and agree to the entry of this Judgment, and further agree that it shall have immediate effect.

**BORROWER:**

EXCELL AUTO GROUP, INC.

By:_____
Name: Scott Zankl
Title: Vice President

**GAURANTORS:**

KARMA OF PALM BEACH, INC.

By:_____
Name: Scott Zankl
Title: President

KARMA OF BROWARD, INC.

By:_____
Name: Scott Zankl
Title: Vice President

_____
Scott Zankl, individually

_____
Kristen Zankl, individually

Bodman_18055850_2

# EXHIBIT G

ASSIGNMENT AND CONVEYANCE AND CERTIFICATION OF RELEASE

On this 3rd day of November, 2021 (the *"Closing Date"*) FRANKLIN CAPITAL GROUP, LLC, as the Seller under and defined in that certain Purchase Agreement, dated as of October 9, 2020 (as amended, restated, amended and restated, supplemented or otherwise modified from time to time, the *"Agreement"*), does hereby sell, transfer, assign, set over and convey to FRANKLIN CAPITAL FUNDING, LLC, a Delaware limited liability company, as Purchaser (*"Purchaser"*) under the Agreement, without recourse, but subject to the terms of the Agreement, all rights, title and interest of the Seller in and to the Purchased Assets listed on the Receivable Schedule attached hereto as <u>Exhibit A</u>, together with the related Funding Agreements, all rights to Receivable Files and other Records, and all rights of the Seller to agreements therein, and to receive from any third party or to take delivery of any documents which constitute a part of the Receivable File and the proceeds of any and all of the foregoing Receivable Files and all rights and obligations arising under the documents contained therein (collectively, the *"Conveyed Assets"*). The ownership of each Receivable, each Funding Agreement, the contents of the related Receivable File, and all other Conveyed Assets shall immediately and hereby does vest in the Purchaser and shall be retained and maintained, in trust, by the Seller at the will of the Purchaser in such custodial capacity only.

Without limiting the foregoing, the Seller hereby grants to the Purchaser a security interest in all of its right, title and interest in, to and under the Conveyed Assets, whether now existing or hereafter arising and wherever located, to secure all amounts due and owing by the Seller to the Purchaser under the Agreement, and this Assignment and Conveyance shall constitute a security agreement under applicable law.

The Seller confirms to the Purchaser that the representations and warranties set forth in <u>Sections 6.01</u> and <u>6.02</u> of the Agreement are true and correct as of the date hereof.

Capitalized terms used herein and not otherwise defined shall have the meanings set forth in the Agreement.

**FRANKLIN CAPITAL GROUP, LLC**
(the Seller)

By: *Shaya Baum*
Name: Avrohom Yeshaya Baum
Title: Authorized Signatory

Bodman_18106482_1

## EXHIBIT A

Promissory Note (Term Loan), dated as of November 3, 2021, made by Excell Auto Group, Inc., in the original principal amount $6,000,000.

Bodman_18106482_1