**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**West Palm Beach Division**
**www.flsb.uscourts.gov**

In re:

AUTO WHOLESALE OF BOCA, INC.

     Debtor.

_____/

FVP OPPORTUNITY FUND III, LLP, et al.,

     Plaintiffs,

v.

AUTO WHOLESALE OF BOCA, LLC,
et al.,

     Defendants.

_____/

Case No. 22-15627-EPK

Chapter 11

Adv. Proc. No. 22-01218-EPK

## EDWARD BROWN'S COUNTERCLAIM AND CROSSCLAIM

Edward Brown, by and through his undersigned counsel, hereby files this counterclaim against FVP Opportunity Fund III, LP, a Delaware limited partnership, FVP Investments LLC, a Delaware limited liability company, FVP Servicing, LLC, a Delaware limited liability company, Karma of Palm Beach, Inc., a Florida corporation, Karma of Broward, Inc., a Florida corporation, Hi Bar Capital, LLC, a New York limited liability company, and Franklin Capital Funding, LLC, a Delaware limited liability company, and this crossclaim against the Debtor, Auto Wholesale of Boca, LLC, a Florida limited liability company and the Trustee of Excell Auto Group, Inc., and states as follows:

68228020;1

## JURISDICTION

1.     On July 22, 2022 (the "Petition Date"), the Debtor filed a voluntary petition for relief pursuant to Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of Florida, bearing case number 22-15627-EPK.

2.     This Court has jurisdiction over the claim herein pursuant to 28 U.S.C. §§ 157, 1334, and 2201.

3.     The claim herein is a core proceeding under 28 U.S.C. §§ 157(b)(2)(A),(B), (E), (K) and (O).

4.     Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408-09.

## PARTIES

5.     FVP Opportunity Fund III, LP (the "FVP Fund") is a Delaware limited partnership with its principal place of business in New York County, New York.

6.     FVP Investments, LLC ("FVP Investments") is a Delaware limited liability company with its principal place of business in New York County, New York.

7.     FVP Servicing, LLC ("FVP Servicing") is a Delaware limited liability company with its principal place of business in New York County, New York.

8.     Collectively, the FVP Fund, FVP Investments and FVP Servicing are referred to herein as "FVP" or the "FVP Parties."

9.     Karma of Palm Beach, Inc. ("Karma of Palm Beach") is a Florida corporation with its principal place of business in Palm Beach County, Florida.

10.     Karma of Broward, Inc. ("Karma of Broward") is a Florida corporation with its principal place of business in Broward County, Florida.

11.     Collectively, Karma of Palm Beach and Karma of Broward are referred to herein as the "Karma Entities."

12.     Hi Bar Capital, LLC ("Hi Bar") is a New York limited liability company with its principal place of business in New York County, New York.

13.     Franklin Capital Funding LLC ("Franklin") is a Delaware limited liability company with its principal place of business in Michigan.

14.     Auto Wholesale of Boca, LLC (the "Debtor" or "AWB") is the debtor in this chapter 11 case and is a Florida limited liability company with its principal place of business in Palm Beach County, Florida, and doing business in Broward County, Florida and Palm Beach County, Florida, and is otherwise *sui juris.*

15.     Non-party, Excell Auto Group, Inc. ("Excell") is a Florida corporation and currently a debtor in its own separate chapter 7 bankruptcy case, *In re Excell Auto Group, Inc.*, Case No. 22-12790-EPK (Bankr. S.D. Fla. 2022). Excell is being named for informational purposes only.

### ALLEGATIONS

16.     Excell and Karma of Palm Beach were car dealerships operating in Palm Beach County, Florida.

17.     Brown, is the single largest debtholder of Excell and is the biggest victim of the fraud perpetuated by Excell, Karma Entities, and Scott Zankl ("Zankl"), the owner of Excell and Karma.

18. In addition to being a debtholder, Brown was a customer of Excell and Karma of Palm Beach and purchased many vehicles from these dealerships over the years, including a 2021 Rolls Royce Cullinan VIN #SLATV8C09MU204097 ("2021 Cullinan") from Excell and a 2021 Lamborghini Urus, VIN # ZPBUA1ZL1MLA12270 ("2021 Urus") from Karma of Palm Beach (collectively, the 2021 Cullinan and 2021 Urus are the "Brown Vehicles").

