

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**PALM BEACH DIVISION**

In Re:

AUTO WHOLESALE OF BOCA, LLC,
Debtor.

_____/

FVP OPPORTUNITY FUND III, LP; FVP
INVESTMENTS, LLC; and FVP SERVICING,
LLC,
Adversary Plaintiffs,

vs.

AUTO WHOLESALE OF BOCA, LLC;
HI BAR CAPITAL, LLC; WING LAKE
PARTNERS f/k/a FRANKLIN CAPITAL
GROUP, LLC; KARMA OF PALM
BEACH, INC.; KARMA OF BROWARD,
INC.; EXCELL AUTO SPORT AND
SERVICE, INC.; and EDWARD
BROWN,

Adversary Defendants, Adversary
Plaintiffs, Cross Plaintiffs.

_____/

Case No.: 22-15627-EPK

Adversary Case No.: 22-01218-EPK

**SUPPLEMENTAL EXPERT REBUTTAL REPORT**
**OF JOEL GLICK, CPA/CFF, CFE**

**April 24, 2023**

MIAMI   |   FT . LAUDERDALE   |   BOCA RATON   |   WEST PALM BEACH   |   NEW YORK CITY

## I.   BACKGROUND

On April 10, 2022, FVP Opportunity Fund III LP, FVP Investments LLC, and FVP Servicing LLC (collectively, "FVP" or "Adversary Plaintiffs") filed a lawsuit, (the "FVP Complaint") against KPB, KB, Zankl, Farache, AWB, among other defendants. This lawsuit will hereinafter be referred to as the "FVP State Court Case." On July 22, 2022, AWB filed for Chapter 11 Bankruptcy (Case No. 22-15627-EPK). FVP filed an adversary complaint (22-01218-EPK) in the AWB Bankruptcy, the matter for which this report applies.

On February 13, 2023, FVP filed the Preliminary Expert Report of Richard Gray, CPA/ABV, CVA, ASA (ECF 268) for which I issued my original expert rebuttal report on March 3, 2023 (ECFs 312, 312-1, 312-2 and 378-1).

On March 27, 2023, FVP filed its Adversary Plaintiffs' Expert Witness Disclosures Fed. R. Civ. P. 26(a)(2)A (ECF 354), in which they attached a copy of ECF 268 as Exhibit A to the filing.

On April 10, 2023, FVP filed its Notice of Filing Expert Report and Adoption of Summaries to Prove Content as to Part II (ECF 375), in which they attached a modified version of the preliminary report filed in ECF 268 and the same seven (7) original unmodified schedules attached.

## II.   SCOPE OF ASSIGNMENT

Berkowitz Pollack Brant Advisors + CPAs ("BPB") was retained by James Miller ("Counsel") of the law firm of James B. Miller, P.A. in connection with its representation of the Debtor/Adversary Defendant in this matter. I was asked to prepare a supplemental rebuttal report to the Expert Report of Richard Gray, specifically as to the use of the seven (7) schedules attached thereto which are being proffered as Rule 1006 Summaries to

2

Prove Content. To the extent the discovery period is open and ongoing, I reserve the right to update this report as, and if, more information becomes available. No statements in this report are intended to provide or draw any legal opinions or conclusions.

## III.   QUALIFICATIONS

I am a Director of Forensic Advisory Services at the accounting firm Berkowitz Pollack Brant. BPB was established in 1980 and today has over 350 employees with offices in Miami, Fort Lauderdale, Boca Raton and West Palm Beach, Florida and New York, New York. I am a Certified Public Accountant (CPA), certified in financial forensics (CFF) both designated by the American Institute of Certified Public Accountants and a Certified Fraud Examiner (CFE), as designated by the Association of Certified Fraud Examiners.

See Curricula Vitae and list of testimony experience, Exhibit 1.

## IV.   DOCUMENTS CONSIDERED

In forming the opinions expressed herein, I relied on the following documents:
-   The documents uploaded by FVP to Dropbox, pursuant to Compliance Trial Order (DE 244)

| Name | Item type |
| --- | --- |
| Data and  Docs re DealerTrack Summary Entries | File folder |
| Data and Docs re Deal Jackets Summary Entries | File folder |
| Data and Docs re DMV Records Summary Entries | File folder |
| Data and Docs re Financial Information Summaries | File folder |
| Misc Documents | File folder |
| Summaries to Prove Content | File folder |

-   All documents considered in preparation of my initial rebuttal report of 03/03/23.
-   Pleadings in this case and other related cases.
-   Expert Reports filed in the adversary case as well as the main Bankruptcy case as well as any exhibits or addenda thereto.

3

- Deposition testimony of witnesses.

- Court Transcripts and Exhibits from the Hearing of March 27 & 28, 2023.

- Any information/materials cited in footnotes to this report.

- Any cited material inadvertently excluded from this list.

## V.    <u>EXPERT OPINIONS</u>

As discussed in greater detail in Section VI – Basis for Opinion, my expert opinions are as follows:

Adopted and restated from my initial Expert Rebuttal Report issued March 3, 2023[1]:

a.  Mr. Gray renders opinions on topics for which he was not retained.

b.  Mr. Gray has not relied on sufficient data to render his opinions.

c.  Mr. Gray's opinions are unsubstantiated.

New opinion

d.  The schedules attached to Mr. Gray's report do not comply with certain requirements of Rule 1006 Summaries to Prove Content

## VI.    <u>BASIS FOR OPINIONS</u>

**Unclear Scope:**

According to paragraph 2 of the Mr. Gray's report attached to ECF 375, the scope of his engagement is to <u>"provide expert forensic accounting opinion as to the **appropriate classification** of certain vehicle transactions occurring in 2021 and 2022 based on records provided *and generally on the financial transactions reflected in the books and records of the various companies."*</u> The italicized portion of the preceding sentence has been added to the language from Mr. Gray's preliminary report.

---

[1] The omission from this report of opinions (d.), (e.) and (f.) and any discussion thereof contained in my initial report does not constitute a rescission of those opinions. The restated opinions are adopted opinions from my original report that are updated in connection with Mr. Gray's modified report.