19. The Brown Vehicles became the subject of this adversary proceeding through a series of purported, fictitious, and fraudulent transactions by and between Excell, Karma, and Debtor.

20. The adversary proceeding continues to injure Brown, through the incurrence of continued costs and legal fees to defend his right, title, and interest to the Brown Vehicles.

21. As set forth below, Brown and his wife are the only owners of, and have the sole right, title and interest in, the 2021 Cullinan, and Brown is the only owner of, and has the sole right, title, and interest in, the 2021 Urus.

**A. Brown's Purchase of the 2021 Cullinan**

22. Brown asked Zankl to locate a Rolls Royce Cullinan for him to purchase for his wife's use, and on March 26, 2021, Zankl texted Brown pictures of the 2021 Cullinan, advised Brown that it had 173 miles, and asked Brown if he wanted to buy it.

23. Brown texted Zankl back and agreed to buy the 2021 Cullinan.

24.     The same day, on March 26, 2021, Excell purchased the 2021 Cullinan from a California dealership, iLusso. iLusso assigned the title to the 2021 Cullinan to Excell. Zankl confirmed by text message to Brown he had acquired the 2021 Cullinan to make it available for sale to Brown and his wife.

25.     On or around March 31, 2021, the 2021 Cullinan was delivered to Brown and his wife, who accepted delivery of the 2021 Cullinan.

26.     Around the time of the delivery, Excell, as seller, and the Browns, as buyers, executed a purchase agreement for the sale of the 2021 Cullinan. The terms of the purchase agreement, dated April 1, 2021, reflected a purchase price of $400,000, that a 2019 Rolls Royce Cullinan VIN #SLA689X57KU113682 ("2019 Cullinan") was traded-in as partial consideration for the purchase, and that the balance due after the trade-in allowance was $122,812.88.

27.     The  trade-in vehicle (*i.e.*, the 2019 Cullinan), had been owned by Brown, titled in Brown's name, and used by Brown's wife.[1]  As of the date of the purchase agreement for the 2021 Cullinan, Brown had given possession and title of the 2019 Cullinan to Excell.

28.     The "balance due" per the 2021 Cullinan purchase agreement was paid by money that Excell owed to Brown from previous sales. At that time, Excell owed Brown at least million dollars from Excell's sale of Brown's Ferrari LaFerrari

---

[1] Notably, others in this adversary proceeding, have repeatedly made the allegation that Brown *never* obtained title in his name to any vehicles he drove and instead exclusively drove "inventory" of Excell. These parties have actual knowledge this allegation is false and Brown reserves the right to seek sanctions under Rule 9011. The 2019 Cullinan is one of many examples that show the falsity of this allegation. *See also* notes 2 and 3.

Aperta.[2]

29.     After the Browns purchased the 2021 Cullinan, the 2021 Cullinan was registered in Brown's name, Brown put his personal license plate from his prior vehicle on the 2021 Cullinan, and Brown placed the 2021 Cullinan on his insurance policy.   The 2021 Cullinan has been continuously insured by Brown, personally, ever since.

30.     Upon information and belief, Excell reported the sale of the 2021 Cullinan to the Browns to the state of Florida, contemporaneously with the sales transaction, and paid taxes to the state of Florida in connection with the sale to the Browns.

31.     The transaction documents that Excell prepared for the 2021 Cullinan included an application for a certificate of title to be put in the names of the Browns, and Brown expected that the 2021 Cullinan would be properly titled in his name, just as the 2019 Cullinan had been titled in his name.

32.     However, around late April 2022, when Brown went to renew his registration for the 2021 Cullinan, the DMV advised him that there was a problem with his title and Brown realized that Excell had failed to properly title the 2021 Cullinan in either his name or his wife's name.   By this point, Excell had already filed for bankruptcy and Brown was not able to get the title corrected.

33.     The title to the 2021 Cullinan was not listed as property of the Excell estate, and Excell apparently claimed no ownership of the vehicle.