MIAMI    |    FT . LAUDERDALE    |    BOCA RATON    |    WEST PALM BEACH    |    NEW YORK CITY

Mr. Gray renders the following five Opinions:

1. *AWB was acting as a lender to Excell/Karma Entities as opposed to AWB's portrayal as a serial purchaser and seller of vehicles from and to either Excell or the Karma Entities for the same price for well over one hundred transactions in 2021 and 2022.*

2. *That the financial records of 2021 establish that AWB was paid substantial sums from the Excell/Karma Entities when the records should have shown that AWB was paying substantial sums to the Excell/Karma Entities throughout 2021 if it was truly the purchaser of automobiles that it alleges that it is.*

3. *In 2021 there were relatively consistent payments from Excell / Karma Entities to AWB which appear to be consistent with interest payments which corroborates the testimony of Scott Zankl that these payments were in fact intentionally disguised interest payments.*

4. *That the financial records of 2022 establish that AWB was paid far more funds than it transferred to the Karma Entities and Excell. Therefore AWB was receiving substantial sums when the records should have shown that AWB was paying substantial sums if it was truly a purchaser of automobiles.*

5. *In 2022 AWB would have had to have paid $6.7 million for the vehicles it alleges to have purchased. In 2022, AWB in fact and the AWB related entities received $6.7 million in 2022 and paid only $4.8 million to the Karma Entities and Excell resulting in a net receipt to AWB and related companies of $1.9 million in 2022 alone.*

6. *These opinions are reflected in the summaries to prove content attached to this report and filed of record by the FVP Plaintiffs in its summaries to prove content which the report adopts by reference.*

7. *This opinion extends to the 23 vehicles at issue in this matter.*

Mr. Gray never defines what is meant by "**appropriate classification.**" First, appropriateness is not an objective measure therefore it would be necessary for him to cite a basis against which he is measuring what is appropriate. He has not. Other than in the paragraph defining his scope, the word appropriate appears one other time as it relates to services a forensic accountant can provide. Second, classification is a vague term. It can refer to how a certain vehicle was recorded on the balance sheet (e.g., as inventory or fixed asset), how a certain vehicle was acquired (e.g., by cash or through a dealer trade), if by cash, as a purchase or loan.

In his first opinion, Mr. Gray characterizes AWB as a business enterprise rather than address "the appropriate classification of certain vehicle transactions" recorded in AWB books and records. Regardless, without reviewing AWB's books and records it is not clear how it is possible for him to reach this conclusion. As of the filing of his preliminary report, he reviewed documents and bank statements but not AWB's QuickBooks and how AWB contemporaneously recorded transactions. Since the filing of that report, he now indicates he has reviewed such QuickBooks records but inexplicable includes no discussion of such review in his updated report.

In my initial rebuttal, I questioned what qualified Mr. Gray to opine on floorplan financing. It would appear he is not qualified because rather than providing a response, the supplemental report simply removes any reference to floorplan financing and simply refers to it as loan and financing.

Opinions two, four and five of Mr. Gray's report discusses the direction and quantifications of payments. The cash flow for both a purchase and the making of a loan flow in the same direction. Similarly, with a sale or a repayment of a loan, cash flows in the same direction. Discussing cash flow is different from discussing the appropriate classification of vehicle transactions.

Opinion three relates to payments that Mr. Gray states appear to be consistent with the payment of interest. Again, it is unclear how this relates to the classification of individual vehicle transactions that have occurred over a nine-year period and for which FVP has chosen to focus on the most recent two-year period (2021/22) to define the relationship between AWB and EAG. Mr. Gray added the following language, *"which corroborates the testimony of Scott Zankl that these payments were in fact intentionally disguised interest payments."* This addition raises concerns as to the information on which Mr. Gray relies. As discussed below in this report, I opine that Mr. Gray did not rely on sufficient relevant data. Inherent in relevant data is the fact it must be reliable. Mr. Gray is relying on the

6

testimony of Mr. Zankl who has "pled the fifth" in multiple legal proceedings related to this matter and whose controller[2] testified that Mr. Zankl asked her to make improper accounting entries into the Karma books and records (i.e., DealerTrack). Mr. Gray would appear to be selective as to which Zankl testimony he deems credible and reliable.

Based on the discussion above and despite the additional language; "*generally on the financial transactions reflected in the books and records of the various companies",* it is unclear how any of his opinions are responsive to the assigned scope of his engagement, which was 1) the appropriate classification of vehicle transactions and 2) the financial transactions reflected in the books of various companies. His report references a single liability account. It is unclear as to which company it belongs to (EAG, KPB or KB) and it does not include any discussion of AWB's books.

**Issues with Sufficient Relevant Data:**

---

**Standards for Forensic Services**

6. The general standards of the profession are contained in the "General Standards Rule" (ET sec. 1.300.001 and 2.300.001) and apply to all services performed by a member, including forensic services. They are as follows:

- *Professional competence.* Undertake only those professional services that the member or the member's firm can reasonably expect to be completed with professional competence.

- *Due professional care.* Exercise due professional care in the performance of professional services.

- *Planning and supervision.* Adequately plan and supervise the performance of professional services.

- *Sufficient relevant data.* Obtain sufficient relevant data to afford a reasonable basis for conclusions or recommendations in relation to any professional services performed.

---

[2] June 29, 2022, deposition of Teddi Sofoul. At pages 35 and 36.

7

Forensic accountants are required to follow the general professional standards promulgated by the American Institute of Certified Public Accountants ("AICPA"). Focusing on the fourth bullet point of the AICPA guidance above, a member of the AICPA is required to obtain sufficient relevant data on which to base their conclusions. Federal Rules of Evidence requires the same[3].

Further, despite Mr. Gray citing the same or similar requirements to rely on sufficient relevant data, in paragraphs 13 and 14 of his report, and despite his claim in paragraph 63 of his report *"My work and analysis were performed in accordance with the professional standards required by the American Institute of Certified Public Accountants in connection with litigation services."*, he did not.