---

[2] The Ferrari LaFerrari Aperta was also titled in Brown's name prior to Excell's sale of such vehicle.

34. Soon, it became apparent that Debtor was claiming to own the title to the 2021 Cullinan, and Debtor promptly filed for bankruptcy, precluding Brown from correcting the title with the State of Florida.

35. Documents produced by the Trustee of the Excell Estate reflect a convoluted series of purported transfers of the title documents for the 2021 Cullinan between Excell, Karma of Palm Beach, and Debtor, *after* the vehicle was sold to the Browns.

36. Documents produced by Debtor reflect that the 2021 Cullinan was allegedly purchased by Debtor from Karma of Palm Beach on December 28, 2021, at which point the 2021 Cullinan was still in the possession of its owners, the Browns. In contrast, the records for the State of Florida reflected that a certificate of title was issued to Debtor only as of March 28, 2022.

37. The foregoing purported transactions, which allegedly occurred *after* Excell had sold the 2021 Cullinan to the Browns, and at a time when the 2021 Cullinan was registered to Brown and insured by Brown, were undertaken with no knowledge or consent of Brown.

38. The Browns never agreed to sell the 2021 Cullinan back to Excell, never agreed to sell it to Karma of Palm Beach or Debtor, and never received any consideration from Excell, Karma of Palm Beach, or Debtor to purchase the 2021 Cullinan back from them.

39. No other person or entity could purchase or place a lien on the 2021 Cullinan after it was sold to the Browns.

7

40. After the sale of the 2021 Cullinan to the Browns, any alleged transfers of title to the 2021 Cullinan to anyone else were legal nullities as the Browns had already obtained valid title by their purchase of the 2021 Cullinan.

41. The Browns are the sole owners of the 2021 Cullinan, and are entitled to the certificate of title.

42. Neither the Debtor, nor any of the other parties to this adversary proceeding, have any interest in the 2021 Cullinan, as a matter of law and equity.

**B.   Brown's Purchase of the 2021 Urus**

43. In July 2021, Brown located the 2021 Urus through an advertisement by a Jacksonville car dealership, World Imports USA Inc. ("World Imports").

44. Brown decided that he wanted to buy the 2021 Urus.

45. Brown asked Zankl to arrange for the purchase of the 2021 Urus for him from World Imports. Zankl agreed, and on August 6, 2021, Zankl asked Brown to wire Karma of Palm Beach the sum of $482,000 for Brown to purchase the 2021 Urus.

46. On August 6, 2021, Brown wired Karma of Palm Beach $482,000 to purchase the 2021 Urus. Karma of Palm Beach wired this money to World Imports and purchased the 2021 Urus for Brown.

47. On August 14, 2021, World Imports shipped the 2021 Urus to the Excell/ Karma of Palm Beach dealership lot in Florida.

48. On August 16, 2021, Zankl shipped the 2021 Urus to Brown's residence in Colorado, and Brown received and accepted delivery of the 2021 Urus.

8

49.     Brown's purchase of the 2021 Urus was complete upon Brown's payment of the purchase price, and the receipt and acceptance of the 2021 Urus by Brown.  *See* Fla. Stat. § 672.201(3)(c).  While a purchase agreement later memorialized the sale, it was not necessary for the sale to be effective as of the date the vehicle was both paid for and delivered to Brown.

50.     While Brown intended to apply for documents of title (*i.e.*, a certificate of title) to be issued in his name, just as he had for the Lamborghini Urus he had previously owned[3], Zankl, as principal of Karma of Palm Beach, persuaded Brown to allow Karma of Palm Beach to hold the title documents for Brown's convenience and benefit.  Presumably, since Brown regularly traded in his vehicles, allowing Karma of Palm Beach to hold the documents of title would streamline future transactions.

51.     However, unbeknownst to Brown, Zankl was deferring and delaying titling of the 2021 Urus (as well as the 2021 Cullinan and other customers' vehicles) because he was secretly attempting to use such titles as collateral or security for his lenders, as part of his fraudulent scheme.  Documents produced by the Excell Trustee indicate that Zankl was giving titles to Debtor, and representing vehicles as inventory to other lenders, where those vehicles had long been sold to customers.