At the time of Mr. Gray's initial report, it was my understanding there had been disagreement between the parties as to how AWB was willing to produce its QuickBooks accounting data and how FVP wanted it produced. According to Mr. Gray, a motion was filed asking for additional time relating to him having stepped in as a last-minute replacement for a former colleague and that he was waiting for the aforementioned QuickBooks data.

> 4. I have recently been retained in this matter and a motion to grant additional time has been filed in this case and I therefore reserve the right to update my opinion and modify this report due to any relevant factors, including additional information, my further review of documents and data as has been explained in the motion for additional time filed by the FVP Plaintiffs in this matter, court rulings, agreements between the parties, additional testimony, and/or additional documentation, including, without limitation:
>
> > a) The QuickBooks accounting records of Auto Wholesale of Boca, LLC, a significant party to this matter, have not been provided to date.

In the most recent iteration of his report, paragraph 4 now states:

---

[3] FRE Rule 702. Testimony by Expert Witnesses, A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

8

> *"4. I have reviewed, without limitation, , court rulings, agreements between the parties, bank records, **QuickBooks records** [Emphasis Added], deal jackets, deposition testimony, in court testimony, expert reports, claims filed in this Bankruptcy case, , and additional documentation more fully detailed below."*

He previously indicated his analysis and schedules were based on review of various vehicle deal jackets, bank records for EAG, KPB, KB and AWB, and general ledgers for EAG, KPB, KB. At the time, AWB general ledgers were missing from his Documents Considered. He acknowledged AWB is a significant party to this matter, as such, reviewing AWBs general ledger would be relevant in rendering his opinion. He did not review them then, and despite now indicating he has reviewed them, they are still not reflected as a Document Considered nor does he make any mention of them in his updated report.

Paragraph 33 of his recent report begins with the following footnoted statement:

> "During the year 2021, the apparent typical protocol followed for vehicles financed by Farache was as follows: [6]"

Footnote 6 states:

> "Note that our below understanding of 2021 vehicle procedures is sourced from our review of transactional records (including email correspondence between Martin and Excell/Karmas employees), DealerTrack records and banking records."

As with his first report, there is no mention of AWB QuickBooks records which could have informed him as to how AWB viewed and recorded these transactions. Rather, he relied solely on DealerTrack general ledgers, the reliability of which is suspect based on the testimony of Teddi Sofoul[4]. Further, FVP specifically requested and created an issue regarding the receipt of the Audit Trail[5] from AWB's QuickBooks. The Audit Trail was provided and to date, no allegations have been made of improper modification or deletion of transactions by AWB. No such assurance has been provided as it relates to the books and records of EAG, KPB or KB.

---

[4] See Footnote 2

[5] The Audit Trail feature, if turned on, tracks the creation, modification and deletion of every transaction entered in QuickBooks. As such Mr. Gray would be able to identify any improper changes AWB made to its books after the filing of bankruptcy and this adversary.,

9

As such, it is unclear if the Court should infer that Mr. Gray, after having reviewed AWB QuickBooks, has determined AWB's books were properly maintained and reflect the true nature of the transactions or that he once again ignored relevant information necessary to render his opinion.

At paragraph 14 of his report, Mr. Gray cites additional guidance an expert should follow. AICPA published practice aid, "Litigation Services Applicable Professional Standards" a)

> Paragraph 14 states: "<u>The expert's function is to assist the trier of fact in understanding complex or unfamiliar concepts after having applied reliable principles and methods to sufficient relevant data.</u>"

In addition to not relying on sufficient relevant data (i.e., AWB QuickBooks accounting information), it is unclear how he has assisted the trier of fact in understanding how he arrived at his opinions as he has not explained the work he performed, rather described his understanding of how books were maintained. The schedules on which Mr. Gray relies and for which FVP relies as Summaries in Support of Content were relegated to footnotes with no explanation of which of the specific of the voluminous information was used to prepare each respective schedule or how the trier of fact can verify their accuracy.

Without explanation of the specific information used in the preparation of each schedule and an explanation of the procedures followed in the preparation of each schedule, it is unclear how Mr. Gray can support his statement that he has applied reliable principles and method to sufficient relevant data. As the opposing expert, I cannot opine whether I believe he has met this burden if I cannot replicate his schedules.

**<u>Summaries to Prove Content</u>**

Counsel provided me with the following:

Rule 1006 – Summaries to Prove Content

The proponent may use a summary, chart, or calculation to prove the content of voluminous writings, recordings, or photographs that cannot be conveniently examined in court. The proponent must make the originals or duplicates available for examination or copying, or both, by other parties at a reasonable time and place. And the court may order the proponent to produce them in court.

They have also asked me to assume the following:

To establish a proper foundation for the summary exhibit, the proponent must demonstrate that:
      (i) the originals are voluminous;
      (ii) a qualified witness has examined the originals;
      (iii) the summary is an accurate reflection of the relevant contents; and
      (iv) the originals would be admissible in evidence.

Specifically, they have asked that I focus on (iii) above.

**Schedule 1 as a Summary to Prove Content**

In paragraph 4 of his report, he references deal jackets. In paragraph 16, a) and b) he references deal jackets produced by Farache and the EAG Trustee. In paragraph 46, he references AWB deal jackets from the FVP State Court Case. While paragraph 48 references Schedule 1, once at Schedule 1, it leaves the reader having to make an assumption as to which deal jackets were used in the preparation of Schedule 1.

Schedule 1 is a summary of voluminous information contained in deal jackets for the 23 vehicles at issue in this matter. As such, it is not possible to determine the voluminous data Mr. Gray relied on to prepare this summary or the accuracy and reliability of the underlying paperwork contained therein.

**Schedule 2 as a Summary to Prove Content**

Schedule 2 is titled "Example of Vehicle Transfers from EAG to KPB." There is not a single reference to Schedule 2 in the entire report. The schedule references information from DealerTrack and bank records. It does not indicate the universe of information that

11

was used, from which the examples were selected nor is there any explanation as the purpose of this schedule. As discussed previously, it reflects intercompany transactions between EAG and KPB unrelated to AWB. It is unclear what content is being summarized.