52.     As Zankl's fraud unraveled, it became apparent that Debtor was claiming title to the 2021 Urus.

---

[3] Brown previously owned a 2020 Lamborghini Urus #ZPBUA1ZL9LLA0056 ("2020 Urus"). The 2020 Urus was titled in Brown's name.

53. Documents produced by Debtor reflect that Debtor allegedly "purchased" the 2021 Urus from Karma of Palm Beach on August 20, 2021, *after* the 2021 Urus had been shipped to Brown, and at a time that the 2021 Urus was in Brown's possession.

54. Such purported transaction was undertaken with no knowledge or consent of Brown.

55. Brown never agreed to sell the 2021 Urus back to Karma of Palm Beach, never agreed to sell the 2021 Urus to the Debtor, and never received any consideration from Karma of Palm Beach or Debtor to purchase the 2021 Urus from him.

56. Despite the alleged "purchase" by Debtor on August 20, 2021, the records for the state of Florida indicate that a certificate of title was only issued to Debtor on or about March 28, 2022.

57. Regardless of any alleged transactions between Karma of Palm Beach and the Debtor, the 2021 Urus was purchased on behalf of Brown, with Brown's money, sold to Brown, and Brown received delivery.

58. No other person or entity could purchase or place a lien on the 2021 Urus after it was sold to Brown.

59. Any alleged transfers of title to the 2021 Urus to anyone other than Brown after the sale to Brown were legal nullities as Brown had already obtained valid title by his purchase of the 2021 Urus.

60.     Brown is the sole and exclusive owner of the 2021 Urus, and is entitled to the certificate of title.

61.     Neither the Debtor, nor any of the other parties to this adversary proceeding, have any interest in the 2021 Urus.

**C.     Brown is the Owner of the Brown Vehicles as the Buyer of the Vehicles**

62.     Brown purchased and gave value for the Brown Vehicles, the Brown Vehicles were delivered to him, and received and accepted by Brown, and therefore, Brown received valid title to the Brown Vehicles regardless of the lack of any documents of title being delivered to him at the time of the sale.

63.     Pursuant to Section 672.401(2), Florida Statutes: "[u]nless otherwise explicitly agreed title passes to the buyer at the time and place at which the seller completes her or his performance with reference to the physical delivery of the goods, despite any reservation of a security interest and even though a document of title is to be delivered at a different time or place."

64.     Accordingly, valid title to both of the Brown Vehicles passed to Brown from the respective dealerships holding title to such vehicles at the time the Brown Vehicles were delivered to him, regardless of the lack of delivery of certificates of title.

65.     While certificate of title is evidence of ownership, it is not a requirement.  *See In re Kalter,* 292 F.3d 1350, 1360 (11th Cir. 2002).

66.     And, while Florida's motor vehicle statutes require a certificate of title to transfer *marketable* title to a motor vehicle, such statutes do not affect the

11

transfer of *valid* title in a motor vehicle. *Stroman v. Orlando Bank & Tr. Co.*, 239 So. 2d 621, 623 (Fla 4th DCA 1970).

67.     It is well established under Florida law that a dealership's failure to apply for certificate of title in the names of the purchasers does not affect the transfer of *valid* title to such purchasers. *See e.g., Motor Credit Corp. v. Woolverton*, 99 So. 2d 286, 290 (Fla. 1957).

68.     Excell failed to perform its duty to transfer the certificate of title to Brown, and Karma of Palm Beach failed to perform its duty to hold the certificate of title for the convenience and benefit of Brown.  However, under Florida law, these derelictions of duties did not bestow upon Excell or Karma of Palm Beach the ability to transfer valid title to the 2021 Cullinan or 2021 Urus to anyone else, after having already transferred such valid title to the Browns.

69.     The dealerships' attempt, *after* the dealerships had sold the Brown Vehicles to Brown, to use such vehicles' certificates of title as collateral for a loan, or otherwise transfer the certificates of title to anyone else, was "a nullity."  *See Stroman*, 239 So. 2d at 623.