**Schedule 3 as a Summary to Prove Content**

From the Gray report:

> "57. The flow of funds for the years 2021 and 2022 do not appear to reflect that AWB had been repeatedly purchasing vehicles from Excell/Karma Entities.[13] "

Footnote 13 simply states <u>See Schedule 3</u>. Once at Schedule 3, there is no reference to how the schedule was prepared or with what information.

Schedule 3 is comprised of two pages. The first page contains data, while the second page contains a bar chart based on that data.

Page one contains 6 columns of data as follows:
Column 1 reflects months from January 2021 to April 2022.
Column 2 reflects, as a positive amount, the inflows to AWB bank accounts.
Column 3 appears to reflect, as a negative amount, the outflows from AWB bank accounts.
Column 4 reflects the number of cars purchased for the respective month based on unspecified "Paperwork".
Column 5 appears to reflect the aggregate purchase price of the vehicles referenced in Column 4 based on the same unspecified "Paperwork".
Column 6 reflects the mathematical difference between the AWB net cash flow (Column 1 + Column 2) and the aggregate purchase price of the vehicles (Column 5).

<u>Issues with Columns 1 – 3:</u>

The information provided by FVP in support of the summaries contains multiple bank accounts for AWB, Mazel Tov and MMS. This schedule does not identify which bank accounts are included in columns 2 and 3. The period covered by this schedule includes all twelve months of 2021 however upon review of the data provided, no AWB banks statements for January through June of 2021 were located. If EAG, KPB or KB bank statements were used under the assumption they would reflect the other side of the

12

transaction, no such reference was made. Again, leaving the reader with no way of knowing what information was used in the creation of the schedules.

Issues with Columns 4 and 5:

The information provided by FVP in support of the summaries contains multiple folders containing "paperwork." In order to be a summary of voluminous information, the schedule should provide specificity as to what voluminous paperwork is being referenced. It does not. Likewise, the accuracy of the information cannot be confirmed.

Issue with Column 6:

There is not a summary issue with Column 6 as it just reflects a mathematical result. The issues are with the underlying assumptions used in arriving at such a result. First, it assumes the amounts listed on paperwork must involve actual cash and disregards the dealer trades (Swaps) which have a cash value. Second, it nets the $11.8 million of cash inflows to AWB which represents vehicle sales proceeds, interest and profit splits against cash outflows and then compares it to one direction of paperwork. In either case, the assumptions on this schedule are flawed.

The bar chart sheds no additional light on the how and what. There is no way to determine if Schedule 3 contains an accurate summary of relevant content. As such, the accuracy of Schedule 3 is questionable.

**Schedule 4 as a Summary to Prove Content**

From the Gray report:

> *"58. Moreover, a sample of profit checks paid from Excell to AWB for the profit-splitting outlined in certain of the AWB Promissory Notes reveals that the amount received by AWB was often in excess of contractual amounts and had no relationship to any purported profit.[14]"*

13

Footnote 14 simply states <u>See Schedule 4.</u> Once at Schedule 4, it is left to the reader to understand how the calculation of purported profit was derived. The vehicle profits invoiced by and paid to AWB were done so after having been informed by EAG of the profit. It is unclear why EAG would report one number to AWB and reflect the gross profits reflected in Schedule 4. It raises questions as to the validity of EAG books and records.

**Schedule 5 as a Summary to Prove Content**

The reference to Schedule 5 previously referenced in footnote 16 of Mr. Gray's original report has now been elevated to a its own paragraph, 59, in his current report. However, again, once at Schedule 5, there is no reference as to how the schedule was prepared or with which of the specific voluminous information it was prepared.

From the Gray report:

> *59 "Finally, the amount of profit checks paid to AWB was relatively consistent month-over-month. However, when the profits of the Excell/Karma entities are examined, the payments to AWB have no relationship to those profits earned. If the "profit" was supposed to be calculated on any particular transaction between Excell and AWB, as above stated, there was never a profit on any of those transactions as the vehicles were consistently bought and sold for the same price and there was never a profit to split. This analysis is addressed in Schedule 5."*

Schedule 5 is comprised of two pages. The first page contains data, while the second page contains a bar chart based on that data. As discussed above, there is no reference to how the schedule was prepared or with which specific voluminous records are meant to summarized. Data column one reflects a year and month and appears self-explanatory. Data column two is labeled "Sum of Small (>$75K)/"Profit" Payments To AWB+MMS" with no explanation on the schedule or in the report as to what that means and what information is contained therein. Review of this schedule creates a number of unanswered questions. What is Small? How is that defined? Is there a large? What is the basis for selecting $75K? The third column of data is labeled "Sum of Vehicle Gross Profits of EAG+KPB+KB." While the title is clearer as to what is meant to be illustrated, there is no explanation as to the source of the voluminous records contained therein.

14

The bar chart sheds no additional light on the how and what. There is no way to determine if Schedule 5 contains an accurate summary of relevant content.

**Schedule 6 as a Summary to Prove Content**

From the Gray report:

> 33 (j) "A table summarizing these Excell Auto Group <u>journal entries</u> within the G/L Account "2120" is attached as Schedule 6."

That paragraph contains the sole reference to the term "journal entries" in the entire report. As such, I can only infer the preceding lettered paragraphs, at a minimum, 33 h) and 33 i) relate to and describe these journal entries. Paragraph 33 i) indicates the transaction reflects the vehicle VIN which is necessary to identify the vehicles in question. Schedule 6 consists of five pages and is titled Summary of Debits and Credits of G/L Entries to Excell's AWB liability Account. It lists a journal entry number, a dollar amount in the Debit column and a dollar amount in the Credit column. There is no reference to a specific date, VIN, or vehicle. So, while it appears to summarize voluminous original records, and show the identical in and out that FVP wants the Court to see, it does not in fact show the reason for the equal debits and credits is that these transactions represent vehicle trades (Swaps). Had the VIN and vehicle information been included, it would be readily apparent. As such, there is no way to determine whether it is an accurate summary of relevant content.