70.     Any apparent attempts by the dealerships to resell the Brown Vehicles transferred only what such dealerships had: bare legal title, not valid title or any right to possession.

71.     Here, Debtor, apparently ignored the fact that the Brown Vehicles were *not* in the possession of the selling dealerships at the time of the purported "sale" to the Debtor, and in doing so, turned a blind eye to the reality that the

12

vehicles had already been sold by the dealerships and were in the hands of a purchaser for value.

72.    The effect of Excell or Karma of Palm Beach signing over the certificates of title to the Brown Vehicles to the Debtor gave the Debtor, at most, bare legal title.

73.    Where prepetition, a debtor only holds only bare legal title to property, the estate only acquires bare legal title without any equitable interest in the property.

74.    In the context of vehicles specifically, "if a debtor has only bare legal title to a vehicle, then such vehicle is not property of the estate." *In re Petersen*, 323 B.R. 512, 517 (Bankr. N.D. Fla. 2005) (Killian, Jr., J.) (citing *In re Smith,* 73 B.R. 211 (Bankr. N.D. Fla. 1986)).

75.    The estate should abandon and turn over the certificate of titles to the Brown Vehicles to the Browns, the sole and exclusive owners of the vehicles.[4]

76.    Moreover, none of the dealerships' lenders could create a lien on the Brown Vehicles, after they were sold to Brown.

77.    Pursuant to Section 679.3171, Florida Statutes, and subject to an exception not applicable here,[5] "a buyer…of goods…takes free of a security interest

---

[4] Brown has already filed an action for turnover of the title to the 2021 Cullinan (ECF No. 252 in main case) and reserves the right to file an action as to the 2021 Urus.  Such action for turnover may not be necessary as Debtor's proposed plan of reorganization provides Debtor will abandon the title to the Brown Vehicles if it is determined that Brown has an ownership interest superior to Debtor in this adversary proceeding (ECF No. 196 at 11-12).
[5] This exception is for purchase-money security interests.  Fla. Stat. § 679.3171(5).  None of the parties in this adversary proceeding allege to have purchase-money security interests in

13

…if the buyer gives value and receives delivery of the collateral without knowledge of the security interest…and before it is perfected."

78. The Brown Vehicles constituted "goods." Fla. Stat. § 679.1021 (1)(rr).

79. Brown, as buyer, gave value and received delivery of the Brown Vehicles long before *any* of the security interests were perfected given that:

a. Hi Bar claims it perfected its security interest on January 25, 2022,

b. FVP claims that it perfected its security interest on or about January 26, 2022, and

c. Franklin claims that it perfected its security interest on or about September 9, 2021 as to Excell and January 27, 2022 as to Karma of Palm Beach.

80. Brown gave value for the Brown Vehicles, and received delivery of the Brown Vehicles as a buyer, long before September 9, 2021 – the earliest of the alleged perfection of the parties' security interests (which Brown disputes could ever have attached to the Brown Vehicles).

81. Brown was without knowledge as to any of the security interests of FVP, Hi Bar, or Franklin, at the time that he gave value and received delivery of the Brown Vehicles.

82. Accordingly, Brown, as buyer, took the Brown Vehicles free of any security interests of any of the parties in this proceeding.

---

the Brown Vehicles, and it would be nonsensical to so allege given that the Brown Vehicles were acquired *well before* any of the lenders were involved.

**D.    Alternatively, Brown has a Superior Equitable Interest in the Brown Vehicles**

83.    If the Court determines that for any reason, Brown did not validly buy, or was not a buyer of, the Brown Vehicles (which he was), Brown still has equitable interests in the Brown Vehicles, superior to Debtor's interests, or the interests of any of the other parties in this adversary proceeding.

84.    Under Florida law, a person may be determined the equitable or beneficial owner of an asset regardless of nominal title.

85.    In determining who is the equitable owner, "[t]he most critical factor usually is control", and a second factor is "who is receiving the benefits of the asset." *See In re Trujillo*, 626 B.R. 59, 74 (Bankr. S.D. Fla. 2019).