Below is an excerpt of January 2021 transactions from the AWB general ledger inventory account. I have included an excerpt from Schedule 6. As can been gleaned, the transaction recorded in both entity's books reflect the same totals however only AWB's information reflects the vehicle information which clearly reflects vehicle swaps. Schedule 6 is summarizing inflows and outflows without context.

| Account Type | Other Asset | | |
|---|---|---|---|
| | | **Values** | |
| **Date** | **BPB Class** | **Sum of Debit** | **Sum of Credit** |
| 1/7/2021 | 2017 PORSCHE 136663 | | 109,000 |
| | 2017 ROLLS 102731 | | 216,000 |
| | 2018 LAMBO A09447 | 109,000 | |
| | 2020 AUDI 900693 | 216,000 | |
| **1/7/2021 Total** | | **325,000** | **325,000** |
| 1/12/2021 | 2016 MERCEDES 015325 | 52,000 | |
| | 2017 LAMBO A06113 | | 320,000 |
| | 2018 ROLLS 107627 | 268,000 | |
| **1/12/2021 Total** | | **320,000** | **320,000** |
| 1/15/2021 | 2013 FERRARI 191526 | | 185,000 |
| | 2020 LAMBO A13136 | 185,000 | |
| **1/15/2021 Total** | | **185,000** | **185,000** |
| 1/20/2021 | 2016 MERCEDES 015325 | | 52,000 |
| | 2019 BMW C09685 | 52,000 | |
| | 2019 MCLAREN 003509 | 276,680 | |
| | 2020 LAMBO A14208 | | 276,680 |
| **1/20/2021 Total** | | **328,680** | **328,680** |
| 1/25/2021 | 2011 AST MAR E12796 | | 108,000 |
| | 2016 PORSCHE 136643 | 108,000 | |
| | 2017 LAMBO A05372 | 470,000 | |
| | 2019 AST MAR M05611 | | 173,000 |
| | 2019 FERRARI 244808 | | 297,000 |
| **1/25/2021 Total** | | **578,000** | **578,000** |
| 1/27/2021 | 2017 AUDI 902128 | | 130,000 |
| | 2018 BENTLEY 017487 | | 173,000 |
| | 2021 BMW F30207 | 100,000 | |
| | 2021 LAMBO A12354 | 203,000 | |
| **1/27/2021 Total** | | **303,000** | **303,000** |
| 1/28/2021 | 2016 FERRARI 217204 | 130,000 | |
| | 2017 LAMBO A05372 | | 470,000 |
| | 2019 LAMBO A05972 | 220,000 | |
| **1/28/2021 Total** | | **350,000** | **470,000** |
| 1/29/2021 | 2014 FERRARI 198412 | 230,000 | |
| | 2017 FERRARI 221587 | 231,680 | |
| | 2018 BENTLEY 019549 | 120,000 | |
| | 2019 MCLAREN 003509 | | 276,680 |
| | 2020 LAMBO A13136 | | 185,000 |
| **1/29/2021 Total** | | **581,680** | **461,680** |

**SCHEDULE 6**

**Summary of Debits and Credits of G/L Entries to Excell's AWB Liability Account**

FULL ACCOUNT NAME   2120  NOTES PAY - LEASE& RENTAL VEH

| Year, Month and G/L Entry# | Sum of Debit | Sum of Credit |
|---|---|---|
| **2021** | 42,426,630 | (42,619,080) |
| Jan | 3,066,360 | (3,066,360) |
| 1113605 | 0 | (95,000) |
| 1113679 | 325,000 | (325,000) |
| 1114048 | 320,000 | (320,000) |
| 1114228 | 185,000 | (185,000) |
| 1114401 | 328,680 | (328,680) |
| 1114581 | 578,000 | (578,000) |
| 1114700 | 303,000 | (303,000) |
| 1114797 | 931,680 | (931,680) |

16

**Schedule 7 as a Summary to Prove Content**

From the Gray report:

> 54 (e) "Within the financial records of Excell/Karmas, a large liability account is maintained which tracks the amount of monies owed and which cars correspond to the monies owed, and vehicle transfers in 2021 are reflected in this liability account.[11]"

The first issue is that Mr. Gray is conflating three entities, EAG, KPB and KB. The two parties to the promissory notes at issue in this matter are AWB and EAG. It is unclear how the books of KPB and KB or the interplay between EAG and the two Karma entities are relevant. It is also unclear on which company's books this liability account appears.

The second issue is footnote 11 simply states "See Schedule 7." Schedule 7 consists of three bar charts, for EAG, KPB and KB, respectively, each titled Composition or Vehicle Sales Revenue. The legend on each of the charts is titled Type of Customer. This schedule addresses income and does not reference or relate to a "large liability account." As such, it is unclear how Schedule 7 applies to paragraph 54, constitutes a summary of voluminous original records and/or provides an accurate summary of relevant content.

**Conclusion**

The opinions rendered by Mr. Gray are unsubstantiated and unreliable as he did not rely on sufficient relevant data from the Debtor/Adversary Defendant which he acknowledges is a significant party to this matter. As indicated above, sufficient relevant data is required by standards for forensic accounting experts. Mr. Gray fails to provide an explanation of what analysis he performed, why he performed it or how he performed it. Most if not all the schedules attached to Mr. Gray's report are insufficient as summaries of the voluminous data they are meant to represent.

## VII.   **EXPERT COMPENSATION**

I am being compensated at my standard rate of $535 per hour, while other members of our firm who worked on this engagement are compensated at $105 to $535 per hour. Neither my compensation nor the compensation of the other BPB personnel who worked on this assignment is contingent on the outcome of this litigation.