86.    Considering such factors, the Browns are undoubtedly the equitable or beneficial owner of the 2021 Cullinan, and Brown is undoubtedly the equitable or beneficial owner of the 2021 Urus, as the only persons who have controlled and driven such vehicles, and received the benefit of such vehicles, since their purchases of the vehicles in April 2021 and August 2021, respectively.

87.    The Browns would also have an equitable interest in the Brown Vehicles by virtue of a resulting trust.

88.    Resulting trusts can often found where a party has paid the purchase price but not yet received legal title.

89.    The Browns paid the purchase price for both of the Brown Vehicles, paid the required maintenance of the vehicles, insurance on the vehicles, and

15

typical storage expenses related to storing and transporting the vehicles. The Browns additionally paid registration fees for the 2021 Cullinan.

90. The Browns' payment of such amounts shows the presumed intention that the Browns had the beneficial interest in the Brown Vehicles, and from the entire transaction, it is clear that the dealerships had an obligation to transfer the title of the Brown Vehicles to the Browns.

91. Although Excell wrongfully retained the paper title to the 2021 Cullinan, equity will imply a resulting trust in favor of the Browns.

92. Although Karma of Palm Beach wrongfully transferred the paper title to the 2021 Urus, rather than holding it for Brown's benefit and convenience, equity will imply a resulting trust in favor of Brown.

93. Alternatively, Brown alleges a constructive trust. After Brown's purchase and provision of value for the Brown Vehicles, Excell held the paper title to the 2021 Cullinan, and Karma held the paper title to the 2021 Urus, subject to a constructive trust for Brown. Accordingly, to the extent that any other person or entity ever obtained paper title to any of the Brown Vehicles, such person or entity, like Excell and Karma of Palm Beach, holds such paper titles in constructive trust for Brown, who gave value for the purchase of the Brown Vehicles.

94. Numerous other equitable reasons apply to mandate that Brown be granted a superior equitable interest in the Brown Vehicles, including the unclean hands and fraud of Excell and Karma of Palm Beach in fraudulently retaining (as to the 2021 Cullinan) or transferring (as to the 2021 Urus) the documents of title. All

16

of the lenders rely on Excell's or Karma of Palm Beach's right, title and interest in the Brown Vehicles to assert their security interest, and since Excell and Karma of Palm Beach are barred from claiming any interest in the Brown Vehicles against Brown, the lenders likewise cannot claim any interest as against Brown.

95.    For, *inter alia*, the foregoing reasons, as well as those reasons asserted in Brown's answers and affirmative defenses in this proceeding, Brown has equitable interests in the Brown Vehicles that are superior to Debtor's interests, or the interests of any of the other parties in this adversary proceeding.

**E.    Alternatively, Brown Would Claim a Senior Security Interest in the Brown Vehicles**

96.    Assuming that the Court determines that Debtor somehow obtained valid title to the Brown Vehicles, despite the sale of the Brown Vehicles to Brown, Brown would have a senior security interest in the Brown Vehicles.

97.    Section 672.312, Florida Statutes, creates an implicit warranty of title that "title conveyed shall be good, and its transfer rightful" and "goods shall be delivered free from any security interest or other lien or encumbrance of which the buyer at the time of contracting has no knowledge."

98.    If Excell, in fact, failed to transfer valid title to the 2021 Cullinan to Brown in exchange for the value he provided for the vehicle, totaling $407,812.88 in the form of a trade-in and a setoff of debt, the implicit warranty of title was breached by Excell.

17

99.    Likewise, if Karma of Palm Beach, in fact, failed to transfer valid title to the 2021 Urus to Brown in exchange for his purchase price of $482,000 in cash, the implicit warranty of title was breached by Karma of Palm Beach.

100.    Upon a breach of the implicit warranty of title, a customer may revoke acceptance of the goods and upon any "justifiable revocation of acceptance a buyer has a security interest in goods in his or her possession or control for any payments made on their price and any expenses reasonably incurred in their inspection, receipt, transportation, care and custody." Fla. Stat. § 672.711 (3).