Joel D. Glick, CPA/CFF, CFE
Berkowitz Pollack Brant Advisors + CPAs
200 South Biscayne Boulevard, Seventh Floor
Miami, Florida 33131

18

**Exhibit 1** Case 22-01218-EPK Doc 401-1 Filed 04/25/23 Page 19 of 24



CURRICULUM VITAE

JOEL D. GLICK

**Joel D. Glick**, CPA/CFF, CFE is a Director of the Forensic Advisory Services practice for Berkowitz Pollack Brant Advisors + CPAs, LLP.

Mr. Glick has extensive experience providing forensic and litigation support services in a wide array of matters, as both an expert and a consultant. He has testified as an expert in both Federal and State matters and has been qualified as an expert in U.S. Bankruptcy Court.

**Practice areas include:**

- Fraud and forensic accounting investigations
  - Ponzi schemes
  - Embezzlement
  - Construction cost investigations
- Bankruptcy, receivership and other insolvency matters
  - Fraudulent transfer and preference analysis
  - Tracing
- Calculation of economic damages
  - Breach of contract
  - Shareholder disputes
  - Non-compete covenants
  - Business interruption
- Litigation support services
- Preparation of prospective financial information, financial forecasts
- Financial consulting and business advisory services

**Business Background:**

| | |
|---|---|
| Berkowitz Pollack Brant, Advisors and CPAs, LLP, *Miami and Ft. Lauderdale, FL* | 1997 – Present |
| Mallah, Furman & Company, P.A., *Miami, FL* | 1991 – 1997 |
| Dohan, Simon & Company, P.A., *Kendall, FL*` | 1990 – 1991 |

**Qualifications**

Certified Public Accountant (CPA), 1994 (Florida)
American Institute of Certified Public Accountants

*Joel D. Glick*                    *Curriculum Vitae*                    *Page 2*

Certified in Financial Forensics (CFF), 2008
   American Institute of Certified Public Accountants

Certified Fraud Examiner (CFE), 2010
   Association of Certified Fraud Examiners

## Educational Background

University of Florida, 1989
   Fisher School of Accounting
   Bachelor of Science in Accounting

Nova Southeastern University, 1992

## Publications and Articles

"Do You Need A Construction Overrun Investigation?", *BPB Advisory Flash*, Miami, Fl; Berkowitz Pollack Brant Advisors +CPAs, August 17, 2022

"Avoiding Usury Traps in Business Lending Arrangements", *BPB Advisory Flash*, Miami, Fl; Berkowitz Pollack Brant Advisors +CPAs, July 12, 2022.

"Is Your Loan in Violation of Florida Usury Law?", *BPB Advisory Flash*, Miami, Fl; Berkowitz Pollack Brant Advisors + CPAs, April 25, 2022.

"Lessons in Bankruptcy for Struggling Business Owners", *BPB Advisory Flash*, Miami, Fl; Berkowitz Pollack Brant Advisors + CPAs, August 20, 2020.

"Small and Mid-Size Businesses to Receive More Relief Under Main Street Lending Program", *BPB Advisory Flash*, Miami, Fl; Berkowitz Pollack Brant Advisors +CPAs, June 15, 2020.

"Do You Need a Construction Overrun Investigation?" *Success Magazine, Berkowitz Pollack Brant Year in Review: Volume 3*, 2015

"Is Your Loan in Violation of State Usury Laws?" BPB Firm Article, Miami, FL Berkowitz Pollack Brant Advisors and Accountants, October 2014

## Professional Memberships

American Institute of Certified Public Accountants

Florida Institute of Certified Public Accountants

Association of Certified Fraud Examiners

# Joel Glick
## Listing Of Cases Testified In
## As An Expert Witness

| COURT | JUDGE | CASE NAME/SUBJECT MATTER | REPRESENTED | YEAR |
|---|---|---|---|---|
| In The United States District Court Southern District of Florida Palm Beach Division | Hon. Eric P. Kimball | Auto Wholesale of Boca, LLC, Debtor. FVP OPPORTUNITY FUND III, LP; FVP INVESTMENTS, LLC; and FVP SERVICING, LLC, Adversary Plaintiffs, vs. Auto Wholesale of Boca, LLC; Hi Bar Capital, LLC; Wing Lake Partners f/k/a Franklin Capital Group, LLC; Karma of Palm Beach, Inc.; Karma of Broward, Inc.; Excell Auto Sport and Service, Inc.; and Edward Brown Adversary Defendants, Adversary / Plaintiffs, Cross Plaintiffs. **(Trial/Hearing)** | AUTO WHOLESALE OF BOCA, LLC, Debtor. | 2023 |
| In The United States District Court For the Eastern District of Texas | Hon. Robert W. Schroeder III | TIGI Linea Corp., f/k/a TIGI Linea, L.P., Plaintiff/Counter-Defendant vs. Professional Products Group, LLC, Defendant/Counter-Plaintiff Case No. 4:19-CV-840 **(Deposition)** | Professional Products Group, LLC | 2021 |
| In The United States District Court Southern District of Florida | Hon. Aileen M. Cannon | JUST PLAY, LLC, Plaintiff, vs. FITZMARK, INC., Defendant. Case No. 20-80663-CIV **(Trial)** | JUST PLAY, LLC | 2021 |
| In The United States District Court Southern District of Florida | Hon. Rodolfo A. Ruiz II | SECURITIES AND EXCHANGE COMMISSION, vs. COMPLETE BUSINESS SOLUTIONS GROUP, INC. d/b/a PAR FUNDING, et al., Defendants. CASE NO. 20-CV-81205-RAR **(Deposition)** | Complete Business Solutions Group, INC. d/b/a PAR Funding | 2021 |
| In The Circuit Court of the Twentieth Judicial Circuit In And For Lee County, Florida | Hon. Keith R. Kyle | A&E Adventures, LLC, a Florida limited liability company, Plaintiff v. GCTC Holdings, LLC, a Delaware limited liability company, Defendant Case No. 19-CA-8510 **(Trial)** | A&E Adventures, LLC | 2021 |
| In The United States District Court Southern District of Florida | Hon. Rodolfo A. Ruiz II | SECURITIES AND EXCHANGE COMMISSION, Plaintiff, v. COMPLETE BUSINESS SOLUTIONS GROUP, INC. d/b/a/ PAR FUNDING. Et. Al. Case No.9:20-cv-81205 **(Deposition)** | Complete Business Solutions Group, Inc. dba Par Funding, et al | 2021 |
| In The United States District Court Southern District of Florida | Hon. Aileen M. Cannon | JUST PLAY, LLC, Plaintiff, vs. FITZMARK, INC., Defendant. Case No. 20-80663-CIV **(Deposition)** | JUST PLAY, LLC | 2021 |
| In The United States District Court Middle District Of Tennessee Nashville Division | Hon. Eli J. Richardson | AUTOMOTIVE EXPERTS, INC. Plaintiff, vs. KEITH KALLBERG, KATHRYN KALLBERG, KALLBERG EMERGENCY MANAGEMENT, INC., MATTHEW KALLBERG, and LISA KALLBERG Defendants Case No. 19-CA-8510 **(Deposition)** | Keith Kallberg, Kathryn Kallberg, Kallberg Emergency Management, Inc., Matthew Kallberg, and Lisa Kallberg | 2020 |
| In The Circuit Court of the Twentieth Judicial Circuit In And For Lee County, Florida | Hon. Keith R. Kyle | A&E Adventures, LLC, a Florida limited liability company, Plaintiff v. GCTC Holdings, LLC, a Delaware limited liability company, Defendant Case No. 19-CA-8510 **(Deposition)** | A&E Adventures, LLC | 2020 |
| American Arbitration Association | Hon. Joshua W. Martin, III | U.S. ECOGEN POLK, LLC, a Delaware limited liability company, Claimant and Counterclaim Respondent, vs. DUKE ENERGY FLORIDA, LLC (f/k/a Florida Power Corporation, Inc., a Florida limited liability company), Respondent and Counterclaimant. Case No. 01-19-0001-0249 **(Trial)** | U.S. ECOGEN POLK, LLC | 2020 |