101.    Accordingly, if Excell or Karma of Palm Beach breached the implicit warranty of title and failed to convey good and valid title to Brown, Brown has the right to revoke acceptance of the Brown Vehicles and assert a security interest in the Brown Vehicles for the amount of his purchase prices and other expenses.

102.    Such security interest created pursuant to Section 672.711(3), Florida Statutes, is senior in priority to any other security interest when the buyer retains possession of the goods.  *See* Fla. Stat. § 679.1101(4).

103.    Here, Brown has retained possession of the Brown Vehicles, and to the extent he revokes acceptance of the vehicles, his security interest in the Brown Vehicles for the price and expenses of the vehicles would be superior to any claims, including those of Debtor, FVP Parties, Hi Bar or Franklin.

## COUNT I

### DECLARATORY JUDGMENT
**(Counterclaim as to FVP Parties, Karma Entities, Franklin, and Hi Bar)**
**(Crossclaim as to Debtor and Excell)**

104. Brown re-alleges and re-incorporates paragraphs 1 through 103 above as if fully set forth herein.

105. There is a bona fide, actual, present, practical need for the Court to issue a declaration regarding the validity, priority, and extent of liens and other interests in the Brown Vehicles, and to conclude that:

a. Brown and his wife are the sole and exclusive owners of the 2021 Cullinan, and are entitled to have the certificate of title issued to them;

b. Brown is the sole and exclusive owner of the 2021 Urus, and is entitled to have the certificate of title issued to him; and

c. neither the Debtor, nor any of the other parties to this adversary proceeding, have any right, title or interest in the 2021 Cullinan or the 2021 Urus, or to the extent any of the parties have an interest in the Brown Vehicles, such interest is subordinate, junior, and inferior to Brown's interest in the Brown Vehicles.

106. The declaration requested deals with a present, ascertained, or ascertainable state of facts or present controversy as to a state of facts.

107. There exists a case of actual controversy between the parties that is ripe for decision.

108. There is a substantial controversy between parties having adverse legal interests of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

109. The controversy is not conjectural, hypothetical, or contingent.

110. The controversy is real, immediate, and creates a definite threat of future injury.

111. Brown is entitled to the declarations requested.

**WHEREFORE**, Brown respectfully requests that the Court enter a judgment (a) declaring that (1) Brown and his wife are the sole and exclusive owners of the 2021 Cullinan, and are entitled to have the certificate of title issued to them, (2) Brown is the sole and exclusive owner of the 2021 Urus, and is entitled to have the certificate of title issued to him, and (3) neither the Debtor, nor any of the other parties to this adversary proceeding, have any right, title or interest in the 2021 Cullinan or the 2021 Urus, or to the extent any of the parties have an interest in the Brown Vehicles, such interest is subordinate, junior, and inferior to Brown's interest in the Brown Vehicles, and (b) for all other relief that is just and proper.

<u>**RESERVATION OF RIGHTS**</u>

Brown reserves all rights to assert and defend Claim #19 filed against Debtor, and Claim #9 filed against Excell in the Excell bankruptcy proceeding, and any and all rights to bring, against any non-Debtor parties to this proceeding, any claims over which this Court does not have jurisdiction, including but not limited to,

claims for damages and declaratory judgment as to the ownership of other vehicles not at issue in this action and in which Debtor has not asserted an interest.

Dated: January 23, 2023                    Respectfully submitted,

By:  /s/ Amanda Klopp
D. Brett Marks, Esq.
Florida Bar Number: 099635
Email: brett.marks@akerman.com
Eyal Berger, Esq.
Florida Bar Number:  011069
Email:  eyal.berger@akerman.com
Amanda Klopp, Esq.
Florida Bar Number: 124156
Email: amanda.klopp@akerman.com
**AKERMAN LLP**
201 East Las Olas Boulevard, Suite 1800
Fort Lauderdale, FL  33301-2999
Tel:: 954-463-2700
Fax: 954-463-2224

*Counsel for Edward Brown*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on January 23, 2023, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served on this day by transmission of Notices of Electronic Filing generated by CM/ECF to those parties registered to receive electronic notices of filing in this case.

/s/ Amanda Klopp
Amanda Klopp, Esq.