**Joel Glick**
**Listing Of Cases Testified In**
**As An Expert Witness**

| COURT | JUDGE | CASE NAME/SUBJECT MATTER | REPRESENTED | YEAR |
|---|---|---|---|---|
| In The United States District Court Southern District of Florida | Hon. Donald M. Middlebrooks | LB Pharma Serves, LLC v KrunchCash, LLC and Jeffrey Hackman 9:20-cv-80141-DMM **(Deposition)** | LB Pharma Service, LLC | 2020 |
| In the Circuit Court of the 11th Judicial Circuit in and for Miami-Dade County, FL | Honorable William Thomas | D.P. Monaco, LLC, a Florida limited liability company, Plaintiff, vs. Chateau Beach, LLC, a Florida limited liability company, and Coastal Construction Group of South Florida, Inc., a Florida corporation, Defendants **(Deposition)** | D.P. Monaco, LLC | 2019 |
| In the Circuit Court of the 11th Judicial Circuit in and for Miami-Dade County, FL | Honorable Jacqueline Hogan Scola | SBM ACQUISITION 2, LLC, a Florida limited liability company, as substituted Party Plaintiff to METROPOLITAN MTG. CO. OF MIAMI, a Florida Corporation, Plaintiff, vs. IVOR HANO ROSE and RITA STARR, his wife, MICHAEL A. STERN, an individual; 900 COLLINS 10 AVE., LLC, a dissolved Florida limited liability company; CITY OF MIAMI BEACH, FLORIDA, CITY OF MIAMI, FLORIDA, Defendants **(Deposition)** | METROPOLITAN MTG. CO. OF MIAMI | 2018 |
| In the Circuit Court of the 11th Judicial Circuit in and for Miami-Dade County, FL | Honorable William Thomas | CRAIG A. FINGOLD, individually and as TRUSTEE of the FINGOLD FAMILY 2004 TRUST u/a/d JUNE 10, 2004, individually and derivatively in the right and for the benefit of KF PROPERTY HOLDINGS, LLC, a Florida Limited Liability Company Plaintiffs, vs. R. LEE KRELSTEIN, an Individual, R. LEE KRELSTEIN, as TRUSTEE of the R. LEE KRELSTEIN DECLARATION OF TRUST DATED SEPTEMBER 13, 2007, and L & L INTERNATIONAL I, L.L.C., a Florida Limited Liability Company, Defendants. **(Deposition)** | Craig Fingold | 2018 |
| In The Circuit Court, Seventh Judicial Circuit, In And For Volusia County, Florida | None assigned at time of deposition | Exxelia Usa Holding, Inc. And Exxelia-RAF Tabtronics, LLC, Plaintiffs, v. Robert Malkani, James Tabbi, RBM Technologies, Inc., Attractive Technologies, Inc., Defendants. **(Deposition)** | Exxelia Usa Holding, Inc. And Exxelia-RAF Tabtronics, LLC | 2018 |
| In the Circuit Court of the 11th Judicial Circuit in and for Miami-Dade County, FL | Hon. John W. Thornton | JEANETTE RAIJMAN BIBLIOWICZ, Individually and derivatively as Co-Trustee of the 2003 Waserstein Family Trust in the Right of and for the Benefit of the Miami Lakes Office Center, Inc, v. RICHARD WASERSTEIN, and individual, ALAN WASERSTEIN, an individual and as Trustee of the ATS TRUST; CHARLES WASERSTEIN, an individual; MARTA WASERSTEIN, an individual, et al., **(Deposition)** | Jeanette Raijman Bibliowicz | 2017 |
| United States District Court Southern District of Florida Miami Division | Hon. Marcia G. Cooke /Hon. Edwin G. Torres | Jonathan B. Kling v. Jon Bourbeau, P.A. and Jon Bourbeau Case no. 15-22439-CIV-Cooke/Torres **(Deposition)** | Jon Bourbeau, P.A. and Jon Bourbeau | 2016 |
| In the Circuit Court of the 11th Judicial Circuit in and for Miami-Dade County, FL | Honorable Rosa I. Rodriguez | Matthew Rocca v. Victor Rones individually, as Co-Personal Representative of the Estate of Sidney Boyansky, etc., Irene Boyansky, individually, and as Co-Personal Representatives of the Estate of Sidney Boyansky, etc., and Emile Martin, individually, and as successor Co-Trustee of the Second Restated Sidney Boyansky Revocable Trust, et al Local Case No.11-596-CP-02 **(Deposition)** | Rones, Boyansky & Martin | 2015 |

# Joel Glick
# Listing Of Cases Testified In
# As An Expert Witness

| COURT | JUDGE | CASE NAME/SUBJECT MATTER | REPRESENTED | YEAR |
|---|---|---|---|---|
| United States Bankruptcy Court Southern District of Florida, Ft. Lauderdale Division | Honorable Raymond B. Ray | Rothstein Rosenfeldt Adler, P.A., Debtor Chapter 11 Bankruptcy  Case No.09-34791-BKC-RBR Adv. No 11-03014-BKC-RBR-A RRA, Stettin as Trustee v Frank Preve et al [ECF No. 67] **(Deposition)** | The Honorable Herbert Stettin as Chapter 11 Trustee | 2013 |
| United States Bankruptcy Court Southern District of Florida, Ft. Lauderdale Division | Honorable Raymond B. Ray | Rothstein Rosenfeldt Adler, P.A., Debtor Chapter 11 Bankruptcy  Case No.09-34791-BKC-RBR Hearing on Motion to Approve Second Amended Joint Plan of Liquidation Pursuant to Chapter 11 of the Bankruptcy Code Proposed Jointly by the Trustee and the Official Committee of Unsecured Creditors **(Deposition)** | The Honorable Herbert Stettin as Chapter 11 Trustee | 2013 |
| United States Bankruptcy Court Southern District of Florida, Ft. Lauderdale Division | Honorable Raymond B. Ray | Rothstein Rosenfeldt Adler, P.A., Debtor Chapter 11 Bankruptcy  Case No.09-34791-BKC-RBR Hearing on Motion to Approve Second Amended Joint Plan of Liquidation Pursuant to Chapter 11 of the Bankruptcy Code Proposed Jointly by the Trustee and the Official Committee of Unsecured Creditors **(Hearing)** | The Honorable Herbert Stettin as Chapter 11 Trustee | 2013 |
| United States Bankruptcy Court Southern District of Florida, Ft. Lauderdale Division | Honorable Raymond B. Ray | Rothstein Rosenfeldt Adler, P.A., Debtor Chapter 11 Bankruptcy  Case No.09-34791-BKC-RBR Motion to Approve Settlement and Compromise with (i) Centurion Structured Growth LLC, Platinum Partners Credit Opportunities Master Fund LP, Platinum Partners Value Arbitrage Fund LP, and Level 3 Capital Fund LP (the "Funds"); and (ii) Regent Capital Partners LLC, Mark Nordlicht and his wife Dahlia Kalter Nordlicht, Murray Huberfeld and his wife Laura Huberfeld, David Bodner and his wife Naomi Bodner, and the Bodner Family Foundation [ECF No. 3185] **(Deposition)** | The Honorable Herbert Stettin as Chapter 11 Trustee | 2012 |
| United States Bankruptcy Court Southern District of Florida, Ft. Lauderdale Division | Honorable Raymond B. Ray | Rothstein Rosenfeldt Adler, P.A., Debtor Chapter 11 Bankruptcy  Case No.09-34791-BKC-RBR Hearing on Motion to Approve Settlement and Compromise with (i) Centurion Structured Growth LLC, Platinum Partners Credit Opportunities Master Fund LP, Platinum Partners Value Arbitrage Fund LP, and Level 3 Capital Fund LP (the "Funds"); and (ii) Regent Capital Partners LLC, Mark Nordlicht and his wife Dahlia Kalter Nordlicht, Murray Huberfeld and his wife Laura Huberfeld, David Bodner and his wife Naomi Bodner, and the Bodner Family Foundation [ECF No. 3185] **(Hearing)** | The Honorable Herbert Stettin as Chapter 11 Trustee | 2012 |
| United States Bankruptcy Court Southern District of Florida, Ft. Lauderdale Division | Honorable Raymond B. Ray | Rothstein Rosenfeldt Adler, P.A., Debtor Chapter 11 Bankruptcy  Case No.09-34791-BKC-RBR Motion to Substantively Consolidate Alleged Debtor Banyon 1030-32, LLC with and Into the Debtor's Bankruptcy Estate Nunc Pro Tunc to November 30, 2009 **(Deposition)** | The Honorable Herbert Stettin as Chapter 11 Trustee | 2011 |

# Joel Glick
## Listing Of Cases Testified In
## As An Expert Witness

| COURT | JUDGE | CASE NAME/SUBJECT MATTER | REPRESENTED | YEAR |
|---|---|---|---|---|
| United States Bankruptcy Court Southern District of Florida, Ft. Lauderdale Division | Honorable Raymond B. Ray | Rothstein Rosenfeldt Adler, P.A., Debtor Chapter 11 Bankruptcy  Case No.09-34791-BKC-RBR Hearing on Motion to Substantively Consolidate Alleged Debtor Banyon 1030-32, LLC with and Into the Debtor's Bankruptcy Estate Nunc Pro Tunc to November 30, 2009 **(Hearing)** | The Honorable Herbert Stettin as Chapter 11 Trustee | 2011 |
| United States Bankruptcy Court Southern District of Florida, Ft. Lauderdale Division | Honorable Raymond B. Ray | Rothstein Rosenfeldt Adler, P.A., Debtor Chapter 11 Bankruptcy  Case No.09-34791-BKC-RBR Hearing on Emergency Verified Motion and Supporting Memorandum of Law of the Plaintiff, Chapter 11 Trustee Herbert Stettin, for Entry of Preliminary Injunction and for other Relief and Request for Judicial Notice [D.E. 47] **(Hearing)** | The Honorable Herbert Stettin as Chapter 11 Trustee | 2010 |

4